# U.S. Bankruptcy Court
## MIDDLE DISTRICT OF TENNESSEE (Nashville)
### Adversary Proceeding #: 3:20–ap–90027

*Assigned to:* Marian F Harrison                                 *Date Filed:* 03/02/20
*Lead BK Case:* 18–02662
*Lead BK Title:* Len Salas
*Lead BK Chapter:* 7
*Demand:*
  *Nature[s] of Suit:*   11 Recovery of money/property – 542 turnover of property
                          13 Recovery of money/property – 548 fraudulent transfer
                          21 Validity, priority or extent of lien or other interest in property

*Plaintiff*
────────────────────────
**Nicolaas Brekelmans**                    represented by **Taylor ALEXANDER CATES**
                                                            BURCH PORTER & JOHNSON PLLC
                                                            130 NORTH COURT AVENUE
                                                            MEMPHIS, TN 38103
                                                            901–524–5165
                                                            Fax : 901–524–5024
                                                            Email: tacates@bpjlaw.com

                                                           **PHILIP JAMES MCNUTT**
                                                            LAW OFFICE OF PHILIP J MCNUTT PLLC
                                                            11921 FREEDOM DRIVE
                                                            STE 584
                                                            RESTON, VA 20190
                                                            703–904–4380
                                                            Fax : 202–379–9217
                                                            Email: pmcnutt@mcnuttlawllc.com
                                                            *LEAD ATTORNEY*

*Plaintiff*
────────────────────────
**Gail Brekelmans**                        represented by **Taylor ALEXANDER CATES**
                                                            (See above for address)

                                                           **PHILIP JAMES MCNUTT**
                                                            (See above for address)

*Plaintiff*
────────────────────────
**Michael McLoughlin, Jr.**                represented by **Taylor ALEXANDER CATES**
                                                            (See above for address)

                                                           **PHILIP JAMES MCNUTT**
                                                            (See above for address)

**Plaintiff**
—————————————————

**Martha Johnson**                          represented by **Taylor ALEXANDER CATES**
                                            (See above for address)

                                            **PHILIP JAMES MCNUTT**
                                            (See above for address)


V.


**Defendant**
—————————————————

**Max Salas**                               represented by **PHILLIP G YOUNG**
c/o Phillip G. Young                        Thompson Burton PLLC
6100 Tower Circle, Suite 200                One Franklin Park
Franklin, TN 37067                          6100 Tower Circle, Suite 200
                                            FRANKLIN, TN 37067
                                            615–465–6008
                                            Fax : 931–381–0058
                                            Email: phillip@thompsonburton.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 03/02/2020 | | 1 | Adversary case 3:20–ap–90027. Complaint by Nicolaas Brekelmans, Gail Brekelmans, Michael McLoughlin Jr., Martha Johnson against Max Salas. Fee Amount is $350.00. Adversary Fee Will be Paid In Full Electronically at the Time of Filing. Nicolaas Brekelmans, Gail Brekelmans, Michael McLoughlin Jr., Martha Johnson. (Attachments: # 1 Exhibit A – Trustee's Report of Sale # 2 Exhibit B – Order Confirming Debtor's Third Amended Plan # 3 Exhibit C – Tennessee Bankruptcy Court Order dated 06/12/19) Nature of Suit: (11 (Recovery of money/property – 542 turnover of property), 13 (Recovery of money/property – 548 fraudulent transfer)) (CATES, TAYLOR) (Entered: 03/02/2020) |
| 02/16/2021 | | 40 | Amended Complaint *Pursuant to Court Order Dated February 11, 2021 (D–39)* by PHILIP JAMES MCNUTT on behalf of Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. against Max Salas. (Attachments: # 1 Exhibit A Trustee's Report of Sale # 2 List of 20 Largest Creditors B Confirmation Order and Plan # 3 Exhibit C Order to Sell Trustee's Interest in Avoiding Powers # 4 Exhibit D Redline of Amended Complaint to Original) Filed on the behalf of: on behalf of Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)1). (MCNUTT, PHILIP) (Entered: 02/16/2021) |
| 03/09/2021 | | 42 | Answer to Complaint Filed on the behalf of: Defendant Max Salas. (YOUNG, PHILLIP) (Entered: 03/09/2021) |
| 07/29/2022 | | 73 | *Plaintiffs'* Motion For Summary Judgment *re: Counts I,II,IV,V, and VI of the Amended Complaint*. (Attachments: # 1 Supplement Memorandum in Support of Plaintiffs' Motion for Summary Judgment # 2 Supplement Plaintiffs List of Undisputed Facts # 3 Exhibit 1 M Salas Deposition Transcript # 4 Exhibit 2 M Salas Second Amended Disclosure Statement # 5 Exhibit 7 emails June, 2011 – February, 2012 2–12 # 6 Exhibit 9 M Salas Schedules Excerpt # 7 Exhibit 16 M Salas Statement of Financial Affairs Excerpt # 8 Exhibit 17 M Salas Amended Answers to Plaintiffs Request for Admissions # 9 Exhibit 19 Albert–R Salas emails 2–14–18 # |

| | | | |
|---|---|---|---|
| | | | 10 Exhibit 20 Exemption Hearing (D.C.) Volume 1 Excerpts # 11 Exhibit 21 M Salas Responses to Creditors Request for Production (D.C.) # 12 Exhibit 15 M Salas – U.S. Bank Stipulation (D.C.) 11–20–19)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 07/29/2022) |
| 08/01/2022 | | 74 | *Amended* Brief/Memorandum in Support of *Plaintiffs Motion for Summary Judgment*. (Attachments: # 1 Exhibit Plaintiffs' Amended List of Uncontested Facts # 2 Exhibit 1 M Salas Superior Ct Depo Transcript (2–24–16)Excerpt # 3 Exhibit 2 M Salas Second Amended Disclosure Statement 12–5–19 # 4 Exhibit 3 Exemption Hearing in Case No. 18–260 (D.C.) Vol 2 Excerpts # 5 Exhibit 4 L Salas Confirmation Hrg Transcript in Case No. 18–2662 12–13–18 # 6 Exhibit 5 K Salas Chapter 7 Meeting Transcript 4–1–19 # 7 Exhibit 6 Exemption Hearing in Case No. 18–260 (D.C.) Vol 3 Excerpts 8–24–18 # 8 Exhibit 7 eMails 6–17–11 – 2–27–12 # 9 Exhibit R Salas Deposiiton Transcript in Case No. 18–260 8–8–18 # 10 Exhibit 9 M Salas Schedules in Case No. 18–260 5–2–18 Excerpts # 11 Exhibit M Salas Deposition Transcript in Case No. 20–90027 3–8–22 Excerpts # 12 Exhibit 11 L Salas Deposition Transcript in Superior Court Litigation 3–9–16 Excerpts # 13 Exhibit 12 R Salas Testimony at Exemption Hearing 8–22–18 # 14 Exhibit 13 L Salas Deposition Transcript in Case No. 20–90027 Excerpts # 15 Exhibit 14 Kendra (Salas) Rowe Deposition Transcript in Case No. 20–90027 8–27–21 Excerpts # 16 Exhibit 15 M Salas–U.S. Bank Stipulation in Case No. 18–260 11–20–19 # 17 Exhibit 16 M Salas Statement of Financial Affairs filed in Case No. 18–260 5–2–18 Excerpts # 18 Exhibit 17 M Salas Amended Responses to Plaintiffs Requests for Admission in Case No. 20–90027 11–9–21 # 19 Exhibit Salas Schedules filed in Case No. 18–260 5–2–18 Excerpt # 20 Exhibit 19 M Albert – M Salas eMails re: Original Deed 2–14–18 # 21 Exhibit 20 Exemption Hearing in Case No. 18–260 Transcript Vol 1 8–22–18 Excerpts # 22 Exhibit 21 M Salas Responses to Objecting Creditors' Requests for Production of Documents in Case No. 18–260 8–6–18) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)73). (MCNUTT, PHILIP) (Entered: 08/01/2022) |
| 08/12/2022 | | 75 | *Defendant's* Objection to*Plaintiffs' Motion fo Summary Judgment*. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) Filed on the behalf of: Defendant Max Salas (RE: related document(s)73, 74). (YOUNG, PHILLIP) (Entered: 08/12/2022) |
| 08/23/2022 | | 76 | *Plaintiffs'* Response to *Defendant's Objections to Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit Max Salas 2015 IRS Tax Return) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)75). (MCNUTT, PHILIP) (Entered: 08/23/2022) |
| 09/12/2022 | | 77 | Order Scheduling Hearing *on the Plaintiff's Motion for Summary Judgment*. (RE: Related Doc#: 73, 74, 75, 76). **Hearing scheduled 10/4/2022 at 09:30 AM; Refer to www.tnmb.uscourts.gov for details (Nashville).** Signed on 9/12/2022. (jtd) (Entered: 09/12/2022) |
| 09/19/2022 | | 79 | *Plaintiffs'* Response to *Defendant's Objections to Motion for Summary Judgement per the Court's Order*. (Attachments: # 1 Exhibit Amended Exh. 3, Exemption Hearing Transcript, Vol 2.Excerpts # 2 Exhibit Amended Exh. 4, L Salas COnfirmation Hearing Transcript–12–13–18 # 3 Exhibit Amended Exh. 6, Exemption Hearing Transcript, Vol 3–Excerpts # 4 Exhibit Amended Exh. 9, M Salas Schedules–Excerpts # |

| | | | |
|---|---|---|---|
| | | | 5 Exhibit 22, M Salas Exhibit List for Exemption Hearing in Case No. 18–00260 # 6 Exhibit 23, Court's Proceeding Memo for 3rd day of Exemption Hearing in Case No. 18–00260, with Exhibits Lists) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)74, 75, 76, 77). (MCNUTT, PHILIP) (Entered: 09/19/2022) |
| 09/28/2022 | | 81 | *Defendant's* Response to *Plaintiffs' Supplemental List of Undisputed Facts*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)79). (YOUNG, PHILLIP) (Entered: 09/28/2022) |
| 01/05/2023 | | 83 | Order Scheduling Hearing. (RE: Related Doc#: 73, 74, 75, 76, 79, 81). **Hearing scheduled 2/21/2023 at 01:15 PM, Courtroom 3 (Virtual hearing if allowed; see website for details); 701 Broadway, Nashville, TN 37203.** Signed on 1/5/2023. (jlm) (Entered: 01/05/2023) |
| 02/21/2023 | | 89 | *Defendant's* Motion For Summary Judgment. Certificate of Service mailed on 2/21/23. Filed on the behalf of: Defendant Max Salas. (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 90 | *Defendant's* Statement *of Undisputed Facts in Support of Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 91 | *Defendant's* Brief/Memorandum in Support of *Defendant's Motion for Summary Judgment*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 92 | *Supplemental Memorandum in Support of Plaintiffs'* Motion For Summary Judgment*In Response to the Court's Order of January 4, 2023*. (Attachments: # 1 Exhibit A CLR Trust Leases # 2 Exhibit B 1610 Riggs Trust Bank Statements # 3 Exhibit C M Salas Statement of Financial Affairs Excerpt # 4 Exhibit D Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 5 Exhibit E Debtor's Opposition to Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 6 Exhibit F L Salas Loss Mitigation Statement 2/28/16 # 7 Exhibit G DCPropertyQuest Report on 1610 Riggs Place, NW 6/17/15 # 8 Exhibit H DCR Notice of Abatement 6/17/15 # 9 Exhibit I DCR Notice of Infraction 11/6/15)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 02/21/2023) |
| 03/07/2023 | | 94 | Brief/Memorandum in Support of *(Response to Plaintiffs' Supplemental Memorandum)*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)92). (YOUNG, PHILLIP) (Entered: 03/07/2023) |
| 03/07/2023 | | 95 | *Plaintiffs' Opposition in* Response to *Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit List of Undisputed Facts # 2 Exhibit A Defendant's Amended Responses to Plaintiffs' Requests for Admission 11–9–21) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)90, 91, 93 ). (MCNUTT, PHILIP) (Entered: 03/07/2023) |
| 03/26/2023 | | 100 | *Plaintiffs' Second Supplemental* Brief/Memorandum in Support of *Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit A Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 1 # 2 Exhibit B Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 2) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas |

| | | | |
|---|---|---|---|
| | | | Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)<u>73</u>, <u>89</u>). (MCNUTT, PHILIP) (Entered: 03/26/2023) |
| 05/24/2023 | | <u>101</u> | Memorandum Opinion. (RE: Related Doc#: <u>73</u>, <u>89</u>). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 05/24/2023 | | <u>102</u> | Order *on Motion for Summary Judgment*. (RE: Related Doc#: <u>89</u>, <u>95</u>, <u>101</u>). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 06/07/2023 | | <u>104</u> | Motion for *Plaintiffs' Motion to Alter or Amend*. (Attachments: # <u>1</u> Affidavit McNutt Decflaration in Support of Plaintiffs' Motion to Alter or Amend # <u>2</u> Proposed Order Order Granting Plaintiffs' Motion to Alter of Amend)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 06/07/2023) |
| 06/21/2023 | | <u>107</u> | *Defendant's* Response to *Plaintiffs' Motion to Alter or Amend*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)<u>104</u>). (YOUNG, PHILLIP) (Entered: 06/21/2023) |
| 08/16/2023 | | <u>109</u> | Order Denying *Plaintiff's* Motion *to Alter or Amend Under Fed.R.Bankr.P.9023* . (RE: Ref Doc # <u>104</u>), (Related Doc#: <u>107</u>). BY THE COURT: Judge Marian F. Harrison. (jlm) (Entered: 08/16/2023) |
| 08/28/2023 | | <u>113</u> | *Plaintiffs'* Motion for Leave to Appeal*from the Court's Orders Denying and Granting Summary Judgment and Denying Motion to Alter or Amend*. (Attachments: # <u>1</u> Exhibit a Order of January 5, 2023 # <u>2</u> Exhibit b Court's Memorandum Opinion 5/2/423 # <u>3</u> Exhibit c ORDER re Summary Judgment Motions 5/24/23 # <u>4</u> Exhibit d ORDER Denying Motion to Alter or Amend 8/16/23)Certificate of Service mailed on 08/28/2023. Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 08/28/2023) |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

In re:                                    :

  LEN SALAS                               :    Case No. 18-02662-MH3-7

                        Debtor            :

NICOLAAS BREKELMANS AND                   :
GAIL GREGORY BREKELMANS,
CO-PERSONAL REPRESENTATIVES               :
OF THE ESTATE OF NINA
BREKELMANS                                :

and                                       :

MICHAEL MCLOUGHLIN AND                    :
MARTHA JOHNSON,
CO-PERSONAL REPRESENTATIVES               :
OF THE ESTATE OF MICHAEL
PATRICK MCLOUGHLIN                        :

                        Plaintiffs        :

            v.                            :    Adversary Proceeding No. _____

MAX SALAS                                 :
1610 Riggs Place, NW
Washington, DC                            :

                        Defendant         :

COMPLAINT TO AVOID TRANSFERS AND RECOVER PROPERTY

COME NOW THE Plaintiffs herein, Nicolaas Brekelmans and Gail Gregory Brekelmans,

Co-personal Representatives Of the Estate of Nina Brekelmans ("Nina")("the Brekelmans

Estate") and Michael Mcloughlin and Martha Johnson, Co-personal Representatives of The

Estate of Michael Patrick Mcloughlin ("Michael") ("the McLoughlin Estate") ("the Brekelmans

Estate and the Mcloughlin Estate are hereinafter collectively sometimes referred to as "the

Estates"), by and through their undersigned counsel and sue the Defendant, Max Salas, to avoid transfers and recover property and, for their causes of action, allege as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction under 28 U.S.C. § 1334 (b). This matter involves causes of action under the trustee's avoiding powers purchased by the Plaintiffs from the Debtor's Estate.

2. Venue lies in this court under 28 U.S.C. §1409 (a)(c) & (d).

3. This matter involves property of the estate and claims of creditors of the Debtor's estate.

4. This matter is a core matter involving Avoiding Powers of the trustee pursuant to 11 U.S.C. § 544, *et seq.* (hereinafter, all references to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* are cited as "Code, §"). ***See*** *inter alia*, 28 U.S.C. §157 (b)(1) and §157(b)(2) (A)(F)(H) & (0)

**Parties**

5. The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively. Nina and Michael were tragically killed in a fire at a residence in Washington, DC ("the Fire") which residence was owned by the Debtor, Len Salas and occupied and managed by his father, the Defendant, Max Salas. The Plaintiffs herein, the Estates, were the successful bidders at an auction sale of this bankruptcy estate's interest in the trustee's avoidance and recovery actions under Code, §§544, *et seq.* A copy of the Trustee's Report of Sale of those actions is attached hereto as **Exhibit A**.

6. The Defendant Max Salas, is the Debtor in Case No. 18-00260, in the United States Bankruptcy Court for the District of Columbia (hereinafter "Max"). Max filed a voluntary petition, under Chapter 11 of the Code in April, 2018.

7.  Len Salas (hereinafter "Len"), is the Debtor is Case No. 3:18-bk-02662, filed in the United States Bankruptcy Court for the Middle District of Tennessee (Nashville) ("Len's Bankruptcy") on or about May 2, 2018.  Len's Bankruptcy was converted from a Chapter 11 to a Chapter 7 bankruptcy on or about December 12, 2018.

8.  This matter involves the recovery of property located at 1610 Riggs Place, NW, Washington, DC ("the Property") at which the Defendant, Max, presently resides.  Alternatively, the Plaintiffs are seeking a fair market sale of the Property to recover its value, believed to be in excess of $1 Million above all prior and/or secured claims.

**Background for All Counts**

9.  In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment").  The Judgment resulted from a fire at the Property which, at the time, Max had rented rooms to renters including Nina and Michael.  Through the gross negligence of Max and his deliberate failure to make required safety improvements to the Property, Nina and Michael tragically lost their lives in a horrific and traumatic manner.  Len was named a Defendant since he was, at all times, the owner of the Property, including at the time of the fire (June, 2015).

10.  The Estates filed separate lawsuits against Max and Len in 2015.  After a lengthy period of discovery and pre-trial matters, the case was tried in late March, 2018 resulting in the Judgment.  Although Max and Len both appealed the Judgment, there has been no prosecution of the appeal and no stay entered in the appeal.  On January 28, 2019, the Bankruptcy Court for the District of Columbia entered an Order Confirming Max's Third Amended Plan of Reorganization ("the Confirmed Plan").  Under the terms of the Confirmed Plan, entered in Max's Bankruptcy on or about January 31, 2020, Max is withdrawing his appeal of the

# U.S. Bankruptcy Court
## MIDDLE DISTRICT OF TENNESSEE (Nashville)
### Adversary Proceeding #: 3:20–ap–90027

*Assigned to:* Marian F Harrison                      *Date Filed:* 03/02/20
*Lead BK Case:* 18–02662
*Lead BK Title:* Len Salas
*Lead BK Chapter:* 7
*Demand:*
   *Nature[s] of Suit:*   11 Recovery of money/property – 542 turnover of property
                           13 Recovery of money/property – 548 fraudulent transfer
                           21 Validity, priority or extent of lien or other interest in property

*Plaintiff*
————————————————
**Nicolaas Brekelmans**            represented by **Taylor ALEXANDER CATES**
                                       BURCH PORTER & JOHNSON PLLC
                                       130 NORTH COURT AVENUE
                                       MEMPHIS, TN 38103
                                       901–524–5165
                                       Fax : 901–524–5024
                                       Email: tacates@bpjlaw.com

                                       **PHILIP JAMES MCNUTT**
                                       LAW OFFICE OF PHILIP J MCNUTT PLLC
                                       11921 FREEDOM DRIVE
                                       STE 584
                                       RESTON, VA 20190
                                       703–904–4380
                                       Fax : 202–379–9217
                                       Email: pmcnutt@mcnuttlawllc.com
                                       *LEAD ATTORNEY*

*Plaintiff*
————————————————
**Gail Brekelmans**               represented by **Taylor ALEXANDER CATES**
                                       (See above for address)

                                       **PHILIP JAMES MCNUTT**
                                       (See above for address)

*Plaintiff*
————————————————
**Michael McLoughlin, Jr.**       represented by **Taylor ALEXANDER CATES**
                                       (See above for address)

                                       **PHILIP JAMES MCNUTT**
                                       (See above for address)

# U.S. Bankruptcy Court
## MIDDLE DISTRICT OF TENNESSEE (Nashville)
### Adversary Proceeding #: 3:20–ap–90027

*Assigned to:* Marian F Harrison                              *Date Filed:* 03/02/20
*Lead BK Case:* 18–02662
*Lead BK Title:* Len Salas
*Lead BK Chapter:* 7
*Demand:*
  *Nature[s] of Suit:*  11  Recovery of money/property – 542 turnover of property
                        13  Recovery of money/property – 548 fraudulent transfer
                        21  Validity, priority or extent of lien or other interest in property


*Plaintiff*
────────────────────
**Nicolaas Brekelmans**                     represented by **Taylor ALEXANDER CATES**
                                            BURCH PORTER & JOHNSON PLLC
                                            130 NORTH COURT AVENUE
                                            MEMPHIS, TN 38103
                                            901–524–5165
                                            Fax : 901–524–5024
                                            Email: tacates@bpjlaw.com

                                            **PHILIP JAMES MCNUTT**
                                            LAW OFFICE OF PHILIP J MCNUTT PLLC
                                            11921 FREEDOM DRIVE
                                            STE 584
                                            RESTON, VA 20190
                                            703–904–4380
                                            Fax : 202–379–9217
                                            Email: pmcnutt@mcnuttlawllc.com
                                            *LEAD ATTORNEY*


*Plaintiff*
────────────────────
**Gail Brekelmans**                         represented by **Taylor ALEXANDER CATES**
                                            (See above for address)

                                            **PHILIP JAMES MCNUTT**
                                            (See above for address)


*Plaintiff*
────────────────────
**Michael McLoughlin, Jr.**                 represented by **Taylor ALEXANDER CATES**
                                            (See above for address)

                                            **PHILIP JAMES MCNUTT**
                                            (See above for address)

**Plaintiff**
−−−−−−−−−−−−−−−−−−−−−

**Martha Johnson**                          represented by **Taylor ALEXANDER CATES**
(See above for address)

**PHILIP JAMES MCNUTT**
(See above for address)


V.

**Defendant**
−−−−−−−−−−−−−−−−−−−−−

**Max Salas**                               represented by **PHILLIP G YOUNG**
c/o Phillip G. Young                                        Thompson Burton PLLC
6100 Tower Circle, Suite 200                               One Franklin Park
Franklin, TN 37067                                         6100 Tower Circle, Suite 200
                                                           FRANKLIN, TN 37067
                                                           615−465−6008
                                                           Fax : 931−381−0058
                                                           Email: phillip@thompsonburton.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 03/02/2020 | | 1 | Adversary case 3:20−ap−90027. Complaint by Nicolaas Brekelmans, Gail Brekelmans, Michael McLoughlin Jr., Martha Johnson against Max Salas. Fee Amount is $350.00. Adversary Fee Will be Paid In Full Electronically at the Time of Filing. Nicolaas Brekelmans, Gail Brekelmans, Michael McLoughlin Jr., Martha Johnson. (Attachments: # 1 Exhibit A – Trustee's Report of Sale # 2 Exhibit B – Order Confirming Debtor's Third Amended Plan # 3 Exhibit C – Tennessee Bankruptcy Court Order dated 06/12/19) Nature of Suit: (11 (Recovery of money/property – 542 turnover of property), 13 (Recovery of money/property – 548 fraudulent transfer)) (CATES, TAYLOR) (Entered: 03/02/2020) |
| 02/16/2021 | | 40 | Amended Complaint *Pursuant to Court Order Dated February 11, 2021 (D−39)* by PHILIP JAMES MCNUTT on behalf of Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. against Max Salas. (Attachments: # 1 Exhibit A Trustee's Report of Sale # 2 List of 20 Largest Creditors B Confirmation Order and Plan # 3 Exhibit C Order to Sell Trustee's Interest in Avoiding Powers # 4 Exhibit D Redline of Amended Complaint to Original) Filed on the behalf of: on behalf of Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)1). (MCNUTT, PHILIP) (Entered: 02/16/2021) |
| 03/09/2021 | | 42 | Answer to Complaint Filed on the behalf of: Defendant Max Salas. (YOUNG, PHILLIP) (Entered: 03/09/2021) |
| 07/29/2022 | | 73 | *Plaintiffs'* Motion For Summary Judgment*re: Counts I,II,IV,V, and VI of the Amended Complaint.* (Attachments: # 1 Supplement Memorandum in Support of Plaintiffs' Motion for Summary Judgment # 2 Supplement Plaintiffs List of Undisputed Facts # 3 Exhibit 1 M Salas Deposition Transcript # 4 Exhibit 2 M Salas Second Amended Disclosure Statement # 5 Exhibit 7 emails June, 2011 – February, 2012 2–12 # 6 Exhibit 9 M Salas Schedules Excerpt # 7 Exhibit 16 M Salas Statement of Financial Affairs Excerpt # 8 Exhibit 17 M Salas Amended Answers to Plaintiffs Request for Admissions # 9 Exhibit 19 Albert−R Salas emails 2–14–18 # |

| | | | |
|---|---|---|---|
| | | | 10 Exhibit 20 Exemption Hearing (D.C.) Volume 1 Excerpts # 11 Exhibit 21 M Salas Responses to Creditors Request for Production (D.C.) # 12 Exhibit 15 M Salas – U.S. Bank Stipulation (D.C.) 11–20–19)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 07/29/2022) |
| 08/01/2022 | | 74 | *Amended* Brief/Memorandum in Support of *Plaintiffs Motion for Summary Judgment*. (Attachments: # 1 Exhibit Plaintiffs' Amended List of Uncontested Facts # 2 Exhibit 1 M Salas Superior Ct Depo Transcript (2–24–16)Excerpt # 3 Exhibit 2 M Salas Second Amended Disclosure Statement 12–5–19 # 4 Exhibit 3 Exemption Hearing in Case No. 18–260 (D.C.) Vol 2 Excerpts # 5 Exhibit 4 L Salas Confirmation Hrg Transcript in Case No. 18–2662 12–13–18 # 6 Exhibit 5 K Salas Chapter 7 Meeting Transcript 4–1–19 # 7 Exhibit 6 Exemption Hearing in Case No. 18–260 (D.C.) Vol 3 Excerpts 8–24–18 # 8 Exhibit 7 eMails 6–17–11 – 2–27–12 # 9 Exhibit R Salas Deposiiton Transcript in Case No. 18–260 8–8–18 # 10 Exhibit 9 M Salas Schedules in Case No. 18–260 5–2–18 Excerpts # 11 Exhibit M Salas Deposition Transcript in Case No. 20–90027 3–8–22 Excerpts # 12 Exhibit 11 L Salas Deposition Transcript in Superior Court Litigation 3–9–16 Excerpts # 13 Exhibit 12 R Salas Testimony at Exemption Hearing 8–22–18 # 14 Exhibit 13 L Salas Deposition Transcript in Case No. 20–90027 Excerpts # 15 Exhibit 14 Kendra (Salas) Rowe Deposition Transcript in Case No. 20–90027 8–27–21 Excerpts # 16 Exhibit 15 M Salas–U.S. Bank Stipulation in Case No. 18–260 11–20–19 # 17 Exhibit 16 M Salas Statement of Financial Affairs filed in Case No. 18–260 5–2–18 Excerpts # 18 Exhibit 17 M Salas Amended Responses to Plaintiffs Requests for Admission in Case No. 20–90027 11–9–21 # 19 Exhibit Salas Schedules filed in Case No. 18–260 5–2–18 Excerpt # 20 Exhibit 19 M Albert – M Salas eMails re: Original Deed 2–14–18 # 21 Exhibit 20 Exemption Hearing in Case No. 18–260 Transcript Vol 1 8–22–18 Excerpts # 22 Exhibit 21 M Salas Responses to Objecting Creditors' Requests for Production of Documents in Case No. 18–260 8–6–18) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)73). (MCNUTT, PHILIP) (Entered: 08/01/2022) |
| 08/12/2022 | | 75 | *Defendant's* Objection to*Plaintiffs' Motion fo Summary Judgment*. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) Filed on the behalf of: Defendant Max Salas (RE: related document(s)73, 74). (YOUNG, PHILLIP) (Entered: 08/12/2022) |
| 08/23/2022 | | 76 | *Plaintiffs'* Response to *Defendant's Objections to Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit Max Salas 2015 IRS Tax Return) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)75). (MCNUTT, PHILIP) (Entered: 08/23/2022) |
| 09/12/2022 | | 77 | Order Scheduling Hearing *on the Plaintiff's Motion for Summary Judgment*. (RE: Related Doc#: 73, 74, 75, 76). **Hearing scheduled 10/4/2022 at 09:30 AM; Refer to www.tnmb.uscourts.gov for details (Nashville).** Signed on 9/12/2022. (jtd) (Entered: 09/12/2022) |
| 09/19/2022 | | 79 | *Plaintiffs'* Response to *Defendant's Objections to Motion for Summary Judgement per the Court's Order*. (Attachments: # 1 Exhibit Amended Exh. 3, Exemption Hearing Transcript, Vol 2.Excerpts # 2 Exhibit Amended Exh. 4, L Salas COnfirmation Hearing Transcript–12–13–18 # 3 Exhibit Amended Exh. 6, Exemption Hearing Transcript, Vol 3–Excerpts # 4 Exhibit Amended Exh. 9, M Salas Schedules–Excerpts # |

| | | | |
|---|---|---|---|
| | | | 5 Exhibit 22, M Salas Exhibit List for Exemption Hearing in Case No. 18–00260 # 6 Exhibit 23, Court's Proceeding Memo for 3rd day of Exemption Hearing in Case No. 18–00260, with Exhibits Lists) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)74, 75, 76, 77). (MCNUTT, PHILIP) (Entered: 09/19/2022) |
| 09/28/2022 | | 81 | *Defendant's* Response to *Plaintiffs' Supplemental List of Undisputed Facts*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)79). (YOUNG, PHILLIP) (Entered: 09/28/2022) |
| 01/05/2023 | | 83 | Order Scheduling Hearing. (RE: Related Doc#: 73, 74, 75, 76, 79, 81). **Hearing scheduled 2/21/2023 at 01:15 PM, Courtroom 3 (Virtual hearing if allowed; see website for details); 701 Broadway, Nashville, TN 37203.** Signed on 1/5/2023. (jlm) (Entered: 01/05/2023) |
| 02/21/2023 | | 89 | *Defendant's* Motion For Summary Judgment. Certificate of Service mailed on 2/21/23. Filed on the behalf of: Defendant Max Salas. (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 90 | *Defendant's* Statement *of Undisputed Facts in Support of Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 91 | *Defendant's* Brief/Memorandum in Support of *Defendant's Motion for Summary Judgment*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 92 | *Supplemental Memorandum in Support of Plaintiffs'* Motion For Summary Judgment*In Response to the Court's Order of January 4, 2023*. (Attachments: # 1 Exhibit A CLR Trust Leases # 2 Exhibit B 1610 Riggs Trust Bank Statements # 3 Exhibit C M Salas Statement of Financial Affairs Excerpt # 4 Exhibit D Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 5 Exhibit E Debtor's Opposition to Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 6 Exhibit F L Salas Loss Mitigation Statement 2/28/16 # 7 Exhibit G DCPropertyQuest Report on 1610 Riggs Place, NW 6/17/15 # 8 Exhibit H DCR Notice of Abatement 6/17/15 # 9 Exhibit I DCR Notice of Infraction 11/6/15)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 02/21/2023) |
| 03/07/2023 | | 94 | Brief/Memorandum in Support of *(Response to Plaintiffs' Supplemental Memorandum)*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)92). (YOUNG, PHILLIP) (Entered: 03/07/2023) |
| 03/07/2023 | | 95 | *Plaintiffs' Opposition in* Response to *Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit List of Undisputed Facts # 2 Exhibit A Defendant's Amended Responses to Plaintiffs' Requests for Admission 11–9–21) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)90, 91, 93 ). (MCNUTT, PHILIP) (Entered: 03/07/2023) |
| 03/26/2023 | | 100 | *Plaintiffs' Second Supplemental* Brief/Memorandum in Support of *Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit A Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 1 # 2 Exhibit B Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 2) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas |

| | | | |
|---|---|---|---|
| | | | Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)73, 89). (MCNUTT, PHILIP) (Entered: 03/26/2023) |
| 05/24/2023 | | 101 | Memorandum Opinion. (RE: Related Doc#: 73, 89). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 05/24/2023 | | 102 | Order *on Motion for Summary Judgment*. (RE: Related Doc#: 89, 95, 101). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 06/07/2023 | | 104 | Motion for *Plaintiffs' Motion to Alter or Amend*. (Attachments: # 1 Affidavit McNutt Decflaration in Support of Plaintiffs' Motion to Alter or Amend # 2 Proposed Order Order Granting Plaintiffs' Motion to Alter of Amend)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 06/07/2023) |
| 06/21/2023 | | 107 | *Defendant's* Response to *Plaintiffs' Motion to Alter or Amend*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)104). (YOUNG, PHILLIP) (Entered: 06/21/2023) |
| 08/16/2023 | | 109 | Order Denying *Plaintiff's* Motion *to Alter or Amend Under Fed.R.Bankr.P.9023* . (RE: Ref Doc # 104), (Related Doc#: 107). BY THE COURT: Judge Marian F. Harrison. (jlm) (Entered: 08/16/2023) |
| 08/28/2023 | | 113 | *Plaintiffs'* Motion for Leave to Appeal*from the Court's Orders Denying and Granting Summary Judgment and Denying Motion to Alter or Amend*. (Attachments: # 1 Exhibit a Order of January 5, 2023 # 2 Exhibit b Court's Memorandum Opinion 5/2/423 # 3 Exhibit c ORDER re Summary Judgment Motions 5/24/23 # 4 Exhibit d ORDER Denying Motion to Alter or Amend 8/16/23)Certificate of Service mailed on 08/28/2023. Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 08/28/2023) |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

In re:                                          :

  LEN SALAS                                :   Case No. 18-02662-MH3-7

                       Debtor                :

NICOLAAS BREKELMANS AND                         :
GAIL GREGORY BREKELMANS,
CO-PERSONAL REPRESENTATIVES                     :
OF THE ESTATE OF NINA
BREKELMANS                                      :

and                                             :

MICHAEL MCLOUGHLIN AND                          :
MARTHA JOHNSON,
CO-PERSONAL REPRESENTATIVES                     :
OF THE ESTATE OF MICHAEL
PATRICK MCLOUGHLIN                              :

                  Plaintiffs        :

        v.                                     :   Adversary Proceeding No. _____

MAX SALAS                                       :
1610 Riggs Place, NW
Washington, DC                                  :

             Defendant            :

COMPLAINT TO AVOID TRANSFERS AND RECOVER PROPERTY

COME NOW THE Plaintiffs herein, Nicolaas Brekelmans and Gail Gregory Brekelmans,

Co-personal Representatives Of the Estate of Nina Brekelmans ("Nina")("the Brekelmans

Estate") and Michael Mcloughlin and Martha Johnson, Co-personal Representatives of The

Estate of Michael Patrick Mcloughlin ("Michael") ("the McLoughlin Estate") ("the Brekelmans

Estate and the Mcloughlin Estate are hereinafter collectively sometimes referred to as "the

Estates"), by and through their undersigned counsel and sue the Defendant, Max Salas, to avoid transfers and recover property and, for their causes of action, allege as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction under 28 U.S.C. § 1334 (b). This matter involves causes of action under the trustee's avoiding powers purchased by the Plaintiffs from the Debtor's Estate.

2. Venue lies in this court under 28 U.S.C. §1409 (a)(c) & (d).

3. This matter involves property of the estate and claims of creditors of the Debtor's estate.

4. This matter is a core matter involving Avoiding Powers of the trustee pursuant to 11 U.S.C. § 544, *et seq.* (hereinafter, all references to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* are cited as "Code, §"). ***See*** *inter alia*, 28 U.S.C. §157 (b)(1) and §157(b)(2) (A)(F)(H) & (0)

**Parties**

5. The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively. Nina and Michael were tragically killed in a fire at a residence in Washington, DC ("the Fire") which residence was owned by the Debtor, Len Salas and occupied and managed by his father, the Defendant, Max Salas. The Plaintiffs herein, the Estates, were the successful bidders at an auction sale of this bankruptcy estate's interest in the trustee's avoidance and recovery actions under Code, §§544, *et seq*. A copy of the Trustee's Report of Sale of those actions is attached hereto as **Exhibit A**.

6. The Defendant Max Salas, is the Debtor in Case No. 18-00260, in the United States Bankruptcy Court for the District of Columbia (hereinafter "Max"). Max filed a voluntary petition, under Chapter 11 of the Code in April, 2018.

7.  Len Salas (hereinafter "Len"), is the Debtor is Case No. 3:18-bk-02662, filed in the United States Bankruptcy Court for the Middle District of Tennessee (Nashville) ("Len's Bankruptcy") on or about May 2, 2018.  Len's Bankruptcy was converted from a Chapter 11 to a Chapter 7 bankruptcy on or about December 12, 2018.

8.  This matter involves the recovery of property located at 1610 Riggs Place, NW, Washington, DC ("the Property") at which the Defendant, Max, presently resides. Alternatively, the Plaintiffs are seeking a fair market sale of the Property to recover its value, believed to be in excess of $1 Million above all prior and/or secured claims.

**Background for All Counts**

9.  In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment").  The Judgment resulted from a fire at the Property which, at the time, Max had rented rooms to renters including Nina and Michael.  Through the gross negligence of Max and his deliberate failure to make required safety improvements to the Property, Nina and Michael tragically lost their lives in a horrific and traumatic manner.  Len was named a Defendant since he was, at all times, the owner of the Property, including at the time of the fire (June, 2015).

10.  The Estates filed separate lawsuits against Max and Len in 2015.  After a lengthy period of discovery and pre-trial matters, the case was tried in late March, 2018 resulting in the Judgment.  Although Max and Len both appealed the Judgment, there has been no prosecution of the appeal and no stay entered in the appeal.  On January 28, 2019, the Bankruptcy Court for the District of Columbia entered an Order Confirming Max's Third Amended Plan of Reorganization ("the Confirmed Plan").  Under the terms of the Confirmed Plan, entered in Max's Bankruptcy on or about January 31, 2020, Max is withdrawing his appeal of the

| | | | |
|---|---|---|---|
| | | | 10 Exhibit 20 Exemption Hearing (D.C.) Volume 1 Excerpts # 11 Exhibit 21 M Salas Responses to Creditors Request for Production (D.C.) # 12 Exhibit 15 M Salas – U.S. Bank Stipulation (D.C.) 11–20–19)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 07/29/2022) |
| 08/01/2022 | | 74 | *Amended* Brief/Memorandum in Support of *Plaintiffs Motion for Summary Judgment*. (Attachments: # 1 Exhibit Plaintiffs' Amended List of Uncontested Facts # 2 Exhibit 1 M Salas Superior Ct Depo Transcript (2–24–16)Excerpt # 3 Exhibit 2 M Salas Second Amended Disclosure Statement 12–5–19 # 4 Exhibit 3 Exemption Hearing in Case No. 18–260 (D.C.) Vol 2 Excerpts # 5 Exhibit 4 L Salas Confirmation Hrg Transcript in Case No. 18–2662 12–13–18 # 6 Exhibit 5 K Salas Chapter 7 Meeting Transcript 4–1–19 # 7 Exhibit 6 Exemption Hearing in Case No. 18–260 (D.C.) Vol 3 Excerpts 8–24–18 # 8 Exhibit 7 eMails 6–17–11 – 2–27–12 # 9 Exhibit R Salas Deposiiton Transcript in Case No. 18–260 8–8–18 # 10 Exhibit 9 M Salas Schedules in Case No. 18–260 5–2–18 Excerpts # 11 Exhibit M Salas Deposition Transcript in Case No. 20–90027 3–8–22 Excerpts # 12 Exhibit 11 L Salas Deposition Transcript in Superior Court Litigation 3–9–16 Excerpts # 13 Exhibit 12 R Salas Testimony at Exemption Hearing 8–22–18 # 14 Exhibit 13 L Salas Deposition Transcript in Case No. 20–90027 Excerpts # 15 Exhibit 14 Kendra (Salas) Rowe Deposition Transcript in Case No. 20–90027 8–27–21 Excerpts # 16 Exhibit 15 M Salas–U.S. Bank Stipulation in Case No. 18–260 11–20–19 # 17 Exhibit 16 M Salas Statement of Financial Affairs filed in Case No. 18–260 5–2–18 Excerpts # 18 Exhibit 17 M Salas Amended Responses to Plaintiffs Requests for Admission in Case No. 20–90027 11–9–21 # 19 Exhibit Salas Schedules filed in Case No. 18–260 5–2–18 Excerpt # 20 Exhibit 19 M Albert – M Salas eMails re: Original Deed 2–14–18 # 21 Exhibit 20 Exemption Hearing in Case No. 18–260 Transcript Vol 1 8–22–18 Excerpts # 22 Exhibit 21 M Salas Responses to Objecting Creditors' Requests for Production of Documents in Case No. 18–260 8–6–18) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)73). (MCNUTT, PHILIP) (Entered: 08/01/2022) |
| 08/12/2022 | | 75 | *Defendant's* Objection to*Plaintiffs' Motion fo Summary Judgment*. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) Filed on the behalf of: Defendant Max Salas (RE: related document(s)73, 74). (YOUNG, PHILLIP) (Entered: 08/12/2022) |
| 08/23/2022 | | 76 | *Plaintiffs'* Response to *Defendant's Objections to Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit Max Salas 2015 IRS Tax Return) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)75). (MCNUTT, PHILIP) (Entered: 08/23/2022) |
| 09/12/2022 | | 77 | Order Scheduling Hearing *on the Plaintiff's Motion for Summary Judgment*. (RE: Related Doc#: 73, 74, 75, 76). **Hearing scheduled 10/4/2022 at 09:30 AM; Refer to www.tnmb.uscourts.gov for details (Nashville).** Signed on 9/12/2022. (jtd) (Entered: 09/12/2022) |
| 09/19/2022 | | 79 | *Plaintiffs'* Response to *Defendant's Objections to Motion for Summary Judgement per the Court's Order*. (Attachments: # 1 Exhibit Amended Exh. 3, Exemption Hearing Transcript, Vol 2.Excerpts # 2 Exhibit Amended Exh. 4, L Salas COnfirmation Hearing Transcript–12–13–18 # 3 Exhibit Amended Exh. 6, Exemption Hearing Transcript, Vol 3–Excerpts # 4 Exhibit Amended Exh. 9, M Salas Schedules–Excerpts # |

| | | | |
|---|---|---|---|
| | | | 5 Exhibit 22, M Salas Exhibit List for Exemption Hearing in Case No. 18–00260 # 6 Exhibit 23, Court's Proceeding Memo for 3rd day of Exemption Hearing in Case No. 18–00260, with Exhibits Lists) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)74, 75, 76, 77). (MCNUTT, PHILIP) (Entered: 09/19/2022) |
| 09/28/2022 | | 81 | *Defendant's* Response to *Plaintiffs' Supplemental List of Undisputed Facts*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)79). (YOUNG, PHILLIP) (Entered: 09/28/2022) |
| 01/05/2023 | | 83 | Order Scheduling Hearing. (RE: Related Doc#: 73, 74, 75, 76, 79, 81). **Hearing scheduled 2/21/2023 at 01:15 PM, Courtroom 3 (Virtual hearing if allowed; see website for details); 701 Broadway, Nashville, TN 37203.** Signed on 1/5/2023. (jlm) (Entered: 01/05/2023) |
| 02/21/2023 | | 89 | *Defendant's* Motion For Summary Judgment. Certificate of Service mailed on 2/21/23. Filed on the behalf of: Defendant Max Salas. (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 90 | *Defendant's* Statement *of Undisputed Facts in Support of Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 91 | *Defendant's* Brief/Memorandum in Support of *Defendant's Motion for Summary Judgment*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 92 | *Supplemental Memorandum in Support of Plaintiffs'* Motion For Summary Judgment*In Response to the Court's Order of January 4, 2023*. (Attachments: # 1 Exhibit A CLR Trust Leases # 2 Exhibit B 1610 Riggs Trust Bank Statements # 3 Exhibit C M Salas Statement of Financial Affairs Excerpt # 4 Exhibit D Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 5 Exhibit E Debtor's Opposition to Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 6 Exhibit F L Salas Loss Mitigation Statement 2/28/16 # 7 Exhibit G DCPropertyQuest Report on 1610 Riggs Place, NW 6/17/15 # 8 Exhibit H DCR Notice of Abatement 6/17/15 # 9 Exhibit I DCR Notice of Infraction 11/6/15)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 02/21/2023) |
| 03/07/2023 | | 94 | Brief/Memorandum in Support of *(Response to Plaintiffs' Supplemental Memorandum)*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)92). (YOUNG, PHILLIP) (Entered: 03/07/2023) |
| 03/07/2023 | | 95 | *Plaintiffs' Opposition in* Response to *Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit List of Undisputed Facts # 2 Exhibit A Defendant's Amended Responses to Plaintiffs' Requests for Admission 11–9–21) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)90, 91, 93 ). (MCNUTT, PHILIP) (Entered: 03/07/2023) |
| 03/26/2023 | | 100 | *Plaintiffs' Second Supplemental* Brief/Memorandum in Support of *Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit A Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 1 # 2 Exhibit B Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 2) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas |

| | | | |
|---|---|---|---|
| | | | Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)73, 89). (MCNUTT, PHILIP) (Entered: 03/26/2023) |
| 05/24/2023 | | 101 | Memorandum Opinion. (RE: Related Doc#: 73, 89). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 05/24/2023 | | 102 | Order *on Motion for Summary Judgment*. (RE: Related Doc#: 89, 95, 101). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 06/07/2023 | | 104 | Motion for *Plaintiffs' Motion to Alter or Amend*. (Attachments: # 1 Affidavit McNutt Decflaration in Support of Plaintiffs' Motion to Alter or Amend # 2 Proposed Order Order Granting Plaintiffs' Motion to Alter of Amend)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 06/07/2023) |
| 06/21/2023 | | 107 | *Defendant's* Response to *Plaintiffs' Motion to Alter or Amend*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)104). (YOUNG, PHILLIP) (Entered: 06/21/2023) |
| 08/16/2023 | | 109 | Order Denying *Plaintiff's* Motion *to Alter or Amend Under Fed.R.Bankr.P.9023* . (RE: Ref Doc # 104), (Related Doc#: 107). BY THE COURT: Judge Marian F. Harrison. (jlm) (Entered: 08/16/2023) |
| 08/28/2023 | | 113 | *Plaintiffs'* Motion for Leave to Appeal*from the Court's Orders Denying and Granting Summary Judgment and Denying Motion to Alter or Amend*. (Attachments: # 1 Exhibit a Order of January 5, 2023 # 2 Exhibit b Court's Memorandum Opinion 5/2/423 # 3 Exhibit c ORDER re Summary Judgment Motions 5/24/23 # 4 Exhibit d ORDER Denying Motion to Alter or Amend 8/16/23)Certificate of Service mailed on 08/28/2023. Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 08/28/2023) |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| In re: | : |
|   LEN SALAS | :   Case No. 18-02662-MH3-7 |
| Debtor | : |
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS | : |
| and | : |
| MICHAEL MCLOUGHLIN AND MARTHA JOHNSON, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF MICHAEL PATRICK MCLOUGHLIN | : |
| Plaintiffs | : |
| v. | :   Adversary Proceeding No. _____ |
| MAX SALAS 1610 Riggs Place, NW Washington, DC | : |
| Defendant | : |

COMPLAINT TO AVOID TRANSFERS AND RECOVER PROPERTY

COME NOW THE Plaintiffs herein, Nicolaas Brekelmans and Gail Gregory Brekelmans,

Co-personal Representatives Of the Estate of Nina Brekelmans ("Nina")("the Brekelmans

Estate") and Michael Mcloughlin and Martha Johnson, Co-personal Representatives of The

Estate of Michael Patrick Mcloughlin ("Michael") ("the McLoughlin Estate") ("the Brekelmans

Estate and the Mcloughlin Estate are hereinafter collectively sometimes referred to as "the

Estates"), by and through their undersigned counsel and sue the Defendant, Max Salas, to avoid transfers and recover property and, for their causes of action, allege as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction under 28 U.S.C. § 1334 (b). This matter involves causes of action under the trustee's avoiding powers purchased by the Plaintiffs from the Debtor's Estate.

2. Venue lies in this court under 28 U.S.C. §1409 (a)(c) & (d).

3. This matter involves property of the estate and claims of creditors of the Debtor's estate.

4. This matter is a core matter involving Avoiding Powers of the trustee pursuant to 11 U.S.C. § 544, *et seq.* (hereinafter, all references to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* are cited as "Code, §"). ***See*** *inter alia*, 28 U.S.C. §157 (b)(1) and §157(b)(2) (A)(F)(H) & (0)

**Parties**

5. The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively. Nina and Michael were tragically killed in a fire at a residence in Washington, DC ("the Fire") which residence was owned by the Debtor, Len Salas and occupied and managed by his father, the Defendant, Max Salas. The Plaintiffs herein, the Estates, were the successful bidders at an auction sale of this bankruptcy estate's interest in the trustee's avoidance and recovery actions under Code, §§544, *et seq*. A copy of the Trustee's Report of Sale of those actions is attached hereto as **Exhibit A**.

6. The Defendant Max Salas, is the Debtor in Case No. 18-00260, in the United States Bankruptcy Court for the District of Columbia (hereinafter "Max"). Max filed a voluntary petition, under Chapter 11 of the Code in April, 2018.

7.  Len Salas (hereinafter "Len"), is the Debtor is Case No. 3:18-bk-02662, filed in the United States Bankruptcy Court for the Middle District of Tennessee (Nashville) ("Len's Bankruptcy") on or about May 2, 2018.  Len's Bankruptcy was converted from a Chapter 11 to a Chapter 7 bankruptcy on or about December 12, 2018.

8.  This matter involves the recovery of property located at 1610 Riggs Place, NW, Washington, DC ("the Property") at which the Defendant, Max, presently resides. Alternatively, the Plaintiffs are seeking a fair market sale of the Property to recover its value, believed to be in excess of $1 Million above all prior and/or secured claims.

**Background for All Counts**

9.  In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment").  The Judgment resulted from a fire at the Property which, at the time, Max had rented rooms to renters including Nina and Michael.  Through the gross negligence of Max and his deliberate failure to make required safety improvements to the Property, Nina and Michael tragically lost their lives in a horrific and traumatic manner.  Len was named a Defendant since he was, at all times, the owner of the Property, including at the time of the fire (June, 2015).

10.  The Estates filed separate lawsuits against Max and Len in 2015.  After a lengthy period of discovery and pre-trial matters, the case was tried in late March, 2018 resulting in the Judgment.  Although Max and Len both appealed the Judgment, there has been no prosecution of the appeal and no stay entered in the appeal.  On January 28, 2019, the Bankruptcy Court for the District of Columbia entered an Order Confirming Max's Third Amended Plan of Reorganization ("the Confirmed Plan").  Under the terms of the Confirmed Plan, entered in Max's Bankruptcy on or about January 31, 2020, Max is withdrawing his appeal of the

Judgment(s). *See*, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 9, ¶3.6. A copy of the Confirmed Plan and Order Confirming the Third Amended Plan are attached collectively as **Exhibit B**.

11.   Shortly after the entry of the Judgment Max and Len filed separate bankruptcies, Max in the District of Columbia (Case No. 18-00260)("Max's Bankruptcy") and Len in this Court (Case No. 18-02662) ("Len's Bankruptcy").

12.   At the time of the bankruptcy filings by Len and Max, Len was, and still is, the title owner of property located at 1610 Riggs Place, NW, Washington, D.C. ("the Property"). The Property was purchased by Len in 2007 after his father, Max and Max's then wife, divorced. In order to purchase the Property, Max deeded the Property to Len ("the 2007 Deed"). Len then obtained a Deed of Trust from Sun Trust Bank for $870,000 ("the Sun Trust Loan"). The proceeds of the Sun Trust Loan were paid to Max's wife as part of the divorce settlement.

13.   From 2007 through the present, Len has remained the sole owner of the Property. Max's Confirmed Plan provides that the Confirmation Order constitutes "an Order conveying the Property to Max Salas". *See*, Exhibit B, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 12, ¶ 4.4.

14.   At the time of Len's purchase of the Property in 2007, Max had tax liens and other obligations which made it impossible for Max to obtain a loan on the Property. In addition, Max had a tax evasion conviction on his record. Those and other credit and tax issues continued through Max's Bankruptcy. Max has consistently attempted to hide assets from the IRS and other taxing authorities, including his potential interest in the Property.

15.   According to Max, he tried to refinance the Property several times after 2007, all to no avail. In fact, at least through 2015 every attempt to refinance the Property required the

participation of Len as a co-signer or co-obligor.

16. From sometime after 2007 through the date of the fire, Max rented out rooms at the Property. The tenants, including Nina and Michael, signed leases under the name of "the CLR Trust" and Max signed each lease as Trustee. According to Len, the CLR Trust, was a trust created by Max for the benefit of his three sons, Chase, Len and Ron.

17. According to Max, the lease payments were put into an account in the name of the CLR Trust and were used to pay for the Deed of Trust obligations and other expenses associated with the Property.

18. Through the date of the fire and at all times prior to the bankruptcy filings, all governmental notices and tax bills and notices regarding the Property were in Len's name.

19. Consistent with his history of attempting to dodge tax liability, Max did not want the Property, or any matters related to the Property, in his name so he could avoid any taxes or publicly recorded or confirmed ownership interest.

20. Similarly, Max did not want to record any income in his name from the leasing of the Property. As a result, he deposited all of the income from the leases into the "CLR Trust" bank account.

21. According to Max and Len, in July, 2010, Max and Len traveled to Colorado in July 2010 to visit Ron, one of Max's sons. Ron was a recent law school graduate and admitted to practice law in Colorado.

22. While in Colorado, Len and Max executed a very simple trust agreement which Ron stated he prepared using a Colorado form even though the alleged trust property, the Property, was located in D.C. Ron also prepared a form "Quitclaim Deed," which Len also signed ("the Quitclaim Deed").

23. Max asserts that Len, who is very unsophisticated in business and legal transactions, deeded the Property to his father while Len remained the sole obligor on the Sun Trust Deed of Trust Note ("the Note").

24. Max and Ron clearly took advantage of Len and convinced Len to deed the Property to his father despite the fact that by that deed, Len would have lost all collateral for his $870,000 loan obligation to Sun Trust.

25. The transfer in 2010 was a violation of Len's Deed of Trust and Note with Sun Trust Bank.

26. At the time of the attempted Quitclaim Deed, in July, 2010, Len's only significant asset was the Property. At all relevant times, Len worked only part time and had limited income and assets. At all times following the transfer in 2010, Len was insolvent. His liabilities exceeded his assets and his income was insufficient to pay his obligations, including the Sun Trust Deed of Trust Note payments.

27. At no time, since 2007, including, but not limited to, the time of the Quitclaim Deed in July, 2010, did Max make any payments to Len and Len received no property or other value from Max related to the Trust or Quitclaim Deed.

28. Max asserts that he intended to record the Quitclaim Deed in 2010 but had no money to pay the required recording and transfer taxes. The Quitclaim Deed has never been recorded and Len remains the titled owner of the Property.

29. Toward the end of the Superior Court litigation with the Plaintiffs, which resulted in the Judgment, Max concocted a scheme to attempt to keep the Property for himself in the face of a pending substantial judgment award to the Plaintiffs.

30. In discussions with his newly hired bankruptcy counsel, Marc Albert (Stinon LLP

("Albert"), Max learned that if the Property was owned by Len, it could not be exempted in bankruptcy and would be subject to attachment and sale to partially satisfy the eventual judgments. These conversations took place in late 2017 and early 2018.

31. Max also learned from Albert that if Max could claim he is the actual owner of the Property, he could claim the Property exempt in his subsequent bankruptcy proceeding and, due to D.C.'s generous homestead exemption, Max could then claim the entire equity in the Property as exempt from execution by the Plaintiffs.

32. Because Len was not residing in the Property he could not claim the benefit of the D.C. homestead exemption.

33. In early 2018, less than a month prior to the Superior Court trial, Max and Len, for the first time, alleged and produced a copy of the 2010 trust ("the Trust") and quitclaim deed ("the Quitclaim Deed") and sought to exclude Len from the Superior Court litigation by asserting Max was the real owner of the Property. The Superior Court summarily denied Max's attempt and the trial continued, resulting in the Judgment. The Judgment is now final and binding on all parties as a result of the pending final distribution and closing of Len's Estate in this Court and the Confirmed Plan in Max's Bankruptcy.

34. The fire occurred in June, 2015. From that time, until February or March, 2018, no one resided in the Property. During that time, and continuing after Max's Bankruptcy filing until November, 2019, no payments were made on the Sun Trust Deed of Trust Note ("the Sun Trust Note") with the exception of one payment made by Max from the insurance proceeds he received as a result of the fire damage.

35. According to the schedules filed in Max's bankruptcy, as of the commencement of his bankruptcy case, the only lien creditors were (IRS secured claim - $ 6,768.66, claim) and Sun

**Plaintiff**
――――――――――――――――――

**Martha Johnson**
represented by **Taylor ALEXANDER CATES**
(See above for address)

**PHILIP JAMES MCNUTT**
(See above for address)

V.

**Defendant**
――――――――――――――――――

**Max Salas**
c/o Phillip G. Young
6100 Tower Circle, Suite 200
Franklin, TN 37067

represented by **PHILLIP G YOUNG**
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
FRANKLIN, TN 37067
615–465–6008
Fax : 931–381–0058
Email: phillip@thompsonburton.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 03/02/2020 | | 1 | Adversary case 3:20–ap–90027. Complaint by Nicolaas Brekelmans, Gail Brekelmans, Michael McLoughlin Jr., Martha Johnson against Max Salas. Fee Amount is $350.00. Adversary Fee Will be Paid In Full Electronically at the Time of Filing. Nicolaas Brekelmans, Gail Brekelmans, Michael McLoughlin Jr., Martha Johnson. (Attachments: # 1 Exhibit A – Trustee's Report of Sale # 2 Exhibit B – Order Confirming Debtor's Third Amended Plan # 3 Exhibit C – Tennessee Bankruptcy Court Order dated 06/12/19) Nature of Suit: (11 (Recovery of money/property – 542 turnover of property), 13 (Recovery of money/property – 548 fraudulent transfer)) (CATES, TAYLOR) (Entered: 03/02/2020) |
| 02/16/2021 | | 40 | Amended Complaint *Pursuant to Court Order Dated February 11, 2021 (D–39)* by PHILIP JAMES MCNUTT on behalf of Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. against Max Salas. (Attachments: # 1 Exhibit A Trustee's Report of Sale # 2 List of 20 Largest Creditors B Confirmation Order and Plan # 3 Exhibit C Order to Sell Trustee's Interest in Avoiding Powers # 4 Exhibit D Redline of Amended Complaint to Original) Filed on the behalf of: on behalf of Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)1). (MCNUTT, PHILIP) (Entered: 02/16/2021) |
| 03/09/2021 | | 42 | Answer to Complaint Filed on the behalf of: Defendant Max Salas. (YOUNG, PHILLIP) (Entered: 03/09/2021) |
| 07/29/2022 | | 73 | *Plaintiffs'* Motion For Summary Judgment *re: Counts I,II,IV,V, and VI of the Amended Complaint.* (Attachments: # 1 Supplement Memorandum in Support of Plaintiffs' Motion for Summary Judgment # 2 Supplement Plaintiffs List of Undisputed Facts # 3 Exhibit 1 M Salas Deposition Transcript # 4 Exhibit 2 M Salas Second Amended Disclosure Statement # 5 Exhibit 7 emails June, 2011 – February, 2012 2–12 # 6 Exhibit 9 M Salas Schedules Excerpt # 7 Exhibit 16 M Salas Statement of Financial Affairs Excerpt # 8 Exhibit 17 M Salas Amended Answers to Plaintiffs Request for Admissions # 9 Exhibit 19 Albert–R Salas emails 2–14–18 # |

| | | | |
|---|---|---|---|
| | | | 10 Exhibit 20 Exemption Hearing (D.C.) Volume 1 Excerpts # 11 Exhibit 21 M Salas Responses to Creditors Request for Production (D.C.) # 12 Exhibit 15 M Salas – U.S. Bank Stipulation (D.C.) 11–20–19)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 07/29/2022) |
| 08/01/2022 | | 74 | *Amended* Brief/Memorandum in Support of *Plaintiffs Motion for Summary Judgment*. (Attachments: # 1 Exhibit Plaintiffs' Amended List of Uncontested Facts # 2 Exhibit 1 M Salas Superior Ct Depo Transcript (2–24–16)Excerpt # 3 Exhibit 2 M Salas Second Amended Disclosure Statement 12–5–19 # 4 Exhibit 3 Exemption Hearing in Case No. 18–260 (D.C.) Vol 2 Excerpts # 5 Exhibit 4 L Salas Confirmation Hrg Transcript in Case No. 18–2662 12–13–18 # 6 Exhibit 5 K Salas Chapter 7 Meeting Transcript 4–1–19 # 7 Exhibit 6 Exemption Hearing in Case No. 18–260 (D.C.) Vol 3 Excerpts 8–24–18 # 8 Exhibit 7 eMails 6–17–11 – 2–27–12 # 9 Exhibit R Salas Deposiiton Transcript in Case No. 18–260 8–8–18 # 10 Exhibit 9 M Salas Schedules in Case No. 18–260 5–2–18 Excerpts # 11 Exhibit M Salas Deposition Transcript in Case No. 20–90027 3–8–22 Excerpts # 12 Exhibit 11 L Salas Deposition Transcript in Superior Court Litigation 3–9–16 Excerpts # 13 Exhibit 12 R Salas Testimony at Exemption Hearing 8–22–18 # 14 Exhibit 13 L Salas Deposition Transcript in Case No. 20–90027 Excerpts # 15 Exhibit 14 Kendra (Salas) Rowe Deposition Transcript in Case No. 20–90027 8–27–21 Excerpts # 16 Exhibit 15 M Salas–U.S. Bank Stipulation in Case No. 18–260 11–20–19 # 17 Exhibit 16 M Salas Statement of Financial Affairs filed in Case No. 18–260 5–2–18 Excerpts # 18 Exhibit 17 M Salas Amended Responses to Plaintiffs Requests for Admission in Case No. 20–90027 11–9–21 # 19 Exhibit Salas Schedules filed in Case No. 18–260 5–2–18 Excerpt # 20 Exhibit 19 M Albert – M Salas eMails re: Original Deed 2–14–18 # 21 Exhibit 20 Exemption Hearing in Case No. 18–260 Transcript Vol 1 8–22–18 Excerpts # 22 Exhibit 21 M Salas Responses to Objecting Creditors' Requests for Production of Documents in Case No. 18–260 8–6–18) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)73). (MCNUTT, PHILIP) (Entered: 08/01/2022) |
| 08/12/2022 | | 75 | *Defendant's* Objection to*Plaintiffs' Motion fo Summary Judgment*. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) Filed on the behalf of: Defendant Max Salas (RE: related document(s)73, 74). (YOUNG, PHILLIP) (Entered: 08/12/2022) |
| 08/23/2022 | | 76 | *Plaintiffs'* Response to *Defendant's Objections to Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit Max Salas 2015 IRS Tax Return) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)75). (MCNUTT, PHILIP) (Entered: 08/23/2022) |
| 09/12/2022 | | 77 | Order Scheduling Hearing *on the Plaintiff's Motion for Summary Judgment*. (RE: Related Doc#: 73, 74, 75, 76). **Hearing scheduled 10/4/2022 at 09:30 AM; Refer to www.tnmb.uscourts.gov for details (Nashville).** Signed on 9/12/2022. (jtd) (Entered: 09/12/2022) |
| 09/19/2022 | | 79 | *Plaintiffs'* Response to *Defendant's Objections to Motion for Summary Judgement per the Court's Order*. (Attachments: # 1 Exhibit Amended Exh. 3, Exemption Hearing Transcript, Vol 2.Excerpts # 2 Exhibit Amended Exh. 4, L Salas COnfirmation Hearing Transcript–12–13–18 # 3 Exhibit Amended Exh. 6, Exemption Hearing Transcript, Vol 3–Excerprts # 4 Exhibit Amended Exh. 9, M Salas Schedules–Excerpts # |

| | | | |
|---|---|---|---|
| | | | 5 Exhibit 22, M Salas Exhibit List for Exemption Hearing in Case No. 18–00260 # 6 Exhibit 23, Court's Proceeding Memo for 3rd day of Exemption Hearing in Case No. 18–00260, with Exhibits Lists) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)74, 75, 76, 77). (MCNUTT, PHILIP) (Entered: 09/19/2022) |
| 09/28/2022 | | 81 | *Defendant's* Response to *Plaintiffs' Supplemental List of Undisputed Facts*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)79). (YOUNG, PHILLIP) (Entered: 09/28/2022) |
| 01/05/2023 | | 83 | Order Scheduling Hearing. (RE: Related Doc#: 73, 74, 75, 76, 79, 81). **Hearing scheduled 2/21/2023 at 01:15 PM, Courtroom 3 (Virtual hearing if allowed; see website for details); 701 Broadway, Nashville, TN 37203.** Signed on 1/5/2023. (jlm) (Entered: 01/05/2023) |
| 02/21/2023 | | 89 | *Defendant's* Motion For Summary Judgment. Certificate of Service mailed on 2/21/23. Filed on the behalf of: Defendant Max Salas. (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 90 | *Defendant's* Statement *of Undisputed Facts in Support of Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 91 | *Defendant's* Brief/Memorandum in Support of *Defendant's Motion for Summary Judgment*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 92 | *Supplemental Memorandum in Support of Plaintiffs'* Motion For Summary Judgment*In Response to the Court's Order of January 4, 2023*. (Attachments: # 1 Exhibit A CLR Trust Leases # 2 Exhibit B 1610 Riggs Trust Bank Statements # 3 Exhibit C M Salas Statement of Financial Affairs Excerpt # 4 Exhibit D Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 5 Exhibit E Debtor's Opposition to Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 6 Exhibit F L Salas Loss Mitigation Statement 2/28/16 # 7 Exhibit G DCPropertyQuest Report on 1610 Riggs Place, NW 6/17/15 # 8 Exhibit H DCR Notice of Abatement 6/17/15 # 9 Exhibit I DCR Notice of Infraction 11/6/15)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 02/21/2023) |
| 03/07/2023 | | 94 | Brief/Memorandum in Support of *(Response to Plaintiffs' Supplemental Memorandum)*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)92). (YOUNG, PHILLIP) (Entered: 03/07/2023) |
| 03/07/2023 | | 95 | *Plaintiffs' Opposition in* Response to *Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit List of Undisputed Facts # 2 Exhibit A Defendant's Amended Responses to Plaintiffs' Requests for Admission 11–9–21) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)90, 91, 93 ). (MCNUTT, PHILIP) (Entered: 03/07/2023) |
| 03/26/2023 | | 100 | *Plaintiffs' Second Supplemental* Brief/Memorandum in Support of *Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit A Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 1 # 2 Exhibit B Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 2) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas |

| | | | |
|---|---|---|---|
| | | | Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)73, 89). (MCNUTT, PHILIP) (Entered: 03/26/2023) |
| 05/24/2023 | | 101 | Memorandum Opinion. (RE: Related Doc#: 73, 89). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 05/24/2023 | | 102 | Order *on Motion for Summary Judgment*. (RE: Related Doc#: 89, 95, 101). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 06/07/2023 | | 104 | Motion for *Plaintiffs' Motion to Alter or Amend*. (Attachments: # 1 Affidavit McNutt Decflaration in Support of Plaintiffs' Motion to Alter or Amend # 2 Proposed Order Order Granting Plaintiffs' Motion to Alter of Amend)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 06/07/2023) |
| 06/21/2023 | | 107 | *Defendant's* Response to *Plaintiffs' Motion to Alter or Amend*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)104). (YOUNG, PHILLIP) (Entered: 06/21/2023) |
| 08/16/2023 | | 109 | Order Denying *Plaintiff's* Motion *to Alter or Amend Under Fed.R.Bankr.P.9023* . (RE: Ref Doc # 104), (Related Doc#: 107). BY THE COURT: Judge Marian F. Harrison. (jlm) (Entered: 08/16/2023) |
| 08/28/2023 | | 113 | *Plaintiffs'* Motion for Leave to Appeal*from the Court's Orders Denying and Granting Summary Judgment and Denying Motion to Alter or Amend*. (Attachments: # 1 Exhibit a Order of January 5, 2023 # 2 Exhibit b Court's Memorandum Opinion 5/2/423 # 3 Exhibit c ORDER re Summary Judgment Motions 5/24/23 # 4 Exhibit d ORDER Denying Motion to Alter or Amend 8/16/23)Certificate of Service mailed on 08/28/2023. Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 08/28/2023) |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| In re: | : | |
| LEN SALAS | : | Case No. 18-02662-MH3-7 |
| Debtor | : | |
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS | : : : | |
| and | : | |
| MICHAEL MCLOUGHLIN AND MARTHA JOHNSON, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF MICHAEL PATRICK MCLOUGHLIN | : : : | |
| Plaintiffs | : | |
| v. | : | Adversary Proceeding No. _____ |
| MAX SALAS 1610 Riggs Place, NW Washington, DC | : : | |
| Defendant | : | |

COMPLAINT TO AVOID TRANSFERS AND RECOVER PROPERTY

COME NOW THE Plaintiffs herein, Nicolaas Brekelmans and Gail Gregory Brekelmans,

Co-personal Representatives Of the Estate of Nina Brekelmans ("Nina")("the Brekelmans

Estate") and Michael Mcloughlin and Martha Johnson, Co-personal Representatives of The

Estate of Michael Patrick Mcloughlin ("Michael") ("the McLoughlin Estate") ("the Brekelmans

Estate and the Mcloughlin Estate are hereinafter collectively sometimes referred to as "the

Estates"), by and through their undersigned counsel and sue the Defendant, Max Salas, to avoid transfers and recover property and, for their causes of action, allege as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction under 28 U.S.C. § 1334 (b). This matter involves causes of action under the trustee's avoiding powers purchased by the Plaintiffs from the Debtor's Estate.

2. Venue lies in this court under 28 U.S.C. §1409 (a)(c) & (d).

3. This matter involves property of the estate and claims of creditors of the Debtor's estate.

4. This matter is a core matter involving Avoiding Powers of the trustee pursuant to 11 U.S.C. § 544, *et seq.* (hereinafter, all references to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* are cited as "Code, §"). ***See*** *inter alia*, 28 U.S.C. §157 (b)(1) and §157(b)(2) (A)(F)(H) & (0)

**Parties**

5. The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively. Nina and Michael were tragically killed in a fire at a residence in Washington, DC ("the Fire") which residence was owned by the Debtor, Len Salas and occupied and managed by his father, the Defendant, Max Salas. The Plaintiffs herein, the Estates, were the successful bidders at an auction sale of this bankruptcy estate's interest in the trustee's avoidance and recovery actions under Code, §§544, *et seq*. A copy of the Trustee's Report of Sale of those actions is attached hereto as **Exhibit A**.

6. The Defendant Max Salas, is the Debtor in Case No. 18-00260, in the United States Bankruptcy Court for the District of Columbia (hereinafter "Max"). Max filed a voluntary petition, under Chapter 11 of the Code in April, 2018.

7.  Len Salas (hereinafter "Len"), is the Debtor is Case No. 3:18-bk-02662, filed in the United States Bankruptcy Court for the Middle District of Tennessee (Nashville) ("Len's Bankruptcy") on or about May 2, 2018.  Len's Bankruptcy was converted from a Chapter 11 to a Chapter 7 bankruptcy on or about December 12, 2018.

8.  This matter involves the recovery of property located at 1610 Riggs Place, NW, Washington, DC ("the Property") at which the Defendant, Max, presently resides. Alternatively, the Plaintiffs are seeking a fair market sale of the Property to recover its value, believed to be in excess of $1 Million above all prior and/or secured claims.

**Background for All Counts**

9.  In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment").  The Judgment resulted from a fire at the Property which, at the time, Max had rented rooms to renters including Nina and Michael.  Through the gross negligence of Max and his deliberate failure to make required safety improvements to the Property, Nina and Michael tragically lost their lives in a horrific and traumatic manner.  Len was named a Defendant since he was, at all times, the owner of the Property, including at the time of the fire (June, 2015).

10.  The Estates filed separate lawsuits against Max and Len in 2015.  After a lengthy period of discovery and pre-trial matters, the case was tried in late March, 2018 resulting in the Judgment.  Although Max and Len both appealed the Judgment, there has been no prosecution of the appeal and no stay entered in the appeal.  On January 28, 2019, the Bankruptcy Court for the District of Columbia entered an Order Confirming Max's Third Amended Plan of Reorganization ("the Confirmed Plan").  Under the terms of the Confirmed Plan, entered in Max's Bankruptcy on or about January 31, 2020, Max is withdrawing his appeal of the

| | | | |
|---|---|---|---|
| | | | 10 Exhibit 20 Exemption Hearing (D.C.) Volume 1 Excerpts # 11 Exhibit 21 M Salas Responses to Creditors Request for Production (D.C.) # 12 Exhibit 15 M Salas – U.S. Bank Stipulation (D.C.) 11–20–19)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 07/29/2022) |
| 08/01/2022 | | 74 | *Amended* Brief/Memorandum in Support of *Plaintiffs Motion for Summary Judgment*. (Attachments: # 1 Exhibit Plaintiffs' Amended List of Uncontested Facts # 2 Exhibit 1 M Salas Superior Ct Depo Transcript (2–24–16)Excerpt # 3 Exhibit 2 M Salas Second Amended Disclosure Statement 12–5–19 # 4 Exhibit 3 Exemption Hearing in Case No. 18–260 (D.C.) Vol 2 Excerpts # 5 Exhibit 4 L Salas Confirmation Hrg Transcript in Case No. 18–2662 12–13–18 # 6 Exhibit 5 K Salas Chapter 7 Meeting Transcript 4–1–19 # 7 Exhibit 6 Exemption Hearing in Case No. 18–260 (D.C.) Vol 3 Excerpts 8–24–18 # 8 Exhibit 7 eMails 6–17–11 – 2–27–12 # 9 Exhibit R Salas Deposiiton Transcript in Case No. 18–260 8–8–18 # 10 Exhibit 9 M Salas Schedules in Case No. 18–260 5–2–18 Excerpts # 11 Exhibit M Salas Deposition Transcript in Case No. 20–90027 3–8–22 Excerpts # 12 Exhibit 11 L Salas Deposition Transcript in Superior Court Litigation 3–9–16 Excerpts # 13 Exhibit 12 R Salas Testimony at Exemption Hearing 8–22–18 # 14 Exhibit 13 L Salas Deposition Transcript in Case No. 20–90027 Excerpts # 15 Exhibit 14 Kendra (Salas) Rowe Deposition Transcript in Case No. 20–90027 8–27–21 Excerpts # 16 Exhibit 15 M Salas–U.S. Bank Stipulation in Case No. 18–260 11–20–19 # 17 Exhibit 16 M Salas Statement of Financial Affairs filed in Case No. 18–260 5–2–18 Excerpts # 18 Exhibit 17 M Salas Amended Responses to Plaintiffs Requests for Admission in Case No. 20–90027 11–9–21 # 19 Exhibit Salas Schedules filed in Case No. 18–260 5–2–18 Excerpt # 20 Exhibit 19 M Albert – M Salas eMails re: Original Deed 2–14–18 # 21 Exhibit 20 Exemption Hearing in Case No. 18–260 Transcript Vol 1 8–22–18 Excerpts # 22 Exhibit 21 M Salas Responses to Objecting Creditors' Requests for Production of Documents in Case No. 18–260 8–6–18) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)73). (MCNUTT, PHILIP) (Entered: 08/01/2022) |
| 08/12/2022 | | 75 | *Defendant's* Objection to*Plaintiffs' Motion fo Summary Judgment*. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) Filed on the behalf of: Defendant Max Salas (RE: related document(s)73, 74). (YOUNG, PHILLIP) (Entered: 08/12/2022) |
| 08/23/2022 | | 76 | *Plaintiffs'* Response to *Defendant's Objections to Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit Max Salas 2015 IRS Tax Return) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)75). (MCNUTT, PHILIP) (Entered: 08/23/2022) |
| 09/12/2022 | | 77 | Order Scheduling Hearing *on the Plaintiff's Motion for Summary Judgment*. (RE: Related Doc#: 73, 74, 75, 76). **Hearing scheduled 10/4/2022 at 09:30 AM; Refer to www.tnmb.uscourts.gov for details (Nashville).** Signed on 9/12/2022. (jtd) (Entered: 09/12/2022) |
| 09/19/2022 | | 79 | *Plaintiffs'* Response to *Defendant's Objections to Motion for Summary Judgement per the Court's Order*. (Attachments: # 1 Exhibit Amended Exh. 3, Exemption Hearing Transcript, Vol 2.Excerpts # 2 Exhibit Amended Exh. 4, L Salas COnfirmation Hearing Transcript–12–13–18 # 3 Exhibit Amended Exh. 6, Exemption Hearing Transcript, Vol 3–Excerpts # 4 Exhibit Amended Exh. 9, M Salas Schedules–Excerpts # |

| | | | |
|---|---|---|---|
| | | | 5 Exhibit 22, M Salas Exhibit List for Exemption Hearing in Case No. 18–00260 # 6 Exhibit 23, Court's Proceeding Memo for 3rd day of Exemption Hearing in Case No. 18–00260, with Exhibits Lists) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)74, 75, 76, 77). (MCNUTT, PHILIP) (Entered: 09/19/2022) |
| 09/28/2022 | | 81 | *Defendant's* Response to *Plaintiffs' Supplemental List of Undisputed Facts*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)79). (YOUNG, PHILLIP) (Entered: 09/28/2022) |
| 01/05/2023 | | 83 | Order Scheduling Hearing. (RE: Related Doc#: 73, 74, 75, 76, 79, 81). **Hearing scheduled 2/21/2023 at 01:15 PM, Courtroom 3 (Virtual hearing if allowed; see website for details); 701 Broadway, Nashville, TN 37203.** Signed on 1/5/2023. (jlm) (Entered: 01/05/2023) |
| 02/21/2023 | | 89 | *Defendant's* Motion For Summary Judgment. Certificate of Service mailed on 2/21/23. Filed on the behalf of: Defendant Max Salas. (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 90 | *Defendant's* Statement *of Undisputed Facts in Support of Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 91 | *Defendant's* Brief/Memorandum in Support of *Defendant's Motion for Summary Judgment*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 92 | *Supplemental Memorandum in Support of Plaintiffs'* Motion For Summary Judgment*In Response to the Court's Order of January 4, 2023*. (Attachments: # 1 Exhibit A CLR Trust Leases # 2 Exhibit B 1610 Riggs Trust Bank Statements # 3 Exhibit C M Salas Statement of Financial Affairs Excerpt # 4 Exhibit D Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 5 Exhibit E Debtor's Opposition to Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 6 Exhibit F L Salas Loss Mitigation Statement 2/28/16 # 7 Exhibit G DCPropertyQuest Report on 1610 Riggs Place, NW 6/17/15 # 8 Exhibit H DCR Notice of Abatement 6/17/15 # 9 Exhibit I DCR Notice of Infraction 11/6/15)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 02/21/2023) |
| 03/07/2023 | | 94 | Brief/Memorandum in Support of *(Response to Plaintiffs' Supplemental Memorandum)*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)92). (YOUNG, PHILLIP) (Entered: 03/07/2023) |
| 03/07/2023 | | 95 | *Plaintiffs' Opposition in* Response to *Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit List of Undisputed Facts # 2 Exhibit A Defendant's Amended Responses to Plaintiffs' Requests for Admission 11–9–21) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)90, 91, 93 ). (MCNUTT, PHILIP) (Entered: 03/07/2023) |
| 03/26/2023 | | 100 | *Plaintiffs' Second Supplemental* Brief/Memorandum in Support of *Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit A Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 1 # 2 Exhibit B Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 2) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas |

| | | | |
|---|---|---|---|
| | | | Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)73, 89). (MCNUTT, PHILIP) (Entered: 03/26/2023) |
| 05/24/2023 | | 101 | Memorandum Opinion. (RE: Related Doc#: 73, 89). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 05/24/2023 | | 102 | Order *on Motion for Summary Judgment*. (RE: Related Doc#: 89, 95, 101). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 06/07/2023 | | 104 | Motion for *Plaintiffs' Motion to Alter or Amend*. (Attachments: # 1 Affidavit McNutt Decflaration in Support of Plaintiffs' Motion to Alter or Amend # 2 Proposed Order Order Granting Plaintiffs' Motion to Alter of Amend)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 06/07/2023) |
| 06/21/2023 | | 107 | *Defendant's* Response to *Plaintiffs' Motion to Alter or Amend*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)104). (YOUNG, PHILLIP) (Entered: 06/21/2023) |
| 08/16/2023 | | 109 | Order Denying *Plaintiff's* Motion *to Alter or Amend Under Fed.R.Bankr.P.9023* . (RE: Ref Doc # 104), (Related Doc#: 107). BY THE COURT: Judge Marian F. Harrison. (jlm) (Entered: 08/16/2023) |
| 08/28/2023 | | 113 | *Plaintiffs'* Motion for Leave to Appeal*from the Court's Orders Denying and Granting Summary Judgment and Denying Motion to Alter or Amend*. (Attachments: # 1 Exhibit a Order of January 5, 2023 # 2 Exhibit b Court's Memorandum Opinion 5/2/423 # 3 Exhibit c ORDER re Summary Judgment Motions 5/24/23 # 4 Exhibit d ORDER Denying Motion to Alter or Amend 8/16/23)Certificate of Service mailed on 08/28/2023. Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 08/28/2023) |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| In re: | : | |
| LEN SALAS | : | Case No. 18-02662-MH3-7 |
| Debtor | : | |
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS | : : : | |
| and | : | |
| MICHAEL MCLOUGHLIN AND MARTHA JOHNSON, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF MICHAEL PATRICK MCLOUGHLIN | : : : | |
| Plaintiffs | : | |
| v. | : | Adversary Proceeding No. _____ |
| MAX SALAS 1610 Riggs Place, NW Washington, DC | : : | |
| Defendant | : | |

COMPLAINT TO AVOID TRANSFERS AND RECOVER PROPERTY

COME NOW THE Plaintiffs herein, Nicolaas Brekelmans and Gail Gregory Brekelmans, Co-personal Representatives Of the Estate of Nina Brekelmans ("Nina")("the Brekelmans Estate") and Michael Mcloughlin and Martha Johnson, Co-personal Representatives of The Estate of Michael Patrick Mcloughlin ("Michael") ("the McLoughlin Estate") ("the Brekelmans Estate and the Mcloughlin Estate are hereinafter collectively sometimes referred to as "the

Estates"), by and through their undersigned counsel and sue the Defendant, Max Salas, to avoid transfers and recover property and, for their causes of action, allege as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction under 28 U.S.C. § 1334 (b). This matter involves causes of action under the trustee's avoiding powers purchased by the Plaintiffs from the Debtor's Estate.

2. Venue lies in this court under 28 U.S.C. §1409 (a)(c) & (d).

3. This matter involves property of the estate and claims of creditors of the Debtor's estate.

4. This matter is a core matter involving Avoiding Powers of the trustee pursuant to 11 U.S.C. § 544, *et seq.* (hereinafter, all references to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* are cited as "Code, §"). ***See*** *inter alia*, 28 U.S.C. §157 (b)(1) and §157(b)(2) (A)(F)(H) & (0)

**Parties**

5. The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively. Nina and Michael were tragically killed in a fire at a residence in Washington, DC ("the Fire") which residence was owned by the Debtor, Len Salas and occupied and managed by his father, the Defendant, Max Salas. The Plaintiffs herein, the Estates, were the successful bidders at an auction sale of this bankruptcy estate's interest in the trustee's avoidance and recovery actions under Code, §§544, *et seq*. A copy of the Trustee's Report of Sale of those actions is attached hereto as **Exhibit A**.

6. The Defendant Max Salas, is the Debtor in Case No. 18-00260, in the United States Bankruptcy Court for the District of Columbia (hereinafter "Max"). Max filed a voluntary petition, under Chapter 11 of the Code in April, 2018.

7.  Len Salas (hereinafter "Len"), is the Debtor is Case No. 3:18-bk-02662, filed in the United States Bankruptcy Court for the Middle District of Tennessee (Nashville) ("Len's Bankruptcy") on or about May 2, 2018. Len's Bankruptcy was converted from a Chapter 11 to a Chapter 7 bankruptcy on or about December 12, 2018.

8.  This matter involves the recovery of property located at 1610 Riggs Place, NW, Washington, DC ("the Property") at which the Defendant, Max, presently resides. Alternatively, the Plaintiffs are seeking a fair market sale of the Property to recover its value, believed to be in excess of $1 Million above all prior and/or secured claims.

**Background for All Counts**

9.  In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment"). The Judgment resulted from a fire at the Property which, at the time, Max had rented rooms to renters including Nina and Michael. Through the gross negligence of Max and his deliberate failure to make required safety improvements to the Property, Nina and Michael tragically lost their lives in a horrific and traumatic manner. Len was named a Defendant since he was, at all times, the owner of the Property, including at the time of the fire (June, 2015).

10. The Estates filed separate lawsuits against Max and Len in 2015. After a lengthy period of discovery and pre-trial matters, the case was tried in late March, 2018 resulting in the Judgment. Although Max and Len both appealed the Judgment, there has been no prosecution of the appeal and no stay entered in the appeal. On January 28, 2019, the Bankruptcy Court for the District of Columbia entered an Order Confirming Max's Third Amended Plan of Reorganization ("the Confirmed Plan"). Under the terms of the Confirmed Plan, entered in Max's Bankruptcy on or about January 31, 2020, Max is withdrawing his appeal of the

Judgment(s). *See*, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 9, ¶3.6. A copy of the Confirmed Plan and Order Confirming the Third Amended Plan are attached collectively as **Exhibit B**.

11. Shortly after the entry of the Judgment Max and Len filed separate bankruptcies, Max in the District of Columbia (Case No. 18-00260)("Max's Bankruptcy") and Len in this Court (Case No. 18-02662) ("Len's Bankruptcy").

12. At the time of the bankruptcy filings by Len and Max, Len was, and still is, the title owner of property located at 1610 Riggs Place, NW, Washington, D.C. ("the Property"). The Property was purchased by Len in 2007 after his father, Max and Max's then wife, divorced. In order to purchase the Property, Max deeded the Property to Len ("the 2007 Deed"). Len then obtained a Deed of Trust from Sun Trust Bank for $870,000 ("the Sun Trust Loan"). The proceeds of the Sun Trust Loan were paid to Max's wife as part of the divorce settlement.

13. From 2007 through the present, Len has remained the sole owner of the Property. Max's Confirmed Plan provides that the Confirmation Order constitutes "an Order conveying the Property to Max Salas". *See*, Exhibit B, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 12, ¶ 4.4.

14. At the time of Len's purchase of the Property in 2007, Max had tax liens and other obligations which made it impossible for Max to obtain a loan on the Property. In addition, Max had a tax evasion conviction on his record. Those and other credit and tax issues continued through Max's Bankruptcy. Max has consistently attempted to hide assets from the IRS and other taxing authorities, including his potential interest in the Property.

15. According to Max, he tried to refinance the Property several times after 2007, all to no avail. In fact, at least through 2015 every attempt to refinance the Property required the

participation of Len as a co-signer or co-obligor.

16. From sometime after 2007 through the date of the fire, Max rented out rooms at the Property. The tenants, including Nina and Michael, signed leases under the name of "the CLR Trust" and Max signed each lease as Trustee. According to Len, the CLR Trust, was a trust created by Max for the benefit of his three sons, Chase, Len and Ron.

17. According to Max, the lease payments were put into an account in the name of the CLR Trust and were used to pay for the Deed of Trust obligations and other expenses associated with the Property.

18. Through the date of the fire and at all times prior to the bankruptcy filings, all governmental notices and tax bills and notices regarding the Property were in Len's name.

19. Consistent with his history of attempting to dodge tax liability, Max did not want the Property, or any matters related to the Property, in his name so he could avoid any taxes or publicly recorded or confirmed ownership interest.

20. Similarly, Max did not want to record any income in his name from the leasing of the Property. As a result, he deposited all of the income from the leases into the "CLR Trust" bank account.

21. According to Max and Len, in July, 2010, Max and Len traveled to Colorado in July 2010 to visit Ron, one of Max's sons. Ron was a recent law school graduate and admitted to practice law in Colorado.

22. While in Colorado, Len and Max executed a very simple trust agreement which Ron stated he prepared using a Colorado form even though the alleged trust property, the Property, was located in D.C. Ron also prepared a form "Quitclaim Deed," which Len also signed ("the Quitclaim Deed").

23. Max asserts that Len, who is very unsophisticated in business and legal transactions, deeded the Property to his father while Len remained the sole obligor on the Sun Trust Deed of Trust Note ("the Note").

24. Max and Ron clearly took advantage of Len and convinced Len to deed the Property to his father despite the fact that by that deed, Len would have lost all collateral for his $870,000 loan obligation to Sun Trust.

25. The transfer in 2010 was a violation of Len's Deed of Trust and Note with Sun Trust Bank.

26. At the time of the attempted Quitclaim Deed, in July, 2010, Len's only significant asset was the Property. At all relevant times, Len worked only part time and had limited income and assets. At all times following the transfer in 2010, Len was insolvent. His liabilities exceeded his assets and his income was insufficient to pay his obligations, including the Sun Trust Deed of Trust Note payments.

27. At no time, since 2007, including, but not limited to, the time of the Quitclaim Deed in July, 2010, did Max make any payments to Len and Len received no property or other value from Max related to the Trust or Quitclaim Deed.

28. Max asserts that he intended to record the Quitclaim Deed in 2010 but had no money to pay the required recording and transfer taxes. The Quitclaim Deed has never been recorded and Len remains the titled owner of the Property.

29. Toward the end of the Superior Court litigation with the Plaintiffs, which resulted in the Judgment, Max concocted a scheme to attempt to keep the Property for himself in the face of a pending substantial judgment award to the Plaintiffs.

30. In discussions with his newly hired bankruptcy counsel, Marc Albert (Stinon LLP

("Albert"), Max learned that if the Property was owned by Len, it could not be exempted in bankruptcy and would be subject to attachment and sale to partially satisfy the eventual judgments. These conversations took place in late 2017 and early 2018.

31. Max also learned from Albert that if Max could claim he is the actual owner of the Property, he could claim the Property exempt in his subsequent bankruptcy proceeding and, due to D.C.'s generous homestead exemption, Max could then claim the entire equity in the Property as exempt from execution by the Plaintiffs.

32. Because Len was not residing in the Property he could not claim the benefit of the D.C. homestead exemption.

33. In early 2018, less than a month prior to the Superior Court trial, Max and Len, for the first time, alleged and produced a copy of the 2010 trust ("the Trust") and quitclaim deed ("the Quitclaim Deed") and sought to exclude Len from the Superior Court litigation by asserting Max was the real owner of the Property. The Superior Court summarily denied Max's attempt and the trial continued, resulting in the Judgment. The Judgment is now final and binding on all parties as a result of the pending final distribution and closing of Len's Estate in this Court and the Confirmed Plan in Max's Bankruptcy.

34. The fire occurred in June, 2015. From that time, until February or March, 2018, no one resided in the Property. During that time, and continuing after Max's Bankruptcy filing until November, 2019, no payments were made on the Sun Trust Deed of Trust Note ("the Sun Trust Note") with the exception of one payment made by Max from the insurance proceeds he received as a result of the fire damage.

35. According to the schedules filed in Max's bankruptcy, as of the commencement of his bankruptcy case, the only lien creditors were (IRS secured claim - $ 6,768.66, claim) and Sun

Judgment(s).  *See*, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 9, ¶3.6. A copy of the Confirmed Plan and Order Confirming the Third Amended Plan are attached collectively as **Exhibit B**.

11.   Shortly after the entry of the Judgment Max and Len filed separate bankruptcies, Max in the District of Columbia (Case No. 18-00260)("Max's Bankruptcy") and Len in this Court (Case No. 18-02662) ("Len's Bankruptcy").

12.   At the time of the bankruptcy filings by Len and Max, Len was, and still is, the title owner of property located at 1610 Riggs Place, NW, Washington, D.C. ("the Property").  The Property was purchased by Len in 2007 after his father, Max and Max's then wife, divorced.  In order to purchase the Property, Max deeded the Property to Len ("the 2007 Deed").  Len then obtained a Deed of Trust from Sun Trust Bank for $870,000 ("the Sun Trust Loan").  The proceeds of the Sun Trust Loan were paid to Max's wife as part of the divorce settlement.

13.   From 2007 through the present, Len has remained the sole owner of the Property. Max's Confirmed Plan provides that the Confirmation Order constitutes "an Order conveying the Property to Max Salas".  *See*, Exhibit B, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 12, ¶ 4.4.

14.   At the time of Len's purchase of the Property in 2007, Max had tax liens and other obligations which made it impossible for Max to obtain a loan on the Property.  In addition, Max had a tax evasion conviction on his record.  Those and other credit and tax issues continued through Max's Bankruptcy.  Max has consistently attempted to hide assets from the IRS and other taxing authorities, including his potential interest in the Property.

15.   According to Max, he tried to refinance the Property several times after 2007, all to no avail.  In fact, at least through 2015 every attempt to refinance the Property required the

participation of Len as a co-signer or co-obligor.

16. From sometime after 2007 through the date of the fire, Max rented out rooms at the Property. The tenants, including Nina and Michael, signed leases under the name of "the CLR Trust" and Max signed each lease as Trustee. According to Len, the CLR Trust, was a trust created by Max for the benefit of his three sons, Chase, Len and Ron.

17. According to Max, the lease payments were put into an account in the name of the CLR Trust and were used to pay for the Deed of Trust obligations and other expenses associated with the Property.

18. Through the date of the fire and at all times prior to the bankruptcy filings, all governmental notices and tax bills and notices regarding the Property were in Len's name.

19. Consistent with his history of attempting to dodge tax liability, Max did not want the Property, or any matters related to the Property, in his name so he could avoid any taxes or publicly recorded or confirmed ownership interest.

20. Similarly, Max did not want to record any income in his name from the leasing of the Property. As a result, he deposited all of the income from the leases into the "CLR Trust" bank account.

21. According to Max and Len, in July, 2010, Max and Len traveled to Colorado in July 2010 to visit Ron, one of Max's sons. Ron was a recent law school graduate and admitted to practice law in Colorado.

22. While in Colorado, Len and Max executed a very simple trust agreement which Ron stated he prepared using a Colorado form even though the alleged trust property, the Property, was located in D.C. Ron also prepared a form "Quitclaim Deed," which Len also signed ("the Quitclaim Deed").

23. Max asserts that Len, who is very unsophisticated in business and legal transactions, deeded the Property to his father while Len remained the sole obligor on the Sun Trust Deed of Trust Note ("the Note").

24. Max and Ron clearly took advantage of Len and convinced Len to deed the Property to his father despite the fact that by that deed, Len would have lost all collateral for his $870,000 loan obligation to Sun Trust.

25. The transfer in 2010 was a violation of Len's Deed of Trust and Note with Sun Trust Bank.

26. At the time of the attempted Quitclaim Deed, in July, 2010, Len's only significant asset was the Property. At all relevant times, Len worked only part time and had limited income and assets. At all times following the transfer in 2010, Len was insolvent. His liabilities exceeded his assets and his income was insufficient to pay his obligations, including the Sun Trust Deed of Trust Note payments.

27. At no time, since 2007, including, but not limited to, the time of the Quitclaim Deed in July, 2010, did Max make any payments to Len and Len received no property or other value from Max related to the Trust or Quitclaim Deed.

28. Max asserts that he intended to record the Quitclaim Deed in 2010 but had no money to pay the required recording and transfer taxes. The Quitclaim Deed has never been recorded and Len remains the titled owner of the Property.

29. Toward the end of the Superior Court litigation with the Plaintiffs, which resulted in the Judgment, Max concocted a scheme to attempt to keep the Property for himself in the face of a pending substantial judgment award to the Plaintiffs.

30. In discussions with his newly hired bankruptcy counsel, Marc Albert (Stinon LLP

("Albert"), Max learned that if the Property was owned by Len, it could not be exempted in bankruptcy and would be subject to attachment and sale to partially satisfy the eventual judgments. These conversations took place in late 2017 and early 2018.

31. Max also learned from Albert that if Max could claim he is the actual owner of the Property, he could claim the Property exempt in his subsequent bankruptcy proceeding and, due to D.C.'s generous homestead exemption, Max could then claim the entire equity in the Property as exempt from execution by the Plaintiffs.

32. Because Len was not residing in the Property he could not claim the benefit of the D.C. homestead exemption.

33. In early 2018, less than a month prior to the Superior Court trial, Max and Len, for the first time, alleged and produced a copy of the 2010 trust ("the Trust") and quitclaim deed ("the Quitclaim Deed") and sought to exclude Len from the Superior Court litigation by asserting Max was the real owner of the Property. The Superior Court summarily denied Max's attempt and the trial continued, resulting in the Judgment. The Judgment is now final and binding on all parties as a result of the pending final distribution and closing of Len's Estate in this Court and the Confirmed Plan in Max's Bankruptcy.

34. The fire occurred in June, 2015. From that time, until February or March, 2018, no one resided in the Property. During that time, and continuing after Max's Bankruptcy filing until November, 2019, no payments were made on the Sun Trust Deed of Trust Note ("the Sun Trust Note") with the exception of one payment made by Max from the insurance proceeds he received as a result of the fire damage.

35. According to the schedules filed in Max's bankruptcy, as of the commencement of his bankruptcy case, the only lien creditors were (IRS secured claim - $ 6,768.66, claim) and Sun

# U.S. Bankruptcy Court
## MIDDLE DISTRICT OF TENNESSEE (Nashville)
## Adversary Proceeding #: 3:20−ap−90027

*Assigned to:* Marian F Harrison                    *Date Filed:* 03/02/20
*Lead BK Case:* 18−02662
*Lead BK Title:* Len Salas
*Lead BK Chapter:* 7
*Demand:*
  *Nature[s] of Suit:*   11 Recovery of money/property − 542 turnover of property
                         13 Recovery of money/property − 548 fraudulent transfer
                         21 Validity, priority or extent of lien or other interest in property

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−
**Nicolaas Brekelmans**                  represented by **Taylor ALEXANDER CATES**
                                         BURCH PORTER & JOHNSON PLLC
                                         130 NORTH COURT AVENUE
                                         MEMPHIS, TN 38103
                                         901−524−5165
                                         Fax : 901−524−5024
                                         Email: tacates@bpjlaw.com

                                         **PHILIP JAMES MCNUTT**
                                         LAW OFFICE OF PHILIP J MCNUTT PLLC
                                         11921 FREEDOM DRIVE
                                         STE 584
                                         RESTON, VA 20190
                                         703−904−4380
                                         Fax : 202−379−9217
                                         Email: pmcnutt@mcnuttlawllc.com
                                         *LEAD ATTORNEY*

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−
**Gail Brekelmans**                      represented by **Taylor ALEXANDER CATES**
                                         (See above for address)

                                         **PHILIP JAMES MCNUTT**
                                         (See above for address)

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−
**Michael McLoughlin, Jr.**              represented by **Taylor ALEXANDER CATES**
                                         (See above for address)

                                         **PHILIP JAMES MCNUTT**
                                         (See above for address)

**Plaintiff**
––––––––––––––––––––––

**Martha Johnson**                    represented by **Taylor ALEXANDER CATES**
                                                     (See above for address)

                                                     **PHILIP JAMES MCNUTT**
                                                     (See above for address)


V.


**Defendant**
––––––––––––––––––––––

**Max Salas**                         represented by **PHILLIP G YOUNG**
c/o Phillip G. Young                                 Thompson Burton PLLC
6100 Tower Circle, Suite 200                         One Franklin Park
Franklin, TN 37067                                   6100 Tower Circle, Suite 200
                                                     FRANKLIN, TN 37067
                                                     615–465–6008
                                                     Fax : 931–381–0058
                                                     Email: phillip@thompsonburton.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 03/02/2020 | | 1 | Adversary case 3:20–ap–90027. Complaint by Nicolaas Brekelmans, Gail Brekelmans, Michael McLoughlin Jr., Martha Johnson against Max Salas. Fee Amount is $350.00. Adversary Fee Will be Paid In Full Electronically at the Time of Filing. Nicolaas Brekelmans, Gail Brekelmans, Michael McLoughlin Jr., Martha Johnson. (Attachments: # 1 Exhibit A – Trustee's Report of Sale # 2 Exhibit B – Order Confirming Debtor's Third Amended Plan # 3 Exhibit C – Tennessee Bankruptcy Court Order dated 06/12/19) Nature of Suit: (11 (Recovery of money/property – 542 turnover of property), 13 (Recovery of money/property – 548 fraudulent transfer)) (CATES, TAYLOR) (Entered: 03/02/2020) |
| 02/16/2021 | | 40 | Amended Complaint *Pursuant to Court Order Dated February 11, 2021 (D–39)* by PHILIP JAMES MCNUTT on behalf of Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. against Max Salas. (Attachments: # 1 Exhibit A Trustee's Report of Sale # 2 List of 20 Largest Creditors B Confirmation Order and Plan # 3 Exhibit C Order to Sell Trustee's Interest in Avoiding Powers # 4 Exhibit D Redline of Amended Complaint to Original) Filed on the behalf of: on behalf of Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)1). (MCNUTT, PHILIP) (Entered: 02/16/2021) |
| 03/09/2021 | | 42 | Answer to Complaint Filed on the behalf of: Defendant Max Salas. (YOUNG, PHILLIP) (Entered: 03/09/2021) |
| 07/29/2022 | | 73 | *Plaintiffs'* Motion For Summary Judgment *re: Counts I,II,IV,V, and VI of the Amended Complaint.* (Attachments: # 1 Supplement Memorandum in Support of Plaintiffs' Motion for Summary Judgment # 2 Supplement Plaintiffs List of Undisputed Facts # 3 Exhibit 1 M Salas Deposition Transcript # 4 Exhibit 2 M Salas Second Amended Disclosure Statement # 5 Exhibit 7 emails June, 2011 – February, 2012 2–12 # 6 Exhibit 9 M Salas Schedules Excerpt # 7 Exhibit 16 M Salas Statement of Financial Affairs Excerpt # 8 Exhibit 17 M Salas Amended Answers to Plaintiffs Request for Admissions # 9 Exhibit 19 Albert–R Salas emails 2–14–18 # |

| | | | |
|---|---|---|---|
| | | | 10 Exhibit 20 Exemption Hearing (D.C.) Volume 1 Excerpts # 11 Exhibit 21 M Salas Responses to Creditors Request for Production (D.C.) # 12 Exhibit 15 M Salas – U.S. Bank Stipulation (D.C.) 11–20–19)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 07/29/2022) |
| 08/01/2022 | | 74 | *Amended* Brief/Memorandum in Support of *Plaintiffs Motion for Summary Judgment*. (Attachments: # 1 Exhibit Plaintiffs' Amended List of Uncontested Facts # 2 Exhibit 1 M Salas Superior Ct Depo Transcript (2–24–16)Excerpt # 3 Exhibit 2 M Salas Second Amended Disclosure Statement 12–5–19 # 4 Exhibit 3 Exemption Hearing in Case No. 18–260 (D.C.) Vol 2 Excerpts # 5 Exhibit 4 L Salas Confirmation Hrg Transcript in Case No. 18–2662 12–13–18 # 6 Exhibit 5 K Salas Chapter 7 Meeting Transcript 4–1–19 # 7 Exhibit 6 Exemption Hearing in Case No. 18–260 (D.C.) Vol 3 Excerpts 8–24–18 # 8 Exhibit 7 eMails 6–17–11 – 2–27–12 # 9 Exhibit R Salas Deposiiton Transcript in Case No. 18–260 8–8–18 # 10 Exhibit 9 M Salas Schedules in Case No. 18–260 5–2–18 Excerpts # 11 Exhibit M Salas Deposition Transcript in Case No. 20–90027 3–8–22 Excerpts # 12 Exhibit 11 L Salas Deposition Transcript in Superior Court Litigation 3–9–16 Excerpts # 13 Exhibit 12 R Salas Testimony at Exemption Hearing 8–22–18 # 14 Exhibit 13 L Salas Deposition Transcript in Case No. 20–90027 Excerpts # 15 Exhibit 14 Kendra (Salas) Rowe Deposition Transcript in Case No. 20–90027 8–27–21 Excerpts # 16 Exhibit 15 M Salas–U.S. Bank Stipulation in Case No. 18–260 11–20–19 # 17 Exhibit 16 M Salas Statement of Financial Affairs filed in Case No. 18–260 5–2–18 Excerpts # 18 Exhibit 17 M Salas Amended Responses to Plaintiffs Requests for Admission in Case No. 20–90027 11–9–21 # 19 Exhibit Salas Schedules filed in Case No. 18–260 5–2–18 Excerpt # 20 Exhibit 19 M Albert – M Salas eMails re: Original Deed 2–14–18 # 21 Exhibit 20 Exemption Hearing in Case No. 18–260 Transcript Vol 1 8–22–18 Excerpts # 22 Exhibit 21 M Salas Responses to Objecting Creditors' Requests for Production of Documents in Case No. 18–260 8–6–18) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)73). (MCNUTT, PHILIP) (Entered: 08/01/2022) |
| 08/12/2022 | | 75 | *Defendant's* Objection to*Plaintiffs' Motion fo Summary Judgment*. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) Filed on the behalf of: Defendant Max Salas (RE: related document(s)73, 74). (YOUNG, PHILLIP) (Entered: 08/12/2022) |
| 08/23/2022 | | 76 | *Plaintiffs'* Response to *Defendant's Objections to Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit Max Salas 2015 IRS Tax Return) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)75). (MCNUTT, PHILIP) (Entered: 08/23/2022) |
| 09/12/2022 | | 77 | Order Scheduling Hearing *on the Plaintiff's Motion for Summary Judgment*. (RE: Related Doc#: 73, 74, 75, 76). **Hearing scheduled 10/4/2022 at 09:30 AM; Refer to www.tnmb.uscourts.gov for details (Nashville).** Signed on 9/12/2022. (jtd) (Entered: 09/12/2022) |
| 09/19/2022 | | 79 | *Plaintiffs'* Response to *Defendant's Objections to Motion for Summary Judgement per the Court's Order*. (Attachments: # 1 Exhibit Amended Exh. 3, Exemption Hearing Transcript, Vol 2.Excerpts # 2 Exhibit Amended Exh. 4, L Salas COnfirmation Hearing Transcript–12–13–18 # 3 Exhibit Amended Exh. 6, Exemption Hearing Transcript, Vol 3–Excerpts # 4 Exhibit Amended Exh. 9, M Salas Schedules–Excerpts # |

| | | | |
|---|---|---|---|
| | | | 5 Exhibit 22, M Salas Exhibit List for Exemption Hearing in Case No. 18–00260 # 6 Exhibit 23, Court's Proceeding Memo for 3rd day of Exemption Hearing in Case No. 18–00260, with Exhibits Lists) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)74, 75, 76, 77). (MCNUTT, PHILIP) (Entered: 09/19/2022) |
| 09/28/2022 | | 81 | *Defendant's* Response to *Plaintiffs' Supplemental List of Undisputed Facts*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)79). (YOUNG, PHILLIP) (Entered: 09/28/2022) |
| 01/05/2023 | | 83 | Order Scheduling Hearing. (RE: Related Doc#: 73, 74, 75, 76, 79, 81). **Hearing scheduled 2/21/2023 at 01:15 PM, Courtroom 3 (Virtual hearing if allowed; see website for details); 701 Broadway, Nashville, TN 37203.** Signed on 1/5/2023. (jlm) (Entered: 01/05/2023) |
| 02/21/2023 | | 89 | *Defendant's* Motion For Summary Judgment. Certificate of Service mailed on 2/21/23. Filed on the behalf of: Defendant Max Salas. (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 90 | *Defendant's* Statement *of Undisputed Facts in Support of Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 91 | *Defendant's* Brief/Memorandum in Support of *Defendant's Motion for Summary Judgment*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)89). (YOUNG, PHILLIP) (Entered: 02/21/2023) |
| 02/21/2023 | | 92 | *Supplemental Memorandum in Support of Plaintiffs'* Motion For Summary Judgment*In Response to the Court's Order of January 4, 2023*. (Attachments: # 1 Exhibit A CLR Trust Leases # 2 Exhibit B 1610 Riggs Trust Bank Statements # 3 Exhibit C M Salas Statement of Financial Affairs Excerpt # 4 Exhibit D Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 5 Exhibit E Debtor's Opposition to Plaintiffs Objection to the Debtor's Claim of Exemption (D.C.) # 6 Exhibit F L Salas Loss Mitigation Statement 2/28/16 # 7 Exhibit G DCPropertyQuest Report on 1610 Riggs Place, NW 6/17/15 # 8 Exhibit H DCR Notice of Abatement 6/17/15 # 9 Exhibit I DCR Notice of Infraction 11/6/15)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 02/21/2023) |
| 03/07/2023 | | 94 | Brief/Memorandum in Support of *(Response to Plaintiffs' Supplemental Memorandum)*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)92). (YOUNG, PHILLIP) (Entered: 03/07/2023) |
| 03/07/2023 | | 95 | *Plaintiffs' Opposition in* Response to *Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit List of Undisputed Facts # 2 Exhibit A Defendant's Amended Responses to Plaintiffs' Requests for Admission 11–9–21) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)90, 91, 93 ). (MCNUTT, PHILIP) (Entered: 03/07/2023) |
| 03/26/2023 | | 100 | *Plaintiffs' Second Supplemental* Brief/Memorandum in Support of *Plaintiffs' Motion for Summary Judgment*. (Attachments: # 1 Exhibit A Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 1 # 2 Exhibit B Exemption Hearing Transcript, Vol 1, Case No. 18–00260, Excerpt 2) Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas |

| | | | |
|---|---|---|---|
| | | | Brekelmans, Martha Johnson, Michael McLoughlin Jr. (RE: related document(s)<u>73</u>, <u>89</u>). (MCNUTT, PHILIP) (Entered: 03/26/2023) |
| 05/24/2023 | | <u>101</u> | Memorandum Opinion. (RE: Related Doc#: <u>73</u>, <u>89</u>). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 05/24/2023 | | <u>102</u> | Order *on Motion for Summary Judgment*. (RE: Related Doc#: <u>89</u>, <u>95</u>, <u>101</u>). Signed on 5/24/2023. (jlm) (Entered: 05/24/2023) |
| 06/07/2023 | | <u>104</u> | Motion for *Plaintiffs' Motion to Alter or Amend*. (Attachments: # <u>1</u> Affidavit McNutt Decflaration in Support of Plaintiffs' Motion to Alter or Amend # <u>2</u> Proposed Order Order Granting Plaintiffs' Motion to Alter of Amend)Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 06/07/2023) |
| 06/21/2023 | | <u>107</u> | *Defendant's* Response to *Plaintiffs' Motion to Alter or Amend*. Filed on the behalf of: Defendant Max Salas (RE: related document(s)<u>104</u>). (YOUNG, PHILLIP) (Entered: 06/21/2023) |
| 08/16/2023 | | <u>109</u> | Order Denying *Plaintiff's* Motion *to Alter or Amend Under Fed.R.Bankr.P.9023* . (RE: Ref Doc # <u>104</u>), (Related Doc#: <u>107</u>). BY THE COURT: Judge Marian F. Harrison. (jlm) (Entered: 08/16/2023) |
| 08/28/2023 | | <u>113</u> | *Plaintiffs'* Motion for Leave to Appeal*from the Court's Orders Denying and Granting Summary Judgment and Denying Motion to Alter or Amend*. (Attachments: # <u>1</u> Exhibit a Order of January 5, 2023 # <u>2</u> Exhibit b Court's Memorandum Opinion 5/2/423 # <u>3</u> Exhibit c ORDER re Summary Judgment Motions 5/24/23 # <u>4</u> Exhibit d ORDER Denying Motion to Alter or Amend 8/16/23)Certificate of Service mailed on 08/28/2023. Filed on the behalf of: Plaintiffs Gail Brekelmans, Nicolaas Brekelmans, Martha Johnson, Michael McLoughlin Jr.. (MCNUTT, PHILIP) (Entered: 08/28/2023) |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| In re: | : | |
|   LEN SALAS | : | Case No. 18-02662-MH3-7 |
| Debtor | : | |
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS | : | |
| and | : | |
| MICHAEL MCLOUGHLIN AND MARTHA JOHNSON, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF MICHAEL PATRICK MCLOUGHLIN | : | |
| Plaintiffs | : | |
| v. | : | Adversary Proceeding No. _____ |
| MAX SALAS 1610 Riggs Place, NW Washington, DC | : | |
| Defendant | : | |

COMPLAINT TO AVOID TRANSFERS AND RECOVER PROPERTY

COME NOW THE Plaintiffs herein, Nicolaas Brekelmans and Gail Gregory Brekelmans, Co-personal Representatives Of the Estate of Nina Brekelmans ("Nina")("the Brekelmans Estate") and Michael Mcloughlin and Martha Johnson, Co-personal Representatives of The Estate of Michael Patrick Mcloughlin ("Michael") ("the McLoughlin Estate") ("the Brekelmans Estate and the Mcloughlin Estate are hereinafter collectively sometimes referred to as "the

Estates"), by and through their undersigned counsel and sue the Defendant, Max Salas, to avoid transfers and recover property and, for their causes of action, allege as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction under 28 U.S.C. § 1334 (b). This matter involves causes of action under the trustee's avoiding powers purchased by the Plaintiffs from the Debtor's Estate.

2. Venue lies in this court under 28 U.S.C. §1409 (a)(c) & (d).

3. This matter involves property of the estate and claims of creditors of the Debtor's estate.

4. This matter is a core matter involving Avoiding Powers of the trustee pursuant to 11 U.S.C. § 544, *et seq.* (hereinafter, all references to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* are cited as "Code, §"). ***See*** *inter alia*, 28 U.S.C. §157 (b)(1) and §157(b)(2) (A)(F)(H) & (0)

**Parties**

5. The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively. Nina and Michael were tragically killed in a fire at a residence in Washington, DC ("the Fire") which residence was owned by the Debtor, Len Salas and occupied and managed by his father, the Defendant, Max Salas. The Plaintiffs herein, the Estates, were the successful bidders at an auction sale of this bankruptcy estate's interest in the trustee's avoidance and recovery actions under Code, §§544, *et seq*. A copy of the Trustee's Report of Sale of those actions is attached hereto as **Exhibit A**.

6. The Defendant Max Salas, is the Debtor in Case No. 18-00260, in the United States Bankruptcy Court for the District of Columbia (hereinafter "Max"). Max filed a voluntary petition, under Chapter 11 of the Code in April, 2018.

7. Len Salas (hereinafter "Len"), is the Debtor is Case No. 3:18-bk-02662, filed in the United States Bankruptcy Court for the Middle District of Tennessee (Nashville) ("Len's Bankruptcy") on or about May 2, 2018. Len's Bankruptcy was converted from a Chapter 11 to a Chapter 7 bankruptcy on or about December 12, 2018.

8. This matter involves the recovery of property located at 1610 Riggs Place, NW, Washington, DC ("the Property") at which the Defendant, Max, presently resides. Alternatively, the Plaintiffs are seeking a fair market sale of the Property to recover its value, believed to be in excess of $1 Million above all prior and/or secured claims.

**Background for All Counts**

9. In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment"). The Judgment resulted from a fire at the Property which, at the time, Max had rented rooms to renters including Nina and Michael. Through the gross negligence of Max and his deliberate failure to make required safety improvements to the Property, Nina and Michael tragically lost their lives in a horrific and traumatic manner. Len was named a Defendant since he was, at all times, the owner of the Property, including at the time of the fire (June, 2015).

10. The Estates filed separate lawsuits against Max and Len in 2015. After a lengthy period of discovery and pre-trial matters, the case was tried in late March, 2018 resulting in the Judgment. Although Max and Len both appealed the Judgment, there has been no prosecution of the appeal and no stay entered in the appeal. On January 28, 2019, the Bankruptcy Court for the District of Columbia entered an Order Confirming Max's Third Amended Plan of Reorganization ("the Confirmed Plan"). Under the terms of the Confirmed Plan, entered in Max's Bankruptcy on or about January 31, 2020, Max is withdrawing his appeal of the

Judgment(s). *See*, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 9, ¶3.6. A copy of the Confirmed Plan and Order Confirming the Third Amended Plan are attached collectively as **Exhibit B**.

11. Shortly after the entry of the Judgment Max and Len filed separate bankruptcies, Max in the District of Columbia (Case No. 18-00260)("Max's Bankruptcy") and Len in this Court (Case No. 18-02662) ("Len's Bankruptcy").

12. At the time of the bankruptcy filings by Len and Max, Len was, and still is, the title owner of property located at 1610 Riggs Place, NW, Washington, D.C. ("the Property"). The Property was purchased by Len in 2007 after his father, Max and Max's then wife, divorced. In order to purchase the Property, Max deeded the Property to Len ("the 2007 Deed"). Len then obtained a Deed of Trust from Sun Trust Bank for $870,000 ("the Sun Trust Loan"). The proceeds of the Sun Trust Loan were paid to Max's wife as part of the divorce settlement.

13. From 2007 through the present, Len has remained the sole owner of the Property. Max's Confirmed Plan provides that the Confirmation Order constitutes "an Order conveying the Property to Max Salas". *See*, Exhibit B, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 12, ¶ 4.4.

14. At the time of Len's purchase of the Property in 2007, Max had tax liens and other obligations which made it impossible for Max to obtain a loan on the Property. In addition, Max had a tax evasion conviction on his record. Those and other credit and tax issues continued through Max's Bankruptcy. Max has consistently attempted to hide assets from the IRS and other taxing authorities, including his potential interest in the Property.

15. According to Max, he tried to refinance the Property several times after 2007, all to no avail. In fact, at least through 2015 every attempt to refinance the Property required the

participation of Len as a co-signer or co-obligor.

16. From sometime after 2007 through the date of the fire, Max rented out rooms at the Property. The tenants, including Nina and Michael, signed leases under the name of "the CLR Trust" and Max signed each lease as Trustee. According to Len, the CLR Trust, was a trust created by Max for the benefit of his three sons, Chase, Len and Ron.

17. According to Max, the lease payments were put into an account in the name of the CLR Trust and were used to pay for the Deed of Trust obligations and other expenses associated with the Property.

18. Through the date of the fire and at all times prior to the bankruptcy filings, all governmental notices and tax bills and notices regarding the Property were in Len's name.

19. Consistent with his history of attempting to dodge tax liability, Max did not want the Property, or any matters related to the Property, in his name so he could avoid any taxes or publicly recorded or confirmed ownership interest.

20. Similarly, Max did not want to record any income in his name from the leasing of the Property. As a result, he deposited all of the income from the leases into the "CLR Trust" bank account.

21. According to Max and Len, in July, 2010, Max and Len traveled to Colorado in July 2010 to visit Ron, one of Max's sons. Ron was a recent law school graduate and admitted to practice law in Colorado.

22. While in Colorado, Len and Max executed a very simple trust agreement which Ron stated he prepared using a Colorado form even though the alleged trust property, the Property, was located in D.C. Ron also prepared a form "Quitclaim Deed," which Len also signed ("the Quitclaim Deed").

23. Max asserts that Len, who is very unsophisticated in business and legal transactions, deeded the Property to his father while Len remained the sole obligor on the Sun Trust Deed of Trust Note ("the Note").

24. Max and Ron clearly took advantage of Len and convinced Len to deed the Property to his father despite the fact that by that deed, Len would have lost all collateral for his $870,000 loan obligation to Sun Trust.

25. The transfer in 2010 was a violation of Len's Deed of Trust and Note with Sun Trust Bank.

26. At the time of the attempted Quitclaim Deed, in July, 2010, Len's only significant asset was the Property. At all relevant times, Len worked only part time and had limited income and assets. At all times following the transfer in 2010, Len was insolvent. His liabilities exceeded his assets and his income was insufficient to pay his obligations, including the Sun Trust Deed of Trust Note payments.

27. At no time, since 2007, including, but not limited to, the time of the Quitclaim Deed in July, 2010, did Max make any payments to Len and Len received no property or other value from Max related to the Trust or Quitclaim Deed.

28. Max asserts that he intended to record the Quitclaim Deed in 2010 but had no money to pay the required recording and transfer taxes. The Quitclaim Deed has never been recorded and Len remains the titled owner of the Property.

29. Toward the end of the Superior Court litigation with the Plaintiffs, which resulted in the Judgment, Max concocted a scheme to attempt to keep the Property for himself in the face of a pending substantial judgment award to the Plaintiffs.

30. In discussions with his newly hired bankruptcy counsel, Marc Albert (Stinon LLP

("Albert"), Max learned that if the Property was owned by Len, it could not be exempted in bankruptcy and would be subject to attachment and sale to partially satisfy the eventual judgments. These conversations took place in late 2017 and early 2018.

31. Max also learned from Albert that if Max could claim he is the actual owner of the Property, he could claim the Property exempt in his subsequent bankruptcy proceeding and, due to D.C.'s generous homestead exemption, Max could then claim the entire equity in the Property as exempt from execution by the Plaintiffs.

32. Because Len was not residing in the Property he could not claim the benefit of the D.C. homestead exemption.

33. In early 2018, less than a month prior to the Superior Court trial, Max and Len, for the first time, alleged and produced a copy of the 2010 trust ("the Trust") and quitclaim deed ("the Quitclaim Deed") and sought to exclude Len from the Superior Court litigation by asserting Max was the real owner of the Property. The Superior Court summarily denied Max's attempt and the trial continued, resulting in the Judgment. The Judgment is now final and binding on all parties as a result of the pending final distribution and closing of Len's Estate in this Court and the Confirmed Plan in Max's Bankruptcy.

34. The fire occurred in June, 2015. From that time, until February or March, 2018, no one resided in the Property. During that time, and continuing after Max's Bankruptcy filing until November, 2019, no payments were made on the Sun Trust Deed of Trust Note ("the Sun Trust Note") with the exception of one payment made by Max from the insurance proceeds he received as a result of the fire damage.

35. According to the schedules filed in Max's bankruptcy, as of the commencement of his bankruptcy case, the only lien creditors were (IRS secured claim - $ 6,768.66, claim) and Sun

Trust Mortgage ($1,030,825.86).  The balance of the Sun Trust Note as of October 26, 2018 was $1,141,021.14.  Although Max claims he was the sole party responsible for all payments on the Sun Trust Loan, and made all loan payments, no payments have been made since prior to 2018 (with the exception of one payment from insurance proceeds) and the current balance is increasing at the rate of approximately $7800, month as of October, 2019.  Sun Trust sold its Note, in 2019, to U.S. Bank National Association/Select Portfolio Servicing, Inc. ("U.S. Bank").  Pursuant to an agreement reached with U.S. Bank, Max is required to make monthly payments of approximately $8,300.   Upon information and belief, Max has been making the required payments since approximately November, 2019.  *See*, Exhibit B, Confirmed Plan, p. 8, ¶ 3.3.

36.  On September 25, 2018, the Bankruptcy Court for the District of Columbia (Teel, J.)("the DC Bankruptcy Court")  entered a Memorandum and Order overruling the Estates' Objections to the Debtor's claim of Exemption ("the Exemption Ruling").  The Estates timely appealed to the United States District Court for the District of Columbia ("the District Court").

37. On or about January 2, 2020, the District Court issued an order remanding the appeal to the Bankruptcy Court "the Remand Order" for determination of issues raised by the Plaintiffs in a Motion seeking to add to the appellate record or, alternatively, to remand ("the District Court Motion").  Simultaneously, with this Complaint, the Plaintiffs are filing a Motion seeking to have the DC Bankruptcy Court "reconsider" its Exemption ruling based upon those issues raised in the District Court Motion and the Remand Order.

38.  In the Exemption Ruling, the D.C. Bankruptcy Court ruled that Max was the owner of the Property by virtue of the 2010 Quitclaim Deed.  The Court also determined, however, that the trustee's avoiding powers (11 U.S.C. §§ 544, *et seq.*) could result in the recovery of the Property for the benefit of the creditors of the  Len's estate and, therefore, that those avoiding

powers could result in a recovery of the Property, or its value, for the benefit of creditors whether or not Max's exemption is upheld on appeal. The Court made no final determination of the effect of the trustee's avoiding powers leaving that to the trustee of Len's bankruptcy estate.

39. No deed has been recorded naming Max as Trustee or owner. However, as discussed above, the Confirmed Plan provides that the Confirmation Order constitutes a recordable order conveying the Property to the defendant, Max Salas. Other than the original deed dated 2007 and the Confirmation Order, no deeds or other documents of title have been filed related to the Property.

40. Whether or not the Trust or Quitclaim Deed was ever in effect, or was abandoned after 2010, all indicia of ownership of the Property was held by Len though the date of Max's bankruptcy and there are no records in the D.C. Recorder of Deeds Office, or in any other public record, that Max is the owner of the Property.

41. Pursuant to an Order of this Court dated June 12, 2019 ("the Tennessee Order"), the Trustee in Len's Bankruptcy was authorized to sell the Estate's interest in the Trustee's avoidance and recovery rights under, *inter alia*, 11 U.S.C. §§ 544 through 551. A copy of the Tennessee Order is attached hereto as **Exhibit C**.

42. On July 23, 2019 the Trustee in Len Salas' case, pursuant to the Tennessee Order, held an auction sale to auction the bankruptcy estate's interest in the available avoidance and recovery actions pursuant to 11 U.S.C. §§544 through 553. The Plaintiffs herein, the Estates, were the successful bidders. *See* Exhibit A, Trustee's Report of Sale.

43. No payments or other value were transferred from, or by, Max to Len related to the transfer of the Property, either in 2010, or at any other time. According to Len, he has never received any compensation, remuneration, property or anything else of value related to the

Property, the Quitclaim Deed or the Sun Trust Loan.

44. Max valued the Property at $2.5 Million on the Schedules filed in Max's Bankruptcy in or about May, 2018. The Property was appraised in or about August, 2019, for approximately$2.4 Million.

45. At the time of the transfer in 2010, the Property was worth in excess of $1.5 Million.

## COUNT I

### (Declaratory Judgment Regarding Plaintiffs' Bona Fide Purchaser Status)

46. The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 45 hereof, the same as if those paragraphs were restated in full, hereat.

47. Pursuant to 11 U.S.C. § 544 (a), the Plaintiffs, as purchasers of the Trustee's avoidance and recovery powers have the status, as of the date of the Len Salas bankruptcy petition, namely, May 2, 2018, of a bona fide purchaser of real property from the debtor and a judicial lien holder.

48. Under Code § 544 (a)(3) the trustee's bona fide purchaser status gives the Plaintiffs priority over subsequently recorded interests in the Property.

49. Under D.C. Code, § 42-401:

Any deed conveying real property in the District, or interest therein, ...shall be held to take effect from the date of the delivery thereof, except that **as to creditors and subsequent bona fide purchasers** and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the Recorder of Deeds for record.

50. As a result, the Plaintiffs have a superior and priority interest in the Property ahead of any interest acquired by Max Salas and, therefore, the Property should be turned over to the Plaintiffs, or sold to recover the net equity for their benefit.

WHEREFORE, as to Count I, the Plaintiffs pray for a declaratory judgment in their favor, declaring as follows:

1. That the Plaintiffs are the owners of the Property located at 1610 Riggs Place, NW, Washington, DC;

2. That the Plaintiffs are entitled to immediate possession of the Property; or, alternatively,

3. That the Plaintiff are entitled to sell the Property and to retain the net proceeds from such a sale;

4. That the Len and Max are directed to take all actions, sign all documents and perform all acts necessary to transfer or sell the Property as set forth above; and

5. For such other and further relief as may be just and proper.

## COUNT II

### (Declaratory Judgment Regarding Plaintiffs' Judicial Lienholder Status)

51. The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 50 hereof, the same as if those paragraphs were restated in full, hereat.

52. As of the commencement of this case, April 18, 2018, the trustee has, without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien, whether or not such creditor exists. Code §544 (a)(1).

53. The Plaintiffs are the owners of all of the Trustee's rights and powers under Code §§

544, *et seq.*

54.  A judicial lien creditor, under the laws of the District of Columbia, has a superior interest to the Property than that of a competing creditor or owner who has not recorded an interest in the Property.

WHEREFORE, as to Count II, the Plaintiffs pray for a declaratory judgment in their favor, as follows:

1. Declaring and establishing that the Plaintiffs have a judgment lien against the Property located at 1610 Riggs Place, NW, Washington, DC, as of April 18, 2018 in the amounts of $7.5 Million (Brekelmans) and $7.7 Million (McLoughlin), respectively; and

2.  Entering a judgment or order confirming the Plaintiffs' judgment liens against the Property totaling $15.2 Million; and

3.  Directing, declaring and confirming that the Plaintiffs are entitled to immediately execute on their judgment lien against the Property; and

4. For such other and further relief as may be just and proper.

## COUNT III

**Declaratory Judgment Regarding Plaintiffs' Status as Trustee as Creditor with Unsatisfied Execution**

55.  The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 54 hereof, the same as if those paragraphs were restated in full, hereat.

56.  The Plaintiffs, as purchasers of the avoidance and recovery powers of the Trustee of Len's Bankruptcy, have the status, as of the commencement of Len's Bankruptcy, by virtue of 11 USCS § 544(a)(2), all of the rights and powers of a creditor that had delivered a writ of

execution against Len's interest in the Property, which execution was returned unsatisfied.

57.  The Plaintiffs assert that their status as a creditor under Code § 544 (a)(2) gives them a superior interest in the Property such that they are entitled to recover the Property, or its equity, for their benefit.

WHEREFORE, as to Count III, the Plaintiffs pray for a declaratory judgment in their favor, as follows:

1. Declaring and establishing that the Plaintiffs have a superior claim to the Defendant's against the Property located at 1610 Riggs Place, NW, Washington, DC, as of April 18, 2018 in the amounts of $7.5 Million (Brekelmans) and $7.7 Million (McLoughlin), respectively; and

2.  Directing, declaring and confirming that the Plaintiffs are entitled to the sale of the Property to satisfy their claims; and

3. For such other and further relief as may be just and proper.

## COUNT IV

### (Fraudulent Conveyance - Code § 548 (a))

58.  The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 57 hereof, the same as if those paragraphs were restated in full, hereat.

59.  The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because it was made with the actual intent to defraud creditors and potential creditors of Len Salas, including Sun Trust Bank, by transferring the Property to Max without permission.

60.  The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because it was made with the actual intent to defraud creditors and potential creditors including all parties having claims related to the Property, including the Plaintiffs.

61. The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because, by transferring the only major asset of Len to his father, the transfer was likely to, and did, make Len insolvent and unable to pay his mortgage obligations to Sun Trust Bank.

62. The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because it was made with the actual intent to defraud creditors and potential creditors, including those having claims related to the Property, such as taxing authorities, utilities, and rentors, such as Nina and Michael and, therefore, the Estates.

63. The transfer was a fraudulent conveyance pursuant to Code § 548 because the alleged transfer was made for less than reasonably equivalent value. Len received no compensation or property of value and gave up property worth in excess of $2 Million while remaining solely obligated on a Deed of Trust Note to Sun Trust bank that was in default at the time of the alleged transfer.

64. Len was either insolvent at the time of the transfer, or the transfer made him insolvent since the Property was his only significant asset and he still remained liable on the Sun Trust Loan after the alleged transfer.

65. The transfer of the Property in 2010 by Quitclaim Deed was made after two years prior to Max's Bankruptcy because pursuant to Code § 548 (d)(1) the transfer of real property is deemed perfected when the deed is recorded.

WHEREFORE, as to Count IV , the Plaintiffs pray for judgment as follows:

1. That the attempted transfer of the Property from Len to Max is a fraudulent conveyance under Code § 548 (a); and

2. That the conveyance is recovered or avoided so that the Property is owned and controlled by the Plaintiffs pursuant to their purchase of the Trustee's avoidance and recovery

rights in Len's Bankruptcy; and

3. That any further transfer or disposition of the Property is enjoined; and

4. That the Property be sold at public auction and the proceeds, after payment of closing costs and priority secured claims shall be paid to the Plaintiffs, pro rata; and

5. For such other and further relief as may be just and proper.

## COUNT V

### (Fraudulent Conveyance - D.C.)

66. The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 65 hereof, the same as if those paragraphs were restated in full, hereat.

67. The Plaintiffs, as the holders of the rights and claims of the Trustee, may avoid any transfer that is voidable under applicable law pursuant to Code § 544 (b) (1).

68. Under the law of the District of Columbia, the transfer of the Property alleged herein, is a fraudulent conveyance because the transfer was performed with fraudulent intent as to existing creditors, such as the IRS, other taxing authorities, Sun Trust Bank, and others, including the Plaintiffs and was made for less than reasonably equivalent value, all as specifically prohibited by D.C. Code § 28-3104, *et seq.*

69. A transfer made is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. D.C. Code § 28-3105

70. A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made

the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

71.  In the District of Columbia, a transfer is made:

(A) With respect to an asset that is real property other than a fixture, including the interest of a seller or purchaser under a contract for the sale of the asset, when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee.

D.C. Code § 28-3106

72. In an action for relief against a transfer or obligation under D.C. law, a creditor may obtain:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee...;
(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
(B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
(C) Any other relief the circumstances may require.

D.C. Code § 28-3107

WHEREFORE, as to Count V, the Plaintiffs pray for an order:

1. Avoiding the transfer or attempted transfer of the Property; and

2.  Providing for an attachment against the Property on such terms as the Court may order; and

3.  Enjoining any further disposition of the Property or allowing the placement of any other liens or encumbrances against the Property pending sale or other disposition approved by

the Court; and

4.  Such other and further relief as may be just and proper.

## COUNT VI

### (Recovery of Post-Petition Transactions)

73.  The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 72 hereof, the same as if those paragraphs were restated in full, hereat.

74.  The Plaintiffs, as purchasers of the claims and rights of Len's Trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and that is not authorized under this title.

75.  If the transfer of Len's interest in the Property was not made or perfected until after the commencement of Len's Bankruptcy, such transfer is a post-petition transfer avoidable and recoverable under Code § 549.

76.  Under the Confirmed Plan, the transfer is effected by the recording of the Confirmation Order, an act which would constitute a preference or fraudulent conveyance under Code §§ 547 and 548 or otherwise avoidable through the Trustee's strong arm statutory statuses under Code § 544 (a).

77.  To the extent the transfer of Len's interest in the Property did not occur, or was not perfected, until after the commencement of Len's case (April 18, 2018) the transfer, to the extent recoverable, or avoidable under Code §§ 544, *et seq.* is avoidable pursuant to Code § 549.

WHEREFORE, as to Count VI, the Plaintiffs pray for an order:

1.  Avoiding the transfer, or attempted transfer, of the Property from Len to his father; and

2. Authorizing and directing the sale of the Property for the benefit of the Plaintiffs; or, alternatively, any remedy available to the Plaintiffs including those enumerated in Code § 550 (a)

3. For such other and further relief as may be just and proper.

## COUNT VII

### (Liability of Transferee)

77 . The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 76 hereof, the same as if those paragraphs were restated in full, hereat.

76. The Defendant, Max Salas, is the transferee of the alleged transfer which is the subject of this Complaint.

77. Under Code § 550 (a) the trustee may recover, for the benefit of the estate, the property transferred or, upon court order, the value of the property.

WHEREFORE, as to Count VII, the Plaintiffs pray for an Order:

1. To turn over the Property; or, alternatively,

2. To auction the sale, or other public sale, upon reasonable notice, and to turn over the net proceeds of such sale, subject to court approval of the amount of such proceeds, to the Plaintiffs; and

3. For such other and further relief as may be just and proper.


LAW OFFICE OF PHILIP J. MCNUTT, PLLC


By: /s/ Philip J. McNutt
Philip J. McNutt
11921 Freedom Drive, Ste 584

Reston, VA 20190
703-904-4380
202-379-9217 (fax)

Pmcnutt@mcnuttlawllc.com
BUTCH, PORTER & JOHNSON, PLLC

By:  /s/ Taylor A. Cates
Taylor A. Cates
130 North Court Avenue
Memphis, TN 38103
901-524-5165
901-524-5000 (fax)

Tacates@bpjlaw.com

ATTORNEYS FOR THE PLAINTIFFS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:                                          CASE NO. 18-02662-MH3-7
LEN SALAS,                                      CHAPTER 7
                                                JUDGE MARIAN HARRISON
          Debtor.

## TRUSTEE'S REPORT OF SALE

The trustee, Michael Gigandet, makes the following report of sale of the debtor's potential causes of action concerning the real estate located at 1610 Riggs Place, NW, Washington, D.C, in the above public auction on July 23, 2019. Notice of this sale was provided to all creditors and parties in interest by Trustee's Notice of Motion to Sell Property mailed on April 10, 2019, and a supplemental notice of auction was mailed on June 27, 2019. A notice of rescheduled auction was filed on July 16, 2019. By signature below, the trustee hereby certifies that the objections to the sale were overruled. The order authorizing the sale was entered on June 12, 2019.

The property sold for $156,000.00. The bill of sale is attached.

The debtor is not entitled to an exemption from the sale of this property.

Respectfully submitted,

**LAW OFFICE OF MICHAEL GIGANDET**
**/s/ Michael Gigandet**
_____
Michael Gigandet, Trustee #11498
208 Centre Street
Pleasant View, TN 37146
615-746-4949
Fax: 615-746-4950
michael@mgigandet.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Trustee's Report of Sale has been forwarded to the U. S. Trustee, 318 Customs House, 701 Broadway, Nashville, TN 37203, on this the 14th day of August, 2019.

**/s/Michael Gigandet**

_____

Michael Gigandet

Case 3:23-cv-00827   Document 7-4   Filed 10/04/23   Page 74 of 531 PageID #: 131
Case 3:18-bk-02682   Doc 191   Filed 08/14/19   Entered 08/14/19 10:23:44   Desc Main
Document     Page 2 of 4

26

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### at Nashville

In re:                                              :

   LEN SALAS                          : Case No. 3:18-bk-02662
                              Chapter 7

_____Debtor_____ :_____

## SALE OF ESTATE PROPERTY
## FREE AND CLEAR OF LIENS AND INTERESTS

     IN ACCORDANCE WITH the Trustee's Motion and Notice of Sale of Property dated April 10, 2019, this Court's Order of June 12 , 2019 (D-179) approving bidding procedures and the Trustee's sale, the Trustee's Supplemental Notice of Auction dated June 27, 2019 and the Trustee's Notice of Rescheduled Auction dated July 16, 2019, the Trustee having conducted a public auction sale of certain property of the Debtor's estate, on July 23, 2019, upon notice to all creditors and parties in interest, the Trustee having reported the results of the auction sale at a hearing held herein on July 23, 2019, the Trustee hereby confirms the sale of property of the above captioned estate, as follows:

     1. _Property conveyed_. All of the Trustee's and the Len Salas Estate's right, title and interest in and to each and every claim and recovery action to which the Trustee or this estate may have, under the provisions of 11 U.S.C. §§ 544 through 553, as applicable, related to the property located at 1610 Riggs Place, NW, Washington, DC ("the DC Property") .

     2. _Purchaser_. the Trustee hereby transfers and conveys all property rights and interests conveyed hereby to the Estate of Michael Patrick McLoughlin and the Estate of Nina Brekelmans, by and through their trustees and representatives, for and in consideration of the total sum of $156,000, receipt of which is hereby acknowledged.

     3. The Property is conveyed free and clear of all interests, claims and rights of all creditors and parties.

July 31, 2019                          For the Seller:

                       MICHAEL GIGANDET, TRUSTEE

                       By: _____
                            Michael Gigandet

SIGNATURES CONTINUE ON NEXT PAGE

July 31, 2019

For the Purchaser:

THE ESTATE OF MICHAEL PATRICK
MCLOUGHLIN AND THE ESTATE OF NINA
BREKELMANS

By: _Philip J. McNutt_

    Philip J. McNutt, attorney for the Estate of
    Michael Patrick Mcloughlin and the Estate
    of Nina Brekelmans

Case 3:18-bk-02662   Doc 191   Filed 08/14/19   Entered 08/14/19 10:23:44   Desc Main
Case 3:23-cv-00827   Document   Filed 10/04/23   Page 76 of 531   PageID #: 133

28

The order below is hereby signed.

Signed: January 28 2020



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge


UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                         )
                              )
MAX E. SALAS,                 )    Case No. 18-00260
                              )    (Chapter 11)
            Debtor.           )

ORDER CONFIRMING DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

At the confirmation hearing of January 22, 2020, the court approved modifications of the then-pending proposed plan that are not adverse to any creditors, and the debtor later that day filed the *Third Amended Chapter 11 Plan of Reorganization Dated January 22, 2020* (Dkt. No. 301) incorporating those modifications. The court having determined after hearing on notice (the confirmation hearing of January 22, 2020) that the requirements for confirmation set forth in 11 U.S.C. § 1129(a) and 1129(b) have been satisfied with respect to the then-pending plan as thus modified, it is

ORDERED that:

1.    Confirmation of Plan.  The *Third Amended Chapter 11 Plan of Reorganization Dated January 22, 2020* (Dkt. No. 301) filed on January 22, 2020, a copy of which is attached hereto, is confirmed.

2.    Plan's Injunction.  Although the confirmed plan's § 4.7 ("Discharge of Debtor and Injunction") provides for an injunction, that injunction is not against conduct not otherwise enjoined under the Bankruptcy Code and shall not be construed as enjoining conduct not otherwise enjoined under the Bankruptcy Code.

3.    Plan's Release of Claims.  Although the confirmed plan's § 4.7 ("Discharge of Debtor and Injunction") provides for a release of the debtor from all claims, that release shall not be construed as providing any greater release of claims than the release of claims arising from the debtor's discharge and from the binding effect of the plan regarding the rights of creditors and administrative claimants.

4.    Recordation of Order to Confirm Title Ownership in Property.  The debtor is hereby authorized and directed to take any and all actions necessary or appropriate to confirm the debtor's title ownership interest in the real property located at 1610 Riggs Place NW, Washington, DC 20009 within the land records of the District of Columbia, in conformance with the provisions of this Order and the Plan, subject to the limitations and

2

reservation of rights described therein.

    5.  <u>Immediate Effectiveness of Order</u>.  This Order shall be effective immediately upon entry pursuant to Fed. R. Bankr. P. 7062 and 9014, and no automatic stay of execution, pursuant to Fed. R. Civ. P. 62(a), applies with respect to this Order.

    6.  <u>Transmission of Order to Creditors</u>.  Within 7 days of entry of this order, the debtor's counsel shall file a certificate of mailing a copy of this Order, with the attached copy of the *Third Amended Chapter 11 Plan of Reorganization Dated January 22, 2020*, to all entities required to be included on the list required under Fed. R. Bankr. P. 1007(a)(1) and all known administrative claimants in the case (except for entities previously sent a copy of the *Third Amended Chapter 11 Plan of Reorganization Dated January 22, 2020* via electronic transmission in the court's Case Management/Electronic Case Filing system or via other authorized means of service).

    [Signed and dated above.]

Copies to: All recipients of e-notification of orders.

3

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-00260 |
| MAX E. SALAS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1     **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2     **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

    1.3    **Assets** means all assets of the Debtor as of the Effective Date.

    1.4    **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

    1.5    **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

    1.6    **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

    1.7    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

    1.8    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

    1.9    **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

    1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

    1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

    1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

    1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

    1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

    1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

    1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

1.17   **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18   **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19   **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20   **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21   **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22   **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23   **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

4

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    <u>General</u>.

5

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:23-cv-00987    Document 7-1    Filed 10/04/23    Page 84 of 531 PageID #: 141

36

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

    2.2    <u>Classification</u>.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1**: | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3**: | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5**: | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7**: | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8**: | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10**: | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:23-cv-00987     Document 7-1     Filed 10/04/23     Page 85 of 531 PageID #: 142

37

## ARTICLE III
## TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

    3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

    3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

    3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims)</u>:

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

    3.3    <u>Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property</u>

    Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

    3.4.    <u>Class 4: Allowed Secured Claim of IRS..</u>

    Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

    3.5.    <u>Class 5: District of Columbia Transfer & Recordation Tax Claim</u>

    Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

3.6.    Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

10

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1    <u>Plan Description and Means Funding of Plan.</u>

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    <u>Executory Contracts and Unexpired Leases</u>

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

### 4.3    Post Confirmation Date Litigation.

#### 4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

#### 4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

### 4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

### 4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

### 4.6    Distribution of Property Under the Plan.

12

   4.6.1 <u>Disputed Claims</u>.

  Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

  As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

   4.6.2 <u>Manner of Payment Under the Plan</u>.

  Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

   4.6.3 <u>Undeliverable Distributions and Distributions of less than $5</u>.

   (1) <u>Holding and Investment of Undeliverable Distributions</u>.

  If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

  There is no restriction on where the Debtor may hold Unclaimed Cash.

   (2) <u>Failure to Claim Undelivered Distributions</u>.

  Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan. In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

   (3) <u>Distributions of less than $5</u>.

  No payment shall be made to any creditor when the distribution is in an amount less than $5. Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

   4.6.4 <u>Rounding Of Distributions</u>. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

4.6.5    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

4.6.6    Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

4.7    Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:23-cv-00987    Document 7-1    Filed 10/04/23    Page 93 of 531 PageID #: 150

45

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

      4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

      4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

**ARTICLE V**

**CONFIRMATION**

      5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

15

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:23-cv-00987    Document 7-1    Filed 10/04/23    Page 94 of 531 PageID #: 151

46

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10   to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11   to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12   to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13   to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14   to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15   to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16   to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

17

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    <u>Exemption from Transfer Taxes</u>.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    <u>Modification of the Plan</u>.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    <u>Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    <u>Successors and Assigns</u>.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    <u>Saturday, Sunday or Legal Holiday</u>.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    <u>Post-Effective Date Effect of Evidences of Claims</u>.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

8.7     <u>Governing Law</u>.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8     <u>No Admissions</u>.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9     <u>Severability Of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    <u>Rules of Interpretation</u>.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

       8.11   <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020         By:    <u>/s/ Max E. Salas</u>
                                Max E. Salas, Debtor and Debtor-In-Possession

                                <u>/s/ Joshua W. Cox</u>
                                Marc E. Albert, No. 345181
                                Joshua W. Cox, No. 1033283
                                STINSON LLP
                                1775 Pennsylvania Ave., N.W., Suite 800
                                Washington, DC 20006
                                Tel. (202) 785-3020
                                Fax (202) 572-9999
                                marc.albert@stinson.com
                                joshua.cox@stinson.com
                                *Attorneys for*
                                *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-00260 |
| MAX E. SALAS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

_____

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d). Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture. An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3    **Assets** means all assets of the Debtor as of the Effective Date.

1.4    **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5    **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6    **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9    **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

1.17 **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18 **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19 **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20 **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21 **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim is not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement. Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim. A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22 **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23 **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order. If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date. Nothing herein shall prevent the Debtor from waiving the 30 day delay.

3

1.24   **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25   **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26   **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27   **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28   **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29   **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30   **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31   **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32   **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33   **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

1.34 **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35 **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36 **Petition Date** means April 18, 2018.

1.37 **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38 **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39 **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40 **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41 **Scheduled** means set forth on the Schedules.

1.42 **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43 **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44 **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45 **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1 <u>General</u>.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

The following is a designation of each Class of Claims under the Plan. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes. Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2    Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

**Class 1**:    All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes. This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired).

**Class 2**:    All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired).

**Class 3**:    U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired).

**Class 4**:    Allowed Secured Claim of IRS (Impaired).

**Class 5**:    District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired)

**Class 6**:    Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired).

**Class 7**:    All Remaining Allowed Unsecured Non-Priority Claims. (Impaired).

**Class 8**:    Allowed Unsecured Penalty Claim of the District of Columbia (Impaired).

**Class 9**:    Paid Hyundai Lease Titling Trust Lease claim (Unimpaired)

**Class 10**:    Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

6

# ARTICLE III
## TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

    3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

    3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

    3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims):</u>

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

3.3    Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

3.4.    Class 4: Allowed Secured Claim of IRS..

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

3.5.    Class 5: District of Columbia Transfer & Recordation Tax Claim

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

3.6.    Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

### 3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

### 3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

### 3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

### 3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

**ARTICLE IV**
**MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

4.1     Plan Description and Means Funding of Plan.

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2     Executory Contracts and Unexpired Leases

11

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

### 4.3    Post Confirmation Date Litigation.

#### 4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

#### 4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

### 4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

### 4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

### 4.6    Distribution of Property Under the Plan.

12

4.6.1    <u>Disputed Claims</u>.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2    <u>Manner of Payment Under the Plan</u>.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3    <u>Undeliverable Distributions and Distributions of less than $5</u>.

(1)    <u>Holding and Investment of Undeliverable Distributions</u>.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)    <u>Failure to Claim Undelivered Distributions</u>.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan. In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)    <u>Distributions of less than $5</u>.

No payment shall be made to any creditor when the distribution is in an amount less than $5. Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4    <u>Rounding Of Distributions</u>. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6    Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7    Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

    4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

    4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

## ARTICLE V

## CONFIRMATION

    5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1     <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

      6.1.1   The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

      6.1.2   The Debtor has delivered $225,000 to the Plan Fund.

      6.1.3   Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2     <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1     <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

      7.1.1   to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

      7.1.2   to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

      7.1.3   to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

      7.1.4   to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1     <u>Exemption from Transfer Taxes</u>.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2     <u>Modification of the Plan</u>.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3     <u>Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4     <u>Successors and Assigns</u>.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5     <u>Saturday, Sunday or Legal Holiday</u>.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6     <u>Post-Effective Date Effect of Evidences of Claims</u>.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

8.7    <u>Governing Law</u>.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8    <u>No Admissions</u>.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9    <u>Severability Of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    <u>Rules of Interpretation</u>.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

8.11   <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020          By:      /s/ Max E. Salas
                                          Max E. Salas, Debtor and Debtor-In-Possession


                                 /s/ Joshua W. Cox
                                 Marc E. Albert, No. 345181
                                 Joshua W. Cox, No. 1033283
                                 STINSON LLP
                                 1775 Pennsylvania Ave., N.W., Suite 800
                                 Washington, DC 20006
                                 Tel. (202) 785-3020
                                 Fax (202) 572-9999
                                 marc.albert@stinson.com
                                 joshua.cox@stinson.com
                                 *Attorneys for*
                                 *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-00260 |
| MAX E. SALAS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

    Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

    In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

    1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

    1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d). Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture. An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3    **Assets** means all assets of the Debtor as of the Effective Date.

1.4    **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5    **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6    **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9    **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    <u>General</u>.

5

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2    Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

**Class 1:**     All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired).

**Class 2**:     All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired).

**Class 3:**     U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired).

**Class 4**:     Allowed Secured Claim of IRS (Impaired).

**Class 5:**     District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired)

**Class 6**:     Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired).

**Class 7:**     All Remaining Allowed Unsecured Non-Priority Claims. (Impaired).

**Class 8**:     Allowed Unsecured Penalty Claim of the District of Columbia (Impaired).

**Class 9**:     Paid Hyundai Lease Titling Trust Lease claim (Unimpaired)

**Class 10:**    Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE III
# TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

### 3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

### 3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

### 3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses. Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court). Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

### 3.2    <u>Classes 2 (Priority Claims)</u>:

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

     3.3    <u>Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property</u>

     Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

     3.4.    <u>Class 4: Allowed Secured Claim of IRS..</u>

     Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

     3.5.    <u>Class 5: District of Columbia Transfer & Recordation Tax Claim</u>

     Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

    3.6.    <u>Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)</u>

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

10

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1    <u>Plan Description and Means Funding of Plan.</u>

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    <u>Executory Contracts and Unexpired Leases</u>

11

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

### 4.3    Post Confirmation Date Litigation.

#### 4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

#### 4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

### 4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

### 4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

### 4.6    Distribution of Property Under the Plan.

12

4.6.1    <u>Disputed Claims</u>.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2    <u>Manner of Payment Under the Plan</u>.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3    <u>Undeliverable Distributions and Distributions of less than $5.</u>

(1)    <u>Holding and Investment of Undeliverable Distributions</u>.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)    <u>Failure to Claim Undelivered Distributions</u>.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan. In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)    <u>Distributions of less than $5</u>.

No payment shall be made to any creditor when the distribution is in an amount less than $5. Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4    <u>Rounding Of Distributions</u>. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6    Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7    Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

      4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

      4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

**ARTICLE V**

**CONFIRMATION**

      5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

15

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

> 6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

> 6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

> 6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

> 7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

> 7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

> 7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

> 7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1     Exemption from Transfer Taxes.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2     Modification of the Plan.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3     Withdrawal of the Plan.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4     Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5     Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6     Post-Effective Date Effect of Evidences of Claims.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

8.7     <u>Governing Law</u>.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8     <u>No Admissions</u>.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9     <u>Severability Of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    <u>Rules of Interpretation</u>.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

8.11    <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020            By:     <u>/s/ Max E. Salas</u>
                                           Max E. Salas, Debtor and Debtor-In-Possession


                                   /s/ Joshua W. Cox
                                   Marc E. Albert, No. 345181
                                   Joshua W. Cox, No. 1033283
                                   STINSON LLP
                                   1775 Pennsylvania Ave., N.W., Suite 800
                                   Washington, DC 20006
                                   Tel. (202) 785-3020
                                   Fax (202) 572-9999
                                   marc.albert@stinson.com
                                   joshua.cox@stinson.com
                                   *Attorneys for*
                                   *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-00260 |
| MAX E. SALAS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1     **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2     **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3    **Assets** means all assets of the Debtor as of the Effective Date.

1.4    **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5    **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6    **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9    **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement. Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim. A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order. If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date. Nothing herein shall prevent the Debtor from waiving the 30 day delay.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

1.24 **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25 **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26 **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27 **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28 **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29 **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30 **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31 **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32 **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33 **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    <u>General</u>.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2    Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1**: | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3**: | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5**: | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7**: | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8**: | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10**: | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

## ARTICLE III
## TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

    3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

    3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

    3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims):</u>

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

3.3     Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim).  Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

3.4.    Class 4: Allowed Secured Claim of IRS..

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

3.5.    Class 5: District of Columbia Transfer & Recordation Tax Claim

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

3.6.    Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

10

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

**ARTICLE IV**
**MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

4.1    <u>Plan Description and Means Funding of Plan.</u>

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    <u>Executory Contracts and Unexpired Leases</u>

11

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

### 4.3    Post Confirmation Date Litigation.

#### 4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

#### 4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

### 4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

### 4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

### 4.6    Distribution of Property Under the Plan.

12

4.6.1    <u>Disputed Claims</u>.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2    <u>Manner of Payment Under the Plan</u>.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3    <u>Undeliverable Distributions and Distributions of less than $5.</u>

(1)    <u>Holding and Investment of Undeliverable Distributions</u>.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)    <u>Failure to Claim Undelivered Distributions</u>.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan. In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)    <u>Distributions of less than $5</u>.

No payment shall be made to any creditor when the distribution is in an amount less than $5. Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4    <u>Rounding Of Distributions</u>. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6    Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7    Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

    4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

    4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

## ARTICLE V

## CONFIRMATION

    5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

15

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1     Exemption from Transfer Taxes.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2     Modification of the Plan.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3     Withdrawal of the Plan.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4     Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5     Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6     Post-Effective Date Effect of Evidences of Claims.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

8.7     Governing Law.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8     No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9     Severability Of Plan Provisions.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    Rules of Interpretation.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

8.11    <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020          By:    /s/ Max E. Salas
                                        Max E. Salas, Debtor and Debtor-In-Possession


                                        /s/ Joshua W. Cox
                                        Marc E. Albert, No. 345181
                                        Joshua W. Cox, No. 1033283
                                        STINSON LLP
                                        1775 Pennsylvania Ave., N.W., Suite 800
                                        Washington, DC 20006
                                        Tel. (202) 785-3020
                                        Fax (202) 572-9999
                                        marc.albert@stinson.com
                                        joshua.cox@stinson.com
                                        *Attorneys for*
                                        *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-00260 |
| MAX E. SALAS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1     **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2     **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3     **Assets** means all assets of the Debtor as of the Effective Date.

1.4     **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5     **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6     **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7     **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9     **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10     **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11     **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12     **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13     **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14     **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15     **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16     **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

2

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:23-cv-00987   Document 7-1   Filed 10/04/23   Page 161 of 531 PageID #: 218

113

1.17   **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18   **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19   **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20   **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21   **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim is not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22   **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23   **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

3

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

4

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    <u>General</u>.

5

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2     Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1**: | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3**: | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5**: | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7**: | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8**: | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10**: | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

## ARTICLE III
## TREATMENT OF CLAIMS

3.1     <u>Administrative Claims</u>.

    3.1.1     <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

    3.1.2     <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

    3.1.3     <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2     <u>Classes 2 (Priority Claims):</u>

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

      3.3    <u>Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property</u>

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

      3.4.    <u>Class 4: Allowed Secured Claim of IRS..</u>

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

      3.5.    <u>Class 5: District of Columbia Transfer & Recordation Tax Claim</u>

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

3.6.    Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

### 3.7.   Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

### 3.8.   Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

### 3.9.   Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

### 3.10.   Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

10

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1    Plan Description and Means Funding of Plan.

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    Executory Contracts and Unexpired Leases

11

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

4.3     Post Confirmation Date Litigation.

4.3.1     Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

4.3.2     Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

4.4     Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

4.5     Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

4.6     Distribution of Property Under the Plan.

12

4.6.1   <u>Disputed Claims</u>.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2   <u>Manner of Payment Under the Plan</u>.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3   <u>Undeliverable Distributions and Distributions of less than $5.</u>

(1)   <u>Holding and Investment of Undeliverable Distributions</u>.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)   <u>Failure to Claim Undelivered Distributions</u>.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan.  In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)   <u>Distributions of less than $5</u>.

No payment shall be made to any creditor when the distribution is in an amount less than $5.  Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4   <u>Rounding Of Distributions</u>.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

4.6.5    <u>Compliance With Tax Requirements</u>.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

4.6.6    <u>Application of Distributions</u>.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

4.7    <u>Discharge of Debtor and Injunction</u>.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

    4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

    4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

## ARTICLE V

## CONFIRMATION

    5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10   to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11   to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12   to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13   to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14   to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15   to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16   to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1     Exemption from Transfer Taxes.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2     Modification of the Plan.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3     Withdrawal of the Plan.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4     Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5     Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6     Post-Effective Date Effect of Evidences of Claims.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

8.7     Governing Law.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8     No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9     Severability Of Plan Provisions.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    Rules of Interpretation.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

8.11    Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020          By:     /s/ Max E. Salas
                                         Max E. Salas, Debtor and Debtor-In-Possession


                                         /s/ Joshua W. Cox
                                         Marc E. Albert, No. 345181
                                         Joshua W. Cox, No. 1033283
                                         STINSON LLP
                                         1775 Pennsylvania Ave., N.W., Suite 800
                                         Washington, DC 20006
                                         Tel. (202) 785-3020
                                         Fax (202) 572-9999
                                         marc.albert@stinson.com
                                         joshua.cox@stinson.com
                                         *Attorneys for*
                                         *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| | )    Case No. 18-00260 |
| MAX E. SALAS, | )    Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

       Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

       In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

       1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

       1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3     **Assets** means all assets of the Debtor as of the Effective Date.

1.4     **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5     **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6     **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7     **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9     **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

1.17 **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18 **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19 **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20 **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21 **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement. Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim. A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22 **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23 **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order. If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date. Nothing herein shall prevent the Debtor from waiving the 30 day delay.

3

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    General.

5

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2    Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1**: | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3**: | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5**: | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7**: | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8**: | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10**: | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

# ARTICLE III
# TREATMENT OF CLAIMS

3.1    Administrative Claims.

3.1.1    Class 1 Administrative Claims

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

3.1.2    Statutory Fees and Continuing Duties to the Office of the United States Trustee

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

3.1.3    Treatment and Payment of Administrative Claims.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    Classes 2 (Priority Claims):

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

3.3      Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured
         Claim against Property

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim).  Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

3.4.     Class 4: Allowed Secured Claim of IRS..

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

3.5.     Class 5: District of Columbia Transfer & Recordation Tax Claim

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

    3.6.    <u>Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)</u>

    Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case. Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

10

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1     Plan Description and Means Funding of Plan.

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2     Executory Contracts and Unexpired Leases

11

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

### 4.3    Post Confirmation Date Litigation.

#### 4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

#### 4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

### 4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

### 4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

### 4.6    Distribution of Property Under the Plan.

12

4.6.1    Disputed Claims.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2    Manner of Payment Under the Plan.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3    Undeliverable Distributions and Distributions of less than $5.

(1)    Holding and Investment of Undeliverable Distributions.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)    Failure to Claim Undelivered Distributions.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan. In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)    Distributions of less than $5.

No payment shall be made to any creditor when the distribution is in an amount less than $5. Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4    Rounding Of Distributions.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6    Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7    Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

      4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

      4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

## ARTICLE V

## CONFIRMATION

      5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8     to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    <u>Exemption from Transfer Taxes</u>.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    <u>Modification of the Plan</u>.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    <u>Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    <u>Successors and Assigns</u>.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    <u>Saturday, Sunday or Legal Holiday</u>.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    <u>Post-Effective Date Effect of Evidences of Claims</u>.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

8.7     Governing Law.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8     No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9     Severability Of Plan Provisions.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    Rules of Interpretation.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

8.11   <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020              By:      /s/ Max E. Salas
                                              Max E. Salas, Debtor and Debtor-In-Possession


                                     /s/ Joshua W. Cox
                                     Marc E. Albert, No. 345181
                                     Joshua W. Cox, No. 1033283
                                     STINSON LLP
                                     1775 Pennsylvania Ave., N.W., Suite 800
                                     Washington, DC 20006
                                     Tel. (202) 785-3020
                                     Fax (202) 572-9999
                                     marc.albert@stinson.com
                                     joshua.cox@stinson.com
                                     *Attorneys for*
                                     *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
In re:                                  )
                                        )       Case No. 18-00260
MAX E. SALAS,                           )       Chapter 11
                                        )
                Debtor.                 )
_____)

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**DATED JANUARY 22, 2020**

       Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

       In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

       1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

       1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3     **Assets** means all assets of the Debtor as of the Effective Date.

1.4     **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5     **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6     **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7     **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9     **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

3

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS**

2.1    General.

5

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

    2.2    <u>Classification</u>.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1**: | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3**: | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5**: | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7**: | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8**: | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10**: | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

## ARTICLE III
## TREATMENT OF CLAIMS

3.1     Administrative Claims.

3.1.1     Class 1 Administrative Claims

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

3.1.2     Statutory Fees and Continuing Duties to the Office of the United States Trustee

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

3.1.3     Treatment and Payment of Administrative Claims.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2     Classes 2 (Priority Claims):

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

    3.3    <u>Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property</u>

    Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

    3.4.    <u>Class 4: Allowed Secured Claim of IRS..</u>

    Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

    3.5.    <u>Class 5: District of Columbia Transfer & Recordation Tax Claim</u>

    Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

3.6.  Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

### 3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

### 3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

### 3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

### 3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1     <u>Plan Description and Means Funding of Plan.</u>

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2     <u>Executory Contracts and Unexpired Leases</u>

11

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

4.3    Post Confirmation Date Litigation.

4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

4.6    Distribution of Property Under the Plan.

12

### 4.6.1    Disputed Claims.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

### 4.6.2    Manner of Payment Under the Plan.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

### 4.6.3    Undeliverable Distributions and Distributions of less than $5.

#### (1)    Holding and Investment of Undeliverable Distributions.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

#### (2)    Failure to Claim Undelivered Distributions.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan.  In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

#### (3)    Distributions of less than $5.

No payment shall be made to any creditor when the distribution is in an amount less than $5.  Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

### 4.6.4    Rounding Of Distributions.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5   Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6   Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7   Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

       4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

       4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

**ARTICLE V**

**CONFIRMATION**

       5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

    6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

    6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

    6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

    7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

    7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

    7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

    7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10   to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11   to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12   to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13   to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14   to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15   to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16   to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

17

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    Exemption from Transfer Taxes.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    Modification of the Plan.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    Withdrawal of the Plan.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    Post-Effective Date Effect of Evidences of Claims.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

8.7      <u>Governing Law</u>.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8      <u>No Admissions</u>.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9      <u>Severability Of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10     <u>Rules of Interpretation</u>.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

8.11    <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020                By:      /s/ Max E. Salas
                                                Max E. Salas, Debtor and Debtor-In-Possession


                                                /s/ Joshua W. Cox
                                                Marc E. Albert, No. 345181
                                                Joshua W. Cox, No. 1033283
                                                STINSON LLP
                                                1775 Pennsylvania Ave., N.W., Suite 800
                                                Washington, DC 20006
                                                Tel. (202) 785-3020
                                                Fax (202) 572-9999
                                                marc.albert@stinson.com
                                                joshua.cox@stinson.com
                                                *Attorneys for*
                                                *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| | )   Case No. 18-00260 |
| MAX E. SALAS, | )   Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1     **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2     **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed
Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3    **Assets** means all assets of the Debtor as of the Effective Date.

1.4    **Avoidance Actions** means the claims for relief available to the Debtor or the
Estate under sections 544-550 of the Bankruptcy Code.

1.5    **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of
the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6    **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as
amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in
effect or hereafter amended.

1.7    **Bankruptcy Court** means the United States Bankruptcy Court for the District of
Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure
promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together
with the local rules of the Bankruptcy Court.

1.9    **Bar Date** means the date fixed as the last day for filing proofs of claim in the
Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims
(October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday,"
as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the
payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code)
against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or
Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed
against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation
Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the
Confirmation Order on its docket.

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

3

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

4

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS**

2.1    <u>General</u>.

5

The following is a designation of each Class of Claims under the Plan. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes. Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2    Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1**: | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes. This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3**: | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5**: | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7**: | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8**: | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10**: | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

# ARTICLE III
# TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims):</u>

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

3.3    Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

3.4.    Class 4: Allowed Secured Claim of IRS..

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

3.5.    Class 5: District of Columbia Transfer & Recordation Tax Claim

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

  3.6. <u>Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)</u>

   Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case. Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

### 3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

### 3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

### 3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

### 3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

10

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

**ARTICLE IV**
**MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

    4.1    <u>Plan Description and Means Funding of Plan.</u>

    This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

    Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

    4.2    <u>Executory Contracts and Unexpired Leases</u>

11

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

### 4.3    Post Confirmation Date Litigation.

#### 4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

#### 4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

### 4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

### 4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

### 4.6    Distribution of Property Under the Plan.

12

       4.6.1   <u>Disputed Claims</u>.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

       4.6.2   <u>Manner of Payment Under the Plan</u>.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

       4.6.3   <u>Undeliverable Distributions and Distributions of less than $5.</u>

       (1)  <u>Holding and Investment of Undeliverable Distributions</u>.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

       (2)  <u>Failure to Claim Undelivered Distributions</u>.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan.  In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

       (3)  <u>Distributions of less than $5</u>.

No payment shall be made to any creditor when the distribution is in an amount less than $5.  Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

       4.6.4   <u>Rounding Of Distributions</u>.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

        4.6.5   <u>Compliance With Tax Requirements</u>.

      In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

        4.6.6   <u>Application of Distributions</u>.

      If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

        4.7   <u>Discharge of Debtor and Injunction</u>.

      Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Plan; and (ii) *all Entities shall be precluded from asserting against the  Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

    4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

    4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

## ARTICLE V

## CONFIRMATION

    5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1     <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2     <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1     <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1     <u>Exemption from Transfer Taxes</u>.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2     <u>Modification of the Plan</u>.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3     <u>Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4     <u>Successors and Assigns</u>.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5     <u>Saturday, Sunday or Legal Holiday</u>.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6     <u>Post-Effective Date Effect of Evidences of Claims</u>.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

8.7     <u>Governing Law</u>.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8     <u>No Admissions</u>.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9     <u>Severability Of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    <u>Rules of Interpretation</u>.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

8.11    <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020               By:    /s/ Max E. Salas
                                              Max E. Salas, Debtor and Debtor-In-Possession


                                              /s/ Joshua W. Cox
                                              Marc E. Albert, No. 345181
                                              Joshua W. Cox, No. 1033283
                                              STINSON LLP
                                              1775 Pennsylvania Ave., N.W., Suite 800
                                              Washington, DC 20006
                                              Tel. (202) 785-3020
                                              Fax (202) 572-9999
                                              marc.albert@stinson.com
                                              joshua.cox@stinson.com
                                              *Attorneys for*
                                              *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

Marian F. Harrison
US Bankruptcy Judge



Dated: 6/12/2019

# IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | )    **CASE NO. 318-02662** |
| **LEN SALAS,** | ) |
| | )    **JUDGE MARIAN F. HARRISON** |
| **Debtor.** | ) |
| | )    **CHAPTER 7** |
| | ) |
| | ) |

---

## ORDER

---

This matter came before the Court on the Trustee's motion to sell, the objection of Creditors, Nicolaas J. Brekelmans and Gail Gregory Brekelmans, Co-personal Representatives of the Estate of Nina Brekelmans and Michael McLoughlin and Martha Johnson, Co-personal Representatives of the Estate of Michael Patrick McLoughlin (collectively "Estates Creditors"), and the objection of the U.S. Trustee, which was withdrawn at the end of the hearing. Based on the oral findings on the record, which are incorporated in this Order:

**IT IS ORDERED** that the motion to sell any potential avoidance actions against Max Salas and/or his bankruptcy estate under 11 U.S.C. §§ 544, 545, 547, 548, 549, and 553, as related to the real property located at 1610 Riggs Place, NW, Washington, D.C., is **GRANTED**, and the Estates Creditors' objection to the sale is **OVERRULED**.

Case 3:23-cv-00667   Document 7-11   Filed 07/10/09/04/23   Entered 06/12/19 14:18:33   Page 240 of 531 Page Desc Main
Case 3:18-bk-02662   Doc 179   Filed 06/12/19   Entered 06/12/19 14:18:33   Desc Main
Document   Page 1 of 3

192

**IT IS FURTHER ORDERED** that the Trustee shall draft a new notice of sale and file it with the Court. The new notice shall clearly state that the Trustee is selling any potential avoidance actions against Max Salas and/or his bankruptcy estate under 11 U.S.C. §§ 544, 545, 547, 548, 549, and 553, as related to the real property located at 1610 Riggs Place, NW, Washington, D.C.

**IT IS FURTHER ORDERED** that the Estates Creditors and the U.S. Trustee shall have until close of business on June 21, 2019, to provide the names, addresses, email addresses, and telephone numbers of any potential buyers.

**IT IS FURTHER ORDERED** that the Trustee shall provide the notice to all interested parties, the potential buyers that were identified by the Trustee, and the additional persons and/or entities, if any, provided by the Estates Creditors or the U.S. Trustee by June 28, 2019.

**IT IS FURTHER ORDERED** that any party interested in purchasing the property shall submit to the Trustee an offer, in writing, in an amount equal to or higher than $11,000, by close of business, on Tuesday, July 9, 2019.

**IT IS FURTHER ORDERED** that if no alternative bids are received, the Trustee shall notify the Court and submit an order approving the sale to Ron Salas for $10,000 in cash.

2

**IT IS FURTHER ORDERD** that if alternative bids are received, the Trustee shall conduct an auction on Tuesday, July 16, 2019, at 9:00 a.m., outside Courtroom 3, Customs House, 701 Broadway, Nashville, TN 37203, and report the results of the auction in open court that same date.

**IT IS SO ORDERED.**

**This Order was signed and entered electronically as indicated at the top of the first page.**

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| In re: | : | |
|   LEN SALAS | : | Case No. 18-02662-MH3-7 |
| Debtor | : | |
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS | : : : | |
| and | : | |
| MICHAEL MCLOUGHLIN AND MARTHA JOHNSON, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF MICHAEL PATRICK MCLOUGHLIN | : : : | |
| In their capacity as authorized representatives of the Estate of Len Salas | : : | |
| Plaintiffs | : | |
| v. | : | Adversary Proceeding No. 3:20-ap-90027 |
| MAX SALAS 1610 Riggs Place, NW Washington, DC | : : | |
| Defendant | : : | |

---

AMENDED COMPLAINT TO AVOID TRANSFERS AND RECOVER PROPERTY

COME NOW THE Plaintiffs herein, Nicolaas Brekelmans and Gail Gregory Brekelmans,

Co-personal Representatives Of the Estate of Nina Brekelmans ("Nina")("the Brekelmans

Estate") and Michael Mcloughlin and Martha Johnson, Co-personal Representatives of The Estate of Michael Patrick Mcloughlin ("Michael") ("the McLoughlin Estate") ("the Brekelmans Estate and the Mcloughlin Estate are hereinafter collectively sometimes referred to as "the Estates"), suing in their derivative capacity on behalf of the Estate of Len Salas, acting by and through their undersigned counsel and for their Complaint against the Defendant, Max Salas, allege as follows:

**Jurisdiction and Venue**

1.  This Court has jurisdiction under 28 U.S.C. § 1334 (b).  This matter involves causes of action under the trustee's avoiding powers purchased by the Plaintiffs from the Debtor's Estate.

2.  Venue lies in this court under 28 U.S.C. §1409 (a)(c) & (d).

3.  This matter involves property of the estate and claims of creditors of the Debtor's estate.

4.  This matter is a core matter involving Avoiding Powers of the trustee pursuant to 11 U.S.C. § 544, *et seq.* (hereinafter, all references to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* are cited as "Code, §").  ***See*** *inter alia*, 28 U.S.C. §157 (b)(1) and §157(b)(2) (A)(F)(H) & (0).

5.  The Plaintiffs have standing to pursue the causes asserted in this Complaint as the authorized representatives of the bankruptcy estate of Len Salas.

**Parties**

6.  The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively.  Nina and Michael were tragically killed in a fire at a residence in Washington, DC ("the Fire") which residence was owned by the Debtor, Len Salas and occupied and managed by his father, the Defendant, Max Salas.  The Plaintiffs herein, the

2

Estates, were the successful bidders at an auction sale of this bankruptcy estate's interest in the trustee's avoidance and recovery actions under Code, §§544, *et seq*. A copy of the Trustee's Report of Sale of those actions is attached hereto as Exhibit A.

7. The Defendant Max Salas, is the Debtor in Case No. 18-00260, in the United States Bankruptcy Court for the District of Columbia (hereinafter "Max"). Max filed a voluntary petition, under Chapter 11 of the Code in April, 2018.

7. Len Salas (hereinafter "Len"), is the Debtor is Case No. 3:18-bk-02662, filed in the United States Bankruptcy Court for the Middle District of Tennessee (Nashville) ("Len's Bankruptcy") on or about May 2, 2018. Len's Bankruptcy was converted from a Chapter 11 to a Chapter 7 bankruptcy on or about December 12, 2018.

8. This matter involves the recovery of property located at 1610 Riggs Place, NW, Washington, DC ("the Property") at which the Defendant, Max, presently resides. Alternatively, the Plaintiffs are seeking a fair market sale of the Property to recover its value, believed to be in excess of $1 Million above all prior and/or secured claims.

9. The Plaintiffs are seeking the relief sought, and the benefit resulting from the causes of action asserted in this Complaint through and on behalf of, the Len Salas bankruptcy estate ("the Estate").

10. Michael Gigandet, the Court appointed Trustee of the Estate, has declined to pursue the causes asserted herein and has also declined to join in this action. This Complaint is brought as a derivative action on behalf of the Estate of Len Salas.

**Background for All Counts**

11. In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment"). The Judgment resulted from a fire at the Property which,

3

at the time, Max used as rental property and rented to tenants including Nina and Michael. Through the gross negligence of Max and his deliberate failure to make required safety improvements to the Property, Nina and Michael tragically lost their lives in a horrific and traumatic manner. Len was named a Defendant since he was, at all times, the owner of the Property, including at the time of the fire (June, 2015).

12. The Estates filed separate lawsuits against Max and Len in 2015. After a lengthy period of discovery and pre-trial matters, the case was tried in late March, 2018 resulting in the Judgment. Although Max and Len both appealed the Judgment, there has been no prosecution of the appeal and no stay entered in the appeal. On January 28, 2019, the Bankruptcy Court for the District of Columbia entered an Order Confirming Max's Third Amended Plan of Reorganization ("the Confirmed Plan"). Under the terms of the Confirmed Plan, entered in Max's Bankruptcy on or about January 31, 2020, Max is withdrawing his appeal of the Judgment(s). *See*, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 9, ¶3.6. A copy of the Confirmed Plan and Order Confirming the Third Amended Plan are attached collectively as Exhibit B.

13. Shortly after the entry of the Judgment Max and Len filed separate bankruptcies, Max in the District of Columbia (Case No. 18-00260)("Max's Bankruptcy") and Len in this Court (Case No. 18-02662) ("Len's Bankruptcy").

14. At the time of the bankruptcy filings by Len and Max, Len was, and still is, the title owner of property located at 1610 Riggs Place, NW, Washington, D.C. ("the Property"). The Property was purchased by Len in 2007 after his father, Max, and Max's then wife, divorced. In order to purchase the Property, Max deeded the Property to Len ("the 2007 Deed"). Len then obtained a Deed of Trust from Sun Trust Bank for $870,000 ("the Sun Trust Loan"). The

4

proceeds of the Sun Trust Loan were paid to Max's wife as part of the divorce settlement.

15. From 2007 through the present, Len has remained the sole owner of the Property. Max's Confirmed Plan provides that the Confirmation Order constitutes "an Order conveying the Property to Max Salas". *See*, Exhibit B, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 12, ¶ 4.4.

16. At the time of Len's purchase of the Property in 2007, Max had tax liens and other obligations which made it impossible for Max to obtain a loan on the Property. In addition, Max had a tax evasion conviction on his record. Those and other credit and tax issues continued through Max's Bankruptcy. Max has consistently attempted to hide assets from the IRS and other taxing authorities, including his potential interest in the Property.

17. According to Max, he tried to refinance the Property several times after 2007, all to no avail. In fact, at least through 2015 every attempt to refinance the Property required the participation of Len as a co-signer or co-obligor.

18. From sometime after 2007 through the date of the fire, Max rented out rooms at the Property. The tenants, including Nina and Michael, signed leases under the name of "the CLR Trust" and Max signed each lease as Trustee. According to Len, the CLR Trust, was a trust created by Max for the benefit of his three sons, Chase, Len and Ron.

19. According to Max, the lease payments were put into an account in the name of the CLR Trust and were used to pay for the Deed of Trust obligations and other expenses associated with the Property.

20. Through the date of the fire and at all times prior to the bankruptcy filings, all governmental notices and tax bills and notices regarding the Property were in Len's name.

21. Consistent with his history of attempting to dodge tax liability, Max did not want the

5

Property, or any matters related to the Property, in his name so he could avoid any taxes or publicly recorded or confirmed ownership interest.

22. Similarly, Max did not want to record any income in his name from the leasing of the Property. As a result, he deposited all of the income from the leases into the "CLR Trust" bank account.

23. According to Max and Len, in July, 2010, Max and Len traveled to Colorado in July 2010 to visit Ron, one of Max's sons. Ron was a recent law school graduate and admitted to practice law in Colorado.

24. While in Colorado, Len and Max executed a very simple trust agreement which Ron stated he prepared using a Colorado form even though the alleged trust property, the Property, was located in D.C. Ron also prepared a form "Quitclaim Deed," which Len also signed ("the Quitclaim Deed").

25. Max asserts that Len, who is very unsophisticated in business and legal transactions, deeded the Property to his father while Len remained the sole obligor on the Sun Trust Deed of Trust Note ("the Note").

26. Max and Ron clearly took advantage of Len and convinced Len to deed the Property to his father despite the fact that by that deed, Len would have lost all collateral for his $870,000 loan obligation to Sun Trust.

27. The transfer in 2010 was a violation of Len's Deed of Trust and Note with Sun Trust Bank.

28. At the time of the attempted Quitclaim Deed, in July, 2010, Len's only significant asset was the Property. At all relevant times, Len worked only part time and had limited income and assets. At all times following the transfer in 2010, Len was insolvent. His liabilities

6

exceeded his assets and his income was insufficient to pay his obligations, including the Sun Trust Deed of Trust Note payments.

29.  As of the filing of Len's bankruptcy case in 2018, Len was obligated to pay over $15 Million in damages to the Plaintiffs as a result of their judgments.  Neither Len, nor the Trustee filed objections to the Plaintiffs' claims filed in Len's bankruptcy.  In addition Len was solely obligated on the Sun Trust Deed of Trust on the Property which, according to the Defendant's bankruptcy schedules was over $1 Million in April, 2018.

30.  At no time, since 2007, including, but not limited to, the time of the Quitclaim Deed in  July, 2010, did Max make any payments to Len and Len received no property or other value from Max related to the Trust or Quitclaim Deed.

31.  Max asserts that he intended to record the Quitclaim Deed in 2010 but had no money to pay the required recording and transfer taxes.  The Quitclaim Deed has never been recorded and Len remains the titled owner of the Property.

32. Neither Max nor Len are aware of the present location of the original Quitclaim Deed or whether it even exists. Regardless, there has been no attempt to record the Quitclaim Deed since 2010.

33.  Toward the end of the Superior Court litigation with the Plaintiffs, which resulted in the Judgment, Max concocted a scheme to attempt to keep the Property for himself in the face of a pending substantial judgment award to the Plaintiffs.

34.  In discussions with his newly hired bankruptcy counsel, Marc Albert (Stinson LLP ("Albert"), Max learned that if the Property was owned by Len, it could not be exempted in bankruptcy and would be subject to attachment and sale to partially satisfy the eventual judgments.  These conversations took place in late 2017 and early 2018.

7

35. Max also learned from Albert that if Max could claim he is the actual owner of the Property, he could claim the Property exempt in his subsequent bankruptcy proceeding and, due to D.C.'s generous homestead exemption, Max could then claim the entire equity in the Property as exempt from execution by the Plaintiffs.

36. Because Len was not residing in the Property he could not claim the benefit of the D.C. homestead exemption.

37. In early 2018, less than a month prior to the Superior Court trial, Max and Len, for the first time, alleged and produced a copy of the 2010 trust ("the Trust") and quitclaim deed ("the Quitclaim Deed") and sought to exclude Len from the Superior Court litigation by asserting Max was the real owner of the Property. The Superior Court summarily denied Max's attempt and the trial continued, resulting in the Judgment. The Judgment is now final and binding on all parties as a result of the pending final distribution and closing of Len's Estate in this Court and the Confirmed Plan in Max's Bankruptcy.

38. The fire occurred in June, 2015. From that time, until February or March, 2018, no one resided in the Property. During that time, and continuing after Max's Bankruptcy filing until November, 2019, no payments were made on the Sun Trust Deed of Trust Note ("the Sun Trust Note") with the exception of one payment made by Max from the insurance proceeds he received as a result of the fire damage.

39. According to the schedules filed in Max's bankruptcy, as of the commencement of his bankruptcy case, the only lien creditors were (IRS secured claim - $ 6,768.66) and Sun Trust Mortgage ($1,030,825.86). The balance of the Sun Trust Note as of October 26, 2018 was $1,141,021.14. Although Max claims he was the sole party responsible for all payments on the Sun Trust Loan, and made all loan payments, no payments have been made since prior to 2018

8

(with the exception of one payment from insurance proceeds) and the current balance owned on the Property increased at the rate of at least $7800 from some time in 2017 through October, 2019. Sun Trust sold its Note, in 2019, to U.S. Bank National Association/Select Portfolio Servicing, Inc. ("U.S. Bank"). Pursuant to an agreement reached with U.S. Bank in Max's bankruptcy case, Max is required to make monthly payments of approximately $8,300. Upon information and belief, Max has been making the required payments since approximately November, 2019. *See*, Exhibit B, Confirmed Plan, p. 8, ¶ 3.3.

40.  On September 25, 2018, the Bankruptcy Court for the District of Columbia (Teel, J.)("the DC Bankruptcy Court") entered a Memorandum and Order overruling the Estates' Objections to the Debtor's claim of Exemption ("the Exemption Ruling"). The Estates timely appealed to the United States District Court for the District of Columbia ("the District Court").

41.  On or about January 2, 2020, the District Court issued an order remanding the appeal to the Bankruptcy Court "the Remand Order" for determination of issues raised by the Plaintiffs in a Motion seeking to add to the appellate record or, alternatively, to remand ("the District Court Motion").

42.  On October 13, 2020, the DC Bankruptcy Court denied the Plaintiffs' Motion to Reconsider. The Plaintiffs timely appealed and that appeal is now pending in the United States District Court for the District of Columbia (Civil No. 1:20-cv-3091-KBJ)

43.  In the Exemption Ruling, the D.C. Bankruptcy Court ruled that Max was the owner of the Property by virtue of the 2010 Quitclaim Deed. The Court also determined, however, that the trustee's avoiding powers (11 U.S.C. §§ 544, *et seq.*) could result in the recovery of the Property for the benefit of the creditors of the Len's estate and, therefore, that those avoiding powers could result in a recovery of the Property, or its value, for the benefit of creditors whether

9

or not Max's exemption is upheld on appeal. The Court made no final determination of the effect of the trustee's avoiding powers leaving that to the trustee of Len's bankruptcy estate.

44. No deed has been recorded naming Max as Trustee or owner. However, as discussed above, the Confirmed Plan provides that the Confirmation Order constitutes a recordable order conveying the Property to the defendant, Max Salas. Other than the original deed dated 2007 and the Confirmation Order, no deeds or other documents of title have been filed or recorded related to the Property.

45. Whether the Trust or Quitclaim Deed was ever in effect, or was abandoned after 2010, all indicia of ownership of the Property were held by Len though the date of Max's bankruptcy and there are no records in the D.C. Recorder of Deeds Office, or in any other public record, that Max is the owner of the Property.

46. Pursuant to an Order of this Court dated June 12, 2019 ("the Tennessee Order"), the Trustee in Len's Bankruptcy was authorized to sell the Estate's interest in the Trustee's avoidance and recovery rights under, *inter alia*, 11 U.S.C. §§ 544 through 551. A copy of the Tennessee Order is attached hereto as Exhibit C.

47. On July 23, 2019 the Trustee in Len Salas' case, pursuant to the Tennessee Order, held an auction sale to auction the bankruptcy estate's interest in the available avoidance and recovery actions pursuant to 11 U.S.C. §§544 through 553. The Plaintiffs herein, the Estates, were the successful bidders. *See* Exhibit A, Trustee's Report of Sale.

48. No payments or other value were transferred from, or by, Max to Len related to the transfer of the Property, either in 2010, or at any other time. According to Len, he has never received any compensation, remuneration, property or anything else of value related to the Property, the Quitclaim Deed, or the Sun Trust Loan.

10

49. Max valued the Property at $2.5 Million on the Schedules filed in Max's Bankruptcy in or about May, 2018. The Property was appraised in or about August, 2019, for approximately$2.4 Million.

50. At the time of the transfer in 2010, the Property was worth in excess of $1.5 Million and the debt to Sun Trust, owed by Len was at least $800,000.

51. According to 11 U.S.C. § 548 (d)(1) a transfer of real estate is not perfected until the transfer is so perfected such that a bona fide purchaser from the debtor cannot acquire an interest in the property superior to that of the transferee. There was no such transfer prior to the filing of the Max Salas bankruptcy case (April 18, 2018). Therefore, pursuant to 11 U.S.C. § 548 (d)(1) the transfer is deemed to have been made immediately before the date of the filing of the Debtor's petition on April 18, 2020.

52. Under the law of the District of Columbia, a transfer of real property is made when the transfer is "so far perfected that a [hypothetical] good-faith purchaser of the asset from the debtor…cannot acquire an interest in the asset that is superior to the interest of the transferee. D.C. Code § 28-3106.

53. At all times from 2010 through Len's bankruptcy filing, he was insolvent by virtue of the Sun Trust Deed of Trust obligation and the Estates' judgments (as of April, 2018).

54. The Estates filed proofs of claim in both Len's and Max's bankruptcy cases and no objections were filed to the Estates' claims, totaling more than $15 Million, in either case.

55. In accordance with Max's confirmed Plan of reorganization, the Plaintiffs' allowed claims exceed $15 Million.

56. Pursuant to the confirmed Plan in Max's case, the Estates are the owners of the recovery and avoidance claims set forth in this Complaint and are entitled to pursue those claims.

11

57.  Pursuant to this Court's Order of February 11, 2020, the Plaintiffs have authority to sue on behalf of the Debtor's Estate.

## COUNT I

### (Declaratory Judgment Regarding Plaintiffs' Bona Fide Purchaser Status)

58.  The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 57 hereof, the same as if those paragraphs were restated in full, hereat.

59.  Pursuant to 11 U.S.C. § 544 (a), the Plaintiffs, as purchasers of the Trustee's avoidance and recovery powers have the status, as of the date of the Len Salas bankruptcy petition, namely, May 2, 2018, of a bona fide purchaser of real property from the debtor and a judicial lien holder.

60.  Under Code § 544 (a)(3) the trustee's bona fide purchaser status gives the Plaintiffs priority over subsequently recorded interests in the Property.

61.  Under D.C. Code, § 42-401:

> Any deed conveying real property in the District, or interest therein, ...shall be held to take effect from the date of the delivery thereof, except that **as to creditors and subsequent bona fide purchasers** and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the Recorder of Deeds for record.

62.  As a result, the Plaintiffs have a superior and priority interest in the Property ahead of any interest acquired by Max Salas and, therefore, the Property should be turned over to the Plaintiffs, or sold to recover the net equity for the benefit of the unsecured creditors of Len Salas' bankruptcy estate.

WHEREFORE, as to Count I, the Plaintiffs pray for a declaratory judgment in their

12

favor, declaring as follows:

1. That the Plaintiffs are the owners of the Property located at 1610 Riggs Place, NW, Washington, DC;

2. That the Plaintiffs are entitled to immediate possession of the Property; or, alternatively,

3. That the Plaintiff are entitled to sell the Property and to retain the net proceeds from such a sale for distribution to the creditors of the bankruptcy estate of Len Salas as directed by further order of this Court;

4. That Len and Max are directed to take all actions, sign all documents and perform all acts necessary to transfer or sell the Property as set forth above; and

5. For such other and further relief as may be just and proper.

## COUNT II

### (Declaratory Judgment Regarding Plaintiffs' Judicial Lienholder Status)

63. The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 62 hereof, the same as if those paragraphs were restated in full, hereat.

64. As of the commencement of this case, April 18, 2018, the trustee has, without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien, whether or not such a creditor exists. Code §544 (a)(1).

65. The Plaintiffs are the authorized representatives for prosecution of all of the

13

Trustee's rights and powers under Code §§ 544, *et seq.*

66.  A judicial lien creditor, under the laws of the District of Columbia, has a superior interest to the Property than that of a competing creditor or owner who has not recorded an interest in the Property.

WHEREFORE, as to Count II, the Plaintiffs pray for a declaratory judgment in their favor, as follows:

1. Declaring and establishing that the Plaintiffs, as the authorized representatives of the bankruptcy estate of Len Salas, have a judgment lien against the Property located at 1610 Riggs Place, NW, Washington, DC, as of April 18, 2018 in the amounts of $7.5 Million (Brekelmans) and $7.7 Million (McLoughlin), respectively; and

2.  Entering a judgment or order confirming the Plaintiffs' judgment liens against the Property totaling $15.2 Million; and

3.  Directing, declaring and confirming that the Plaintiffs are entitled to immediately execute on their judgment lien against the Property; and

4.  That the Plaintiffs are entitled to sell the Property and to retain the net proceeds from such sale for distribution to the creditors of the bankruptcy estate of Len Salas as directed by further order of this Court

5. For such other and further relief as may be just and proper.


**COUNT III**

**Declaratory Judgment Regarding Plaintiffs' Status as Trustee as Creditor with Unsatisfied Execution**

67.  The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including,

14

but not limited to, paragraphs 1 through 66 hereof, the same as if those paragraphs were restated in full, hereat.

68. The Plaintiffs, as purchasers of the avoidance and recovery powers of the Trustee of Len's Bankruptcy, have the status, as of the commencement of Len's Bankruptcy, by virtue of 11 USCS § 544(a)(2), of all of the rights and powers of a creditor that had delivered a writ of execution against Len's interest in the Property, which execution was returned unsatisfied.

69. The Plaintiffs assert that the trustee's status as a creditor under Code § 544 (a)(2) gives him a superior interest in the Property such that the Plaintiffs are entitled to recover the Property, or its equity, for the benefit of the unsecured creditors of the bankruptcy estate of Len Salas.

WHEREFORE, as to Count III, the Plaintiffs pray for a declaratory judgment in their favor, as follows:

1. Declaring and establishing that the Plaintiffs, as the authorized representatives of the bankruptcy estate of Len Salas, have a superior claim to the Defendant's Property located at 1610 Riggs Place, NW, Washington, DC, as of April 18, 2018 in the amounts of $7.5 Million (Brekelmans) and $7.7 Million (McLoughlin), respectively; and

2. Directing, declaring and confirming that the Plaintiffs are entitled to the sale of the Property to satisfy the claims of all unsecured creditors of the Len Salas bankruptcy estate; and

3. For such other and further relief as may be just and proper.

## COUNT IV

### (Fraudulent Conveyance - Code § 548 (a))

70. The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 69 hereof, the same as if those paragraphs were restated

in full, hereat.

71.   The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because it was made with the actual intent to defraud creditors and potential creditors of Len Salas, including Sun Trust Bank, by transferring the Property to Max without permission.

72.   The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because it was made with the actual intent to defraud creditors and potential creditors including all parties having claims related to the Property, including the Plaintiffs.

73.   The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because, by transferring the only major asset of Len to his father, the transfer was likely to, and did, make Len insolvent and unable to pay his mortgage obligations to Sun Trust Bank.

74.   The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because it was made with the actual intent to defraud creditors and potential creditors, including those having claims related to the Property, such as taxing authorities, utilities, and renters, such as Nina and Michael and, therefore, the Estates.

75.   The transfer was a fraudulent conveyance pursuant to Code § 548 because the alleged transfer was made for less than reasonably equivalent value.   Len received no compensation or property of value and gave up property worth in excess of $2 Million while remaining solely obligated on a Deed of Trust Note to Sun Trust bank that was in default at the time of the alleged transfer.

76.   Len was either insolvent at the time of the transfer, or the transfer made him insolvent since the Property was his only significant asset and he still remained liable on the Sun Trust Loan after the alleged transfer.

77.   The transfer of the Property in 2010 by Quitclaim Deed was made after two years

prior to Max's Bankruptcy because pursuant to Code § 548 (d)(1) the transfer of real property is deemed perfected when the deed is recorded or, if not recorded prior to the bankruptcy filing, the date immediately prior to the bankruptcy filing, namely April 18, 2018.

WHEREFORE, as to Count IV , the Plaintiffs pray for judgment as follows:

1.  That the attempted transfer of the Property from Len to Max is a fraudulent conveyance under Code § 548 (a); and

2.  That the conveyance is recovered or avoided so that the Property is owned and controlled by the Plaintiffs, for the benefit of the unsecured creditors or the bankruptcy estate of Len Salas, pursuant to their purchase of the Trustee's avoidance and recovery rights in Len's Bankruptcy; and

3.  That any further transfer or disposition of the Property is enjoined; and

4.  That the Property be sold at public auction and the proceeds, after payment of closing costs and priority secured claims shall be paid to the Plaintiffs, for distribution to unsecured creditors pursuant to further order(s) of this court; and

5.  For such other and further relief as may be just and proper.

## COUNT V

## (Fraudulent Conveyance - D.C.)

78. The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 77 hereof, the same as if those paragraphs were restated in full, hereat.

79.  The Plaintiffs, as the holders of the rights and claims of the Trustee, may avoid any transfer that is voidable under applicable law pursuant to Code § 544 (b) (1).

80.  Under the law of the District of Columbia, the transfer of the Property alleged herein,

is a fraudulent conveyance because the transfer was performed with fraudulent intent as to existing creditors, such as the IRS, other taxing authorities, Sun Trust Bank, and others, including the Plaintiffs and was made for less than reasonably equivalent value, all as specifically prohibited by D.C. Code § 28-3104, *et seq.*

81. A transfer made is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. D.C. Code § 28-3105

82. A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

83. In the District of Columbia, a transfer is made:

(A) With respect to an asset that is real property other than a fixture, including the interest of a seller or purchaser under a contract for the sale of the asset, when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee.

D.C. Code § 28-3106

84. In an action for relief against a transfer or obligation under D.C. law, a creditor may obtain:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee...;
(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

18

(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
(B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
(C) Any other relief the circumstances may require.

D.C. Code § 28-3107

WHEREFORE, as to Count V, the Plaintiffs pray for an order:

1. Avoiding the transfer or attempted transfer of the Property; and

2. Providing for an attachment against the Property on such terms as the Court may order; and

3. Enjoining any further disposition of the Property or allowing the placement of any other liens or encumbrances against the Property pending sale or other disposition approved by the Court; and

4. Such other and further relief as may be just and proper.

## COUNT VI

### (Liability of Transferee)

85 . The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 84 hereof, the same as if those paragraphs were restated in full, hereat.

86.   The Defendant, Max Salas, is the transferee of the alleged transfer which is the subject of this Complaint.

87.   Under Code § 550 (a) the trustee may recover, for the benefit of the estate, the property transferred or, upon court order, the value of the property.

WHEREFORE, as to Count VI, the Plaintiffs pray for an Order:

19

1. To turn over the Property; or, alternatively,

2.  To sell the property, by auction or other public sale, upon reasonable notice, and to turn over the net proceeds of such sale, subject to court approval of the amount of such proceeds, to the Plaintiffs; and

3.  to authorize and direct the Plaintiffs to retain the property and proceeds for distribution to the unsecured creditors of the bankruptcy estate of  Len Salas in accordance with further order(s) of this Court;

3.  For such other and further relief as may be just and proper.

LAW OFFICE OF PHILIP J. MCNUTT, PLLC


By:  /s/ Philip J. McNutt
Philip J. McNutt
11921 Freedom Drive, Ste 584
Reston, VA 20190
703-904-4380
202-379-9217 (fax)

Pmcnutt@mcnuttlawllc.com

BUTCH, PORTER & JOHNSON, PLLC

By:  /s/ Taylor A. Cates
Taylor A. Cates
130 North Court Avenue
Memphis, TN 38103
901-524-5165
901-524-5000 (fax)

Tacates@bpjlaw.com

ATTORNEYS FOR THE PLAINTIFFS

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Amended Complaint was served on Philip Young, Counsel for the Defendant, through the Court's ecf noticing service, on the 16th day of February, 2021.

/s/ Philip J. McNutt
                        Philip J. McNutt

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:                                            CASE NO. 18-02662-MH3-7
LEN SALAS,                                        CHAPTER 7
                                                  JUDGE MARIAN HARRISON

      Debtor.

## TRUSTEE'S REPORT OF SALE

The trustee, Michael Gigandet, makes the following report of sale of the debtor's potential causes of action concerning the real estate located at 1610 Riggs Place, NW, Washington, D.C, in the above public auction on July 23, 2019.  Notice of this sale was provided to all creditors and parties in interest by Trustee's Notice of Motion to Sell Property mailed on April 10, 2019, and a supplemental notice of auction was mailed on June 27, 2019.  A notice of rescheduled auction was filed on July 16, 2019.  By signature below, the trustee hereby certifies that the objections to the sale were overruled.  The order authorizing the sale was entered on June 12, 2019.

The property sold for $156,000.00. The bill of sale is attached.

The debtor is not entitled to an exemption from the sale of this property.

Respectfully submitted,

**LAW OFFICE OF MICHAEL GIGANDET**
**/s/ Michael Gigandet**
_____
Michael Gigandet, Trustee #11498
208 Centre Street
Pleasant View, TN 37146
615-746-4949
Fax: 615-746-4950
michael@mgigandet.com

Case 3:23-cv-00667  Document 17-1  Filed 10/24/25  Entered 10/24/25 23:45:30  Desc Main
Exhibit A - Trustees Report of Sale  Page 1 of 4

216

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Trustee's Report of Sale has been forwarded to the U. S. Trustee, 318 Customs House, 701 Broadway, Nashville, TN 37203, on this the 14th day of August, 2019.

**/s/Michael Gigandet**

_____

Michael Gigandet

Case 3:23-cv-00662 Document 71-1 Filed 10/24/23 Page 265 of 531 PageID #: 122
Exhibit A - Trustee's Report Sale Page 2 of 4

217

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
at Nashville

In re:                                              :

LEN SALAS                                  : Case No. 3:18-bk-02662
                                                         Chapter 7
_____Debtor_____:_____

SALE OF ESTATE PROPERTY
FREE AND CLEAR OF LIENS AND INTERESTS

        IN ACCORDANCE WITH the Trustee's Motion and Notice of Sale of Property dated
April 10, 2019, this Court's Order of June 12 , 2019 (D-179) approving bidding procedures and
the Trustee's sale, the Trustee's Supplemental Notice of Auction dated June 27, 2019 and the
Trustee's Notice of Rescheduled Auction dated July 16, 2019, the Trustee having conducted a
public auction sale of certain property of the Debtor's estate, on July 23, 2019,  upon notice to all
creditors and parties in interest, the Trustee having reported the results of the auction sale at a
hearing held herein on July 23, 2019, the Trustee hereby confirms the sale of property of the
above captioned estate, as follows:

        1. Property conveyed.  All of the Trustee's and the Len Salas Estate's right, title and
interest in and to each and every claim and recovery action to which the Trustee or this estate
may have, under the provisions of 11 U.S.C. §§ 544 through 553, as applicable, related to the
property located at 1610 Riggs Place, NW, Washington, DC ("the DC Property") .

        2. Purchaser. the Trustee hereby transfers and conveys all property rights and interests
conveyed hereby to the Estate of Michael Patrick McLoughlin and the Estate of Nina
Brekelmans, by and through their trustees and representatives, for and in consideration of the
total sum of $156,000, receipt of which is hereby acknowledged.

        3. The Property is conveyed free and clear of all interests, claims and rights of all
creditors and parties.

July 31, 2019                                     For the Seller:

                                                         MICHAEL GIGANDET, TRUSTEE

                                                         By: _____
                                                               Michael Gigandet

SIGNATURES CONTINUE ON NEXT PAGE

Case 3:18-bk-02662   Doc 217   Filed 10/24/22   Entered 10/24/22 23:43:30   Desc Main
Exhibit A - Trustee Report Sale   Page 3 of 4

218

July 31, 2019

For the Purchaser:

THE ESTATE OF MICHAEL PATRICK
MCLOUGHLIN AND THE ESTATE OF NINA
BREKELMANS

By: _Philip J. McNutt_

      Philip J. McNutt, attorney for the Estate of
      Michael Patrick Mcloughlin and the Estate
      of Nina Brekelmans

The order below is hereby signed.

Signed: January 28 2020





S. Martin Teel, Jr.
United States Bankruptcy Judge


UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
MAX E. SALAS,                  )      Case No. 18-00260
                               )      (Chapter 11)
              Debtor.          )

ORDER CONFIRMING DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

At the confirmation hearing of January 22, 2020, the court
approved modifications of the then-pending proposed plan that are
not adverse to any creditors, and the debtor later that day filed
the *Third Amended Chapter 11 Plan of Reorganization Dated January
22, 2020* (Dkt. No. 301) incorporating those modifications.  The
court having determined after hearing on notice (the confirmation
hearing of January 22, 2020) that the requirements for
confirmation set forth in 11 U.S.C. § 1129(a) and 1129(b) have
been satisfied with respect to the then-pending plan as thus
modified, it is

ORDERED that:

1.    <u>Confirmation of Plan</u>.  The *Third Amended Chapter 11 Plan of Reorganization Dated January 22, 2020* (Dkt. No. 301) filed on January 22, 2020, a copy of which is attached hereto, is confirmed.

2.    <u>Plan's Injunction</u>.  Although the confirmed plan's § 4.7 ("Discharge of Debtor and Injunction") provides for an injunction, that injunction is not against conduct not otherwise enjoined under the Bankruptcy Code and shall not be construed as enjoining conduct not otherwise enjoined under the Bankruptcy Code.

3.    <u>Plan's Release of Claims</u>.  Although the confirmed plan's § 4.7 ("Discharge of Debtor and Injunction") provides for a release of the debtor from all claims, that release shall not be construed as providing any greater release of claims than the release of claims arising from the debtor's discharge and from the binding effect of the plan regarding the rights of creditors and administrative claimants.

4.    <u>Recordation of Order to Confirm Title Ownership in Property</u>.  The debtor is hereby authorized and directed to take any and all actions necessary or appropriate to confirm the debtor's title ownership interest in the real property located at 1610 Riggs Place NW, Washington, DC 20009 within the land records of the District of Columbia, in conformance with the provisions of this Order and the Plan, subject to the limitations and

2

reservation of rights described therein.

    5.  <u>Immediate Effectiveness of Order</u>.  This Order shall be effective immediately upon entry pursuant to Fed. R. Bankr. P. 7062 and 9014, and no automatic stay of execution, pursuant to Fed. R. Civ. P. 62(a), applies with respect to this Order.

    6.  <u>Transmission of Order to Creditors</u>.  Within 7 days of entry of this order, the debtor's counsel shall file a certificate of mailing a copy of this Order, with the attached copy of the *Third Amended Chapter 11 Plan of Reorganization Dated January 22, 2020*, to all entities required to be included on the list required under Fed. R. Bankr. P. 1007(a)(1) and all known administrative claimants in the case (except for entities previously sent a copy of the *Third Amended Chapter 11 Plan of Reorganization Dated January 22, 2020* via electronic transmission in the court's Case Management/Electronic Case Filing system or via other authorized means of service).

                      [Signed and dated above.]

Copies to: All recipients of e-notification of orders.

3

Case 3:18-bk-02662   Doc 2667-1   Filed 03/02/20   Entered 03/02/20 16:28:00   Desc
Case 3:18-bk-02662   Document 27-1   Filed 03/02/20   Page 270 of 531   Page ID #327
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 3 of 163

222

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | Case No. 18-00260 |
| MAX E. SALAS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**DATED JANUARY 22, 2020**

      Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

      In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

      1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

      1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d). Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture. An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-02662    Doc 27-1    Filed 03/02/20    Entered 03/02/20 16:28:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 4 of 163

223

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3    **Assets** means all assets of the Debtor as of the Effective Date.

1.4    **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5    **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6    **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9    **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 7-1    Filed 03/02/21    Page 272 of 531. PageID #329
Case 18-00260    Doc 216-2    Filed 03/02/21    Entered 03/02/20 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 5 of 163

224

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

3

     1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

     1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

     1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

     1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

     1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

     1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

     1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

     1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

     1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

     1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-00662   Doc 276-1   Filed 03/02/20   Entered 03/02/20 16:23:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 7 of 163

226

1.34   **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35   **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36   **Petition Date** means April 18, 2018.

1.37   **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38   **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39   **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40   **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41   **Scheduled** means set forth on the Schedules.

1.42   **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43   **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44   **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45   **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1   <u>General</u>.

5

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662   Doc 2161-7   Filed 03/02/24   Entered 03/02/20 16:29:00   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 8 of 163

227

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2    Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1:** | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3:** | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5:** | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7:** | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8:** | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10:** | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662   Document 27-1   Filed 03/02/23   Page 276 of 531 PageID #: 333
Case 3:18-cv-00662   Doc 216-1   Filed 03/02/23   Entered 03/02/23 16:28:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 9 of 163
228

## ARTICLE III
## TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States
Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims)</u>:

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

3.3    <u>Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property</u>

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim).  Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

3.4.    <u>Class 4: Allowed Secured Claim of IRS..</u>

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

3.5.    <u>Class 5: District of Columbia Transfer & Recordation Tax Claim</u>

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-00662    Document 27-1    Filed 03/02/23    Entered 03/02/23 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 11 of 163

230

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

3.6.    Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case. Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7: Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8: Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9: Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.    Class 10: Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

10

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-00662    Doc 126-1    Filed 03/02/23    Entered 03/02/23 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 13 of 163

232

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1    Plan Description and Means Funding of Plan.

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    Executory Contracts and Unexpired Leases

11

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:13-bk-00662   Document 27-1   Filed 03/02/20   Entered 03/02/20 16:28:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 14 of 163

233

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

4.3     Post Confirmation Date Litigation.

4.3.1     Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

4.3.2     Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

4.4     Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

4.5     Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

4.6     Distribution of Property Under the Plan.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

4.6.1   <u>Disputed Claims</u>.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2   <u>Manner of Payment Under the Plan</u>.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3   <u>Undeliverable Distributions and Distributions of less than $5</u>.

(1)   <u>Holding and Investment of Undeliverable Distributions</u>.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)   <u>Failure to Claim Undelivered Distributions</u>.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan. In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)   <u>Distributions of less than $5</u>.

No payment shall be made to any creditor when the distribution is in an amount less than $5. Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4   <u>Rounding Of Distributions</u>. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6    Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7    Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Plan; and (ii) *all Entities shall be precluded from asserting against the  Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.*  Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

        4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

        4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

## ARTICLE V

## CONFIRMATION

        5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-02662    Document 27-1    Filed 03/02/21    Page 286 of 531 PageID #: 343
Case 18-00260-SMT    Doc 261-1    Filed 12/24/18    Entered 12/24/18 23:00:11    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 19 of 163
238

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

17

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 7-1    Filed 03/02/21    Page 287 of 531 PageID #: 344
Case 18-00260    Doc 266-1    Filed 03/12/20    Entered 03/12/20 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 20 of 163
239

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    <u>Exemption from Transfer Taxes</u>.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    <u>Modification of the Plan</u>.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    <u>Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    <u>Successors and Assigns</u>.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    <u>Saturday, Sunday or Legal Holiday</u>.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    <u>Post-Effective Date Effect of Evidences of Claims</u>.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662   Document 7-1   Filed 03/02/21   Page 288 of 531   PageID #: 345
Case 3:18-cv-00662   Document 26-1   Filed 03/02/21   Entered 03/02/21 16:23:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 21 of 163
240

8.7    Governing Law.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8    No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9    Severability Of Plan Provisions.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    Rules of Interpretation.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

8.11    Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020            By:    /s/ Max E. Salas
                                          Max E. Salas, Debtor and Debtor-In-Possession


                                          /s/ Joshua W. Cox
                                          Marc E. Albert, No. 345181
                                          Joshua W. Cox, No. 1033283
                                          STINSON LLP
                                          1775 Pennsylvania Ave., N.W., Suite 800
                                          Washington, DC 20006
                                          Tel. (202) 785-3020
                                          Fax (202) 572-9999
                                          marc.albert@stinson.com
                                          joshua.cox@stinson.com
                                          *Attorneys for*
                                          *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 18-00260 |
| MAX E. SALAS, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d). Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture. An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3    **Assets** means all assets of the Debtor as of the Effective Date.

1.4    **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5    **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6    **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9    **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 292 of 531 PageID #: 349
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Entered 03/02/21 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 25 of 163
244

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

3

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    <u>General</u>.

5

The following is a designation of each Class of Claims under the Plan. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes. Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2    Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1**: | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes. This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3**: | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5**: | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7**: | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8**: | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10**: | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662    Document 27-1    Filed 03/02/20    Entered 03/02/20 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 29 of 163

248

## ARTICLE III
## TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

    3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

    3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

    3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims)</u>:

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00262    Document 27-1    Filed 03/02/21    Page 297 of 531 PageID #: 354
Case 3:18-cv-00262    Document 26-1    Filed 02/24/21    Page 297 of 531 PageID #: 354
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 30 of 163
249

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

    3.3    <u>Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property</u>

    Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

    3.4.    <u>Class 4: Allowed Secured Claim of IRS..</u>

    Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

    3.5.    <u>Class 5: District of Columbia Transfer & Recordation Tax Claim</u>

    Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-02662    Doc 1261-1    Filed 03/02/23    Entered 03/02/23 13:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 31 of 163

250

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

    3.6.    <u>Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)</u>

       Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 300 of 531 PageID #: 356
Case 3:18-cv-00662    Document 26-1    Filed 03/02/21    Entered 03/02/21 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 32 of 163
251

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

# ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1    Plan Description and Means Funding of Plan.

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    Executory Contracts and Unexpired Leases

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

### 4.3    Post Confirmation Date Litigation.

#### 4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

#### 4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

### 4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

### 4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

### 4.6    Distribution of Property Under the Plan.

12

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-00562    Doc 2662-1    Filed 03/12/21    Entered 03/02/2025 23:00    Desc
Case 18-00260    Doc 265-1    Filed 01/24/21    Page 35 of 163    Page ID 359
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 35 of 163
254

4.6.1   Disputed Claims.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2   Manner of Payment Under the Plan.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3   Undeliverable Distributions and Distributions of less than $5.

(1)   Holding and Investment of Undeliverable Distributions.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)   Failure to Claim Undelivered Distributions.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan.  In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)   Distributions of less than $5.

No payment shall be made to any creditor when the distribution is in an amount less than $5.  Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4   Rounding Of Distributions.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent. To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding. Any property withheld will then be paid to the appropriate taxing authority. A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6    Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7    Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor. Except as otherwise provided in the Plan or the Confirmation Order: (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

    4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

    4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

**ARTICLE V**

**CONFIRMATION**

    5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

## ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

> 6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

> 6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

> 6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

## ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

> 7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

> 7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

> 7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

> 7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-02662    Document 27-1    Filed 03/02/23    Page 306 of 531 PageID #: 363
Case 3:18-cv-02662    Document 26-1    Filed 12/24/21    Entered 03/02/20 16:28:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 39 of 163

258

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    Exemption from Transfer Taxes.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    Modification of the Plan.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    Withdrawal of the Plan.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    Post-Effective Date Effect of Evidences of Claims.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 7-1    Filed 03/02/21    Page 308 of 531 PageID #: 365
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 308 of 531 PageID #: 365
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 41 of 163
260

8.7    Governing Law.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8    No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9    Severability Of Plan Provisions.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    Rules of Interpretation.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 309 of 531    PageID #: 366
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 309 of 531    PageID #: 366
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 42 of 163
261

8.11   <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020   By:  <u>/s/ Max E. Salas</u>
            Max E. Salas, Debtor and Debtor-In-Possession

            <u>/s/ Joshua W. Cox</u>
            Marc E. Albert, No. 345181
            Joshua W. Cox, No. 1033283
            STINSON LLP
            1775 Pennsylvania Ave., N.W., Suite 800
            Washington, DC 20006
            Tel. (202) 785-3020
            Fax (202) 572-9999
            marc.albert@stinson.com
            joshua.cox@stinson.com
            *Attorneys for*
            *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | Case No. 18-00260 |
| MAX E. SALAS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-02662    Doc 267-1    Filed 03/02/21    Entered 03/02/21 16:28:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 44 of 163

263

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3     **Assets** means all assets of the Debtor as of the Effective Date.

1.4     **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5     **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6     **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7     **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9     **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

3

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    General.

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2    <u>Classification</u>.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1**: | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3**: | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5**: | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7**: | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8**: | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10**: | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-02662    Doc 26-1    Filed 03/02/23    Entered 03/02/23 08:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 49 of 163

268

## ARTICLE III
## TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

      3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

      3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

      3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims)</u>:

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

Case 3:18-cv-00262   Document 27-1   Filed 03/02/24   Page 317 of 531 PageID #: 374
Case 3:18-cv-00262   Document 27-1   Filed 03/02/24   Page 317 of 531 Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 50 of 163
269

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

3.3   Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

3.4.   Class 4: Allowed Secured Claim of IRS..

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

3.5.   Class 5: District of Columbia Transfer & Recordation Tax Claim

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

    3.6.    <u>Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)</u>

        Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662   Doc 1261-1   Filed 03/02/21   Entered 03/02/21 16:23:00   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 52 of 163

271

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1    Plan Description and Means Funding of Plan.

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    Executory Contracts and Unexpired Leases

11

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/20    Page 321 of 531 PageID #: 878
Case 18-00260-SMT    Doc 206-1    Filed 02/04/20    Entered 03/01/20 18:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 54 of 163

273

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

    4.3    <u>Post Confirmation Date Litigation</u>.

        4.3.1    <u>Homestead Appeal and Tennessee Avoidance Actions</u>

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

        4.3.2    <u>Review of and Objections to Claims and Administrative Claims</u>.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

    4.4    <u>Confirmation Order as Recordable Order Conveying Property to Max Salas</u>

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

    4.5    <u>Recordation and Other Taxes Covered by Section 1146(a)</u>

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

    4.6    <u>Distribution of Property Under the Plan</u>.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

4.6.1    Disputed Claims.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2    Manner of Payment Under the Plan.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3    Undeliverable Distributions and Distributions of less than $5.

(1)    Holding and Investment of Undeliverable Distributions.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)    Failure to Claim Undelivered Distributions.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan.  In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)    Distributions of less than $5.

No payment shall be made to any creditor when the distribution is in an amount less than $5.  Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4    Rounding Of Distributions.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5  Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6  Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7  Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662   Document 27-1   Filed 03/02/20   Page 324 of 531 PageID #: 381
Case 3:18-cv-00662   Document 27-1   Filed 03/02/20   Page 57 of 163
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 57 of 163
276

Plan; and (ii) *all Entities shall be precluded from asserting against the  Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.*  Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

4.8    Other Documents and Actions.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

4.9    Authorized Actions.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

**ARTICLE V**

**CONFIRMATION**

5.1    Confirmation.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

15

Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 325 of 531 PageID #: 382
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 58 of 163

277

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

     6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

     6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

     6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

     7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

     7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

     7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

     7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662   Document 27-1   Filed 03/02/21   Page 326 of 531 PageID #: 383
Case 18-00260   Doc 261-1   Filed 01/24/20   Entered 01/24/20 16:28:00   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 59 of 163

278

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    Exemption from Transfer Taxes.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    Modification of the Plan.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    Withdrawal of the Plan.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    Post-Effective Date Effect of Evidences of Claims.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 328 of 531 PageID #: 385
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Entered 03/02/21 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 61 of 163
280

8.7    <u>Governing Law</u>.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8    <u>No Admissions</u>.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9    <u>Severability Of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    <u>Rules of Interpretation</u>.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/20    Page 3/02/20 534 PageID #: 386
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 62 of 163

281

8.11   Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020          By:   /s/ Max E. Salas
                                        Max E. Salas, Debtor and Debtor-In-Possession


                                        /s/ Joshua W. Cox
                                        Marc E. Albert, No. 345181
                                        Joshua W. Cox, No. 1033283
                                        STINSON LLP
                                        1775 Pennsylvania Ave., N.W., Suite 800
                                        Washington, DC 20006
                                        Tel. (202) 785-3020
                                        Fax (202) 572-9999
                                        marc.albert@stinson.com
                                        joshua.cox@stinson.com
                                        *Attorneys for*
                                        *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-00260 |
| MAX E. SALAS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

Case 3:18-bk-00662   Doc 27-1   Filed 03/02/21   Entered 03/02/21 16:23:00   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 64 of 163

283

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3     **Assets** means all assets of the Debtor as of the Effective Date.

1.4     **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5     **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6     **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7     **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9     **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 65 of 163    PageID #: 389
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 65 of 163

284

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00262    Document 27-1    Filed 03/02/21    Page 66 of 163    PageID #: 380
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 66 of 163

285

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

4

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-00262    Doc 261-1    Filed 03/02/21    Entered 03/02/21 16:29:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 67 of 163

286

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    <u>General</u>.

5

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662    Document 27-1    Filed 03/02/23    Page 335 of 531    Page ID #382
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 68 of 163

287

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2     Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

**Class 1:**     All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired).

**Class 2**:     All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired).

**Class 3:**     U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired).

**Class 4**:     Allowed Secured Claim of IRS (Impaired).

**Class 5:**     District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired)

**Class 6**:     Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired).

**Class 7:**     All Remaining Allowed Unsecured Non-Priority Claims. (Impaired).

**Class 8:**     Allowed Unsecured Penalty Claim of the District of Columbia (Impaired).

**Class 9**:     Paid Hyundai Lease Titling Trust Lease claim (Unimpaired)

**Class 10:**     Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

6

## ARTICLE III
## TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

    3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

    3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

    3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims)</u>:

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00262    Document 27-1    Filed 03/02/21    Page 337 of 531 PageID #: 384
Case 3:18-cv-00262    Document 27-1    Filed 03/02/21    Entered 03/02/21 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 70 of 163

289

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

    3.3    <u>Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property</u>

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

    3.4.    <u>Class 4: Allowed Secured Claim of IRS..</u>

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

    3.5.    <u>Class 5: District of Columbia Transfer & Recordation Tax Claim</u>

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-00562   Doc 1267-1   Filed 03/02/23   Entered 03/02/23 16:28:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 71 of 163

290

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

3.6.    Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 –
        McLoughlin; Claim No. 4 - Brekelmans)

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1    <u>Plan Description and Means Funding of Plan.</u>

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    <u>Executory Contracts and Unexpired Leases</u>

11

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 27-1    Filed 03/02/23    Page 61 of 524 PageID #: 388
Case 3:18-cv-00662    Document 26-1    Filed 03/02/20    Entered 03/02/20 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 74 of 163
293

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

4.3      Post Confirmation Date Litigation.

4.3.1      Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

4.3.2      Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

4.4      Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

4.5      Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

4.6      Distribution of Property Under the Plan.

12

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-00562    Document 27-1    Filed 03/02/21    Entered 03/02/21 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 75 of 163
294

### 4.6.1    Disputed Claims.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

### 4.6.2    Manner of Payment Under the Plan.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

### 4.6.3    Undeliverable Distributions and Distributions of less than $5.

#### (1)    Holding and Investment of Undeliverable Distributions.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

#### (2)    Failure to Claim Undelivered Distributions.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan. In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

#### (3)    Distributions of less than $5.

No payment shall be made to any creditor when the distribution is in an amount less than $5. Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

### 4.6.4    Rounding Of Distributions. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662    Document 27-1    Filed 03/02/23    Entered 03/02/23 16:28:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 76 of 163

295

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6    Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7    Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/20    Page 344 of 531    PageID #: 491
Case 18-00260-SMT    Doc 298    Filed 01/22/20    Entered 01/22/20 15:09:57    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 77 of 163

296

Plan; and (ii) *all Entities shall be precluded from asserting against the  Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.*  Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

4.8    Other Documents and Actions.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

4.9    Authorized Actions.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

**ARTICLE V**

**CONFIRMATION**

5.1    Confirmation.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

15

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-02662    Document 27-1    Filed 03/02/23    Page 345 of 531
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 78 of 163

297

## ARTICLE VI

### EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

> 6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

> 6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

> 6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

## ARTICLE VII

### RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

> 7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

> 7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

> 7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

> 7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-02662    Document 27-1    Filed 03/02/21    Page 346 of 531    PageID #: 403
Case 18-00260    Doc 266-1    Filed 12/20/21    Entered 03/02/20 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 79 of 163

298

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    <u>Exemption from Transfer Taxes</u>.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    <u>Modification of the Plan</u>.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    <u>Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    <u>Successors and Assigns</u>.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    <u>Saturday, Sunday or Legal Holiday</u>.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    <u>Post-Effective Date Effect of Evidences of Claims</u>.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 348 of 531    PageID #: 405
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Entered 03/02/21 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 81 of 163

300

8.7    Governing Law.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8    No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9    Severability Of Plan Provisions.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    Rules of Interpretation.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

19

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 18-00260-SMT    Doc 267-1    Filed 03/02/20    Entered 03/02/20 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 82 of 163

301

8.11    Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020                 By:      /s/ Max E. Salas
                                                 Max E. Salas, Debtor and Debtor-In-Possession


                                         /s/ Joshua W. Cox
                                         Marc E. Albert, No. 345181
                                         Joshua W. Cox, No. 1033283
                                         STINSON LLP
                                         1775 Pennsylvania Ave., N.W., Suite 800
                                         Washington, DC 20006
                                         Tel. (202) 785-3020
                                         Fax (202) 572-9999
                                         marc.albert@stinson.com
                                         joshua.cox@stinson.com
                                         *Attorneys for*
                                         *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-02662    Doc 1627-1    Filed 03/02/23    Entered 03/02/23 16:28:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 83 of 163

302

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 18-00260 |
| MAX E. SALAS, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 27-1    Filed 03/12/21    Page 351 of 531    PageID #: 408
Case 3:18-cv-00662    Document 27-1    Filed 03/12/21    Page 351 of 531    PageID #: 408
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 84 of 163
303

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

    1.3    **Assets** means all assets of the Debtor as of the Effective Date.

    1.4    **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

    1.5    **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

    1.6    **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

    1.7    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

    1.8    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

    1.9    **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

    1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

    1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

    1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

    1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

    1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

    1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

    1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 27-1    Filed 03/02/23    Page 352 of 531    PageID #: 409
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 85 of 163

304

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

1.24 **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25 **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26 **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27 **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28 **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29 **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30 **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31 **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32 **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33 **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

4

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-00662   Document 7-1   Filed 03/02/23   Page 354 of 531 Page ID #411
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 87 of 163

306

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    <u>General</u>.

5

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662    Doc 2427-1    Filed 03/02/23    Page 355 of 531    Page ID #: 412
Case 3:18-bk-02662    Doc 2427-1    Filed 03/02/23    Entered 03/02/23 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 88 of 163
307

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2     Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1**: | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3**: | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5**: | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7**: | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8**: | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10**: | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

# ARTICLE III
## TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

    3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

    3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

    3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims)</u>:

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-br-00262   Document 27-1   Filed 03/02/21   Page 357 of 531   PageID #414
Case 3:18-br-00262   Document 27-1   Filed 03/02/21   Entered 03/02/21 16:23:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 90 of 163
309

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

    3.3    <u>Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property</u>

      Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

    3.4.    <u>Class 4: Allowed Secured Claim of IRS..</u>

      Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

    3.5.    <u>Class 5: District of Columbia Transfer & Recordation Tax Claim</u>

      Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 18-00260-SMT    Doc 261-1    Filed 12/24/21    Entered 03/02/20 16:28:00    Desc
Case 3:18-cv-02662    Document 27-1    Filed 03/02/20    Page 358 of 531 PageID #: 415
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 91 of 163

310

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

3.6.    Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-02662    Doc 1261-1    Filed 03/02/21    Entered 03/02/21 18:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 92 of 163

311

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.   Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1    <u>Plan Description and Means Funding of Plan.</u>

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    <u>Executory Contracts and Unexpired Leases</u>

11

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

4.3    Post Confirmation Date Litigation.

4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

4.6    Distribution of Property Under the Plan.

12

4.6.1    Disputed Claims.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2    Manner of Payment Under the Plan.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3    Undeliverable Distributions and Distributions of less than $5.

(1)    Holding and Investment of Undeliverable Distributions.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)    Failure to Claim Undelivered Distributions.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan.  In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)    Distributions of less than $5.

No payment shall be made to any creditor when the distribution is in an amount less than $5.  Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4    Rounding Of Distributions.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5   Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6   Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7   Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662   Document 27-1   Filed 03/02/23   Page 364 of 531 PageID #: 421
Exhibit B - Order Confirming Debtors Third Amended Plan     Page 97 of 163

316

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

    4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

    4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

## ARTICLE V

## CONFIRMATION

    5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

## ARTICLE VI

### EFFECTIVE DATE CONDITIONS

6.1   <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

6.1.1   The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

6.1.2   The Debtor has delivered $225,000 to the Plan Fund.

6.1.3   Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2   <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

## ARTICLE VII

### RETENTION OF JURISDICTION

7.1   <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

7.1.1   to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

7.1.2   to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

7.1.3   to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

7.1.4   to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

7.1.5   to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6   to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7   to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9   to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

17

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 27-1    Filed 03/02/20    Entered 03/02/20 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 100 of 163

319

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    <u>Exemption from Transfer Taxes</u>.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    <u>Modification of the Plan</u>.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    <u>Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    <u>Successors and Assigns</u>.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    <u>Saturday, Sunday or Legal Holiday</u>.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    <u>Post-Effective Date Effect of Evidences of Claims</u>.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-00662    Doc 1267-1    Filed 03/02/21    Entered 03/02/21 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 101 of 163

320

8.7    <u>Governing Law</u>.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8    <u>No Admissions</u>.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9    <u>Severability Of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    <u>Rules of Interpretation</u>.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 369 of 531 PageID #: 426
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 369 of 531 PageID #: 426
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 102 of 163
321

     8.11   <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020       By:    <u>/s/ Max E. Salas</u>
                                  Max E. Salas, Debtor and Debtor-In-Possession


                               <u>/s/ Joshua W. Cox</u>
                               Marc E. Albert, No. 345181
                               Joshua W. Cox, No. 1033283
                               STINSON LLP
                               1775 Pennsylvania Ave., N.W., Suite 800
                               Washington, DC 20006
                               Tel. (202) 785-3020
                               Fax (202) 572-9999
                               marc.albert@stinson.com
                               joshua.cox@stinson.com
                               *Attorneys for*
                               *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-02662   Document 27-1   Filed 03/02/21   Page 370 of 531 PageID #: 427
Case 3:18-cv-02662   Document 27-1   Filed 03/02/21   Page 370 of 531 PageID #: 427
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 103 of 163
322

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-00260 |
| MAX E. SALAS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d). Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture. An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

323

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3    **Assets** means all assets of the Debtor as of the Effective Date.

1.4    **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5    **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6    **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9    **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

2

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:23-cv-00662    Document 27-1    Filed 03/02/24    Entered 03/02/24 16:23:30    Page 372 of 531 Page ID #:429
Case 3:23-cv-00662    Document 27-1    Filed 03/02/24    Entered 03/02/24 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 105 of 163
324

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 373 of 531    PageID #: 430
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 106 of 163

325

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

4

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662    Doc 726-1    Filed 03/02/23    Entered 03/02/23 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 107 of 163

326

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    **General**.

5

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

 2.2 <u>Classification</u>.

 Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1**: | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3**: | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5**: | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7**: | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8**: | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10**: | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00260    Document 27-1    Filed 03/02/21    Page 376 of 531 PageID #: 433
Case 3:18-cv-00260    Document 26-1    Filed 03/02/21    Entered 03/02/20 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 109 of 163

328

# ARTICLE III
## TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

   3.1.1    <u>Class 1 Administrative Claims</u>

   The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

   3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

   All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

   Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

   3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

   After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims)</u>:

   The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-00260    Doc 298-1    Filed 03/02/21    Entered 03/02/21 15:09:57    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 110 of 163

329

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

### 3.3     Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim).  Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

### 3.4.     Class 4: Allowed Secured Claim of IRS..

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

### 3.5.     Class 5: District of Columbia Transfer & Recordation Tax Claim

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

    3.6.    <u>Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)</u>

        Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

Case 3:18-bk-02662   Doc 126-27-1   Filed 03/02/24   Entered 03/02/24 13:23:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 112 of 163

331

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

### 3.7.   Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

### 3.8.   Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

### 3.9.   Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

### 3.10.   Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

10

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:13-bk-02662   Doc 26-7-1   Filed 03/02/23   Entered 03/02/23 16:23:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 113 of 163

332

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1    <u>Plan Description and Means Funding of Plan.</u>

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    <u>Executory Contracts and Unexpired Leases</u>

11

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

4.3    Post Confirmation Date Litigation.

4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

4.6    Distribution of Property Under the Plan.

12

4.6.1    Disputed Claims.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2    Manner of Payment Under the Plan.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3    Undeliverable Distributions and Distributions of less than $5.

(1)    Holding and Investment of Undeliverable Distributions.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)    Failure to Claim Undelivered Distributions.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan.  In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)    Distributions of less than $5.

No payment shall be made to any creditor when the distribution is in an amount less than $5.  Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4    Rounding Of Distributions.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

4.6.5    <u>Compliance With Tax Requirements</u>.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

4.6.6    <u>Application of Distributions</u>.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

4.7    <u>Discharge of Debtor and Injunction</u>.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Case 3:18-cv-00262    Document 27-1    Filed 03/02/20    Page 384 of 531    PageID #: 441
Case 3:18-cv-00262    Document 26-1    Filed 03/02/20    Page 384 of 531    PageID #: 441
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 117 of 163

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

    4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

    4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

**ARTICLE V**

**CONFIRMATION**

    5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

> 6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

> 6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

> 6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

> 7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

> 7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

> 7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

> 7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-02662    Document 27-1    Filed 03/02/23    Page 386 of 531 PageID #: 443
Case 3:18-cv-02662    Doc 126-1    Filed 03/02/23    Entered 03/02/23 16:28:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 119 of 163

338

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662   Document 27-1   Filed 03/02/21   Page 387 of 531 PageID #: 444
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 120 of 163

339

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    Exemption from Transfer Taxes.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    Modification of the Plan.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    Withdrawal of the Plan.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    Post-Effective Date Effect of Evidences of Claims.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

8.7    Governing Law.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8    No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9    Severability Of Plan Provisions.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    Rules of Interpretation.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

19

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-02662    Document 27-1    Filed 03/02/20    Page 389 of 531 PageID #: 446
Case 18-00260-SMT    Doc 266-2    Filed 12/24/19    Entered 12/24/19 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 122 of 163

341

8.11    Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020            By:    /s/ Max E. Salas
                                                    Max E. Salas, Debtor and Debtor-In-Possession


                                                    /s/ Joshua W. Cox
                                                    Marc E. Albert, No. 345181
                                                    Joshua W. Cox, No. 1033283
                                                    STINSON LLP
                                                    1775 Pennsylvania Ave., N.W., Suite 800
                                                    Washington, DC 20006
                                                    Tel. (202) 785-3020
                                                    Fax (202) 572-9999
                                                    marc.albert@stinson.com
                                                    joshua.cox@stinson.com
                                                    *Attorneys for*
                                                    *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

Case 3:18-vk-02662   Document 27-1   Filed 03/02/21   Page 390 of 531   PageID #: 447
Case 3:18-vk-02662   Document 27-1   Filed 03/02/21   Entered 03/02/21 16:28:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 123 of 163

342

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
In re:                              )
                                    )        Case No. 18-00260
MAX E. SALAS,                       )        Chapter 11
                                    )
                Debtor.             )
_____)

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JANUARY 22, 2020**

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

**ARTICLE I**

**DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1    **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2    **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662   Document 27-1   Filed 03/02/21   Page 391 of 531 PageID #: 448
Case 3:18-cv-00662   Document 27-1   Filed 03/02/21   Entered 03/02/21 16:23:00   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 124 of 163
343

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3     **Assets** means all assets of the Debtor as of the Effective Date.

1.4     **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5     **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6     **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7     **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9     **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12    **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14    **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/24    Page 393 of 531 PageID #: 450
Case 3:18-cv-00662    Document 26-1    Filed 03/02/24    Entered 03/02/24 16:23:30 Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 126 of 163

345

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

4

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-00662   Document 27-1   Filed 03/02/21   Entered 03/02/21 16:28:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 127 of 163

346

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    <u>General</u>.

5

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662    Doc 126-1    Filed 03/02/21    Entered 03/02/21 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 128 of 163

347

The following is a designation of each Class of Claims under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2    Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1:** | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3:** | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |
| **Class 4**: | Allowed Secured Claim of IRS (Impaired). |
| **Class 5:** | District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired) |
| **Class 6**: | Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired). |
| **Class 7:** | All Remaining Allowed Unsecured Non-Priority Claims. (Impaired). |
| **Class 8:** | Allowed Unsecured Penalty Claim of the District of Columbia (Impaired). |
| **Class 9**: | Paid Hyundai Lease Titling Trust Lease claim (Unimpaired) |
| **Class 10:** | Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired) |

6

## ARTICLE III
## TREATMENT OF CLAIMS

3.1    <u>Administrative Claims</u>.

    3.1.1    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

    3.1.2    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

    3.1.3    <u>Treatment and Payment of Administrative Claims</u>.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    <u>Classes 2 (Priority Claims):</u>

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00362    Document 27-1    Filed 03/02/21    Page 397 of 531 PageID #: 454
Case 3:18-cv-00362    Document 26-1    Filed 03/02/21    Entered 03/02/21 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 130 of 163

349

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

3.3    Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim).  Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

3.4.    Class 4: Allowed Secured Claim of IRS..

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

3.5.    Class 5: District of Columbia Transfer & Recordation Tax Claim

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

3.6.    Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case.  Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-02662   Doc 126-1   Filed 03/02/21   Entered 03/02/21 16:23:30   Desc 456
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 132 of 163

351

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

10

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1     Plan Description and Means Funding of Plan.

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2     Executory Contracts and Unexpired Leases

11

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

4.3    Post Confirmation Date Litigation.

4.3.1    Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

4.3.2    Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

4.4    Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

4.5    Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

4.6    Distribution of Property Under the Plan.

12

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662    Doc 126-1    Filed 03/02/20    Entered 03/02/20 16:23:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 135 of 163

354

4.6.1   <u>Disputed Claims</u>.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2   <u>Manner of Payment Under the Plan</u>.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3   <u>Undeliverable Distributions and Distributions of less than $5</u>.

(1)   <u>Holding and Investment of Undeliverable Distributions</u>.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**Unclaimed Cash**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)   <u>Failure to Claim Undelivered Distributions</u>.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan.  In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)   <u>Distributions of less than $5</u>.

No payment shall be made to any creditor when the distribution is in an amount less than $5.  Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4   <u>Rounding Of Distributions</u>.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662    Doc 2047-1    Filed 03/02/23    Entered 03/02/23 16:28:30    Desc #:460
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 136 of 163

355

to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding.  Any property withheld will then be paid to the appropriate taxing authority.  A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6    Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7    Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:  (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

4.8     <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

4.9     <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

**ARTICLE V**

**CONFIRMATION**

5.1     <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1   <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

6.1.1   The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

6.1.2   The Debtor has delivered $225,000 to the Plan Fund.

6.1.3   Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2   <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1   <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

7.1.1   to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

7.1.2   to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

7.1.3   to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

7.1.4   to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662   Document 27-1   Filed 03/02/21   Page 406 of 531   PageID #: 463
Case 3:18-cv-00662   Document 27-1   Filed 03/02/21   Page 406 of 531   PageID #: 463
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 139 of 163

358

7.1.5   to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6   to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7   to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8   to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9   to effectuate distributions under and performance of the provisions of the Plan;

7.1.10  to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11  to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12  to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13  to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14  to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15  to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16  to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 7-1    Filed 03/12/24    Page 407 of 531 PageID #: 464
Case 18-00260    Doc 126-1    Filed 03/02/20    Entered 03/02/20 16:28:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 140 of 163

359

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    <u>Exemption from Transfer Taxes</u>.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    <u>Modification of the Plan</u>.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    <u>Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall constitute: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    <u>Successors and Assigns</u>.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    <u>Saturday, Sunday or Legal Holiday</u>.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    <u>Post-Effective Date Effect of Evidences of Claims</u>.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

18

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 408 of 531    PageID #: 465
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Entered 03/02/21 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 141 of 163

360

8.7     Governing Law.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8     No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9     Severability Of Plan Provisions.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    Rules of Interpretation.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

8.11    <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020              By:      /s/ Max E. Salas
                                     Max E. Salas, Debtor and Debtor-In-Possession


                                     /s/ Joshua W. Cox
                                     Marc E. Albert, No. 345181
                                     Joshua W. Cox, No. 1033283
                                     STINSON LLP
                                     1775 Pennsylvania Ave., N.W., Suite 800
                                     Washington, DC 20006
                                     Tel. (202) 785-3020
                                     Fax (202) 572-9999
                                     marc.albert@stinson.com
                                     joshua.cox@stinson.com
                                     *Attorneys for*
                                     *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-02662   Document 7-1   Filed 03/02/21   Entered 03/02/21 16:28:00   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 143 of 163

362

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
In re:                              )
                                    )       Case No. 18-00260
MAX E. SALAS,                       )       Chapter 11
                                    )
                   Debtor.          )
_____)

### THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
### DATED JANUARY 22, 2020

Max E. Salas, ("**Debtor**"), an individual, as debtor and debtor-in-possession proposes this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**").

### ARTICLE I

### DEFINITIONS

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

1.1   **Administrative Claim** means any Claim for an administrative expense of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate of the Debtor incurred after the Petition Date, Claims for fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date) fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any cure payments to holders of assumed executory contracts.

1.2   **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Code section 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662   Document 27-1   Filed 03/12/24   Page 362 of 524 PageID #: 468
Case 3:18-cv-00662   Document 27-1   Filed 03/12/24   Entered 03/12/20 16:23:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 144 of 163

363

"**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.3      **Assets** means all assets of the Debtor as of the Effective Date.

1.4      **Avoidance Actions** means the claims for relief available to the Debtor or the Estate under sections 544-550 of the Bankruptcy Code.

1.5      **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

1.6      **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.7      **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

1.8      **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

1.9      **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: August 31, 2018 for non-governmental claims (October 15, 2018 for governmental claims).

1.10     **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.11     **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

1.12     **Claim** means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim.

1.13     **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

1.14     **Class** means a class of Claims established pursuant to Article II of the Plan.

1.15     **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

1.16     **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 145 of 163    PageID #: 469
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 145 of 163

364

1.17    **Confirmation Hearing** means the hearing conducted by the Court to determine whether to confirm the Plan.

1.18    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.19    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.20    **Disclosure Statement** means the Disclosure Statement for the Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court.

1.21    **Disputed Claim** means any Claim (including, but not limited to Administrative and Priority Claims) not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or noted for an objection in the Disclosure Statement.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.22    **Distribution Agent** means Stinson, LLP, Debtor's counsel in this Chapter 11 Case. Stinson, LLP, as Distribution Agent, shall be responsible for making all distributions under the Plan.

1.23    **Effective Date** The first Business Day that is 30 days after the later of the Confirmation Order becoming a Final Order, or the date of delivery of $225,000 by the Debtor to the Plan Fund, provided that no order staying consummation of the Plan has been entered prior thereto and the Confirmation Order has become a Final Order.  If an order staying consummation of the Plan has been entered, then Effective Date shall mean the earlier of the first Business Day following the date upon which (a) the Confirmation Order has become a Final Order or (b) any stay of consummation of the Plan is no longer effective, provided that such latter date is at least 30 days after the Confirmation Date.  Nothing herein shall prevent the Debtor from waiving the 30 day delay.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/24    Page 413 of 531    PageID #: 470
Case 18-00260-SMT    Doc 126-1    Filed 03/02/24    Entered 03/02/24 14:29:00    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 146 of 163

365

1.24    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.25    **Estate** means the estate created by the commencement of the Bankruptcy Case under section 541 of the Bankruptcy Code.

1.26    **Extended Tax Payments** means those monthly payments to be made by the Debtor though the Plan for payment of tax claims (Classes 2, 4, and 5) extended through April 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C).

1.27    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.28    **Final Order** means an order or judgment of any court, administrative agency or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code section 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.29    **Fusion Judgment** means the judgment in favor of the Debtor against Fusion Contracting Group LLC in the amount of $79,287.17 in damages and attorney's fees with postjudgment interest entered by the Bankruptcy Court on July 30, 2019 in Adversary proceeding No. 19-10002.

1.30    **Homestead Appeal** means the appeal of the Homestead Opinion initiated by the Judgment Creditors and currently pending before the United States District Court for the District of Columbia as Case No. 1:18-cv-02318-KBJ.

1.31    **Homestead Opinion** means the *Memorandum Decision and Order re Homestead Exemption* entered in the Bankruptcy Case on September 25, 2018 as ECF Dkt No. 108 and attached for reference as Exhibit A to the Disclosure Statement.

1.32    **Insurance Proceeds** means the liability insurance proceeds available under the Debtor's insurance policy with Encompass Ins. Co. of America related to the Property and the fire that occurred there in 2015 and totaling $500,000.

1.33    **Judgment Creditors** means the decedent estates of Patrick McLoughlin Nina Brekelmans and the holders of claims filed in the case as Proof of Claim Nos. 3-1 and 4-1 in the respective amounts of $7.7 Million and $7.5 million associated with Judgments rendered in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B.

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-02662    Document 27-1    Filed 03/02/21    Page 414 of 531    PageID #: 471
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 147 of 163

366

1.34    **Len Salas Bankruptcy Case** means the bankruptcy case of the Debtor's son, Len Salas, pending before the United States Bankruptcy Court for the Middle District of Tennessee as Case No. 3:18-bk-02662.

1.35    **Lien** has the meaning given in section 101(37) of the Bankruptcy Code.

1.36    **Petition Date** means April 18, 2018.

1.37    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.38    **Plan Fund** means the fund to be established on or before the Effective Date to consisting of the Debtor's non-exempt assets existing as of the Confirmation Date, and an additional $225,000 in cash from the Debtor secured by his exempt retirement account to be delivered to the Plan.

1.39    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under section 507(a) of the Bankruptcy Code.

1.40    **Property** means the real property located at 1610 Riggs place, NW, Washington D.C. 2009 and used by the debtor as his residence.

1.41    **Scheduled** means set forth on the Schedules.

1.42    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.43    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to section 506(a) of the Bankruptcy Code.

1.44    **Tennessee Avoidance Actions** means the avoidance actions previously purchased by the Judgment Creditors from the Len Salas Bankruptcy Case and includes each and every claim and recovery action to which the Len Salas Bankrupcy Case Trustee or the Len Salas Bankruptcy Case estate may have under the provisions of 11 U.S.C. § § 544 through 553, as applicable, related to the Property, and an resultant litigation thereto.

1.45    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

2.1    <u>General</u>.

5

The following is a designation of each Class of Claims under the Plan. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes. Each "Class" (e.g., Class 3A versus Class 3B) is separate and distinct from all other Classes for all purposes.

2.2    Classification.

Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

**Class 1:**    All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes. This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired).

**Class 2**:    All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired).

**Class 3**:    U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired).

**Class 4**:    Allowed Secured Claim of IRS (Impaired).

**Class 5**:    District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired)

**Class 6**:    Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired).

**Class 7**:    All Remaining Allowed Unsecured Non-Priority Claims. (Impaired).

**Class 8**:    Allowed Unsecured Penalty Claim of the District of Columbia (Impaired).

**Class 9**:    Paid Hyundai Lease Titling Trust Lease claim (Unimpaired)

**Class 10**:    Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 416 of 531 PageID #: 473
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 416 of 531 PageID #: 473
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 149 of 163
368

## ARTICLE III
## TREATMENT OF CLAIMS

3.1    Administrative Claims.

3.1.1    Class 1 Administrative Claims

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountants in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

3.1.2    Statutory Fees and Continuing Duties to the Office of the United States Trustee

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

3.1.3    Treatment and Payment of Administrative Claims.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses.  Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court).  Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

3.2    Classes 2 (Priority Claims):

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

7

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 417 of 531 PageID #: 474
Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 417 of 531 PageID #: 474
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 150 of 163
369

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 2 claims from funds held in his exempt retirement account if necessary. This class is impaired.

    3.3    <u>Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property</u>

Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S. Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S. Bank Claim). Based on Debtor's ownership in the Property established through the Homestead Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for Plan Treatment are attached as Exhibit C to the Disclosure Statement. Under the stipulation, beginning November 1, 2019, the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the amount of $8,329.19 per month until approval of the U.S. Bank agreement through conformation of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments following re-amortization by U.S. Bank following Confirmation based on an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037. This class is impaired.

    3.4.    <u>Class 4: Allowed Secured Claim of IRS..</u>

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66 portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income from the Property and other monthly income received, Debtor will deliver payment on the Class 4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its lien until paid in full. This class is impaired.

    3.5.    <u>Class 5: District of Columbia Transfer & Recordation Tax Claim</u>

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of Columbia. The District has claimed this amount associated with the August 4, 2010 date of transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes the District is not entitled to claim this amount due to the fact that no deed was recorded at that time and any future recording confirming of Max Salas's ownership in the Property is to be

8

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-02662   Document 27-1   Filed 03/02/21   Page 418 of 531   PageID #: 475
Case 18-00260-SMT   Doc 126-1   Filed 03/02/21   Entered 03/02/21 16:23:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 151 of 163

370

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular monthly installment payments totaling the full amount of the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

3.6.    Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans)

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2 million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million). Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of $225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of the remaining funds from the additional $225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides for distribution of any amounts collected by the Debtor from the Fusion Judgment and assignment of any remaining amounts of the Fusion Judgment on the Effective Date jointly to both Judgment Creditors. As of the date of this Third Amended Plan, no amounts have been collected by the Debtor from the Fusion Judgment and the balance of the Fusion Judgment is $79,287.17 plus all post-judgment interest accruing since entry of the Fusion Judgment by the Bankruptcy Court on July 30, 2019. The Debtor will provide the Judgment Creditors with all documents and information reasonably requested to assist with their collection efforts for the Fusion Judgment upon assignment. The Debtor will not oppose efforts and provide reasonable assistance to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass associated with their judgments. Upon receipt of discharge, the Debtor will take steps to withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on the fact that they may also collect on the amounts owed to them from available Insurance Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case. Upon Confirmation, the Debtor's listing of the Class 6 Claims as Disputed Claims shall be withdrawn without any further notice or order of the Court and the Class 6 Claims shall be treated as Allowed Claims to allow for distribution under the Plan as contemplated herein. Such withdrawal of the Class 6 Claims as disputed, however, shall in no way limit or otherwise affect any defenses the Debtor may have to the Tennessee Avoidance Actions, any challenge to the validity of the Homestead Opinion, whether by appeal, action upon remand to the Bankruptcy Court, and or any subsequent or resulting litigation. Any and all defenses of the Debtor to the Tennessee Avoidance Actions, any challenge to the Homestead Opinion, or other action that may challenge the Debtor's ownership interest to the Property shall be preserved in full. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

9

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-br-00262   Document 27-1   Filed 03/02/21   Entered 03/02/21 16:29:00   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan   Page 152 of 163

371

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

3.7.    Class 7:  Remaining Allowed Unsecured Non-Priority Claims

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional $225,000 cash infusion for distribution towards other creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at $15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

3.8.    Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia.

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

3.9.    Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

3.10.    Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-00662   Doc 126-27-1   Filed 03/02/21   Entered 03/02/21 16:28:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 153 of 163

372

Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1    Plan Description and Means Funding of Plan.

This Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D to the Disclosure Statement. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary. The Debtor will further submit all available non-exempt assets for the benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment and existing non-exempt cash assets existing in Debtor's DIP account at the time of Confirmation, but not including any value associated with the non-exempt portion of Debtor's home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings, equipment, and clothes are believed to be de minimus, especially when compared to the additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded through delivery of $225,000 towards the Plan Fund from either a loan to be received by the Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax liability associated with a withdrawal of these funds. From this new value, payment towards Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment of at least $50,000 from the new value added into the Plan Fund for distribution to other claimants.

4.2    Executory Contracts and Unexpired Leases

11

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-bk-02662   Document 27-1   Filed 03/02/24   Entered 03/02/24 16:23:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 154 of 163

373

The Debtor shall assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

4.3     Post Confirmation Date Litigation.

4.3.1     Homestead Appeal and Tennessee Avoidance Actions

On or after the Confirmation Date, the Debtor shall be entitled to continue with defense of the Homestead Appeal, and shall be entitled to fully defend any claim or action brought pursuant to the Tennessee Avoidance Actions or any resultant litigation.

4.3.2     Review of and Objections to Claims and Administrative Claims.

On and after the Confirmation Date, the Debtor shall be entitled to initiate and prosecute the Claims Objections on behalf of the Estate, including, but not limited to objection to the District of Columbia's claim for transfer and recordation taxes and for potential refund of vacant real property taxes previous assessed by the District of Columbia Office of Tax and Revenue.

4.4     Confirmation Order as Recordable Order Conveying Property to Max Salas

Upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to the Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes. The recording of any document to reflect the transfer of record title of the Property to the Debtor shall not limit and shall remain subject to the Judgment Creditors' rights under the Tennessee Avoidance Actions and the Judgment Creditors pending challenge to the Homestead Opinion establishing Debtor's ownership interest in the Property, and all rights, claims, and defenses of the Debtor and the Judgment Creditors shall be preserved.

4.5     Recordation and Other Taxes Covered by Section 1146(a)

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the Homestead Opinion as described in Plan Section 4.4) will not be subject to any stamp tax, real estate transfer, mortgage recording, or any other similar tax.

4.6     Distribution of Property Under the Plan.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

4.6.1    <u>Disputed Claims</u>.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim and in accordance with the Plan.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after the Effective Date, the Debtor shall distribute to the holder of such Claim any Cash that would have been distributable to such holder if such Claim had been an Allowed Claim on the Effective Date.

4.6.2    <u>Manner of Payment Under the Plan</u>.

Cash payments made by the Debtor pursuant to the Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor. All payments shall be made from the Plan Fund within 30 days from the Effective Date.

4.6.3    <u>Undeliverable Distributions and Distributions of less than $5</u>.

(1)    <u>Holding and Investment of Undeliverable Distributions</u>.

If the distribution to the holder of a Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Subject to Section 5.6.3(2) hereof, undeliverable distributions ("**<u>Unclaimed Cash</u>**") shall remain in the possession of the Debtor pursuant to Section 5.6.3(2) until such times as a distribution becomes deliverable.

There is no restriction on where the Debtor may hold Unclaimed Cash.

(2)    <u>Failure to Claim Undelivered Distributions</u>.

Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within six months after the date such distribution was made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any further distributions under the Plan.  In such cases any property held for distribution on account of such Allowed Claims, including any Unclaimed Cash relating to such Claims, shall be retained by the Debtor for the purposes of making another distribution to creditors under the Plan.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

(3)    <u>Distributions of less than $5</u>.

No payment shall be made to any creditor when the distribution is in an amount less than $5.  Any payment not distributed to a creditor shall be treated in the same manner as Undelivered Distributions.

4.6.4    <u>Rounding Of Distributions</u>.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down

13

to the nearest whole cent. To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Cash under the Plan.

### 4.6.5    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Debtor may withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder eliminates or satisfies the need for any applicable withholding by providing information to establish that withholding is not required, or by providing cash for the payment of applicable withholding. Any property withheld will then be paid to the appropriate taxing authority. A holder's failure to provide the necessary information or payments shall render the distribution undeliverable. Any tax liabilities or withholding of funds imposed upon the Debtor by any governmental unit, including any tax consequences associated with Debtor providing the necessary $225,000.00 to the Plan Fund, shall be borne by the Debtor and shall not affect or diminish the payments and transfers to be made under the Plan.

### 4.6.6    Application of Distributions.

If the distributions of property and interests in property hereunder on account of any Allowed Claim are less than the aggregate amount of principal and accrued but unpaid interest payable under the agreement governing, instrument evidencing or other document relating to such Allowed Claim, such distributions shall be applied first to principal and then to accrued but unpaid interest.

### 4.7    Discharge of Debtor and Injunction.

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor. Except as otherwise provided in the Plan or the Confirmation Order: (i) on the earlier of the date that is (a) six (6) months after the Effective Date, or (b) once all Plan distributions from the Plan Fund have been confirmed as received upon notification to the Court by the Debtor, not including future payments to US Bank/SPS pursuant to the Stipulation for Plan Treatment, the Extended Tax Payments through the Plan pursuant to § 1146(a), any future payment of Administrative Claims beyond the $175,000 Plan Fund cap on payment of those claims, and the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions and/or continue their litigation challenging the Homestead Opinion through appeal, or remand, if available; the Debtor shall be deemed discharged pursuant to the provisions of 11 U.S.C. 1141(d)(5) and released from all Claims, including, but not limited to, debts, demands, liabilities, and Claims that arose before the Petition Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim or proof of interest based on such Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) such Claim is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of such Claim has accepted the

14

Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 424 of 531 PageID #: 481
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 157 of 163

376

Plan; and (ii) *all Entities shall be precluded from asserting against the Debtor these and any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.* Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall (effective upon completion of all payments as contemplated above) act as a discharge of any and all Claims against and any and all debts and liabilities of the Debtor and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

*Except as otherwise provided in the Plan or the Confirmation Order, on and after the date of Discharge, all Entities who have held, currently hold or may hold a debt or Claim that arose prior to the Petition Date are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, its successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor, its successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, its successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Discharge of the Debtor shall not affect the Judgment Creditors' rights to pursue the Tennessee Avoidance Actions or continue with their challenge of the Homestead Opinion through appeal or remand, if available. Nothing contained in this section or any other section in the Plan shall serve to limit the Debtor's defenses or rights to the Judgment Creditor actions.*

    4.8    <u>Other Documents and Actions</u>.

The Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

    4.9    <u>Authorized Actions</u>.

The approval and adoption of all matters under the Plan involving the Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtor.

**ARTICLE V**

**CONFIRMATION**

    5.1    <u>Confirmation</u>.

The Debtor requests Confirmation of the Plan under section 1129(a) and section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/02/21    Page 425 of 531 PageID #: 482
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 158 of 163

377

# ARTICLE VI

## EFFECTIVE DATE CONDITIONS

6.1    <u>Conditions to Effective Date</u>.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

6.1.1    The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

6.1.2    The Debtor has delivered $225,000 to the Plan Fund.

6.1.3    Thirty days shall have passed from the occurrence of the later to occur of the conditions in Sections 6.1.1 and 6.1.2.

6.2    <u>Waiver of Conditions to the Effective Date</u>.

The Debtor may waive any of the conditions to the Effective Date.

# ARTICLE VII

## RETENTION OF JURISDICTION

7.1    <u>Retention Of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

7.1.1    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

7.1.2    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

7.1.3    to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

7.1.4    to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

16

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1
Case 3:18-cv-02662    Document 27-1    Filed 03/02/23    Page 426 of 531 PageID #: 483
Case 3:18-cv-02662    Document 27-1    Filed 03/02/23    Page 426 of 531 PageID #: 483
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 159 of 163

378

7.1.5    to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

7.1.6    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

7.1.7    to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

7.1.8    to hear and determine any and all Avoidance Actions of the Debtor that are commenced in accordance with the Plan after the Effective Date;

7.1.9    to effectuate distributions under and performance of the provisions of the Plan;

7.1.10    to hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code and Bankruptcy Rules;

7.1.11    to correct any defect, cure any omission or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

7.1.12    to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

7.1.13    to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

7.1.14    to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.1.15    to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

7.1.16    to resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

17

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00662    Document 27-1    Filed 03/12/24    Page 427 of 531    PageID #: 484
Case 18-00260    Doc 126-1    Filed 03/02/20    Entered 03/02/20 16:23:30    Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 160 of 163

379

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1    <u>Exemption from Transfer Taxes</u>.

To the maximum extent provided by 11 U.S.C. § 1146(a), transfers are exempt from transfer and recordation taxes.

8.2    <u>Modification of the Plan</u>.

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend or modify the Plan before its substantial consummation.

8.3    <u>Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date.  If the Plan is withdrawn, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

8.4    <u>Successors and Assigns</u>.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.5    <u>Saturday, Sunday or Legal Holiday</u>.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.6    <u>Post-Effective Date Effect of Evidences of Claims</u>.

Except as otherwise expressly provided in the Plan, notes, bonds, and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, except that nothing contained in this section shall limit the Judgment Creditors' rights to pursue or to use any available evidence to prosecute the Tennessee Avoidance Actions or challenge to the Homestead Opinion on appeal or remand, if available.

DB02/804722.0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-cv-00962    Document 27-1    Filed 03/12/21    Page 428 of 531 PageID #: 485
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 161 of 163

380

8.7     <u>Governing Law</u>.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

8.8     <u>No Admissions</u>.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

8.9     <u>Severability Of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

8.10    <u>Rules of Interpretation</u>.  For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code section 102 shall apply.

8.11   <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

Dated: January 22, 2020                By:      /s/ Max E. Salas
                                                Max E. Salas, Debtor and Debtor-In-Possession


                                       /s/ Joshua W. Cox
                                       Marc E. Albert, No. 345181
                                       Joshua W. Cox, No. 1033283
                                       STINSON LLP
                                       1775 Pennsylvania Ave., N.W., Suite 800
                                       Washington, DC 20006
                                       Tel. (202) 785-3020
                                       Fax (202) 572-9999
                                       marc.albert@stinson.com
                                       joshua.cox@stinson.com
                                       *Attorneys for*
                                       *Max E. Salas, Appellee and Debtor and Debtor-In-Possession*

20

DB02/804722 0002/6981717.1
CORE/3502869.0005/157293039.1

Case 3:18-bk-02662   Document 7-1   Filed 03/02/21   Entered 03/02/21 16:28:30   Desc
Exhibit B - Order Confirming Debtors Third Amended Plan    Page 163 of 163

382

_Marian F. Harrison_
Marian F. Harrison
US Bankruptcy Judge

Dated: 6/12/2019



## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

IN RE: )
      )    **CASE NO. 318-02662**
LEN SALAS, )
      )    **JUDGE MARIAN F. HARRISON**
     **Debtor.** )
      )    **CHAPTER 7**
      )
      )

_____

### ORDER
_____

This matter came before the Court on the Trustee's motion to sell, the objection of

Creditors, Nicolaas J. Brekelmans and Gail Gregory Brekelmans, Co-personal

Representatives of the Estate of Nina Brekelmans and Michael McLoughlin and Martha

Johnson, Co-personal Representatives of the Estate of Michael Patrick McLoughlin

(collectively "Estates Creditors"), and the objection of the U.S. Trustee, which was

withdrawn at the end of the hearing. Based on the oral findings on the record, which are

incorporated in this Order:

**IT IS ORDERED** that the motion to sell any potential avoidance actions against

Max Salas and/or his bankruptcy estate under 11 U.S.C. §§ 544, 545, 547, 548, 549, and

553, as related to the real property located at 1610 Riggs Place, NW, Washington, D.C., is

**GRANTED**, and the Estates Creditors' objection to the sale is **OVERRULED**.

Case 3:18-bk-02662 Doc 296 Filed 10/21/22 Entered 10/21/22 00:18:33 Desc Main
Exhibit C - Tennessee Bankruptcy Court Page 1 of 8 Document dated 06/12/19 Page 1 of 3

383

**IT IS FURTHER ORDERED** that the Trustee shall draft a new notice of sale and file it with the Court. The new notice shall clearly state that the Trustee is selling any potential avoidance actions against Max Salas and/or his bankruptcy estate under 11 U.S.C. §§ 544, 545, 547, 548, 549, and 553, as related to the real property located at 1610 Riggs Place, NW, Washington, D.C.

**IT IS FURTHER ORDERED** that the Estates Creditors and the U.S. Trustee shall have until close of business on June 21, 2019, to provide the names, addresses, email addresses, and telephone numbers of any potential buyers.

**IT IS FURTHER ORDERED** that the Trustee shall provide the notice to all interested parties, the potential buyers that were identified by the Trustee, and the additional persons and/or entities, if any, provided by the Estates Creditors or the U.S. Trustee by June 28, 2019.

**IT IS FURTHER ORDERED** that any party interested in purchasing the property shall submit to the Trustee an offer, in writing, in an amount equal to or higher than $11,000, by close of business, on Tuesday, July 9, 2019.

**IT IS FURTHER ORDERED** that if no alternative bids are received, the Trustee shall notify the Court and submit an order approving the sale to Ron Salas for $10,000 in cash.

2

384

IT IS FURTHER ORDERD that if alternative bids are received, the Trustee shall conduct an auction on Tuesday, July 16, 2019, at 9:00 a.m., outside Courtroom 3, Customs House, 701 Broadway, Nashville, TN 37203, and report the results of the auction in open court that same date.

**IT IS SO ORDERED.**

**This Order was signed and entered electronically as indicated at the top of the first page.**

3

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| In re: | : | |
|   LEN SALAS | : | Case No. 18-02662-MH3-7 |
| Debtor | : | |
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS | : | |
| and | : | |
| MICHAEL MCLOUGHLIN AND MARTHA JOHNSON, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF MICHAEL PATRICK MCLOUGHLIN | : | |
| In their capacity as authorized representatives of the Estate of Len Salas | : | |
| Plaintiffs | : | |
| v. | : | Adversary Proceeding No. 3:20-ap-90027 |
| MAX SALAS 1610 Riggs Place, NW Washington, DC | : | |
| Defendant | : | |

---

AMENDED COMPLAINT TO AVOID TRANSFERS AND RECOVER PROPERTY

COME NOW THE Plaintiffs herein, Nicolaas Brekelmans and Gail Gregory Brekelmans,

Co-personal Representatives Of the Estate of Nina Brekelmans ("Nina")("the Brekelmans

Estate") and Michael Mcloughlin and Martha Johnson, Co-personal Representatives of The Estate of Michael Patrick Mcloughlin ("Michael") ("the McLoughlin Estate") ("the Brekelmans Estate and the Mcloughlin Estate are hereinafter collectively sometimes referred to as "the Estates"), suing in their derivative capacity on behalf of the Estate of Len Salas, acting by and through their undersigned counsel and for their Complaint against the Defendant, Max Salas, allege as follows:

**Jurisdiction and Venue**

1.  This Court has jurisdiction under 28 U.S.C. § 1334 (b).  This matter involves causes of action under the trustee's avoiding powers purchased by the Plaintiffs from the Debtor's Estate.

2.  Venue lies in this court under 28 U.S.C. §1409 (a)(c) & (d).

3.  This matter involves property of the estate and claims of creditors of the Debtor's estate.

4.  This matter is a core matter involving Avoiding Powers of the trustee pursuant to 11 U.S.C. § 544, *et seq.* (hereinafter, all references to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* are cited as "Code, §").  ***See*** *inter alia*, 28 U.S.C. §157 (b)(1) and §157(b)(2) (A)(F)(H) & (0).

5.  The Plaintiffs have standing to pursue the causes asserted in this Complaint as the authorized representatives of the bankruptcy estate of Len Salas.

**Parties**

6.  The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively.  Nina and Michael were tragically killed in a fire at a residence in Washington, DC ("the Fire") which residence was owned by the Debtor, Len Salas and occupied and managed by his father, the Defendant, Max Salas.  The Plaintiffs herein, the

Estates, were the successful bidders at an auction sale of this bankruptcy estate's interest in the trustee's avoidance and recovery actions under Code, §§544, *et seq*. A copy of the Trustee's Report of Sale of those actions is attached hereto as Exhibit A.

7. The Defendant Max Salas, is the Debtor in Case No. 18-00260, in the United States Bankruptcy Court for the District of Columbia (hereinafter "Max"). Max filed a voluntary petition, under Chapter 11 of the Code in April, 2018.

7. Len Salas (hereinafter "Len"), is the Debtor is Case No. 3:18-bk-02662, filed in the United States Bankruptcy Court for the Middle District of Tennessee (Nashville) ("Len's Bankruptcy") on or about May 2, 2018. Len's Bankruptcy was converted from a Chapter 11 to a Chapter 7 bankruptcy on or about December 12, 2018.

8. This matter involves the recovery of property located at 1610 Riggs Place, NW, Washington, DC ("the Property") at which the Defendant, Max, presently resides. Alternatively, the Plaintiffs are seeking a fair market sale of the Property to recover its value, believed to be in excess of $1 Million above all prior and/or secured claims.

9. The Plaintiffs are seeking the relief sought, and the benefit resulting from the causes of action asserted in this Complaint through and on behalf of, the Len Salas bankruptcy estate ("the Estate").

10. Michael Gigandet, the Court appointed Trustee of the Estate, has declined to pursue the causes asserted herein and has also declined to join in this action. This Complaint is brought as a derivative action on behalf of the Estate of Len Salas.

**Background for All Counts**

11. In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment"). The Judgment resulted from a fire at the Property which,

3

at the time, Max used as rental property and rented to tenants including Nina and Michael. Through the gross negligence of Max and his deliberate failure to make required safety improvements to the Property, Nina and Michael tragically lost their lives in a horrific and traumatic manner. Len was named a Defendant since he was, at all times, the owner of the Property, including at the time of the fire (June, 2015).

12. The Estates filed separate lawsuits against Max and Len in 2015. After a lengthy period of discovery and pre-trial matters, the case was tried in late March, 2018 resulting in the Judgment. Although Max and Len both appealed the Judgment, there has been no prosecution of the appeal and no stay entered in the appeal. On January 28, 2019, the Bankruptcy Court for the District of Columbia entered an Order Confirming Max's Third Amended Plan of Reorganization ("the Confirmed Plan"). Under the terms of the Confirmed Plan, entered in Max's Bankruptcy on or about January 31, 2020, Max is withdrawing his appeal of the Judgment(s). *See*, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 9, ¶3.6. A copy of the Confirmed Plan and Order Confirming the Third Amended Plan are attached collectively as Exhibit B.

13. Shortly after the entry of the Judgment Max and Len filed separate bankruptcies, Max in the District of Columbia (Case No. 18-00260)("Max's Bankruptcy") and Len in this Court (Case No. 18-02662) ("Len's Bankruptcy").

14. At the time of the bankruptcy filings by Len and Max, Len was, and still is, the title owner of property located at 1610 Riggs Place, NW, Washington, D.C. ("the Property"). The Property was purchased by Len in 2007 after his father, Max, and Max's then wife, divorced. In order to purchase the Property, Max deeded the Property to Len ("the 2007 Deed"). Len then obtained a Deed of Trust from Sun Trust Bank for $870,000 ("the Sun Trust Loan"). The

proceeds of the Sun Trust Loan were paid to Max's wife as part of the divorce settlement.

15.   From 2007 through the present, Len has remained the sole owner of the Property. Max's Confirmed Plan provides that the Confirmation Order constitutes "an Order conveying the Property to Max Salas". ***See***, Exhibit B, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 12, ¶ 4.4.

16.   At the time of Len's purchase of the Property in 2007, Max had tax liens and other obligations which made it impossible for Max to obtain a loan on the Property.  In addition, Max had a tax evasion conviction on his record.  Those and other credit and tax issues continued through Max's Bankruptcy.  Max has consistently attempted to hide assets from the IRS and other taxing authorities, including his potential interest in the Property.

17.   According to Max, he tried to refinance the Property several times after 2007, all to no avail.  In fact, at least through 2015 every attempt to refinance the Property required the participation of Len as a co-signer or co-obligor.

18.   From sometime after 2007 through the date of the fire, Max rented out rooms at the Property.  The tenants, including Nina and Michael, signed leases under the name of "the CLR Trust" and Max signed each lease as Trustee.  According to Len, the CLR Trust, was a trust created by Max for the benefit of his three sons, Chase, Len and Ron.

19.   According to Max, the lease payments were put into an account in the name of the CLR Trust and were used to pay for the Deed of Trust obligations and other expenses associated with the Property.

20.   Through the date of the fire and at all times prior to the bankruptcy filings, all governmental notices and tax bills and notices regarding the Property were in Len's name.

21.   Consistent with his history of attempting to dodge tax liability, Max did not want the

5

Property, or any matters related to the Property, in his name so he could avoid any taxes or publicly recorded or confirmed ownership interest.

22. Similarly, Max did not want to record any income in his name from the leasing of the Property. As a result, he deposited all of the income from the leases into the "CLR Trust" bank account.

23. According to Max and Len, in July, 2010, Max and Len traveled to Colorado in July 2010 to visit Ron, one of Max's sons. Ron was a recent law school graduate and admitted to practice law in Colorado.

24. While in Colorado, Len and Max executed a very simple trust agreement which Ron stated he prepared using a Colorado form even though the alleged trust property, the Property, was located in D.C. Ron also prepared a form "Quitclaim Deed," which Len also signed ("the Quitclaim Deed").

25. Max asserts that Len, who is very unsophisticated in business and legal transactions, deeded the Property to his father while Len remained the sole obligor on the Sun Trust Deed of Trust Note ("the Note").

26. Max and Ron clearly took advantage of Len and convinced Len to deed the Property to his father despite the fact that by that deed, Len would have lost all collateral for his $870,000 loan obligation to Sun Trust.

27. The transfer in 2010 was a violation of Len's Deed of Trust and Note with Sun Trust Bank.

28. At the time of the attempted Quitclaim Deed, in July, 2010, Len's only significant asset was the Property. At all relevant times, Len worked only part time and had limited income and assets. At all times following the transfer in 2010, Len was insolvent. His liabilities

exceeded his assets and his income was insufficient to pay his obligations, including the Sun Trust Deed of Trust Note payments.

29. As of the filing of Len's bankruptcy case in 2018, Len was obligated to pay over $15 Million in damages to the Plaintiffs as a result of their judgments. Neither Len, nor the Trustee filed objections to the Plaintiffs' claims filed in Len's bankruptcy. In addition Len was solely obligated on the Sun Trust Deed of Trust on the Property which, according to the Defendant's bankruptcy schedules was over $1 Million in April, 2018.

30. At no time, since 2007, including, but not limited to, the time of the Quitclaim Deed in July, 2010, did Max make any payments to Len and Len received no property or other value from Max related to the Trust or Quitclaim Deed.

31. Max asserts that he intended to record the Quitclaim Deed in 2010 but had no money to pay the required recording and transfer taxes. The Quitclaim Deed has never been recorded and Len remains the titled owner of the Property.

32. Neither Max nor Len are aware of the present location of the original Quitclaim Deed or whether it even exists. Regardless, there has been no attempt to record the Quitclaim Deed since 2010.

33. Toward the end of the Superior Court litigation with the Plaintiffs, which resulted in the Judgment, Max concocted a scheme to attempt to keep the Property for himself in the face of a pending substantial judgment award to the Plaintiffs.

34. In discussions with his newly hired bankruptcy counsel, Marc Albert (Stinson LLP ("Albert"), Max learned that if the Property was owned by Len, it could not be exempted in bankruptcy and would be subject to attachment and sale to partially satisfy the eventual judgments. These conversations took place in late 2017 and early 2018.

7

35. Max also learned from Albert that if Max could claim he is the actual owner of the Property, he could claim the Property exempt in his subsequent bankruptcy proceeding and, due to D.C.'s generous homestead exemption, Max could then claim the entire equity in the Property as exempt from execution by the Plaintiffs.

36. Because Len was not residing in the Property he could not claim the benefit of the D.C. homestead exemption.

37. In early 2018, less than a month prior to the Superior Court trial, Max and Len, for the first time, alleged and produced a copy of the 2010 trust ("the Trust") and quitclaim deed ("the Quitclaim Deed") and sought to exclude Len from the Superior Court litigation by asserting Max was the real owner of the Property. The Superior Court summarily denied Max's attempt and the trial continued, resulting in the Judgment. The Judgment is now final and binding on all parties as a result of the pending final distribution and closing of Len's Estate in this Court and the Confirmed Plan in Max's Bankruptcy.

38. The fire occurred in June, 2015. From that time, until February or March, 2018, no one resided in the Property. During that time, and continuing after Max's Bankruptcy filing until November, 2019, no payments were made on the Sun Trust Deed of Trust Note ("the Sun Trust Note") with the exception of one payment made by Max from the insurance proceeds he received as a result of the fire damage.

39. According to the schedules filed in Max's bankruptcy, as of the commencement of his bankruptcy case, the only lien creditors were (IRS secured claim - $ 6,768.66) and Sun Trust Mortgage ($1,030,825.86). The balance of the Sun Trust Note as of October 26, 2018 was $1,141,021.14. Although Max claims he was the sole party responsible for all payments on the Sun Trust Loan, and made all loan payments, no payments have been made since prior to 2018

(with the exception of one payment from insurance proceeds) and the current balance owned on the Property increased at the rate of at least $7800 from some time in 2017 through October, 2019. Sun Trust sold its Note, in 2019, to U.S. Bank National Association/Select Portfolio Servicing, Inc. ("U.S. Bank"). Pursuant to an agreement reached with U.S. Bank in Max's bankruptcy case, Max is required to make monthly payments of approximately $8,300. Upon information and belief, Max has been making the required payments since approximately November, 2019. *See*, Exhibit B, Confirmed Plan, p. 8, ¶ 3.3.

40. On September 25, 2018, the Bankruptcy Court for the District of Columbia (Teel, J.)("the DC Bankruptcy Court") entered a Memorandum and Order overruling the Estates' Objections to the Debtor's claim of Exemption ("the Exemption Ruling"). The Estates timely appealed to the United States District Court for the District of Columbia ("the District Court").

41. On or about January 2, 2020, the District Court issued an order remanding the appeal to the Bankruptcy Court "the Remand Order" for determination of issues raised by the Plaintiffs in a Motion seeking to add to the appellate record or, alternatively, to remand ("the District Court Motion").

42. On October 13, 2020, the DC Bankruptcy Court denied the Plaintiffs' Motion to Reconsider. The Plaintiffs timely appealed and that appeal is now pending in the United States District Court for the District of Columbia (Civil No. 1:20-cv-3091-KBJ)

43. In the Exemption Ruling, the D.C. Bankruptcy Court ruled that Max was the owner of the Property by virtue of the 2010 Quitclaim Deed. The Court also determined, however, that the trustee's avoiding powers (11 U.S.C. §§ 544, *et seq.*) could result in the recovery of the Property for the benefit of the creditors of the Len's estate and, therefore, that those avoiding powers could result in a recovery of the Property, or its value, for the benefit of creditors whether

9

or not Max's exemption is upheld on appeal. The Court made no final determination of the effect of the trustee's avoiding powers leaving that to the trustee of Len's bankruptcy estate.

44. No deed has been recorded naming Max as Trustee or owner. However, as discussed above, the Confirmed Plan provides that the Confirmation Order constitutes a recordable order conveying the Property to the defendant, Max Salas. Other than the original deed dated 2007 and the Confirmation Order, no deeds or other documents of title have been filed or recorded related to the Property.

45. Whether the Trust or Quitclaim Deed was ever in effect, or was abandoned after 2010, all indicia of ownership of the Property were held by Len though the date of Max's bankruptcy and there are no records in the D.C. Recorder of Deeds Office, or in any other public record, that Max is the owner of the Property.

46. Pursuant to an Order of this Court dated June 12, 2019 ("the Tennessee Order"), the Trustee in Len's Bankruptcy was authorized to sell the Estate's interest in the Trustee's avoidance and recovery rights under, *inter alia*, 11 U.S.C. §§ 544 through 551. A copy of the Tennessee Order is attached hereto as Exhibit C.

47. On July 23, 2019 the Trustee in Len Salas' case, pursuant to the Tennessee Order, held an auction sale to auction the bankruptcy estate's interest in the available avoidance and recovery actions pursuant to 11 U.S.C. §§544 through 553. The Plaintiffs herein, the Estates, were the successful bidders. ***See*** Exhibit A, Trustee's Report of Sale.

48. No payments or other value were transferred from, or by, Max to Len related to the transfer of the Property, either in 2010, or at any other time. According to Len, he has never received any compensation, remuneration, property or anything else of value related to the Property, the Quitclaim Deed, or the Sun Trust Loan.

49. Max valued the Property at $2.5 Million on the Schedules filed in Max's Bankruptcy in or about May, 2018. The Property was appraised in or about August, 2019, for approximately$2.4 Million.

50. At the time of the transfer in 2010, the Property was worth in excess of $1.5 Million and the debt to Sun Trust, owed by Len was at least $800,000.

51. According to 11 U.S.C. § 548 (d)(1) a transfer of real estate is not perfected until the transfer is so perfected such that a bona fide purchaser from the debtor cannot acquire an interest in the property superior to that of the transferee. There was no such transfer prior to the filing of the Max Salas bankruptcy case (April 18, 2018). Therefore, pursuant to 11 U.S.C. § 548 (d)(1) the transfer is deemed to have been made immediately before the date of the filing of the Debtor's petition on April 18, 2020.

52. Under the law of the District of Columbia, a transfer of real property is made when the transfer is "so far perfected that a [hypothetical] good-faith purchaser of the asset from the debtor…cannot acquire an interest in the asset that is superior to the interest of the transferee. D.C. Code § 28-3106.

53. At all times from 2010 through Len's bankruptcy filing, he was insolvent by virtue of the Sun Trust Deed of Trust obligation and the Estates' judgments (as of April, 2018).

54. The Estates filed proofs of claim in both Len's and Max's bankruptcy cases and no objections were filed to the Estates' claims, totaling more than $15 Million, in either case.

55. In accordance with Max's confirmed Plan of reorganization, the Plaintiffs' allowed claims exceed $15 Million.

56. Pursuant to the confirmed Plan in Max's case, the Estates are the owners of the recovery and avoidance claims set forth in this Complaint and are entitled to pursue those claims.

57.  Pursuant to this Court's Order of February 11, 2020, the Plaintiffs have authority to sue on behalf of the Debtor's Estate.

## COUNT I

### (Declaratory Judgment Regarding Plaintiffs' Bona Fide Purchaser Status)

58.  The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 57 hereof, the same as if those paragraphs were restated in full, hereat.

59.  Pursuant to 11 U.S.C. § 544 (a), the Plaintiffs, as purchasers of the Trustee's avoidance and recovery powers have the status, as of the date of the Len Salas bankruptcy petition, namely, May 2, 2018, of a bona fide purchaser of real property from the debtor and a judicial lien holder.

60.  Under Code § 544 (a)(3) the trustee's bona fide purchaser status gives the Plaintiffs priority over subsequently recorded interests in the Property.

61.  Under D.C. Code, § 42-401:

> Any deed conveying real property in the District, or interest therein, ...shall be held to take effect from the date of the delivery thereof, except that **as to creditors and subsequent bona fide purchasers** and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the Recorder of Deeds for record.

62.  As a result, the Plaintiffs have a superior and priority interest in the Property ahead of any interest acquired by Max Salas and, therefore, the Property should be turned over to the Plaintiffs, or sold to recover the net equity for the benefit of the unsecured creditors of Len Salas' bankruptcy estate.

WHEREFORE, as to Count I, the Plaintiffs pray for a declaratory judgment in their

favor, declaring as follows:

1. That the Plaintiffs are the owners of the Property located at 1610 Riggs Place, NW, Washington, DC;

2. That the Plaintiffs are entitled to immediate possession of the Property; or, alternatively,

3. That the Plaintiff are entitled to sell the Property and to retain the net proceeds from such a sale for distribution to the creditors of the bankruptcy estate of Len Salas as directed by further order of this Court;

4. That Len and Max are directed to take all actions, sign all documents and perform all acts necessary to transfer or sell the Property as set forth above; and

5. For such other and further relief as may be just and proper.

## COUNT II

### (Declaratory Judgment Regarding Plaintiffs' Judicial Lienholder Status)

63. The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 62 hereof, the same as if those paragraphs were restated in full, hereat.

64. As of the commencement of this case, April 18, 2018, the trustee has, without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien, whether or not such creditor exists. Code §544 (a)(1).

65. The Plaintiffs are the authorized representatives for prosecution of all of the

13

Trustee's rights and powers under Code §§ 544, *et seq.*

66.   A judicial lien creditor, under the laws of the District of Columbia, has a superior interest to the Property than that of a competing creditor or owner who has not recorded an interest in the Property.

WHEREFORE, as to Count II, the Plaintiffs pray for a declaratory judgment in their favor, as follows:

1. Declaring and establishing that the Plaintiffs, as the authorized representatives of the bankruptcy estate of Len Salas, have a judgment lien against the Property located at 1610 Riggs Place, NW, Washington, DC, as of April 18, 2018 in the amounts of $7.5 Million (Brekelmans) and $7.7 Million (McLoughlin), respectively; and

2.   Entering a judgment or order confirming the Plaintiffs' judgment liens against the Property totaling $15.2 Million; and

3.   Directing, declaring and confirming that the Plaintiffs are entitled to immediately execute on their judgment lien against the Property; and

4. That the Plaintiffs are entitled to sell the Property and to retain the net proceeds from such sale for distribution to the creditors of the bankruptcy estate of Len Salas as directed by further order of this Court

5. For such other and further relief as may be just and proper.


**COUNT III**

**Declaratory Judgment Regarding Plaintiffs' Status as Trustee as Creditor with Unsatisfied Execution**

67.   The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including,

but not limited to, paragraphs 1 through 66 hereof, the same as if those paragraphs were restated in full, hereat.

68. The Plaintiffs, as purchasers of the avoidance and recovery powers of the Trustee of Len's Bankruptcy, have the status, as of the commencement of Len's Bankruptcy, by virtue of 11 USCS § 544(a)(2), of all of the rights and powers of a creditor that had delivered a writ of execution against Len's interest in the Property, which execution was returned unsatisfied.

69. The Plaintiffs assert that the trustee's status as a creditor under Code § 544 (a)(2) gives him a superior interest in the Property such that the Plaintiffs are entitled to recover the Property, or its equity, for the benefit of the unsecured creditors of the bankruptcy estate of Len Salas.

WHEREFORE, as to Count III, the Plaintiffs pray for a declaratory judgment in their favor, as follows:

1. Declaring and establishing that the Plaintiffs, as the authorized representatives of the bankruptcy estate of Len Salas, have a superior claim to the Defendant's Property located at 1610 Riggs Place, NW, Washington, DC, as of April 18, 2018 in the amounts of $7.5 Million (Brekelmans) and $7.7 Million (McLoughlin), respectively; and

2. Directing, declaring and confirming that the Plaintiffs are entitled to the sale of the Property to satisfy the claims of all unsecured creditors of the Len Salas bankruptcy estate; and

3. For such other and further relief as may be just and proper.

## COUNT IV

### (Fraudulent Conveyance - Code § 548 (a))

70. The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 69 hereof, the same as if those paragraphs were restated

in full, hereat.

71.   The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because it was made with the actual intent to defraud creditors and potential creditors of Len Salas, including Sun Trust Bank, by transferring the Property to Max without permission.

72.   The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because it was made with the actual intent to defraud creditors and potential creditors including all parties having claims related to the Property, including the Plaintiffs.

73.   The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because, by transferring the only major asset of Len to his father, the transfer was likely to, and did, make Len insolvent and unable to pay his mortgage obligations to Sun Trust Bank.

74.   The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because it was made with the actual intent to defraud creditors and potential creditors, including those having claims related to the Property, such as taxing authorities, utilities, and renters, such as Nina and Michael and, therefore, the Estates.

75.   The transfer was a fraudulent conveyance pursuant to Code § 548 because the alleged transfer was made for less than reasonably equivalent value.   Len received no compensation or property of value and gave up property worth in excess of $2 Million while remaining solely obligated on a Deed of Trust Note to Sun Trust bank that was in default at the time of the alleged transfer.

76.   Len was either insolvent at the time of the transfer, or the transfer made him insolvent since the Property was his only significant asset and he still remained liable on the Sun Trust Loan after the alleged transfer.

77.   The transfer of the Property in 2010 by Quitclaim Deed was made after two years

prior to Max's Bankruptcy because pursuant to Code § 548 (d)(1) the transfer of real property is deemed perfected when the deed is recorded or, if not recorded prior to the bankruptcy filing, the date immediately prior to the bankruptcy filing, namely April 18, 2018.

WHEREFORE, as to Count IV , the Plaintiffs pray for judgment as follows:

1.  That the attempted transfer of the Property from Len to Max is a fraudulent conveyance under Code § 548 (a); and

2.  That the conveyance is recovered or avoided so that the Property is owned and controlled by the Plaintiffs, for the benefit of the unsecured creditors or the bankruptcy estate of Len Salas, pursuant to their purchase of the Trustee's avoidance and recovery rights in Len's Bankruptcy; and

3.  That any further transfer or disposition of the Property is enjoined; and

4.  That the Property be sold at public auction and the proceeds, after payment of closing costs and priority secured claims shall be paid to the Plaintiffs, for distribution to unsecured creditors pursuant to further order(s) of this court; and

5.  For such other and further relief as may be just and proper.

**COUNT V**

**(Fraudulent Conveyance - D.C.)**

78. The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 77 hereof, the same as if those paragraphs were restated in full, hereat.

79.  The Plaintiffs, as the holders of the rights and claims of the Trustee, may avoid any transfer that is voidable under applicable law pursuant to Code § 544 (b) (1).

80.  Under the law of the District of Columbia, the transfer of the Property alleged herein,

17

is a fraudulent conveyance because the transfer was performed with fraudulent intent as to existing creditors, such as the IRS, other taxing authorities, Sun Trust Bank, and others, including the Plaintiffs and was made for less than reasonably equivalent value, all as specifically prohibited by D.C. Code § 28-3104, *et seq.*

81.  A transfer made is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. D.C. Code § 28-3105

82.  A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

83.  In the District of Columbia, a transfer is made:

(A) With respect to an asset that is real property other than a fixture, including the interest of a seller or purchaser under a contract for the sale of the asset, when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee.

D.C. Code § 28-3106

84. In an action for relief against a transfer or obligation under D.C. law, a creditor may obtain:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee...;
(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
(B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
(C) Any other relief the circumstances may require.

D.C. Code § 28-3107

WHEREFORE, as to Count V, the Plaintiffs pray for an order:

1. Avoiding the transfer or attempted transfer of the Property; and

2. Providing for an attachment against the Property on such terms as the Court may order; and

3. Enjoining any further disposition of the Property or allowing the placement of any other liens or encumbrances against the Property pending sale or other disposition approved by the Court; and

4. Such other and further relief as may be just and proper.

## COUNT VI

### (Liability of Transferee)

85 . The Plaintiffs reallege the allegations of all paragraphs of this Complaint, including, but not limited to, paragraphs 1 through 84 hereof, the same as if those paragraphs were restated in full, hereat.

86.   The Defendant, Max Salas, is the transferee of the alleged transfer which is the subject of this Complaint.

87.   Under Code § 550 (a) the trustee may recover, for the benefit of the estate, the property transferred or, upon court order, the value of the property.

WHEREFORE, as to Count VI, the Plaintiffs pray for an Order:

19

1. To turn over the Property; or, alternatively,

2. To sell the property, by auction or other public sale, upon reasonable notice, and to turn over the net proceeds of such sale, subject to court approval of the amount of such proceeds, to the Plaintiffs; and

3. to authorize and direct the Plaintiffs to retain the property and proceeds for distribution to the unsecured creditors of the bankruptcy estate of Len Salas in accordance with further order(s) of this Court;

3. For such other and further relief as may be just and proper.

LAW OFFICE OF PHILIP J. MCNUTT, PLLC


By: _/s/ Philip J. McNutt___
Philip J. McNutt
11921 Freedom Drive, Ste 584
Reston, VA 20190
703-904-4380
202-379-9217 (fax)

Pmcnutt@mcnuttlawllc.com

BUTCH, PORTER & JOHNSON, PLLC

By: _/s/ Taylor A. Cates
Taylor A. Cates
130 North Court Avenue
Memphis, TN 38103
901-524-5165
901-524-5000 (fax)

Tacates@bpjlaw.com

ATTORNEYS FOR THE PLAINTIFFS

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Amended Complaint was served on Philip Young, Counsel for the Defendant, through the Court's ecf noticing service, on the 16th day of February, 2021.

_/s/ Philip J. McNutt_
Philip J. McNutt

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Len Salas, | ) | Case No. 3:18-bk-02662 |
| | ) | Chapter 7 |
| Debtor. | ) | Judge Harrison |
| _____ | ) | |
| | ) | |
| Nicolaas Brekelmans and Gail Gregory | ) | |
| Brekelmans, Co-Personal Representatives | ) | |
| of the Estate of Nina Brekelmans | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Michael McLoughlin and Martha | ) | |
| Johnson, Co-Personal Representatives | ) | |
| of the Estate of Michael Patrick | ) | |
| McLoughlin, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Ad Pro No. 3:20-ap-90027 |
| | ) | |
| Max Salas, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT TO AVOID TRANSFERS AND RECOVER PROPERTY

COMES NOW Defendant Max Salas (the "Defendant"), by and through counsel, and hereby files this Answer and Affirmative Defenses to the Amended Complaint to Avoid Transfers and Recover Property (the "Complaint") filed herein. The Defendant answers the individually numbered paragraphs as follows:

1. The allegations as stated in Paragraph 1 of the Complaint are admitted.

2. The allegations as stated in Paragraph 2 of the Complaint are admitted.

3.  The allegations as stated in Paragraph 3 of the Complaint are denied.

4.  The allegations as stated in Paragraph 4 of the Complaint are admitted.

5.  The allegations as stated in Paragraph 5 of the Complaint are denied.

6.  The allegations as stated in Paragraph 6 of the Complaint are denied.

7.  The allegations as stated in Paragraph 7 of the Complaint are admitted.

7.  The allegations as stated in Paragraph 7 of the Complaint are admitted.[1]

8.  Paragraph 8 contains a narrative summary of Plaintiffs' allegations in the Complaint. As such, no response is required. To the extent a response is required, the Defendant denies all allegations contained in Paragraph 8.

9.  Paragraph 9 contains a narrative summary of Plaintiffs' allegations in the Complaint. As such, no response is required. To the extent a response is required, the Defendant denies all allegations contained in Paragraph 9.

10.  The allegations as stated in Paragraph 10 of the Complaint are admitted.

11.  The allegations as stated in Paragraph 11 of the Complaint are denied.

12.  The allegations as stated in Paragraph 12 of the Complaint are denied.

13.  The allegations as stated in Paragraph 13 of the Complaint are admitted.

14.  The allegations as stated in Paragraph 14 of the Complaint are denied.

15.  The allegations as stated in Paragraph 15 of the Complaint are denied.

16.  The allegations as stated in Paragraph 16 of the Complaint are denied.

17.  The allegations as stated in Paragraph 17 of the Complaint are admitted.

18.  The allegations as stated in Paragraph 18 of the Complaint are admitted.

19.  The allegations as stated in Paragraph 19 of the Complaint are admitted.

---

[1] The Complaint contains two paragraphs numbered "7".

2

20. The allegations as stated in Paragraph 20 of the Complaint are admitted.

21. The allegations as stated in Paragraph 21 of the Complaint are denied.

22. The allegations as stated in Paragraph 22 of the Complaint are denied.

23. The allegations as stated in Paragraph 23 of the Complaint are admitted.

24. The allegations as stated in Paragraph 24 of the Complaint are admitted.

25. The allegations as stated in Paragraph 25 of the Complaint are denied.

26. The allegations as stated in Paragraph 26 of the Complaint are denied.

27. The Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 27 of the Complaint, therefore the Defendant denies the same.

28. The allegations as stated in Paragraph 28 of the Complaint are denied.

29. The allegations as stated in Paragraph 29 of the Complaint are denied.

30. The allegations as stated in Paragraph 30 of the Complaint are denied.

31. The allegations as stated in Paragraph 31 of the Complaint are denied.

32. The allegations as stated in Paragraph 32 of the Complaint are denied.

33. The allegations as stated in Paragraph 33 of the Complaint are denied.

34. The allegations as stated in Paragraph 34 of the Complaint are denied.

35. The allegations as stated in Paragraph 35 of the Complaint are denied.

36. The allegations as stated in Paragraph 36 of the Complaint are admitted.

37. The allegations as stated in Paragraph 37 of the Complaint are admitted.

38. The allegations as stated in Paragraph 38 of the Complaint are admitted.

39. The allegations as stated in Paragraph 39 of the Complaint are admitted.

40. The allegations as stated in Paragraph 40 of the Complaint are admitted.

41.   In response to the allegations of Paragraph 41 of the Complaint, the Defendant states that the District Court's Order speaks for itself.  To the extent an allegation is made in Paragraph 41, all such allegations are denied.

42.   The allegations as stated in Paragraph 42 of the Complaint are admitted.

43.   In response to the allegations of Paragraph 43 of the Complaint, the Defendant states that the Exemption Ruling speaks for itself.  To the extent an allegation is made in Paragraph 43, all such allegations are denied.

44.   The allegations as stated in Paragraph 44 of the Complaint are denied.

45.   The allegations as stated in Paragraph 45 of the Complaint are denied.

46.   The allegations as stated in Paragraph 46 of the Complaint are admitted.

47.   The allegations as stated in Paragraph 47 of the Complaint are admitted.

48.   The allegations as stated in Paragraph 48 of the Complaint are denied.

49.   The allegations as stated in Paragraph 49 of the Complaint are admitted.

50.   The allegations as stated in Paragraph 50 of the Complaint are denied.

51.   In response to the allegations of Paragraph 51 of the Complaint, the Defendant states that 11 U.S.C. §548(d)(1) speaks for itself.  To the extent an allegation is made in Paragraph 51, all such allegations are denied.

52.   In response to the allegations of Paragraph 52 of the Complaint, the Defendant states that D.C. Code §28-3196 speaks for itself.  To the extent an allegation is made in Paragraph 52, all such allegations are denied.

53.   The allegations as stated in Paragraph 53 of the Complaint are denied.

54.   The allegations as stated in Paragraph 54 of the Complaint are admitted.

55.   The allegations as stated in Paragraph 55 of the Complaint are admitted.

56. In response to the allegations of Paragraph 56 of the Complaint, the Defendant states that the Plan speaks for itself. To the extent an allegation is made in Paragraph 56, all such allegations are denied.

57. In response to the allegations of Paragraph 57 of the Complaint, the Defendant states that this Court's Order speaks for itself. To the extent an allegation is made in Paragraph 57, all such allegations are denied.

58. No response is required to Paragraph 58. To the extent a response is required, the Defendant denies all allegations contained in Paragraph 58.

59. In response to the allegations of Paragraph 59 of the Complaint, the Defendant states that 11 U.S.C. §544(a) speaks for itself. To the extent an allegation is made in Paragraph 59, all such allegations are denied.

60. In response to the allegations of Paragraph 60 of the Complaint, the Defendant states that 11 U.S.C. §544(a)(3) speaks for itself. To the extent an allegation is made in Paragraph 60, all such allegations are denied.

61. In response to the allegations of Paragraph 61 of the Complaint, the Defendant states that D.C. Code §42-401 speaks for itself. To the extent an allegation is made in Paragraph 61, all such allegations are denied.

62. The allegations as stated in Paragraph 62 of the Complaint are denied.[2]

63. No response is required to Paragraph 63. To the extent a response is required, the Defendant denies all allegations contained in Paragraph 63.

---

[2] The Complaint contains a prayer for relief in unnumbered paragraphs following Paragraph 62. To the extent these are considered allegations, all such allegations are denied.

64. In response to the allegations of Paragraph 64 of the Complaint, the Defendant states that 11 U.S.C. §544(a)(1) speaks for itself. To the extent an allegation is made in Paragraph 64, all such allegations are denied.

65. In response to the allegations of Paragraph 65 of the Complaint, the Defendant states that 11 U.S.C. §544 speaks for itself. To the extent an allegation is made in Paragraph 65, all such allegations are denied.

66. In response to the allegations of Paragraph 66 of the Complaint, the Defendant states that "the laws of the District of Columbia" speaks for themselves. To the extent an allegation is made in Paragraph 66, all such allegations are denied. [3]

67. No response is required to Paragraph 67. To the extent a response is required, the Defendant denies all allegations contained in Paragraph 67.

68. In response to the allegations of Paragraph 68 of the Complaint, the Defendant states that 11 U.S.C. §544(a)(2) speaks for itself. To the extent an allegation is made in Paragraph 68, all such allegations are denied.

69. The allegations as stated in Paragraph 69 of the Complaint are denied.[4]

70. No response is required to Paragraph 70. To the extent a response is required, the Defendant denies all allegations contained in Paragraph 70.

71. The allegations as stated in Paragraph 71 of the Complaint are denied.

72. The allegations as stated in Paragraph 72 of the Complaint are denied.

---

[3] The Complaint contains a prayer for relief in unnumbered paragraphs following Paragraph 66. To the extent these are considered allegations, all such allegations are denied.

[4] The Complaint contains a prayer for relief in unnumbered paragraphs following Paragraph 69. To the extent these are considered allegations, all such allegations are denied.

73. The allegations as stated in Paragraph 73 of the Complaint are denied.

74. The allegations as stated in Paragraph 74 of the Complaint are denied.

75. The allegations as stated in Paragraph 75 of the Complaint are denied.

76. The allegations as stated in Paragraph 76 of the Complaint are denied.

77. The allegations as stated in Paragraph 77 of the Complaint are denied. [5]

78. No response is required to Paragraph 78. To the extent a response is required, the Defendant denies all allegations contained in Paragraph 78.

79. In response to the allegations of Paragraph 79 of the Complaint, the Defendant states that 11 U.S.C. §544(b)(1) speaks for itself. To the extent an allegation is made in Paragraph 79, all such allegations are denied.

80. In response to the allegations of Paragraph 80 of the Complaint, the Defendant states that "the law of the District of Columbia" and D.C. Code §28-3104 speak for themselves. To the extent an allegation is made in Paragraph 80, all such allegations are denied.

81. In response to the allegations of Paragraph 81 of the Complaint, the Defendant states that D.C. Code §28-3105 speaks for itself. To the extent an allegation is made in Paragraph 81, all such allegations are denied.

82. The allegations as stated in Paragraph 82 of the Complaint are admitted.

83. In response to the allegations of Paragraph 83 of the Complaint, the Defendant states that D.C. Code §28-3106 speaks for itself. To the extent an allegation is made in Paragraph 83, all such allegations are denied.

---

[5] The Complaint contains a prayer for relief in unnumbered paragraphs following Paragraph 77. To the extent these are considered allegations, all such allegations are denied.

7

84. In response to the allegations of Paragraph 84 of the Complaint, the Defendant states that D.C. Code §28-3107 speaks for itself. To the extent an allegation is made in Paragraph 84, all such allegations are denied.[6]

85. No response is required to Paragraph 85. To the extent a response is required, the Defendant denies all allegations contained in Paragraph 85.

86. The allegations as stated in Paragraph 86 of the Complaint are denied.

87. In response to the allegations of Paragraph 87 of the Complaint, the Defendant states that 11 U.S.C. §550 speaks for itself. To the extent an allegation is made in Paragraph 87, all such allegations are denied.[7]

## AFFIRMATIVE DEFENSES

Having fully answered all allegations of the Complaint, the Defendant asserts his Affirmative Defenses to the Complaint as follows:

1. The Complaint fails to state a claim upon which relief can be granted.

2. The Plaintiff is barred from asserting the claims alleged in the Complaint because they violate the applicable statutes of limitation.

2. The Plaintiff lacks standing to assert the claims alleged in the Complaint. .

3. The Plaintiff is estopped from asserting the claims alleged in the Complaint.

4. The Plaintiff is barred from asserting the claims alleged in the Complaint by the doctrine of laches.

---

[6] The Complaint contains a prayer for relief in unnumbered paragraphs following Paragraph 84. To the extent these are considered allegations, all such allegations are denied.
[7] The Complaint contains a prayer for relief in unnumbered paragraphs following Paragraph 87. To the extent these are considered allegations, all such allegations are denied.

8

6.     The Plaintiff is barred from asserting the claims alleged in the Complaint because of waiver.

7.     The Plaintiff is barred from asserting the claims alleged in the Complaint by the statute of frauds.

8.     The Trustee reserves his right to assert counterclaims or other affirmative defenses as facts are revealed through discovery.

WHEREFORE, the Defendant respectfully requests that the Court enter an Order dismissing the Complaint, including each and every claim set forth therein, with prejudice, and denying any of the relief sought in the Complaint, or that judgment be rendered in favor of the Defendant and against the Plaintiff with respects to all matters before this Court, and that the Defendant be granted such other and further relief as the Court deems just, equitable, and proper.

Dated this 9th day of March, 2021.

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Tel.    615.465.6000
Fax.    615.807.3048
Phillip@thompsonburton.com

Counsel for the Defendant

9

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville

| | | |
|---|---|---|
| In re: | : | |
| | | CHAPTER 11 |
| LEN SALAS | : | CASE No. 18-02662 |
| | | JUDGE: HARRISON |
| Debtor | : | |

| | | |
|---|---|---|
| NICOLAAS BREKELMANS AND GAIL | : | |
| GREGORY BREKELMANS, | | |
| CO-PERSONAL REPRESENTATIVES | : | |
| OF THE ESTATE OF NINA | | |
| BREKELMANS, et al | : | |
| | | |
| Plaintiffs | : | |
| | | |
| v. | : | Adversary Proceeding No. 3:20-ap-90027 |
| | | |
| MAX SALAS | : | |
| | | |
| Defendant | : | |

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Plaintiffs herein, by and through their undersigned counsel and, in

support of their Motion for Summary Judgment states as follows:

1. In accordance with Rule 56 of the Federal Rules of Civil Procedure, as made

applicable in bankruptcy adversary proceedings and contested matters pursuant to Fed. R.

Bankr. P. 7056, the Plaintiffs assert that they are entitled to summary judgment on Counts I,

II, IV, V, VI,of their amended complaint filed herein.

2. The Plaintiffs further assert that there are no disputed, material facts regarding the

complaint causes of action and the Plaintiffs are entitled to judgment as a matter of law.

3. A detailed memorandum supporting the Plaintiffs' motion is attached hereto.

WHEREFORE, the Plaintiffs pray for an order granting their Motion, approving the schedule set forth hereinabove and for such other and further relief consistent with the foregoing Motion.

Respectfully submitted,

BUTCH, PORTER & JOHNSON, PLLC


By: /s/ Taylor A. Cates
130 North Court Avenue
Memphis, TN 38103
901-524-5165
901-524-5000 (fax)
Tacates@bpjlaw.com

LAW OFFICE OF PHILIP J. McNUTT, PLLC

By:   /s/ Philip J. McNutt
Philip J. McNutt
11921 Freedom Drive, Ste 584
Reston, VA 20190
703-904-4380
202-379-9217 (fax)
Pmcnutt@mcnuttlawllc.com

COUNSEL FOR THE PLAINTIFFS

Certificate of Service

I HEREBY CERTIFY THAT a copy of the foregoing Motion, along with the Plaintiffs Memorandum and accompanying exhibits, was delivered electronically, on the 29th day of July, 2022 through the Court's ecf noticing system to the following:

THOMPSON BURTON PLLC
Phillip Young
One Franklin Park
6100 Tower Circle, Ste 200
Franklin, TN 37067
615-465-6008
615-807-3048 (fax)

-2-

phillip@thompsonburton.com


 /s/ Philip J McNutt
Philip J. McNutt

-3-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville

| | | |
|---|---|---|
| In re: | : | |
| | | CHAPTER 11 |
| LEN SALAS | : | CASE No. 18-02662 |
| | | JUDGE: HARRISON |
| Debtor | : | |

---

| | | |
|---|---|---|
| NICOLAAS BREKELMANS AND GAIL | : | |
| GREGORY BREKELMANS, | | |
| CO-PERSONAL REPRESENTATIVES | : | |
| OF THE ESTATE OF NINA | | |
| BREKELMANS, et al | : | |
| Plaintiffs | : | |
| v. | : | Adversary Proceeding No. 3:20-ap-90027 |
| MAX SALAS | : | |
| Defendant | : | |

---

MEMORANDUM IN SUPPORT OF
THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Plaintiffs herein, by and through their undersigned counsel and, in

support of their Motion for Summary Judgment submit the following Memorandum of facts,

points and authorities.

I.    **INTRODUCTION**

Through this Motion, the Plaintiffs are seeking summary judgment on Counts I, II, IV, V

and VI of the Complaint[1].  The Motion will focus largely on the recovery of the Property at issue

---

[1]For purposes of this Motion for Summary Judgment and Memorandum, all references to
"Complaint" or "the Complaint" refer to the Amended Complaint filed herein on February 16,
2021 D-40.

here, located at 1610 Riggs Place, NW, Washington, DC ("The Property"), under the statutory

provisions of the United States Bankruptcy Code, 11 U.S.C. ("Bankruptcy Code" or "Code")

§550, asserting a right to recovery under Code § 548(A)(1)(B) and Code") and the D.C. Code §§

28-3104 and 28-3105 concerning recovery of fraudulent conveyances.  The Defendant along with

the Debtor, Len, engaged in a scheme intended to remove the Property from Len's bankruptcy

while allowing Max to exempt the Property in his bankruptcy.  As argued below, although this

scheme constitutes actual fraud, the constructive fraud which is spelled out in 11 U.S.C. § 548

(a)(1)(B) is clearly shown by the record in this case and those documents, filings and testimony

referenced in this Motion.  Therefore, while the Plaintiffs assert the case for recovery based upon

actual fraud is unusually strong at this Summary Judgment stage, because of the element of

intent, although obvious here, and the need to explore a series of facts over a period of time, the

insolvency standard of Code § 548(a)(1)(B) is an easier target.

  As discussed below, none of the material facts necessary to show fraud or insolvency

under the standards of 11 U.S.C. § 548 (a)(1)(B) are in dispute.  Because the Plaintiffs meet the

standardized test of the statute, they are entitled to judgment on their fraudulent conveyance

claim, Count IV, of the Complaint.  Additionally, since the criteria for recovery of a fraudulent

conveyance under D.C. law tracks the language of 11 U.S.C. § 548, and the Plaintiffs have also

clearly met their burden under that statute, the Plaintiffs are also entitled to judgment on their

state law fraudulent conveyance claim, Count V.

  Furthermore, the Trustee's interests in the Property pursuant to 11 U.S.C. § 544 as a

judgment lien creditor and successor to the rights of creditors and purchasers as a bona fide

purchaser, without knowledge, are superior to those of the defendant, if any, and also allow the

-2-

Debtor's estate to recover the Property or its value for distribution to creditors pursuant to 11 U.S.C. § 550 (a).

The attempted conveyance of the Property in 2010 from the Debtor, Len Salas, to his father, Max Salas, was never completed and was, in fact abandoned by the parties. In order to attempt to avoid liability in the D.C. Superior Court, wrongful death, litigation commenced by the Plaintiffs in 2015, the Salas family including at least, the Defendant, Max Salas and his son Ron, with the assistance of the Debtor, Len Salas, concocted a scheme which involved using an abandoned, stale, and defective quitclaim deed to attempt to remove Len Salas from the Superior Court case and, by so doing, allowing Max to claim an exemption of the Property in his planned bankruptcy which was filed shortly after the Plaintiffs' obtained their judgments.

The scheme involved resurrecting an invalid trust ("the 1610 Riggs Place Trust") prepared by Ron on July 6, 2010, under Colorado law, accompanied by an equally infirm quitclaim deed ("the Quitclaim Deed") purporting to transfer the Property from Len to the trust. The Quitclaim Deed was never recorded and, according to communications between and among family members and local (D.C. area) counsel, Len Salas ("Len" or "the Debtor") and Max Salas ("Max" of "the Defendant") abandoned the Quitclaim Deed. While the reasons for this are not clear there are some obvious reasons which may have caused the family to abandon the Quitclaim Deed, as discussed below. Regardless, it is clear that as soon as June, 2011 Max and Ron had no inention of using or recording the Quitclaim Deed.

During the course of Max's bankruptcy case (Case no. 18-00260 in the United States Bankruptcy Court for the District of Columbia) and in preparation for the hearing on the Plaintiffs' objection to Max's claimed exemption of the the Plaintiffs conducted discovery which

-3-

consisted of the deposition of Ron Salas and Interrogatories and a Request for Production of Documents propounded to the Defendant, Max Salas. Neither Ron Salas, nor his father, Max, mentioned or referred to a series of email communications in 2011 and 2012, months following the July, 2010 quitclaim deeed, which clearly state that a deed needed to be created to transfer the Property from Len to Max.and that all family members, including, at at a minimum, Max, Len and Ron, were still attempting to obtain a deed or other means to remove Len's name from the title to the Property.  It is clear from the emails that Ron and Max both knew that the quitclaim deed was ineffective and no longer valid or enforceable to transfer the Property. The eMails are attached to this Memorandum as Exhibit 7.

At the very least, these eMails show that Ron, Len and Max made significant misrepresentations to the D.C. bankruptcy court, and likely this court, regarding the existence and usefulness of the Quitclaim Deed.

These misrepresentations and the scheme concocted by the Salas family represent actual fraud within the meaning of 11 U.S.C. § 548.  However, the Plaintiffs' claim for recovery under Code, § 548 (a)(1)(B) is much more straightforward.

NOTE: All references to Case No. 18-2662 refer to the Chapter 7 bankruptcy of Len Salas filed on April 18, 2018 in the United States Bankruptcy Court for the Middle District of Tennessee, Case No. 3:18-02662.

All references to Case No. 18-260 refer to the Chapter 11 case of Max Salas filed in the United States Bankruptcy Court for the District of Columbia on April 18, 2018, Case No. 18-00260.

All references to the Complaint refer to the Amended Complaint filed in Adversary Proceeding 3:20-90027 in the United States Bankruptcy Court for the Middle District of Tennessee on February 16, 2021.

-4-

All references to "Exhibit" or "Exh." refer to Exhibits to the Plaintiffs' Motion for Summary Judgment unless otherwise specified.

Referenced documents which are part of the docket entries in Case No. 18-2662 or this adversary proceeding are not attached but are incorporated in this Memorandum and into the Summary Judgment record by such reference.

For ease of reference to members of the Salas family, Max Salas, the Defendant will sometimes be referred to as "Max" or "the Defendant", Len Salas will sometimes be referred to as "Len" or "the Debtor" and Ron Salas will be referred to as "Ron."

II.     **BACKGROUND OF THE CASE**

1. The Plaintiffs' Complaint was filed on behalf of the Estate of Len Salas in accordance with this Court's Order entered on February 11, 2021. The Complaint seeks a declaratory judgment that the under the Truste's avoiding powers, the Plaintiffs have a superior interest in the Property and are entitled to recovery of the Property, or its value, under Code §550.

2. The Plaintiffs assert that they have a superior interest in the Property whether under the Trustee's avoiding powers, pursuant to 11 U.S.C. §§ 544, et seq, or as an actual creditor, pursuant to 11 U.S.C. §§ 548 and or 549.

3. The Plaintiffs' Complaint seeks recovery of the Property, or its value. The Plaintiffs assert they are entitled to recovery under the Trustee's avoiding powers pursuant to a sale conducted by the Trustee under Court authority (Order of June 12, 2019 (D-179) in Case no. 18-2662) and a sale to the Plaintiffs approved by this Court and evidenced by the Trustee's Report of Sale dated August 14, 2019 in Case No. 18-2662 (D-191).

4. Because the trustee, Mr. Gigandet declined to pursue the causes of action set forth in the Complaint despite Plaintiffs' request that he do so, facts admitted by the Defendant, the Plaintiffs have derivative standing to pursue each count of the Complaint as determined by this

-5-

Court's Order of February 11, 2021 in Adversary No. 20-90027(D-39). Because the effective date of transfer of the Property is April 17, 2018 under both bankruptcy and D.C. law, the Complaint was timely filed and is not subject to a claim of limitations.

5.  The Plaintiffs reserve the right, under bankruptcy law and procedure and D.C. law to invoke remedies intended to protect the property and preserve its value for the Debtor's Estate.

6.  The Plaintiffs' Complaint contains six counts, three seeking recovery under Code § 544, one under Code § 548, one under D.C. Code §§ 28-3104 and 28-3105 and one under Code §550.  The Plaintiffs are seeking summary judgment on all counts except Count III.

7.  As a result of this Court's Memorandum Opinion and Order of February 11, 2021 (D-38 and D-39, respectively), the Plaintiffs assert that the affirmative defenses of violation of the applicable statutes of limitations have been overruled and finally determined for purposes of the Complaint. There are no disputed facts which could change the Court's legal conclusions and the Court's conclusions are based upon well established and longstanding statutory language and supporting case law.

III.    **BACKGROUND FACTS FOR MOTION FOR SUMMARY JUDGMENT**

   A.    **Background Facts**

8.  The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively (collectively, "the Decedents' Estates"), creditors of the Estate of Len Salas and suing for the benefit of the Estate of Len Salas.  Nina and Michael were tragically killed in a fire at a residence in Washington, DC ("the Fire") which residence was owned by the Debtor, Len Salas and occupied and managed by his father, the Defendant, Max Salas.  The Plaintiffs herein, the Estates, were the successful

-6-

bidders at an auction sale of this bankruptcy estate's interest in the trustee's avoidance and recovery actions under Code, §§544, *et seq*. A copy of the Trustee's Report of Sale of those actions is attached to the Plaintiffs' Complaint as Exhibit A. For purposes of this Motion, all references to the Plaintiffs' Complaint refer to the Amended Complaint docketed at D-40, filed on February 16, 2021.

9. The Defendant Max Salas, is the Debtor in Case No. 18-00260, in the United States Bankruptcy Court for the District of Columbia (hereinafter "Max's Bankruptcy"). Max filed a voluntary petition, under Chapter 11 of the Code on April 18, 2018.

10. Len Salas (hereinafter "Len"), is the Debtor is Case No. 3:18-bk-02662, filed in the United States Bankruptcy Court for the Middle District of Tennessee (Nashville) ("Len's Bankruptcy") on or about April 18, 2018. Len's Bankruptcy was converted from a Chapter 11 to a Chapter 7 bankruptcy on or about December 12, 2018.

11. Michael Gigandet was appointed Chapter 7 Trustee and administered Len's Chapter 7 Estate.

12. The Complaint was timely filed.

13. The parties have completed their discovery and there are no disputed facts which bear on the issues presented in this Motion.

14. The Plaintiffs' Complaint seeks the recovery of property located at 1610 Riggs Place, NW, Washington, DC ("the Property") at which the Defendant, Max, presently resides. Alternatively, the Plaintiffs are seeking a fair market sale of the Property to recover its value, believed to be in excess of $1 Million above all prior and/or secured claims.

-7-

15. The Plaintiffs are pursuing this matter through, and on behalf of, Len's Estate. The Plaintiffs made requests to the Court appointed trustee, Michael Gigandet ("the Trustee"), in early April, 2019, to pursue the causes of action set forth herein. The Trustee declined to do so. See Memorandum Decision entered on February 15, 2021 in Adversary No. 20-90027 (D-38), p.6.

16. All relief sought through or by the Complaint, as amended, is sought on behalf of the Estate and its creditors. See Complaint at ¶ 9.

17. On or about September 18, 2020, the Plaintiffs again contacted the Trustee asking that the Trustee take over, or join, in the avoidance actions and other claims asserted herein, for the benefit of all creditors. The Trustee declined, once again, asserting that by selling the claims he intended that they and any benefit from them, would inure solely to the purchasers (the Plaintiffs). The Trustee also indicated that if the Actions benefitted Len's Estate, he would take appropriate action to receive and distribute any recovered property or proceeds.

18. In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment"). The Judgment resulted from a fire at the Property which, at the time, Max had rented rooms to renters including Nina Brekelmans and Michael McLoughlin. Through the gross negligence of Max and his deliberate failure to make safety improvements to the Property required by law, Nina and Michael tragically lost their lives in a horrific and traumatic manner from a fire in June, 2015. Len was named a Defendant since he was, at all times, the owner of the Property, including at the time of the fire.

-8-

19.  The Estates filed separate lawsuits against Max and Len in 2015.  After a lengthy period of discovery and pre-trial matters, the case was tried in late March, 2018 and early April, 2018, resulting in Judgments for the Plaintiffs in the amounts of $7.5 Million and $7.7 Million respectively ("the Judgments").

20.  The Judgments are allowed claims in the bankruptcy cases of both Len and Max. Through Max's confirmed Chapter 11 Plan and distributions from Len's Estate, the Plaintiffs have received minor payments against their claims - payments of less than $700,000.

21.  Shortly after the entry of the Judgments Max and Len filed separate bankruptcies, Max in the District of Columbia (Case No. 18-00260)("Max's Bankruptcy") and Len in this Court (Case No. 18-02662) ("Len's Bankruptcy").

22.  The Defendant's approved Amended Disclosure Statement, December 5, 2019 (D-276) and his confirmed Plan of Reorganization (Max Salas's Third Amended Plan of Reorganization), (D-298), January 22, 2020, specifically reference the Plaintiffs as the purchasers of the avoidance actions which are included in the Complaint, as amended.

23.  The Defendant's Confirmed Plan provides that the Plaintiffs "possess the right to prosecute the Tennessee Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case."  Confirmed Plan, Section 3.6, p. 9.

24.  At the time of the bankruptcy filings by Len and Max, Len was, and was, at the time of the Debtor's bankruptcy filing in April, 2018, the title owner of property located at 1610 Riggs Place, NW, Washington, D.C. ("the Property").

25.  According to Max and Len, in July, 2010, Max and Len traveled to Colorado in

July 2010 to visit Ron, one of Max's sons. Ron was a recent law school graduate and admitted to practice law in Colorado.

26. While in Colorado, Len and Max executed a very simple trust agreement which Ron stated he prepared using a Colorado form even though the alleged trust property, the Property, was located in D.C. Ron also prepared a form "Quitclaim Deed," which Len also signed ("the Quitclaim Deed").

27. Max asserts that Len, who is unsophisticated in business and legal transactions, deeded the Property to his father while Len remained the sole obligor on the Sun Trust Deed of Trust Note ("the Note").

28. Max and Ron convinced Len to deed the Property to his father despite the fact that by that deed, Len would have lost all collateral for his $870,000 loan obligation to Sun Trust.

29. The attempted transfer in 2010 was a violation of Len's Deed of Trust and Note with Sun Trust Bank. L Salas Depo Trans., Exhibit 13, 144:7 - 148:7.

30. At the time of the attempted Quitclaim Deed, in July, 2010, Len's only significant asset was the Property. At all relevant times, Len worked only part time and had limited income and assets. At all times following the transfer in 2010, Len was insolvent. His liabilities exceeded his assets and his income was insufficient to pay his obligations, including the Sun Trust Deed of Trust Note payments.

31. At no time, since 2007, including, but not limited to, the time of the Quitclaim Deed in July, 2010, did Max make any payments to Len and Len received no property or

-10-

other value from Max related to the Trust or Quitclaim Deed. Exemption Trans. Vol 2, (attached hereto as Exhibit 3) 139:15 - 140:2; Len Salas testimony, Plan Confirmation Hearing, United States Bankruptcy Court for the Middle District of Tennessee, December 13, 2018 ("L Salas Conf. Hrg. Trans."), 68:22 - 69:2. Those pages of Len's testimony in December, 2018 are attached hereto as Exhibit 4.

      32. Max asserts that he intended to record the Quitclaim Deed in 2010 but had no money to pay the required recording and transfer taxes. The Quitclaim Deed has never been recorded and Len remained the titled owner of the Property through the date of his bankruptcy filing in April, 2018.

      33. Max also testified at the Exemption Hearing that he delivered the original Quitclaim Deed to Mr. Goldstein's office and did not recall that Mr. Goldstein mailed it back to Mr. Salas. Exemption Trans. Vol. 3, 55:7 - 56:21.

      34. Later in the same testimony Mr. Salas testified that he told his counsel, Mr. Albert and his associate, Mr. Cox what he did with the Quitclaim Deed and left it up to them to obtain the original from Mr. Goldstein's Office. Exemption Trans. Vol 3, 57:13 - 58:6

      35. After seeking to record through Mr. Goldstein's office in 2011 and/or 2012 (See eMails attached as Exhibit 7) Max did not make any further attempts to record the Deed. Exemption Trans. Vol 3, 58:9-13

      36. In his deposition Ron Salas testified, under oath, related to the Quitclaim Deed, executed on July 6, 2010, as follows:

"Q And I believe you said, but I want to
clarify this, that between the time of 2012,
roughly, and I realize you said, I think, a year

-11-

or two after the transaction, so I'm not trying to
pin it down, but say roughly 2012, which would be
two years later, until today, are you aware of any
other reasons why the deed, the quitclaim deed
that you prepared would not have been or could not
have been recorded?

**A. I don't know of any reason and I did not
know that it was not recorded until the lawsuit
came in my brother's name.**

Q And what is it about the lawsuit that
came in your brother's name that made you believe
the quitclaim deed had not been recorded?

**A The only reason my brother would be
involved was because his name had to still be on
the title is the assumption I've made in my mind
I don't know that that is factually correct, but
that is my assumption, that it must not have been
filed or he wouldn't be in this situation.
He didn't live in the District, he
never- he didn't live in the house, and I- so
that's the only logical reason I could make that
he would be involved, that it was never done. And
until that point, I did not even know that it had
not been done. I assumed at some point that he
came up with the money and did it. But he didn't,
as we sit here today we all know.**

Transcript of the Deposition of Ron Salas in the United States Bankruptcy Court for the

District of Columbia, Case No. 18-00260, August 8, 2018, ("R Salas Trans"), 65:21 - 66:21

(emphasis in original).[2]  Attached hereto as Exhibit 8.

    37.  Toward the end of the Superior Court litigation with the Plaintiffs, which resulted

in the Judgment, Max, apparently with the cooperation and participation of Ron and Len,

concocted a scheme to attempt to keep the Property for himself in the face of a pending

substantial judgment award to the Plaintiffs.

    38.  In discussions with his newly hired bankruptcy counsel, Marc Albert (Stinson

LLP) ("Albert"), Max learned that if the Property was owned by Len, it could not be

---

    [2]Mr. Albert was acting as counsel for Max Salas in his bankruptcy and attended the
deposition on behalf of Max.  Ron Salas appeared without counsel.

-12-

exempted in bankruptcy and would be subject to attachment and sale to partially satisfy the eventual judgments. See D.C. Code § 15-501 (a)(14) (exemption is available only to property in which the owner resides). These conversations took place in early 2018. See Exemption Trans. Vol. 3, 121:3 - 122:9; See also Albert-R Salas eMails, 2/14 - 3/7/18, attached hereto as Exhibit 19.

39. Max also learned from Albert that if Max could claim he is the actual owner of the Property, he could claim the Property exempt in his subsequent bankruptcy proceeding and, due to D.C.'s generous homestead exemption, Max could then claim the entire equity in the Property as exempt from execution by the Plaintiffs.

40. Because Len was not residing in the Property, he could not claim the benefit of the D.C. homestead exemption.

41. In early 2018, less than a month prior to the Superior Court trial, Max and Len, for the first time, alleged and produced a copy of the 2010 trust ("the Trust") and quitclaim deed ("the Quitclaim Deed") and sought to exclude Len from the Superior Court litigation by asserting Max was the real owner of the Property. The Superior Court summarily denied Max's attempt and the trial continued, resulting in the Judgment.

42. The Judgment is now final and binding on all parties as a result of the final distribution and closing of Len's Estate in this Court and the Confirmed Plan in Max's Bankruptcy. M Salas Chapter 11, Case No. 18-00260 in the United States Bankruptcy Court for the District of Columbia, Docket Entries ("D- ") D-298 and 303; L Salas Chapter 7, Case No. 18-002662 in the United States Bankruptcy Court for the Middle District of Tennessee, Docket Entries ("D- ") D-209 (Trustee's Final Report) and 220, Trustee's Final Account, and 222 (Final Decree).

43. Max has not produced, and is currently unaware of the location of, the original Quitclaim Deed is, or if it even exists. Transcript of the Continued Deposition of Max Salas, March 8, 2022 ("M Salas Trans.") 51:2-12; 52:6-20

44. On June 16, 2011, Ron sent an email to the Defendant advising Max that the

-13-

Trust had been registered and that Max needed to have a Quitclaim Deed created to transfer the Property to Max. This was nearly a year after the Quitclaim Deed was created, the only deed relied upon by Max in asserting his ownership of the Property. A copy of Ron's email, dated June 17, 2011, less than a year after the purported Quitclaim Deed of July 6, 2010, was produced in discovery by Len Salas in 2022. These emails were within the scope of the document production requested from Max as part of the discovery requests in the Exemption Hearing adversary proceeding in Max's bankruptcy in D.C. Max, Ron and Len all testified at that hearing and all asserted, or supported the lie that the Quitclaim Deed of July 6, 2010 was in effect in 2018.

45. Ron's email states, on June 17, 2011 that "The next step is for someone in D.C. to draft a Quitclaim Deed in order to move the property from the possession of Len to the Trust. The document should be straight forward and will need to be signed by at least the grantor, Len." Exhibit 7, Bates Number: LenSalas000017.

46. On June 21, 2011 Max followed up with an email to his real estate attorney, Stan Goldstein. In that email, Max asserts to the attorney, Mr. Goldstein, that "We need to have done is have Lenny sign a quick (sic) claim deed into the trust..." Exhibit 7, Bates Number LenSalas000016.

47. In Max's email to attorney Lynn Boileau on January 17, 2012, he states : There are **two different** requests. One is **to get Lenny's name off of the property**. (Want to do this asap) The second request is to refinance the property under the name of the trust.." (Emphasis supllied) Exhibit 7, Bates Number LenSalas000023.

48. On February 24, 2012 Len sent an email to Max asking "Where are we on this?" Max's response is "Still working on this...,,I am in Miami will be back soon." Exhibit 7, Bates Number LenSalas000029.

49. Max Salas testified that he is unaware that the attorneys he contacted in the D.C. area respecting the Trust's ownership of the Property ever created a deed to convey the Property into the Trust. M Salas Trans. 65:1-15. He further testified that he does not recall

-14-

any further communications with counsel about the 1610 Riggs Place documents after February 27, 2012. M Salas Trans. 72:12-18. When asked whether he contacted the attorneys to determine if they had a copy of a deed for the Property, Max testified as follows:

> Q. Have you contacted Ms. Boileau or Mr. Goldstein to determine if they have a copy of any deed that might have been created?
>
> **A. I did try to contact them. I did try to contact them actually recently. And I -- but I didn't -- I mean, they were trying -- they were -- no. I mean, we worked on something and then they said it couldn't go any further and depends on what you were going to do. So I don't -- I guess -- I can't guess. I don't know.**

M Salas Trans. 73:13-23

50. There was some confusion in the Salas family testimony concerning whether there was more than one original of the Quitclaim Deed and whether Len may have had an original. That issue seems to be cleared up by an email string provided by Max Salas as part of the discovery and trial in the Exemption dispute. Regardless, the Defendant has produced no evidence that anyone other than Max Salas had an original of the deed after July 6, 2010 and Max does not know where the original is or when he last had it. See, for example, M Salas Trans., Exhibit 10, 77:20 - 82:23; Max speculated at the Exemption Hearing that the original of the Quitclaim Deed may be at the office of the title attorney, Stan Goldstein. Exemption Trans. Vol. 3, (August 24, 2018), Exhibit 6, 55:7 - 57:19. However, in his most recent testimony he testified that he recently contacted Mr. Goldstein's office and was unable to obtain the Quitclaim Deed. See above, Exhibit 10, M Salas Trans. 73:13-23.

51. In his testimony at the Exemption Hearing in August, 2018, Ron testified, under oath,

-15-

that he assumed the Quitclaim Deed had been recorded. He stated, in August, 2018 that "my assumption was that they were, but as of today I knew they, I know now that they were not." Testimony of Ron Salas, witness for the Debtor Max Salas, August 22, 2018, Exemption Trans. Vol 1, 211:7 - 212:14. Ron Salas's complete testimony at the Exemption Hearing, Exemption Trans. Vol. 1, 206:8 - 246:16, is attached as Exhibit 12.

52. Ron Salas further testified that he did not know why neither his father, his brother, his brother's wife, or he did not think to produce the Quitclaim Deed during the Superior Court litigation. Based upon the 2011 email exchange between Ron Salas and his father, it is obvious that the Quitclaim Deed Ron prepared could not be recorded and was, likely defective. That is the only rational explanation for Ron stating to his father that a Deed needed to be prepared in 2011, a year after Ron's Quitclaim Deed. That is the only rational explanation for the continued efforts, through February, 2012 to obtain a Quitclaim Deed from Len. That is the only rational explanation for Ron, Len, Kendra (Len;s wife) and Max to conveniently forget about the Quitclaim Deed until the very eve of the Superior Court Trial, in February, 2018. Exemption Trans. Vol 3, 39:15-25.

53. The only deed referenced by Max or his counsel, allegedly entitling Max to an ownership interest in the Property, is the 2010 Quitclaim Deed. No other deed has been proffered, or even mentioned by the Salas family or by Max, specifically.

54. Unfortunately, it appears that Ron, his father and his brother hid the fact that the Quitclaim was defective, or otherwise unrecordable at the hearing in Max's case in 2018.

55. The Plaintiffs are unaware of the reason why the Quitclaim Deed was abandoned. However, there are clues. For example, in the Exemption Hearing in D.C., Ron Salas testified

-16-

that he was unaware of the requirements of Quitclaim Deeds in D.C. See, Ron Salas's testimony, Exhibit 12, at pp.227-28.  He stated that he was unaware that Deeds made to trusts had to be made in the name of the trustee.  Id.   Even in 2018, Ron was unaware whether the trust documents he created were valid under D.C. law. See, Ron Salas's testimony, Exhibit 12, 243:8-

56.  Max testified that he did not have the funds to record the deed.  More importantly, it seems evident that he was unwilling to spend the money to record the deed.  He spent hundreds of thousands of dollars from retirement savings and other funds in his bankruptcy, funds, at least a substantial portion of which, would have been available to Max if he wanted to record the Deed in 2010, or thereafter.  See, for example, excerpts from Max Salas' schedules of assets, filed April 18, 2018 in his bankruptcy case (no. 18-00260) in the United States Bankruptcy Court (D-1), attached hereto as Exhibit 9.

57.  No deed was recorded prior to Len's bankruptcy filing.  See Max's Amended Disclosure Statement filed in his bankruptcy case in the District of Columbia, Case No. 18-00260, December 5, 2019, D-276, attached hereto as Exhibit 2, pp. 4, 22.

58.  Max testified in his deposition in the Superior Court case in February, 2016 that there was one trust, the CLR Trust.  He confirmed that when he mentioned "the 1610 Salas Trust" he was referring to the same trust, namely, the CLR Trust.  Max Salas testimony at the Exemption Hearing, Exemption Trans. Vol 2, August 23, 2018 ("Exemption Trans. Vol. 2"), Exhibit 3,, Max Salas Deposition in Superior Court Case, Case Nos. 2015 CA 8054 B and 2015 CA 8061 B, Consolidated)(referred to herein as the "Superior Court Litigation'), February 24, 2016 ("M Salas Sup Ct Depo"), 42:18 - 43:2. Excerpts from the M Salas Sup Ct Depo are attached hereto as Exhibit 1.

-17-

59.  Len Salas is not aware of the location of any of the wet ink signature originals of the July 2010 Quitclaim Deed (Transcript of the Deposition of Len Salas, August 27, 2021 ("L Salas Trans."), Exhibit 13, 15:4-9.  Len testified in his deposition that he provided an original "wet ink" original of the Quitclaim Deed, or a copy,  to his lawyer on the eve of the Superior Court trial in March, 2018. L Salas Trans, Exhibit 13,  16:6-24, 19:11-25 - 21:18.  Regardless, Len testified that the document he produced on the eve of the Superior Court trial, which commenced on March 26, 2018, was kept in his possession at all known times between July, 2010 and March, 2018.  Id. Len's wife, Kendra, testified that she "had a pdf of it (the July, 2010 Quitclaim Deed) and that she thought it was the same as what Len had " I thought it was the same thing as what Len had, but I'm not sure."  K Rowe Trans. 30:13-20.

60.  At all relevant times Len's liabilities exceeded his assets when the value of the Property is not included.  The attempted transfer, or actual transfer, of the Property made Len insolvent.

61.  On July 6, 2010, the date of the alleged Quitclaim Deed, Len's primary asset was the home at 1610 Riggs Place, the Property at issue here.  His most substantial liability was his obligation to Sun Trust Bank in 2007 for which Len remained liable through October 2020.  In November, 2020 Sun Trust entered into a new agreement with Max Salas which eliminated Len's obligation on the Property as part of Max's Chapter 11 Plan.  Therefore, on July 6, 2010, and at all times after, through October, 2020, Len's most substantial liability, by far, except for the Plaintiffs' judgments, consisted of his obligation to Sun Trust Bank.

62.  The obligation to Sun Trust Bank was $870,000 in 2007.  No payments were made to reduce the principal owed to Sun Trust Bank through the date of Len's Bankruptcy in April,

-18-

2018.

63.  There were no agreements between Len and Max regarding responsibility for payment of the Sun Trust Note or any other obligations related to the Property.  L Salas Trans. 28:9 - 29:4; Exemption Trans. Vol I, 40:25 - 41:18.  Max's testimony at his most recent deposition in March, 2022 confirms that there was no note or other written document making Max primarily, or secondarily liable on the SunTrust Note:

Q. Okay. Let's go to number 19,
Mr. Salas. Request for admission in 19 asks you
to admit or deny that Max Salas did not notify
Sun Trust or the D.C. government that he was an
obligor under the Sun Trust deed of trust. Your
response was denied. Max Salas notified Sun
Trust that he was obligated under the deed of
trust. I read that correctly, didn't I?

**A. You read it correctly, yes, sir.**

Q. When you notified Sun Trust that you
were obligated, did you sign a note?

**A. No. I didn't sign.**

Q. Did you sign a guaranty?

**A. Huh?**

Q. Did you sign a guaranty?

**A. I was -- well, the loan was --
actually it was a modification. It was a
modification and a way to get -- to get
Lenny's -- Lenny wanted the house off of his
name, and I kept trying to do that. That's
what happened. I don't blame him. I promised
him I would do that right away back when he
first did it. Well, I'm just going on too
far. So I don't remember, sir.**

Q. Okay. I need to give you a timeframe
here, so I apologize.

-19-

Prior to your bankruptcy filing, okay,
prior to your bankruptcy filing, did you notify
Sun Trust that you were obligated under the deed
of trust?

**A. I don't remember.**

Q. Did you ever provide, again, prior to
your bankruptcy filing, did you ever provide Sun
Trust with a note that you signed as an obligor
under the deed of trust note?

**A. Same answer.**

Q. Do you have any documents that would
indicate that you did sign such a note?

**A. I can't remember. You know, I don't
know. It's just -- it's almost like -- I
don't know. I don't remember.**

Q. Do you remember if you provided Sun
Trust with a guaranty of the note obligation
that Len was obligated for?

**A. Did I provide them a guaranty to
what, sir?**

Q. Did you provide Sun Trust with a
guaranty of the deed of trust note obligation?

**A. Did I provide Sun Trust a deed?**

Q. A guaranty.

**A. A guaranty. You know, Mr. McNutt, I
may have. I don't remember. I just can't
remember right. It just doesn't -- it's not
there.**

Q. If there was a note obligation or a
guaranty, would those documents have been
provided to the plaintiff's in this case?

**A. I don't know what -- if there was
what would have happened. I don't know.**

-20-

Q. You haven't provided any documents related to a note obligation or a guaranty that you provided the Sun Trust Bank prior to your bankruptcy filing though, correct?

**A. That's not correct. I don't know what I've done. I don't know. I may have. I may have. Maybe I didn't. I don't know.**

Transcript of the Deposition of Max Salas on March 22, 2022 ("M Salas Depo Trans"), Exhibit 10, 85:5 - 87:19.

64. While the Defendant seems to be confused or perhaps reluctant to testify directly on this issue, it is undisputed that there are no documents indicating that Max was liable on the SunTrust loan at any time and Max never entered into any agreement or understanding with Len that Max was liable or responsible. Moreover, and most importantly there is no document raised, proffered or produced by Max indicating that Len was not the sole party responsible for the Deed of Trust payments until at least November, 2019.[3]

65. Len Salas was fairly straightforward in his testimony. However in response to the question whether Len executed more than one Quitclaim Deed, he not only couldn't remember whether he signed any other document but answered "I don't know" to the question "if you would have executed any other agreement [quitclaim deed], you would have kept a copy of it; correct?" L Salas Trans. Exhibit 13, 40:1-20. Regardless of Len's faulty memory or evasiveness,

_____

[3]When U.S. Bank obtained assignment of the SunTrust Note, sometime in 2019, it did finally reach an agreement with Max for him to make the payments under the Deed of Trust from and after November, 2019. However, there is no indication in the agreement reached between Max and U.S. Bank that the SunTrust Deed of Trust Note has been canceled or is otherwise not in effect. Therefore, Len is still liable for the entire balance under the SunTrust Note which, as of September 29, 2019, was $1,208,720.40. See Max Salas Stipulation with U.S. Bank (Stipulation for Plan Treatment of First Lien Secured by Real Property at 1610 Riggs Place NW, Washington, DC 20009), filed in Case No. 18000260 (D-266-1) on November 20, 2019, attached hereto as Exhibit 15.

-21-

it is clear from his testimony that he is not aware of any documents related to the alleged

conveyance of the Property other than the trust and quitclaim deed both dated July 6, 2010.

66.   Len had several conversations with his father regarding getting his name off the loan

and deed after 2010.  L Salas Trans. 71:25 - 74:17; Transcript of Len Salas's testimony at the

hearing on Objections to the Claim of Exemption (of the Property) by the Debtor, Max Salas, in

case no. 18-00260 in the United States Bankruptcy Court for the District of Maryland, Trial

Transcript ("Exemption Trans."),Vol 1., Exhibit 20,158:13 - 163:8; Deposition Transcript of the

Deposition of Kendra Rowe Salas, August 27, 2021 ("K Rowe Trans."), Exhibit 14, 16:6-24.

67.   Max Salas confirmed in his testimony at the Exemption Hearing that Len was

attempting to get Max to get Len "off of the deed to the property" shortly after the original deed

to Len in 2007 and **continuing all the way into 2018**.    Exemption Trans. Vol. 1,Exhibit 20,

42:20 - 43:8.  Later in his testimony Max claimed that Len only asked Max to take Len off the

loan, not off the title asserting that "he'd already taken his name off the property" in 2010.

Exemption Trans. Vol. 1, Exhibit 20,  44:1-10.  That was just another misrepresentation,

however.  During Len's deposition in the Superior Court litigation, Len testified in March, 2016,

that the last time Len talked to his father about **transferring ownership of the property, not the**

**loan**, out of Len's name, was the spring of 2015, the year of the tragic fire that took the lives of

Nina and Michael.  See Exemption Trans. Vol. 1, Exhibit 20,  47:11 - 49:11.  The emails

between Len and his father in the time frame of 2011 -2012, well after the July, 2010 Quitclaim

Deed, confirm and corroborate Len's testimony in his 2016 Deposition.  See Exhibit 7.

68.   The emails of 2011 - 2012 among Ron, Len, Max and Max's counsel, produced, for

the first time, by Len in this litigation, show that Max's statements are direct contradictions of his

-22-

testimony in 2018 at the Exemption Hearing. Moreover, the testimony of both Ron and Max in 2018 directly contradicts their email communications in 2011 and 2012. Their testimony in 2018 was under oath and was used to try to support Max's claim that he was the owner of the Property in April, 2018 for purposes of his exemption claim. Now that testimony appears to be largely, if not completely, fabricated for the sole purpose of advancing the false claim that there was an effective Deed after 2010. See emails between and among Max, Ron, Len, Stan Goldstein and Lynn Boileau, between June 17, 2011 and February 27, 2012, Exhibit 7, Bates Nos. LenSalas 000016 - LenSalas000034.

69. The Sun Trust Note was in default during the period 2010 - 2018. L Salas Trans., Exhibit 13, 55:11-20.

70. Len Salas was involved in more than one attempt to refinance the Property in the time frame of 2010 through 2013 and all such attempts failed. L Salas Trans. 83:23 - 84:4. The clear inference from Len's emails to/from his father and the refinancing attempts is that Len was the recognized owner of the Property and was, therefore, necessary for any refinancing. Therefore, again, Despite the existence, in July, 2010 of a Quitclaim Deed, that deed was not recorded, likely could not be recorded, and was abandoned by Max and Len. See, for example, Ron's email of June 17, 2011, attached hereto as part of Exhibit 7.

71. Len did not have sufficient funds to pay his attorneys in the Superior Court litigation. He lives "paycheck to paycheck." L Salas Trans. Exhibit 13,76:20 - 77:2

72. At the time of his bankruptcy filing in April, 2018, Len was obligated for all payments due on the Sun Trust Note, as well as the judgments, totaling $15.2 Million, owed to the Plaintiffs. L Salas Trans. 61:1 - 63:2.

-23-

73. Len's brother, Ron, paid for Len's bankruptcy proceedings and the retention of counsel for the appeal of the Superior Court litigation. Disclosure of Compensation of Attorney for Debtor, April 18, 2018 (D-1) p. 46 of 56; Motion of Debtor in Possession to Employ Michael C. Forster and Forster Law Firm as Special Counsel, April 27, 2018, D-10, at page 3 of 10.

74. During the Superior Court litigation which ended with the 4 day trial held in late March and early April, 2018, Max paid certain expenses and legal fees owed by Len Salas because Len could not afford them. See, for example, Max Salas Statement of Financial Affairs, filed in his bankruptcy case, No. 18-00260 in the United States Bankruptcy Court for the District of Columbia on May 2, 2018 (D-13) ("M Salas SOFA"), p. 5 of 10, attached hereto as Exhibit 16.

75. On his bankruptcy schedules filed herein on April 18, 2018 (D-1), Len Salas lists total assets of $53,373.38 and total liabilities of $16,107,795.41. Len Salas Schedules of Assets and Liabilities, filed on April 18, 2018 in Case No. 18-2662, (D-1) pp. 12-36.

76. Other than the 1611 Riggs Place Trust executed on July 6, 2010, the only family related trust of which Len is aware is the "CLR Trust." Exemption Trans. Vol 1, Exhibit 20, 148:1-13.

77. Max told Len that he deposited the rent checks into "this account for 1610 [Salas Trust]. Exemption Trans., Vol 1, Exhibit 20, 149:2-24.

78. The fire occurred in June, 2015. From that time, until February or March, 2018, no one resided in the Property. During that time, and continuing after Max's Bankruptcy filing until November, 2019, no payments were made on the Sun Trust Deed of Trust Note ("the Sun Trust Note") with the exception of one payment of made by Max from the insurance proceeds he

-24-

received as a result of the fire damage.

79. Although Max claims he was the sole party responsible for all payments on the Sun Trust Loan, and made all loan payments, no payments have been made since prior to 2018 (with the exception of one payment from insurance proceeds) and the current balance was increasing at the rate of approximately $7770 month as of October, 2019. Sun Trust sold its Note, in 2019, to U.S. Bank National Association/Select Portfolio Servicing, Inc. ("U.S. Bank"). Pursuant to an agreement reached with U.S. Bank, Max is required to make monthly payments of approximately $8,300. Upon information and belief, Max has been making the required payments since approximately November, 2019. *See*, Exhibit B, Confirmed Plan, p. 8, ¶ 3.3.

80. Through October, 2019, Len remained solely responsible under the SunTrust Note, although Max asserts he was responsible and "made all payments." However, according to the SunTrust Motion for Relief from Stay, filed in Case No. 18-2662 on November 2, 2018, the arrearage owed to SunTrust under the Note, as of April, 2018 was $374,282.18. As the sole obligor on the Note, Len was responsible for payment of the arrearage.

81. On the effective date of the attempted transfer of the Property from Len to Max, April 17, 2018, Len's assets were approximately $53,000 plus the value of the Property. Len's liabilities at the same time included the Plaintiffs' Judgments, attorney fees owed ot his litigation counsel for the Superior Court Litigation, the SunTrust arrearage, the SunTrust Note balance of at least $1.03 Million and some taxes and credit card obligations.

82. On the effective date of the attempted transfer, Len was required to pay the credit cards, taxes, attorney fees, SunTrust arrearage and the Plaintiffs' Judgments.

B.    **Facts Related to the Plaintiffs' Acquisition of the Trustee's Avoiding and Recovery Actions**

83.   The Court held a hearing on the Trustee's Motion to sell in June, 2019.  Mr. Young, counsel for the Defendant, appeared at the hearing representing Mr. Ron Salas and the Defendant.  Mr. Young had entered his appearance in this case on behalf of the Defendant.  At all relevant times, Mr. Young represented both Ron Salas and the Defendant.  Mr. Young represented his clients' support for the sale at the Court hearing.

84.   After the hearing in June, 2019, this Court entered an order on June 12, 2019 authorizing the sale and also setting forth the bidding and sale procedures which the Trustee followed.   The Defendant supported the sale and requested that the Court authorize the sale, which it did pursuant to its order of June 12, 2019 (D- 179) ("the Sale Order").

85.   Thereafter, in accordance with the Sale Order, the Trustee conducted an auction sale.  The sale took place on July 23, 2019.  At the end of the auction, the Plaintiffs were the successful bidders.  The Trustee's Report of Sale was filed herein on August 14, 2019 (D-191) ("Report of Sale").

86.   The Defendant  filed no objections or opposition to the proposed sale, this Court's Order of June 12, 2019, or the Report of Sale.

87.   No party appealed the Sale Order and no party sought any additional review or modification of that Order, the Report of Sale or the accompanying Bill of Sale (D-191, pp. 3-4).

88.   In the Defendant's confirmed Plan of Reorganization in his Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Columbia, Case No. 18-00260 ("the D.C. Bankruptcy"), filed simultaneously with this case, the Defendant acknowledges that the Plaintiffs

-26-

were the successful bidders for the Trustee's avoidance and recovery actions. Although the

Defendant's Plan and court approved Disclosure Statement specifically state that the Defendant

has reserved all defenses and objections to the subject avoidance and recovery actions, at no time

did the Defendant assert that the Plaintiffs were not the rightful owners of the causes of action set

forth in this Complaint or lacked standing to pursue those causes of action. In fact, the

Defendant's approved Disclosure Statement (the D.C. Bankruptcy, Case No. Docket No. 276) the

Defendant states specifically that "...[the Plaintiffs] possess the right to prosecute the Tennessee

Avoidance Actions regarding the Property purchased from the Len Salas Bankruptcy Case." ***See***,

D.C. Bankruptcy, Docket No. 276, at p. 17. The Plaintiffs reached agreement with the Defendant

to withdraw their objections to the Defendant's proposed plan of reorganization based upon the

representations made in the Disclosure Statement and proposed Plan of Reorganization,

including the representation that the Plaintiffs were the rightful owners of the causes of action

which form the bulk of this Complaint.

89. The Defendant filed his proposed Chapter 11 Plan of Reorganization on August 1,

2019. In response to objections and events unrelated to this Complaint, the Debtor filed an

Amended Disclosure Statement and Plan, followed by a Third Amended Plan, which was

eventually confirmed by the D.C. bankruptcy court. The Defendant's disclosure statements and

proposed plans specifically referenced the sale of the avoidance actions at issue here, but did not

raise any objections or deficiencies regarding the sale. While the Defendant reserved his right to

defend the prospective avoidance actions, he did not raise any issues regarding the Plaintiffs

rightful ownership of those actions. ***See*** above discussion.

C.    **Plaintiffs' List of Uncontested Facts**

-27-

90.  In accordance with the local rules of this Court, the Plaintiffs have attached to this Memorandum a List of Undisputed Facts which support the Plaintiffs' Motion, along with citations to the documents, pleadings, filings, depositions and testimony which support those Facts.

IV.  **ARGUMENT**

   A.  **The Plaintiffs are Entitled to Summary Judgment in Accordance with Fed. R. Civ. P. 56**

91.  Summary Judgment in bankruptcy cases, adversary proceeding and contested matters, is governed by Fed. R. Civ. P. ("FRCP") 56 which is incorported into this adversary proceeding pursuant to Fed. R. Bankr. P. 7056 (with only minor changes)(unless stated specifically to the contrary, all references to summary judgment rules wqill refere to the language of FRCP 56.

92.  This court should grant summary judgment to the Plaintiffs if the record before the court is sufficient to show that there is no genuine dispute as to any material fact and the Plaintiffs are entitled to judgment as a matter of law.  ***Beard v. Banks***, 548 U.S. 521, 529 (2006).  Rule 56 mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's defense. ***Id.***; ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986).

93.  In order to obtain summary judgment the Plaintiffs' burden is to show the absence of a genuine, material dispute and an entitlement to judgment under applicable law.  ***Id., at*** 323.

94.  Because this case is not a jury trial, most of the facts of the case are accepted and

-28-

not disputed and judgment is based upon the specific language of the Bankruptcy Code and D.C. Code, the Plaintiffs, the facts to establish entitlement are straightforward. Furthermore, entitlement to a judgment at this stage, after completion of discovery, is governed by long standing statutory provisions that are the subject of significant court review and approval. Nevertheless, the Plaintiffs are required in this Motion to show that the evidence is not subject to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). *See also, Limor v. Anderson (In re Scarbrough)* , 2019 Bankr. LEXIS 933 (BAP 6th Cir. 2019) in which the 6th Circuit's Bankruptcy Appellate Panel explained:

> perhaps a better way to describe the summary judgment analysis in bankruptcy proceedings is to say that when the moving party bears the burden of proof at trial, she must make a prima facie case strong enough to justify depriving the other party of her day in court. Depending on who bears the burden of proof on a material issue, the moving party can make this showing by using deposition testimony and affidavits; offering documentary evidence that would be admissible at trial; and/or pointing the court to facts in the record that otherwise preclude judgment for the non-moving party.

*Id.* at *4.

95. A genuine dispute exists, such that the Plaintiffs Motion should be denied, only when a rational fact finder, considered the evidence in the summary judgment record could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 , 247-252 (1986).

96. A genuine dispute is not created by a mere scintilla of evidence or evidence which is only "colorable' or insufficiently probative. *Id.* Additionally, summary judgment will not be defeated if the claim or defense asserted by the non-moving party is based upon a factual scenario that is plainly contradicted by the summary judgment record. *Scott v. Harris*, 550 U.S. 272, 280

-29-

(2007); ***Coble v. City of White House***, 634 F.3d 865, 868-9 (6th Cir. 2011) (the principle declared in ***Scott***, that is, that the court need not credit "visible fiction", applies to all types of objectively conflicting evidence).

97. According to the 6th Circuit, in ***Coble***, construing the facts on summary judgment in the light most favorable to the non-moving party usually means adopting the plaintiff's version of the facts. ***Id.***, at 868, citing ***Scott,*** 550 U.S. at 378. However, as the 6th Circuit acknowledged, the Supreme Court clarified in **Scott** that facts must be viewed in the light most favorable to the non-moving party "only if there is a 'genuine' dispute as to those facts." ***Coble, supra***, citing ***Scott,*** 550 U.S. at 380(quoting Fed. R. Civ. P. 56(c)).

98. In the context of a motion for summary judgment courts should not accept that which is so utterly discredited by the record that no reasonable trier of fact could have believed it. ***United States v. Hughes***, 606 F.3d 311, 319 (6th Cir.2010)(quoting ***Scott***, 550 U.S. at 379-81)(cited and quoted in ***Coble***, 634 F.3d, at 868.

99. In a trio of summary judgment cases all decided in 1986, the Supreme Court put its stamp of approval on summary judgment motions as a means to eliminate unnecessary trials.

> The Supreme Court has analogized a motion for summary judgment to a motion for directed verdict, because both remove the trial of factual questions from the finder of fact. If the movant under Rule 56 presents evidence that, if not controverted at trial, would entitle the movant to a Rule 50 judgment as a matter of law, that evidence must be accepted as true in a summary judgment motion, when the party opposing the motion does not offer counter-affidavits or other evidentiary material showing that a genuine issue remains to be tried, or that she is unable to present facts justifying opposition to the motion under Rule 56(d). Celotex, 477 U.S. at 323, 106 S. Ct. at 2552; Liberty Lobby, 477 U.S. at 250, 106 S. Ct. at 2511 (standard for granting summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a)).

***Limor, supra,*** 2019 Bankr. LEXIS 933, at *5.

-30-

100.  The Plaintiffs assert that they are entitled to Summary Judgment on Counts I, II, IV, V, and VI of the Complaint because the Plaintiffs claims fit squarely with the language of 11 U.S.C. §§ 544 (a) and 548(a)(1)(A) and (B) and D.C. Code §§ 28-3104 and 28-3105 and there are no disputed material facts, within the meaning of Rule 56, which would create a genuine, or colorable issue preventing judgment at this time.

B.    **The Plaintiffs Have Standing to Pursue The Causes of Action Stated in the Complaint**

101. Pursuant to the confirmed Plan in Max's case, which specifically recognizes the Plaintiffs' standing to pursue the Complaint's causes of action for the benefit of Len's bankruptcy estate, and the Trustee's sale of his avoidance and recovery actions to the Plaintiffs in Case No. 18-2662, as confirmed by this court, the Plaintiffs the owners of the recovery and avoidance claims set forth in this Complaint and have standing to pursue those claims. ***See Jefferson County Bd. Of County Comm'rs v. Voinovich (In re V Cos.)***, 292 B.R. 290, 294, 298 (B.A.P.  6th Cir. 2003) (following ***Canadian Pac. Forest Prods. v. J.D. Irving, Ltd. (In re Gibson Group)***, 66 F.3d 1436, 1438 (6th Cir. 1995).

C.    **The Plaintiffs are Entitled to Recovery under Count IV of Their Complaint (Fraudulent Conveyance Under 11 U.SC. § 548)**

102.  The purpose of avoidance of preferential transfers under 11 USCS § 547 and fraudulent transfers under 11 USCS § 548 is to prevent a debtor from diminishing, to the detriment of some or all of his creditors, funds or property that would, except for the transfer, be generally available for distribution to creditors.  Consequently, any funds or property under the control of the debtor, regardless of source, are deemed property of debtor and cannot be

-31-

transferred if such transfer diminishes the estate. ***In re Chase & Sanborn Corp.***, Bankr. L. Rep. (CCH) ¶ 1753, 813 F.2d 1177 (11th Cir. 1987).

103.   Purpose of statute is to recover for estate assets that could be distributed to unsecured creditors, equity secured creditors, or to debtor as exempt property, and to rectify prepetition depletion of debtor's estate. ***Ryker v. Current (In re Ryker)***, 272 B.R. 602, Bankr. L. Rep. (CCH) P78605,  (Bankr. D.N.J. 2002), rev'd, remanded, 301 B.R. 156, 2003 U.S. Dist. LEXIS 20515 (D.N.J. 2003).

   1. <u>Actual Fraud - 548 (a)(1)(A)</u>

104.     The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because it was made with the actual intent to defraud creditors and potential creditors of Len Salas, including Sun Trust Bank, the Plaintiffs and the other creditors of the bankruptcy estate of Len Salas by transferring the Property to Max without permission and by fabricating the facts and circumstances of the alleged Quitclaim .

105.   The Defendant and the Debtor executed a Trust and Quitclaim Deed in July, 2010 at the Colorado office of Ron Salas, the Debtor's brother and the Defendant's son. Ron was a fledging Colorado attorney at the time who, by his own admission,  had limited knowledge of trusts and no knowledge about creating an effective trust or deed to property in the District of Columbia.  He confirmed as much in his deposition on August 10, 2018 (Exhibit 8) and his testimony at the Exemption Hearing in August, 2018 in Case No. 18-260 (Exhibits 6 and 20).

106.   The purpose of the Deed was to "remove Len" from the title to the Property.  The Deed was never recorded and the location of the original deed is unknown.

107.   In 2011, by virtue of emails addressed from Ron to the defendant and the debtor,

-32-

and addressed from Max to his real estate attorneys at the time (Exhibit 7), it is clear that Len and Max had long since abandoned the Quitclaim Deed. Ron's direction to Max to have a D.C. attorney prepare a deed show that the deed Ron created must not have been defective and could not be recorded.

108. From 2011 through 2017 Len continually asked Max to remove him (Len) from the title to the Property, a clear indication that the deed was ineffective and not recordable.

109. In October, 2015, Max and Len were sued in the D.C. Superior Court by the Plaintiffs for damages resulted from the gross negligene of Len and Max and the horrific deaths of Nina Brekelmans and Michael McLoughlin from a fire at the Property in June, 2015.

110. In October, 2015, Len, Max, Ron and Len's wife, Kendra, all knew that the only reason Len was sued was because his name remained on the title to the Property. They also knew that if Len could be proven not to be the owner of the Property he could be dismissed from the lawsuit.

111. Ron Salas testified in 2018 that he knew that the July, 2010 Deed could not have been recorded because Len was named a defendant in the lawsuit. He testified as if the Deed was still in effect even though he knew it was not valid, could not have been recorded and no longer existed.

112. The Superior Court case eventually went to trial in late March, 2018. In early April, 2018 the Plaintiffs obtained their judgments.

113. From October, 2015 until February, 2018, a month before the Superior Court trial was to begin, none of the Salas' produced an original or copy of the Quitclaim Deed.

114. Max had the only original of the Deed. He testified that he gave the original to his

-33-

real estate counsel and was not sure if he ever got it back. Based upon the communications among the Salas's and Max's counsel in 2011 and 2012 it appears certain that the Deed was left at the offices of Max's counsel and likely thrown out as useless. Regardless, Max did not retain the original or, if he did, it may have been destroyed in the fire. It is likely that Max's real estate attorney knows the answer.

115. By late 2017, with the trial looming, it was obvious to Len and Max that they were facing substantial judgments from the Superior Court Litigation. Still no one produced the Deed or a copy.

116. It was only after Max learned from his bankruptcy counsel, just weeks before trial, that the long lost deed could give him an opportunity to exempt the Property from the judgments he was facing. Max and Len learned that Len could not exempt the Property because he was not residing in the Property which meant if Max could somehow be deemed the owner, then he could exempt the Property under D.C.'s very generous homestead exemption. D.C. Code § 15-501(a)(14).

117. Armed with the knowledge of what they needed to do, from Max's bankruptcy counsel, Ron, Len and Max concocted the scheme whereby they would now claim they forgot about the deed for all these years and magically produced it so that Max could claim the exemption he eventually got under, to say the least, false pretenses.

118. The schemers involved in this fraud include, at a minimum, Len, Max and Ron.

119. The purpose of the fraud was to transfer the Property from non-exempt to exempt status to thwart the Plaintiffs' collection of their judgments.

120. The fraud scheme was developed and initiated in or about February, 2018 and

-34-

continues to this day.

121. In February, 2018 Len (and Max) was facing a substantial judgment. On the effective date of the transfer, April 17, 2018, Len (and Max) owed more than $15 Million to creditors including Len's attorneys, the IRS and the Plaintiffs.

2. Fraudulent Conveyance - § 548 (a)(1)(B)

122. The transfer of July, 2010 was a fraudulent conveyance pursuant to Code § 548 because, by transferring the only major asset of Len to his father, the transfer was likely to, and did, make Len insolvent and unable to pay his mortgage obligations to Sun Trust Bank. Moreover, at the time of the transfer, and at all times from 2007 through 2018, Max gave no consideration, made no payments and gave or transferred no property to Len. Max has produced no evidence of consideration for the transfer and Len has testified repeatedly, that Max gave Len no money or property of value at any time from 2007 through 2018.

123. In addition, at the time of the transfer under 548(d)(1), April 17, 2018, Len was clearly insolvent since he was unable to pay his attorneys and the IRS, among other creditors, and he had a recent unsatisfied judgment recorded against him totaling in excess of $15 Million.

124. Len received no compensation or property of value and gave up property worth in excess of $2 Million while remaining solely obligated on a Deed of Trust Note to Sun Trust bank that was in default at the time of the alleged transfer. The arrearage alone, on the SunTrust Note was more than $374,000.

125. The transfer of the Property in 2010 by Quitclaim Deed was made after two years prior to Max's Bankruptcy because pursuant to Code § 548 (d)(1) the transfer of real property is deemed perfected when the deed is recorded or, if not recorded prior to the bankruptcy filing, the

-35-

date immediately prior to the bankruptcy filing, namely April 18, 2018. Therefore, the effective date of the transfer is April 17, 2018.

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition.

§548 (A)(1).

126. Section 548(d)(l) also provides:

> For purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

Accordingly, for purposes of ==11 U.S.C. § 548==, the transfer date would be April 1 7, 2018, because the Quitclaim Deed was not recorded at the time of Len's bankruptcy filing..

127. A transfer under Code §548 (a)(1)(B)(2) if:

> 2. The debtor received less than a reasonably equivalent value in exchange for such transfer or obligation; and

>> a. The Debtor was insolvent at the time of the transfer; or

>> b. the Debtor became insolvent as a result of such transfer or obligation; or

>> c. the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such Debts matured.

128. The Plaintiffs assert that there is no dispute regarding any facts relevant to the

-36-

Plaintiffs ability to recover the Property as a fraudulent conveyance under the provisions of

<mark>11 U.S.C. §548</mark> (a)(1)(B)(2) and the documents and testimony of the Salas family members

confirm that the "transfer" of the Property pursuant to the Quitclaim Deed was a fraudulent

conveyance based upon the following:

    a.  The Salas family members hid the emails and communications between and among Ron, Len, Max, and the Goldstein firm (Stan Goldstein and Lynn Boileau), during the period 2011-2012 which clearly shows that the Quitclaim Deed was abandoned by Max and Len; and

    b.  Both Len and Max testified that Len was attempting to get his name off the Property, not the loan, in the period after 2010 at least through the year of the tragic fire at the Property (2015); and

    c.  None of the Salas family members could confirm the existence, or identify the location of the original Quitclaim Deed after 2012; and

    d.  The 1610 Riggs Place Trust filed no tax returns for any period; and

    e.  Len testified that Max made no payments to Len at the time of the alleged transfer in 2010; and

    f.  Max made no payments of any kind related to the Propery to Len in or after 2007; and

    g.  Max gave no consideration of a non-monetary kind to Len, at any time, 2007 through 2018; and

    h.  The obligation under the Sun Trust Deed of Trust increased from $870,000 in 2007 to at least $1,030,825.85 as of the filing of Max Salas's bankruptcy case on April 18, 2018.  See Max Salas Schedules A/B-J, May 2, 2018 (D-12) Case No. 18-00260, United States Bankruptcy Court for the District of Columbia.  A copy of the Schedules page (p. 19 of 37) of Docket Entry 12 is attached hereto as Exhibit 18. According to a Stipulation filed by the Defendant/Debtor and U.S. Bank (successor in interest to SunTrust) the balance of the Sun Trust Deed of Trust as of September 29, 2019 was $1,208,720.40.  See Stipulation filed on November 20, 2019 (D-266-1) in Max Salas' bankruptcy, a copy of which is attached hereto as Exhibit 15; and

    i.  The Property represented, by far, the only major asset owned by Len; and

-37-

j.  When the Property was transferred on April 17, 2018, Len was still obligated on the SunTrust loan for at least $1,030,825.85; and

k.  When the Property was transferred, Len was obligated to the Estates in the amount of $15.2 Million, plus interest; and

l.  According to Len's schedules his assets as of April 18 2018 totaled $53,373.38.  His liabilities totaled $16,307,795.41.  Len Salas Schedules, Case No. 18-002662 in the United States Bankruptcy Court for the Middle District of Tennessee, (D-1), p. 12 of 56; and

127.  In an analogous case, ***Rameker v. Peterson (In re Associated Enters., Inc)***, 234 B.R. 718, the Wisconsin bankrupt court held that an attempted transfer of real estate into a defective trust was a fraudulent conveyance recoverable for the benefit of the debtor's estate. The court entered judgment in favor of the bankruptcy trustee finding:

> Because the trust fails, so does this argument. The transfers were made to an insider within one year before the petition was filed. The defendant is the president of the debtor corporation and a consummate insider. All relevant transfers took place in 1998 and the petition was filed in October 1998. The debtor was insolvent at the time of the transfers or the transfers caused the debtor to become insolvent. The debtor's bankruptcy schedules list total assets of about $ 14,000 and liabilities of almost $ 23,000 less than six months after the transfers took place. Finally, the debtor received no consideration for the transfers. This is obviously less than reasonably equivalent value.

***Rameker v. Peterson (In re Associated Enters., Inc.)***, 234 B.R. 718, 724 (Bankr. W.D. Wis. 1999).  Although the trust at issue here is defective for a different reason, it was, nonetheless, a defective trust, void ab initio, as in *Rameker*.  Additionally, as here, in *Rameker* found that the debtor's liabilities exceeded its assets at the time of the transfer determining that the debtor was either insolvent at the time of the transfer or the transfer caused the debtor to become insolvent.  The debtor, in *Rameker*, received no consideration for the transfer and neither did Len. And, finally, no deed of any kind was recorded to effect the attempted

-38-

transfer.

128.  In another case similar to this one, the bankruptcy court for the Middle District of Florida determined that the trustee could avoid, pursuant to 11 U.S.C.S. § 548, a transfer of real property which the Debtor deeded to her former husband and son and to recover the property for the benefit of the estate. The court found that the initial transfer of debtor's real property took place on the date that the deed was recorded, which was less than one year before the petition date (the limitations period prior to 2005). In addition, debtor was insolvent at the time of the initial transfer and the initial transfer was made without consideration. It was undisputed that debtor was not residing on the property at the time of the initial or subsequent transfers, and could not have claimed the property as her homestead. Thus, the necessary statutory elements were established and the transfers were subject to avoidance by the bankruptcy trustee under 11 U.S.C.S. § 548(a)(2).

*Cohen v. Bellamy (In re Shannis)*, 237 B.R. 862, 862 (Bankr. M.D. Fla. 1999).

129.  In its decision, the ***Shannis*** court noted that, "other then the effective date of the transfer, the facts are not in dispute." *Id.* Here, the material facts are not in dispute, except the effective date of the transfer (the Defendant continues to assert the transfer took place in July, 2010).  Max has consistently testified that he was the party responsible for paying the SunTrust loan, from 2007 through the commencement of Max's bankruptcy case.  He paid no consideration for the original SunTrust loan of 2007 and the loan balance increased from 2007 to September, 2019 by more than $300,000.  The Quitclaim Deed was not recorded as of the commencement of Max's bankruptcy case on April 18, 2018.  Len was insolvent on April 18, 2018 and the Property was Len's only asset of more than a few thousand dollars.  During the

-39-

period 2010 through 2018, Len's income was limited and he was unable to pay his obligation including the SunTrust Mortgage during that time.

130.   Applicable Florida law appears to be more restrictive than D.C. law regarding the rights of a subsequent purchaser for value.   ***See***, Fla. Stat. § 695.01. ***Cohen v. Bellamy (In re Shannis)***, 229 B.R. 234, 237 (Bankr. M.D.Fla. 1999)( depends upon interpretation of Florida's provision which states "without notice"). However, under the analogous (to this case) facts of the ***Shannis*** decisions above, the court determined that the trustee can avoid the attempted transfer to relatives since that transfer occurred within 1 year (under pre-2005 language of § 548 (a)) even though the date of the deed was more than one year prior to the bankruptcy because the deed was not recorded until the period within one year of the bankruptcy filing.

131.   Standard of proof required under 11 USCS § 548 is preponderance of evidence. ***Dahar v. Jackson (In re Jackson),*** 2004 BNH 26, 318 B.R. 5, 2004 Bankr. LEXIS 1917 (Bankr. D.N.H. 2004).  By that standard, the record in this case and the plain language of the statute, § 548(a)(1)(B) the Plaintiffs are entitled to summary judgment under Count IV of the Complaint.

     D.   **The Plaintiffs are Entitled to Recover Under Count V of Their Complaint (Fraudulent Conveyance Under D.C. Law)**

132.   The Plaintiffs, as the holders of the rights and claims of the Trustee, may avoid any transfer that is voidable under applicable law pursuant to Code § 544 (b) (1).

133.   Under the law of the District of Columbia, the transfer of the Property alleged herein, is a fraudulent conveyance because the transfer was performed with fraudulent intent as to existing creditors, such as the IRS, other taxing authorities, Sun Trust Bank, and others, including the Plaintiffs, and was made for less than reasonably equivalent value, all as

-40-

specifically prohibited by D.C. Code § 28-3104, *et seq.*

134.  A transfer made is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. D.C. Code § 28-3105.

135.  Here the transfer was to the Debtor's father on the eve of bankruptcy less than two weeks after the entry of judgments against the Debtor in an amount in excess of $15,000,000. Moreover, the Defendant not only knew Len could not pay the judgment balances, he also knew that the Debtor was unable to pay his attorneys in the Superior Court case.  The Defendant's bankruptcy schedules show a payment of $2,000 from Madx to Len's attorneys prior to the Defendant's bankruptcy filing.

136.  A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

> In the District of Columbia, a transfer of real property is made:
> (A) With respect to an asset that is real property other than a fixture, including the interest of a seller or purchaser under a contract for the sale of the asset, when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee.

D.C. Code § 28-3106.  Therefore, under D.C. law the alleged 2010 transfer, even if this Court determines that the Quitclaim Deed is valid, was not perfected at the time of Max's bankruptcy

-41-

filing and is recoverable under D.C. law.

137. In an action for relief against a transfer or obligation under D.C. law, a creditor may

obtain:

> (1) Avoidance of the transfer or obligation to the extent necessary
> to satisfy the creditor's claim;
>
> (2) An attachment or other provisional remedy against the asset transferred
> or other property of the transferee...;
>
> (3) Subject to applicable principles of equity and in accordance
> with applicable rules of civil procedure:
>
>> (A) An injunction against further disposition by the
>> debtor or a transferee, or both, of the asset
>> transferred or of other property;
>>
>> (B) Appointment of a receiver to take charge of the
>> asset transferred or of other property of the
>> transferee; or
>>
>> (C) Any other relief the circumstances may require.

D.C. Code § 28-3107

138. The date of transfer according to the law in the District of Columbia, for purposes of

creditors and bona fide purchasers without notice, is the date the deed is recorded, in this case,

no earlier than April 17, 2018.

> Any deed conveying real property in the District, or interest therein, or declaring
> or limiting any use or trust thereof, executed and acknowledged and certified as
> provided in §§ *42-101*, *42-121* to 42-123 [repealed],*42-306*, and *42-602* and
> delivered to the person in whose favor the same is executed, shall be held to take
> effect from the date of the delivery thereof, except that as to creditors and
> subsequent bona fide purchasers and mortgagees without notice of said deed, and
> others interested in said property, it shall only take effect from the time of its
> delivery to the Recorder of Deeds for record.

D.C. Code §42-401. ***Sovran Bank v. United States (In re: Aumiller)***, 168 B.R. 811 (Bankr.

-42-

D.D.C. 1994).

139.  As this court has already noted, because the underlying state law avoidance claim was not time-barred as of the commencement of Len Salas' case, this claim could have been brought by the Trustee provided the complaint was filed within the time periods prescribed in 11 U.S.C. § 546(a). *See UMB Bank , N.A. v. Sun Capital Partners V, LP (In re LSC Wind Down, LLC*), 610 B.R. 779, 785 (Bankr. D. Del. 2020).  (If "underlying state law avoidance claim is not time-barred as of the commencement of a bankruptcy case, a section 544(b)(l) claim may be brought provided that it is commenced within the time periods prescribed by section 546(a)."); *Tabor v. Davis*, No. 05-15794-L, 2016 WL 11696269, at *13 (Bankr. W.D. Tenn. June 15, 2016) ("The reachback period for avoiding fraudulent transfers that could have been avoided by a creditor but for the filing of a bankruptcy case is measured from the entry of the order for relief.").

140.  All of the arguments set forth in the section on recovery under §548(a)(1)(B)(2), particularly those involving the circumstances of the transfer of the Property and the insolvency of the Debtor apply here.  The Plaintiffs assert they are entitled to judgment under the D.C. fraudulent conveyance statute.

E.  **The Trustee's Status as a Bona Fida Purchaser Gives the Trustee a Superior Interest in the Property Than the Defendant's**

141.  *Aumiller, supra* explained that Section 544(a) of the Bankruptcy Code, the "strong arm" clause, bestows upon the trustee the rights of a hypothetical judgment lien creditor and the rights of a bona fide purchaser for value as of the date of the filing of the bankruptcy petition.

-43-

Although the trustee's strong arm powers arise under federal law, the scope of these powers is governed by the substantive laws of the state in which the property is located, in this case, the District of Columbia. *In re Bridge*, 18 F.3d 195, 200 (3d Cir. 1994). Therefore, the relevant inquiry in this case is whether the trustee, clothed with the rights bestowed upon him as a bona fide purchaser or judgment lien creditor pursuant to D.C. law, prevails over whatever equitable or legal rights the Defendant has.

142. Pursuant to District of Columbia law, a deed conveying an interest in real property is not effective against a subsequent bona fide purchaser or creditor without notice unless it is recorded. D.C. Code § 45-801 (1990); 3 *Manogue v. Bryant*, 15 App. D.C. 245 (1899) (purpose of statute is to protect judgment creditors as well as purchasers against claims of which they had no notice). Because the equitable lien in this case was not recorded, it would not be effective against a bona fide purchaser or judgment creditor who acquired an interest in the property without notice of that equitable lien.

143. Pursuant to 11 U.S.C. § 544 (a), the Trustee has as of the date of the Len Salas bankruptcy petition, namely, May 2, 2018, the status of a bona fide purchaser of real property from the debtor, without notice.

144. Under Code § 544 (a)(3) the trustee's bona fide purchaser status gives the Plaintiffs priority over subsequently recorded interests in the Property.

145. Under D.C. Code, § 42-401:

Any deed conveying real property in the District, or interest therein, ...shall be held to take effect from the date of the delivery thereof, except that **as to creditors and subsequent bona fide purchasers** and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the Recorder of Deeds for record.

-44-

146.  As a result, the Plaintiffs have a superior and priority interest in the Property ahead of any interest acquired by Max Salas and, therefore, the Property should be turned over to the Plaintiffs, or sold to recover the net equity for the benefit of the unsecured creditors of Len Salas' bankruptcy estate.

147.  Section 544 is known as the Trustee's "the 'strong arm' clause," *Aumiller, supra*, 168 B.R. at 817, and "'gives a bankruptcy trustee the rights and powers of a judicial lien creditor or a bona fide purchaser of real property and allows the trustee to avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a judicial lien creditor or a bona fide purchaser of real property.'" *Drown v. Wells Fargo Bank, N.A. (In re Scott)*, 424 B.R. 315,327 (Bankr. S.D. Ohio 2010) (quoting *Craig v. Seymour (In re Crabtree)*, 871 F.2d 36, 37 (6th Cir. 1989)).

148.  The scope of these powers is governed by the substantive laws of the state in which the property is located, in this case, the District of Columbia. *Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 200 (3d Cir. 1994) (citations omitted).

149.  Historically, the bankruptcy code has been hostile to secret liens such as the Quitclaim Deed at issue here. *Bridges, supra*, at 199.

> "While an equitable lien . . . may be enforceable against . . . subsequent purchasers and incumbrancers with notice, it may not be enforced against prior incumbrancers or subsequent incumbrancers without notice. The trustee belongs to the latter class." *Hayes v. Gibson*, 279 F. 812, 814 (3d Cir. 1922) (internal citations omitted)

*In re Bridge, supra*, 18 F.3d at 199 n.3.

150.  The trustee's status under section 544(a) is governed by the state substantive law

-45-

defining that notice. See, e.g., *In re Probasco*, 839 F.2d 1352 (9th Cir. 1988) (debtor in possession could not avoid partner's interest in real property as a hypothetical bona fide purchaser under section 544(a)(3) because it had constructive notice under California law of the partner's interest in the property); *Angeles Real Estate Co. v. Kerxton*, 737 F.2d 416, 420 (4th Cir. 1984) (trustee's rights under section 544(a) as judgment lien creditor are subject to prior equitable interests under Maryland law); *McCannon v. Marston*, 679 F.2d 13 (3d Cir. 1982) (where possession of property by claimed purchaser put trustee on constructive notice of purchaser's interest under Pennsylvania law, trustee could not avoid purchase of the property under section 544(a)(3)); *In re Roman Crest Fruit, Inc.*, 35 Bankr. 939 (Bankr. S.D.N.Y. 1983) (where reasonable inquiry would have revealed existence of agreement between debtor and assignee for the sale of debtor's interest in store leases, and knowledge of such agreement was of sufficient magnitude to require hypothetical purchaser to inquire further, assignee's equitable lien could not be avoided by bankruptcy trustee under section 544(a)).

151.  Pursuant to District of Columbia law, a bona fide purchaser or judgment creditor is subject to actual, constructive or inquiry notice. *Clay Properties, Inc. v. The Washington Post*, 604 A.2d 890, 894 (D.C. App. 1992) (subsequent bona fide purchaser can be held to inquiry notice); *Kayfirst Corp. v. Washington Terminal Co.*, 813 F. Supp. 67, 72 (D.D.C. 1993) (same); *Manoque*, 15 App. D.C. at 261-62 (judgment lien creditor that was held to inquiry notice of the mortgagee's equitable rights took subject to those rights); *Hume*, 12 App. D.C. at 368-69 (failure to record or acknowledge deed does not deprive it of priority over judgment creditor having notice of its existence); *Groome*, 13 App. D.C. at 470 (equitable lien has priority over a subsequent judgment lien creditor who had notice of equitable claim). See also *Harris v.*

-46-

*Maryland National Bank*, 165 B.R. 729 (Bankr. D.D.C. 1994) (recorded Deed of Trust is sufficient notice, (despite misindexing at the Recorder of Deeds) under D.C. statute which states that Deed is perfected when presented to the Recorder of Deeds for recording).

152.  Actual notice is not relevant in the context of section 544(a) as the trustee assumes the role of a bona fide purchaser or judgment creditor without actual knowledge. *McCannon*, 679 F.2d at 16-17 (statute's language renders trustee's actual knowledge irrelevant but trustee may be held to constructive or inquiry notice). *See also, In re Sandy Ridge Oil Co., 807 F.2d 1332 (7th Cir. 1986)*, *S. Bank and Trust Co. v. Alexander (In re Alexander)*, 524 B.R. 82 (E.D. Va. 2014)(trustee took title to half-interest in property despite existence of an unrecorded deed); *Hardesty v. Horn (In re Horn)*, 606 B.R. 747, 67 BCD 212 (Bankr. S.D. Ohio 2019). In *Hardesty,* the debtors had transferred the subject property by an unrecorded deed to the father prior to filing their petition and at the time of the filing the father was merely the holder of an unrecorded deed. The bankruptcy court granted summary judgment in favor of the trustee. The Court determined the fact that the father had previously transferred the title to the debtors so they could obtain financing did not matter, nor did the fact that the county auditor's office had approved the conveyance back to the father because such approval was insufficient under Ohio Rev. Code Ann. § 5301.25 to put the trustee on constructive notice of the transfer. *Id.*, 606 B.R. 747, 748 (Bankr. S.D.).

153.  Constructive notice, which has generally come to mean record notice, could not exist in this case because the equitable lien was not recorded. *Clay*, 604 A.2d at 895 n.15.  See also, *Sandy Ridge Oil* and  *Hardesty, supra.*  Compare *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651 (B.A.P. 6th Cir. 2001)(Pending foreclosure, which operated as a

-47-

lis pendens under Ohio law was constructive notice which defeated the trustee's bona fide purchaser status). Here, the trustee had no notice of any recorded document which could defeat his interest as of Len's bankruptcy filing on April 18, 2018. ***Sovran Bank v. United States (In re Aumiller***), 168 B.R. 811, 817-19 (Bankr. D.D.C. 1994)

154.  Under well established law interpreting the subject D.C. statute, and other, similar state statutes, the conveyance, for purposes of avoidance or recovery is the date the subject deed is recorded or, if unrecorded, the day before the Debtor's bankruptcy petition, here - April 17, 2018.  As a result,  the avoidance and recovery actions set forth in the Complaint are well within the limitations periods established by 11 U.S.C. §546 (a), or any other applicable limitations period. ***See, for example, Williams v. Marlar***, 252 B.R. 743, 758 (8th Cir BAP 2000)(Arkansas Law); ***Southern Bank & Trust Co. v. Alexander (In re Alexander)***, 2014 Bankr. LEXIS 3048, *21(Bankr. E.D. Va. 2014) ***Health Science Prods. v. Taylor (In re Health Science Prods.)***, 183 B.R. 903, 919 (Bankr. N.D. Ala. 1995);

155.  The record of an instrument that is not permitted by law to be recorded, or that is not proved for record as required by law, is constructive notice to no one. ***Clark v. Harmer***, 1895 U.S. App. LEXIS 3533 (D.C. Cir. 1895)

156.  Since the "transfer" at issue here, occurred, by statute, on April 17, 2018 and was an unrecorded transfer of real property, at best, the Trustee's status as a bona fide purchaser and judgment lien creditor, as of the date of the Debtor's bankruptcy filing, is superior to whatever interest the Defendant may have as of the same date.

-48-

F.    **The Trustee's Status as Hypothetical Judgment Lien Holder Gives the Trustee a Superior Interest in the Property**

157.  As of the commencement of this case, April 18, 2018, the trustee has, without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien, whether or not such a creditor exists. Code §544 (a)(1).

158.  The Plaintiffs are the authorized representatives for prosecution of all of the Trustee's rights and powers under Code §§ 544, *et seq.*

159.  A judicial lien creditor, under the laws of the District of Columbia, has a superior interest in the Property than that of a competing creditor or owner who has not recorded an interest in the Property.  Thus, as discussed below, the Trustee's interest is superior to the unrecorded interest of the Defendant.

160.  Section 544( a)( 1) grants a trustee "the status of a hypothetical lien creditor who is deemed to have perfected his interest as of the date of the filing of the bankruptcy petition." *Rogan v. Bank One, N.S. (In re Cook)*, 457 F .3d 561, 564 ( 6th Cir. 2006).

161.  The difference between a bona fide purchaser and a judgment creditor, for purposes of the Trustee's Avoiding Powers, is explained as follows:

> a judgment creditor is not in the position of a bona fide purchaser, and his claim is subject to prior, undisclosed equities. "He is neither in fact nor in law a bona fide purchaser, and must stand or fall by the real, and not the apparent rights of the defendant in the judgment."' *Kolker v. Gorn*, 193 Md. 391, 398, and cases cited.

-49-

*E. Shore Bldg. & Loan Corp. v. Bank of Somerset*, 253 Md. 525, 530, 253 A.2d 367, 370

(1969). Therefore, unlike a bona fide purchaser, a judgment creditor is subject to any

existing equitable claims, regardless of notice. Here, however, there are no equities that

could defeat the Trustee's lien since the Quitclaim Deed, at best, constituted a secret lien.

Moreover, the facts and circumstances of the resurrection of the Quitclaim Deed in February,

2018, as described above hardly favor the Defendant.

162. As the uncontested facts in this case show:

a. The Defendant failed to record the Quitclaim Deed despite his obligation to do so; and

b. Less than 6 months after the execution of the Quitclaim Deed Len and Max were instructed by Ron, the creator of the Quitclaim Deed, that a new Deed needed to be created by someone in D.C. See Exhibit 7.

c. Ron Salas acknowledged that he knew the only reason Len could be a defendant was if the Quitclaim Deed had not been recorded; and

d. Neither Max, Len, Ron or Kendra produced a copy of the Quitclaim Deed during the Superior Court litigation, until February, 2018, even though they all knew of its existence and they all also knew that the only reason Len was a defendant in the Superior Court litigation was if Len was a titled owner of the Property; and

e. As of February, 2018 no Salas family member had an original Quitclaim Deed; and

f. As of February, 2018 no Salas family member was aware of the existence of an original Quitclaim or, if it existed, its location.

g. Len produced a copy of the Quitclaim Deed in or about February, 2018 only after Max (and Len) learned from Marc Albert that the 1610 Riggs Property Trust and the Quitclaim Deed could be used to exempt the Property in Max's future bankruptcy.

h. Both Ron and Max testified that the Quitclaim Deed was still in effect in

-50-

2018, when their own email communications in 2011 and 2012 tell a complete contradictory story.

163.  A perfected mortgage is superior to a later-recorded judicial lien. *Id.* at 565. That would apply to the SunTrust Deed of Trust but not to the Quitclaim Deed, even if it is in effect as of April 17, 2018.

164.  Much of the argument in previous Section, applied to the Trustee's status as a bona fide purchaser for value and without notice, also applies to the Trustee's status as a hypothetical, judicial lien holder but is not repeated here to avoid unnecessary duplication.

165.  Based upon the undisputed facts of this case and the express provisions of Code, § 544(a)(1) the Plaintiffs are entitled to judgment on their supeiror claim to the Property due to the Trustee's status as a judgment lien creditor.

G.    **The Plaintiffs May Recover, for the Benefit of the Debtor's Estate, the Property or its Value**

166.  Under Code § 550 (a) the trustee may recover, for the benefit of the estate, the property transferred or, upon court order, the value of the property.  Here the Plaintiffs are seeking the equity in the Property, either through payment of the agreed amount of the equity (approximately $1.3 Million), or through the proceeds of a court ordered sale of the Property.  *See,* for example, ***ASARCO LLC v. Americas Mining Corp***., 404 B.R. 150, 162 (S.D.Tex. 2009)(court has discretion); ***In re Vedaa***, 49 B.R. 409, 411 (Bankr. N.D. 1985); ***In re: Beck***, 25 B.R. 947 (Bankr. N.D.Ohio 1982).

V.    **CONCLUSION**

For the reasons set forth in the foregoing Memorandum, the Plaintiffs assert that they are

-51-

entitled to summary judgment on Counts I, II, IV, V, VI of their Complaint and seek a judgment

declaring and adjudging that the Plaintiffs, on behalf of the Debtor's Estate are the owners of the

Property and are entitled to recover the Property or its value for the benefit of the Debtor's Estate

and for such other and further relief as is consistent with the Plaintiffs' Complaint and the relief

sought therein.

Respectfully submitted,

BUTCH, PORTER & JOHNSON, PLLC


By: /s/ Taylor A. Cates
130 North Court Avenue
Memphis, TN 38103
901-524-5165
901-524-5000 (fax)
Tacates@bpjlaw.com

LAW OFFICE OF PHILIP J. McNUTT, PLLC

By:  /s/ Philip J. McNutt
        Philip J. McNutt
        11921 Freedom Drive, Ste 584
        Reston, VA 20190
        703-904-4380
        202-379-9217 (fax)
Pmcnutt@mcnuttlawllc.com

COUNSEL FOR THE PLAINTIFFS

<u>Certificate of Service</u>

I HEREBY CERTIFY THAT a copy of the foregoing Motion, along with the Plaintiffs
Memorandum and accompanying exhibits, was delivered electronically, on the 29th day of July,
2022 through the Court's ecf noticing system to the following:

THOMPSON BURTON PLLC
Phillip Young
One Franklin Park

-52-

6100 Tower Circle, Ste 200
Franklin, TN 37067
615-465-6008
615-807-3048 (fax)
phillip@thompsonburton.com


 /s/ Philip J McNutt
Philip J. McNutt

-53-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville

| | | |
|---|---|---|
| In re: | : | |
| | | CHAPTER 11 |
| LEN SALAS | : | CASE No. 18-02662 |
| | | JUDGE: HARRISON |
| Debtor | : | |

_____

| | |
|---|---|
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, | : |
| CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS, et al | : |
| | : |
| Plaintiffs | : |
| v. | : Adversary Proceeding No. 3:20-ap-90027 |
| MAX SALAS | : |
| Defendant | : |

_____

**PLAINTIFFS' LIST OF UNDISPUTED FACTS,
PURSUANT TO LOCAL RULE 7056-1 IN SUPPORT OF
THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

In accordance with Local Rule 7056-1 of the rules of this Court, the Plaintiffs submit the

following facts in support of their Motion for Summary Judgment. The Plaintiffs assert that

these facts are either stipulated by the parties, supported by the Summary Judgment Record

herein, or otherwise undisputed.

**PLAINTIFFS' LIST OF UNDISPUTED FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

NOTE: All references to Case No. 18-2662 refer to the Chapter 7 bankruptcy of Len Salas filed
on April 18, 2018 in the United States Bankruptcy Court for the Middle District of Tennessee,
Case No. 3:18-02662.

All references to Case No. 18-260 refer to the Chapter 11 case of Max Salas filed in the United States Bankruptcy Court for the District of Columbia on April 18, 2018, Case No. 18-00260.

All references to the Complaint refer to the Amended Complaint filed in Adversary Proceeding 3:20-90027 in the United States Bankruptcy Court for the Middle District of Tennessee on February 16, 2021.

All references to "Exhibit" or "Exh." refer to Exhibits to the Plaintiffs' Motion for Summary Judgment unless otherwise specified.

Referenced documents which are part of the docket entries in Case No. 18-2662 or this adversary proceeding are not attached but are incorporated in this Memorandum and into the Summary Judgment record by such reference.

1. The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively. Joint Stipulation of Uncontested Facts, Joint Pretrial Statement, June 22, 2020 (D-14) ("Stip"), No. 1.

**RESPONSE:**

2. Nina Brekelmans and Michael Patrick McLoughlin were tragically killed in a fire at a residence in Washington, DC (the "Fire") located at 1610 Riggs Place, NW, Washington, DC (the "Property"). Stip. No. 2

**RESPONSE:**

3. Defendant resided in the Property from approximately 2007 through early June, 2015 and then commenced residing in the Property again in early 2018. Stip No. 3, Exemption Trans. Vol. 3, 62:11 - 63:17.

**RESPONSE:**

4. In 2007 Len Salas took out a loan for $870,000 in order to pay Max's ex-wife an agreed $500,000 in a divorce settlement.

-2-

5. Michael Gigandet, the Court appointed Trustee of the Estate, has declined to pursue the causes asserted herein and has also declined to join in this action. Court's Memorandum Opinion dated February 11, 2021 (D-38)("L Salas Memorandum Opinion"), at p. 6-7.

**RESPONSE:**

6. The Complaint is brought as a derivative action on behalf of the Estate of Len Salas. L Salas Memorandum Opinion dated February 11, 2021, in Case No. 20-90027 (D-38).

**RESPONSE:**

7. In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment"). Joint Statement of Stipulated Facts, Joint Pre-trial Statement dated June 22, 2020 (D-14), Stipulation No. ("Stip. No.") 6.

**RESPONSE:**

8. The Defendant, Max Salas does not have the original of the Quitclaim Deed and the 1610 Riggs Property Trust, dated July 6, 2010. Defendant's Amended Responses to the Plaintiffs Request for Admissions, dated November 11, 2021 ("Amended Responses-RFP"), Exhibit 17, Resp No. 2, p.3. Amended Responses-RFA, Request No. 1., p. 2.

**RESPONSE:**

9. Len Salas does not remember seeing a "wet ink" original of the Quitclaim Deed after July 6, 2010. L Salas Trans. 140:13-23.

**RESPONSE:**

10. The Defendant does not have the original Quitclaim Deed created in July, 2010. Defendant's Amended Responses to the Plaintiffs' Request for Admissions ("RFA"), Req. 1

-3-

**RESPONSE:**

11. That the Defendant is unaware of the location of the original Quitclaim Deed after 2012.

**RESPONSE:**

12. Ron Salas gave original(s) of the Trust and Quitclaim Deed of July 6, 2010 to Max Salas and only kept a copy.

**RESPONSE:**

13. The Defendant did not attempt to record the Quitclaim Deed after 2010. RFA, Req. 3.

**RESPONSE:**

14. That from 2007 through April 18, Len Salas was the sole obligor under the Sun Trust loan documents executed in 2007. RFA 16.

**RESPONSE:**

15. Max Salas had no written agreement or understanding with Len Salas that Max was responsible for the Sun Trust Mortgage/Deed of Trust obligation. RFA 17.

**RESPONSE:**

16. Neither Len Salas nor Max Salas informed SunTrust in writing that Max was responsible for the SunTrust Deed of Trust Note payments.

**RESPONSE:**

17. Max Salas was not a listed or added obligor or guarantor under the SunTrust Deed of Trust obligation or Note. RFA 18.

**RESPONSE:**

-4-

18.  Max Salas did not contact Ms. Sylvia Jones, a real estate broker acquaintance, regarding the location or existence of the original Quitclaim Deed since June, 2015. RFA 41

**RESPONSE:**

19. That the Note balance as of April, 2007 totaled approximately $870,000. RFA 44

**RESPONSE:**

20. That the Note balance as of the commencement of the Salas bankruptcy case (April 18, 2018) totaled more than $1,030,825.86. RFA 47

**RESPONSE:**

21.  That the Note Balance as of September 29, 2019 totaled $1,208,720.40.  Stipulation filed on November 20, 2019 (D-266-1) in Max Salas' bankruptcy, Motion to Approve Settlement with U.S. Bank, Exhibit 15.

**RESPONSE:**

22.  That on or about July 6, 2010, Ron Salas, an attorney recently admitted to practice law in Colorado, prepared a Trust document for the 1610 Riggs Property Trust along with a Quitclaim Deed purporting to transfer the Property from Len to Max.

**RESPONSE:**

23.  That the foresaid Trust and Deed were prepared and executed in Colorado.

**RESPONSE:**

24.  That the Trust was registered in Colorado by Ron Salas in 2011 even though the

-5-

Property was located in D.C. Email dated June 17, 2011 from Ron to Max, Exhibit 7.

RESPONSE:

25.  That the Defendant made at least two attempts to obtain a new or different Quitclaim Deed from the Law Firm of Stan Goldstein in 2011 and 2012.  Emails between Max Salas and the Goldstein Firm, June, 2011 through February, 2012, Exhibit 7.

RESPONSE:


26.  That on June 17, 2011, Ron Salas sent an email to his father, the Defendant, stating that the "next step" was for his father to obtain counsel to prepare a Quitclaim Deed for Len to sign.  Emails between Max Salas and the Goldstein Firm, June, 2011 through February, 2012, Exhibit 7.

RESPONSE:


27.  That on June 21, 2011 the Defendant forwarded Ron Salas's email of June 17, 2011 to Stanley Goldstein requesting Mr. Goldstein to assist the Defendant to transfer the Property from Len to Max.   Emails between Max Salas and the Goldstein Firm, June, 2011 through February, 2012, Exhibit 7.

RESPONSE:


28.  On January 17, 2012, more than six months later, the Defendant sent another email to Lynn Boileau, an associate of Mr. Goldstein requesting that she "get Lenny's name off of the property." Emails between Max Salas and the Goldstein Firm, June, 2011 through February,

-6-

2012, Exhibit 7.

    **RESPONSE:**


    29.  On February 24, 2012, Len sent his father an email asking for the status of removing Len from the property title. Max responded on February 24, 2012 that he is "still working on this..." Emails between Max Salas and the Goldstein Firm, June, 2011 through February, 2012, Exhibit 7 .

    **RESPONSE:**


    30.  There were no further communications regarding the creation or recording of a Deed for the transfer of the Property from Len to Max after February, 2012. L Salas Trans. _____ .

    **RESPONSE:**

    31.  From 2010 through early 2015 Len had numerous communications with Max asking Max to remove his name from the Property. L Salas Trans. 70:18 - 74:16

    **RESPONSE:**

    32.  Len had several conversations with his father regarding getting his name off the loan and deed after 2010. L Salas Trans. 71:25 - 74:17; Transcript of Len Salas's testimony at the hearing on Objections to the Claim of Exemption (of the Property) by the Debtor, Max Salas, in case no. 18-00260 in the United States Bankruptcy Court for the District of Maryland, Trial Transcript ("Exemption Trans."),Vol 1., Exhibit 3, 158:13 - 163:8; Deposition Transcript of the Deposition of Kendra Rowe Salas, August 27, 2021 ("K Rowe Trans."), Exhibit 14, 16:6-24.

    **RESPONSE:**

-7-

33. The Sun Trust Note was in default during the period 2010 - 2018. L Salas Trans., Exhibit 13, 55:11-20.

**RESPONSE:**

34. That from the period 2010 through 2018 the Defendant did not declare the income from the rentals of rooms at the Property as income on his Federal or D.C. Income Tax Returns.

**RESPONSE:**

35. The Plaintiffs are the holders of undisputed and accepted claims totaling $15.2 Million. Of that amount, the claim of the Brekelmans estate represents $7.5 Million and the claim of the McLoughlin Estate represents $7.7 Million. Stip. No. 6

**RESPONSE:**

36. According to the Debtor's schedules and the Trustee's Final Report (D-209), in Case No. 18-2662, the Plaintiffs represent 99.8% of all allowed unsecured claims of the estate.

**RESPONSE:**

37. The Plaintiffs' judgments were allowed claims in both bankruptcy estates (Len's and Max's).

**RESPONSE:**

38. The Plaintiffs received distributions on account of their claims from both estates.

**RESPONSE:**

39. The Superior Court Judgments were recorded in the D.C. judgment records on or about April 5, 2018.

**RESPONSE:**

40. On April 18, 2018 both Len and Max filed separate Chapter 11 bankruptcy cases in

-8-

the Middle District of Tennessee and the District of Columbia, respectively.

**RESPONSE:**

41.  At the time of the bankruptcy filings by Len and Max, Len was, and continued to be, until May 3, 2022, the title owner of property located at 1610 Riggs Place, NW, Washington, D.C. ("the Property").

**RESPONSE:**

42.  In 2007 Max deeded the Property to Len in 2007 after his father, Max, and Max's then wife, divorced.

**RESPONSE:**

43.  Len then obtained a Deed of Trust from Sun Trust Bank for $870,000 ("the Sun Trust Loan").

**RESPONSE:**

44.  The proceeds of the Sun Trust Loan were paid to Max's wife as part of the divorce settlement. Exemption Trans. Vol. 3, Exhibit 6, 70:2-17.

**RESPONSE:**

45.  Len received no part of the $870,000.

**RESPONSE:**

46. From 2007 through January 27, 2020, Len remained the sole owner of the Property. Max's Confirmed Plan provides that the Confirmation Order constitutes "an Order conveying the Property to Max Salas". *See*, Complaint, Exhibit B, Confirmed Plan, Max's Bankruptcy (Case No. 18-00260) (D-298), p. 12, ¶ 4.4.

**RESPONSE:**

47. At the time of Len's purchase of the Property in 2007, Max had tax liens and other obligations which made it impossible for Max to obtain a loan on the Property. Exemption Trans. Vol. 3, 71:9 - 72:23.

**RESPONSE:**


48. At no time, since 2007, including, but not limited to, the time of the Quitclaim Deed in July, 2010, did Max make any payments to Len and Len received no property or other value from Max related to the Trust or Quitclaim Deed. Exemption Trans. Vol 2, 139:15 - 140:2; Len Salas testimony, Plan Confirmation Hearing, United States Bankruptcy Court for the Middle District of Tennessee, December 13, 2018 ("L Salas Conf. Hrg. Trans."), 68:22 - 69:2. Exhibit 4.

**RESPONSE:**


49. Max delivered the original Quitclaim Deed to Mr. Goldstein's office but did not recall whether Mr. Goldstein mailed it back to Mr. Salas. Exemption Trans. Vol. 3, 55:7 - 56:21.

**RESPONSE:**

50. According to Max, he tried to refinance the Property several times after 2007, all to no avail. In fact, at least through 2015 every attempt to refinance the Property required the participation of Len as a co-signer or co-obligor.

**RESPONSE:**

51. There are no documents indicating that Max was liable on the SunTrust loan at any time and Max never entered into any agreement or understanding with Len that Max was liable

-10-

or responsible.

**RESPONSE:**

52. There is no document raised, proffered or produced by Max indicating that Len was not the sole party responsible for the Deed of Trust payments until at least November, 2019.[1]

**RESPONSE:**

53. Max testified in his deposition in the Superior Court case in February, 2016 that there was one trust, the CLR Trust. He confirmed that, when he mentioned "the 1610 Salas Trust" he was referring to the same trust, namely, the CLR Trust. Max Salas testimony at the Exemption Hearing, Exemption Trans. Vol. 2, August 23, 2018 ("Exemption Trans. Vol. 2"), Max Salas Deposition in Superior Court Case, Case Nos. 2015 CA 8054 B and 2015 CA 8061 B, Consolidated)(referred to herein as the "Superior Court Litigation'), February 24, 2016 ("M Salas Sup Ct Depo"), Exhibit 1, 42:18 - 43:2.

**RESPONSE:**

54. From sometime after 2007 through the date of the fire, Max rented out rooms at the Property. The tenants, including Nina and Michael, signed leases under the name of "the CLR Trust" and Max signed each lease as Trustee.

**RESPONSE:**

---

[1]When U.S. Bank obtained assignment of the SunTrust Note, sometime in 2019, it did finally reach an agreement with Max for him to make the payments under the Deed of Trust from and after November, 2019. However, there is no indication in the agreement reached between Max and U.S. Bank that the SunTrust Deed of Trust Note has been canceled or is otherwise not in effect. Therefore, Len is still liable for the entire balance under the SunTrust Note which, as of September 29, 2019, was $1,208,720.40. See Max Salas Stipulation with U.S. Bank attached hereto as Exhibit 15.

-11-

55. According to Len, the CLR Trust, was a trust created by Max for the benefit of his three sons, Chase, Len and Ron.

**RESPONSE:**

56. Other than the 1611 Riggs Place Trust executed on July 6, 2010, the only family related trust of which Len is aware is the "CLR Trust." L Salas Trans. 148:1-13.

**RESPONSE:**

57. The lease payments were put into an account in the name of the CLR Trust and were used to pay for the Deed of Trust obligations and other expenses associated with the Property.

**RESPONSE:**

58. Max did not want the rents deposited into his personal account. Exemption Trans. Vol 3., Exhibit 6, 222:12 - 16

**RESPONSE:**

59. Max told Len that he deposited the rent checks into "this account for 1610 [Salas Trust]. Exemption Trans., Vol 1, Exhibit 20, 149:2-24.

**RESPONSE:**

60. During the period 2015 through 2018, and continuing after Max's Bankruptcy filing until November, 2019, no payments were made on the Sun Trust Deed of Trust Note ("the Sun Trust Note") with the exception of one payment of made by Max from the insurance proceeds he received as a result of the fire damage.

**RESPONSE:**

61. As of October, 2018, the deficiency on the SunTrust Note was $420,928.34. Sun

-12-