# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS,** | ) ) ) ) ) ) |  |
| **and** | ) ) |  |
| **MICHAEL MCLOUGHLIN AND MARTHA JOHNSON, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF MICHAEL PATRICK MCLOUGHLIN,** | ) ) ) ) ) ) | **Case No. 3:23-cv-00987** **Judge Aleta A. Trauger** |
|     **Plaintiffs/Appellants/Cross-Appellees,** | ) ) ) |  |
| **v.** | ) ) |  |
| **MAX SALAS,** | ) ) |  |
|     **Defendant/Appellee/Cross-Appellant.** | ) ) ) |  |

## MEMORANDUM and ORDER

Presently before the court are (1) the defendant/appellee/cross-appellant's Notice of Counter-Appeal (Doc. No. 1), which the court also construes as a motion for leave to take an interlocutory appeal, and (2) plaintiffs/appellants/cross-appellees' Motion for Leave to File Interlocutory Appeal, filed in (Adversary Proceeding ("AP") No. 113).[1] For the reasons set forth herein, the motions for leave to pursue an interlocutory appeal will be granted.

---

1 Except as specifically noted otherwise, the following terms used in this opinion shall mean as follows:

## I.    LEGAL STANDARD

Under 28 U.S.C. § 158, a district court has jurisdiction to hear a timely appeal as a matter of right from final orders or decrees issued by a bankruptcy court and, "with leave of court," from interlocutory orders. 28 U.S.C. § 158(a)(1), (a)(3). Rule 8004(a) of the Federal Rules of Bankruptcy Procedure provides that, to appeal from an interlocutory order, a party should file a motion for leave to appeal with its notice of appeal. Fed. R. Bankr. P. 8004(a)(2). At the same time, however, Rule 8004(d) allows the district court to treat a timely notice of appeal as a motion for leave to appeal.

Rule 8004(b) identifies the required elements of a motion for leave to appeal, including (1) "the facts necessary to understand the question presented"; (2) "the question itself"; (3) "the relief sought"; (4) "the reasons why leave to appeal should be granted"; and (5) "a copy of the interlocutory order." With respect to the fourth element, neither Rule 8004 nor 28 U.S.C. § 158(a) states what factors a district court should consider in deciding whether to grant a motion for leave to appeal. District courts within the Sixth Circuit have adopted the standard set forth in 28 U.S.C.

a. "Adversary Proceeding" (or "AP") refers to Case No. 3:20-ap-90027 filed and pending in the United States Bankruptcy Court for the Middle District of Tennessee, in bankruptcy case no. 3:18-bk-02662 (citations of the filings in this proceeding will be formatted as "AP No. __");

b. "Complaint" refers to the Amended Complaint filed in the Adversary Proceeding (Ap. No. 40);

c. "Bankruptcy Court" or "Tennessee Bankruptcy Court" refers to the Bankruptcy Court for the Middle District of Tennessee from which this appeal is taken;

d. "D.C. Bankruptcy Court" refers to the United States Bankruptcy Court for the District of Columbia;

e. "Bankruptcy Case" or "Len Salas' Bankruptcy Case" refers to the Chapter 7 case of Len Salas, Case No. 3:18-bk-02662 filed in the Tennessee Bankruptcy Court (citations of the filings in this proceeding will be formatted as "Bankr. No. __");

f. The "D.C. Bankruptcy Case" or "Max Salas' Bankruptcy Case" refers to the Chapter 11 Case of Max Salas, *In re Salas*, Case No. 18-00260, filed in the D.C. Bankruptcy Court.

§ 1292(b), which governs interlocutory appeals from district courts to courts of appeal. *In re Energy Conversion Devices, Inc.*, 638 B.R. 81, 88 (E.D. Mich. 2022) (citations omitted).

Under this standard, a district court may permit an interlocutory appeal if (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the correctness of the decision; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *Id.* (citations omitted). "It is well-established that all three statutory requirements must be met for the court to certify an appeal under § 1292(b)." *Id.* (quoting *Lang v. Crocker Park LLC*, No. 1:09 CV 1412, 2011 WL 3297865, at *5 (N.D. Ohio July 29, 2011)). Even when all three criteria are met, "district courts have 'unfettered discretion to deny certification' in light of the strong bias in federal practice against interlocutory appeals." *In re Great Atl. & Pac. Tea Co.*, 615 B.R. 717, 722 (S.D.N.Y. 2020) (citation omitted). Further, it is well established that permitting interlocutory appeals is "the exception, rather than the rule." *Energy Conversion Devices*, 638 B.R. at 89 (citing *In re Doria*, No. 09-75261, 2010 WL 2870813, at *2 (E.D. Mich. July 21, 2010)).

## II.    PROCEDURAL HISTORY

This case has a very convoluted, as well as heartbreaking, history. In 2015, a fire broke out at 1610 Riggs Place, NW, Washington, D.C. ("Property"). [2] Two individuals renting rooms at the Property, Nina Brekelmans and Patrick McLoughlin, died in the fire, and Max Salas, who also lived at the Property, was seriously injured. On October 20, 2015, the plaintiffs herein, as the parents of the decedents and personal representatives of their estates, filed two separate wrongful death actions against Max Salas and his son, Len Salas, as owners of the Property, in the Superior

---

[2] The recitation of the background facts set forth herein is drawn largely from the D.C. Bankruptcy Court's opinion, issued in the D.C. Bankruptcy Case, in *In re Salas*, No. 18-00260, 2018 WL 4621930, at *5 (Bankr. D.D.C. Sept. 24, 2018)

Court for the District of Columbia ("Superior Court"). The Superior Court trial was scheduled to begin on March 26, 2018.

Less than two weeks before trial, Len Salas filed an "emergency" motion for summary judgment, in support of which he produced, for the first time, a copy of a 2010 trust and quitclaim deed ("2010 Quitclaim Deed"). Len Salas sought judgment in his favor on the basis that Max Salas was the real owner of the Property. His motion was denied, and the Superior Court declined to consider Len Salas' new evidence at trial, but there is no dispute that the plaintiffs were, at that time, put on notice of the July 2010 transfer and Quitclaim Deed.

The two matters proceeded to a single, consolidated trial, and, on April 4, 2018, the McLoughlin plaintiffs and the Brekelmans plaintiffs obtained jury verdicts in the Superior Court in the amount of $7.7 million and $7.5 million, respectively, against Max Salas (as manager of the Property) and Len Salas (as owner) jointly and severally. Shortly after entry of the judgment, Max Salas filed for bankruptcy protection in the D.C. Bankruptcy Court, and Len Salas filed his petition in this district on April 18, 2018. Len Salas' case was converted from Chapter 11 to Chapter 7 on December 26, 2018, and the Chapter 7 Trustee ("Trustee") was appointed.

Despite the Superior Court's verdict and the fact that the 2010 Quitclaim Deed was never recorded as required by D.C. Code § 42-401, the D.C. Bankruptcy Court ruled on September 25, 2018, in the context of Max Salas' Bankruptcy Case, that the conveyance was valid, giving Max Salas both legal interest and beneficial interest in the Property. *In re Salas*, 2018 WL 4621930, at *20. Based on that conclusion, the court also held that Max Salas was entitled to claim the District of Columbia's unlimited homestead exemption in the Property. *Id.* The D.C. Bankruptcy Court declined to rule on whether the transfer could be avoided under 11 U.S.C. § 544(a)(3) in Len Salas' Bankruptcy Case, based on Max Salas' failure to record the 2010 Quitclaim Deed, finding that

"whether a hypothetical purchaser of the Property would have inquiry notice of Max's ownership of the Property" was "an issue of fact that must be decided by the U.S. Bankruptcy Court for the Middle District of Tennessee." *Id.* at *21. Likewise, it noted that "[h]ow a judgment regarding the right of Len's estate to recover the Property under § 544 would affect Max's homestead exemption in this case is an issue for another day." *Id.*[3]

On April 10, 2019, the Trustee in Len Salas's Bankruptcy Case filed a "Motion to Sell Property" belonging to Len Salas, specifically described as "[a]ny and all claims and interests of the bankruptcy estate or the Chapter 7 trustee to the certain real estate located at 1619 Riggs Place, NS, Washington, DC 20009," *i.e.*, the Property, "such legal and equitable interest in the real estate having been possessed by Max Salas" pursuant to the D.C. Bankruptcy Court's September 25, 2018 ruling on Max Salas' homestead exemption. (Bankr. No. 162, at 3.) The claims and interests the Trustee sought to sell specifically included the Trustee's "rights to pursue a cause of action against Max Salas under the trustee's avoidance powers." (*Id.*) The motion proposed to sell the claims to Ron Salas, Max Salas' other son, for $10,000. (*Id.*) Over the objections of the plaintiffs and the U.S. Trustee, the Bankruptcy Court granted the motion but required that the Trustee provide notice of the sale to all interested parties and potential buyers and, if alternative bids were received, to conduct an auction. Because there were alternative bids, the auction took place, and the plaintiffs ultimately purchased the estate's interest in "any potential avoidance actions against Max Salas and/or his bankruptcy estate under 11 U.S.C. §§ 544, 545, 547, 548, 549, and 553 as

---

[3] The plaintiffs appealed the D.C. Bankruptcy Court's decision to the District Court for the District of Columbia. That court denied the plaintiffs' motion to supplement the record on appeal and dismissed the appeal after construing the plaintiffs' alternative motion to remand as a motion to voluntarily dismiss. *In re Salas*, No. 18-cv-2318 (KBJ), 2020 WL 32567, at *4 (D.D.C. Jan. 2, 2020). The D.C. Bankruptcy Court denied the plaintiffs' subsequent motion to reconsider, and D.C. District Court affirmed. *In re Salas*, No. 18-00260, 2020 WL 6054783, at *22 (Bankr. D.D.C. Oct. 13, 2020), *aff'd*, No. No. 20-3091 (FYP), 2022 WL 1154596 (D.D.C. Apr. 19, 2022).

related to the . . . [P]roperty" for $156,000. (Bankr. No. 179, at 2; *see also* Bankr. No. 191 (Trustee's Report of Sale and Bill of Sale).)[4]

Having purchased the Trustee's interest in "any potential avoidance actions against Max Salas and/or his bankruptcy estate," the plaintiffs initiated the Adversary Proceeding against Max Salas by filing their Complaint to Avoid Transfers and Recover Property in the Tennessee Bankruptcy Court. (AP No. 1.) After finding that the plaintiffs lacked standing to pursue the Trustee's avoidance actions on their own behalf, the Bankruptcy Court permitted them to amend the Complaint to assert their claims in their derivative capacity on behalf of the Len Salas bankruptcy estate, essentially stepping into the shoes of the Trustee. (*See* AP Nos. 29, 30, 31, 38, 39, 40 (Am. Compl.).)

The Amended Complaint contains six counts—three seeking recovery under 11 U.S.C. § 544(a) (Counts I, II, and III), one under § 548 (Count IV), one under 11 U.S.C. § 544(b) and D.C. Code §§ 28-3104 and 28-3105 (Count V), and one under 11 U.S.C. § 550 (Count VI). The plaintiffs filed their Motion for Summary Judgment in the Bankruptcy Court in July 2022, seeking judgment on all claims except Count III and the "actual fraud" portion of Counts IV and V. (AP Nos. 73, 74.) The Bankruptcy Court initially denied the motion after oral argument on November 8, 2022, finding that material factual disputes precluded summary judgment for either party, and set the matter for trial. (*See* AP No. 145, at 39, 42; *see also* AP No. 82.)

After further consideration, however, the Bankruptcy Court subsequently entered an Order directing additional briefing on two specific issues:

---

[4] According to the Bankruptcy Court, the Trustee distributed the funds from the sale remaining after the payment of administrative claims ($126,769.43) *pro rata* to the unsecured creditors. Because the plaintiffs represent 99.8% of the unsecured claims, nearly all of the funds were distributed back to the plaintiffs. (*See* AP No. 29, at 5.)

1. In relationship to the strong-arm avoidance claims under 11 U.S.C. § 544(a)(3) (a bona fide purchaser) and 11 U.S.C. § 544(a)(1) (a hypothetical judgment lienholder), whether it is appropriate to consider inquiry notice and if so, whether inquiry notice existed as a matter of law based on the undisputed facts.

2. In relationship to the fraudulent conveyance claims under 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B), whether the [D.C. Bankruptcy Court] already determined the issue of ownership and bare legal title in its homestead exemption opinion[, *In re Salas*, 2018 WL 4621930]. [And i]f so, is the D.C. Court's Homestead Opinion entitled to preclusive or collateral effect in this proceeding.

(Order, AP No. 83, as summarized in Mem. Op., AP No. 101.)

The defendant thereafter filed his own Motion for Summary Judgment and supporting Memorandum, seeking judgment in his favor on all counts in the Amended Complaint, and the plaintiffs filed a Supplemental Memorandum and a Second Supplemental Memorandum in support of their Motion for Summary Judgment. (AP Nos. 89, 91, 92, 100.) Following the hearing conducted on March 21, 2023, the Bankruptcy Court issued a written Memorandum Opinion and Order (AP Nos. 101, 102), denying the plaintiffs' Motion for Summary Judgment altogether and granting Max Salas' Motion for Summary Judgment on Counts IV and V.

Specifically, the Bankruptcy Court first held that, under D.C. law, an unrecorded deed conveying an interest in real property is not effective against a subsequent *bona fide* purchaser or hypothetical judgment lienholder without actual, constructive, or inquiry notice of the unrecorded deed. Actual and constructive notice are not established in this case, because the trustee assumes the role of a *bona fide* purchaser without actual knowledge, and constructive notice means record notice. (Doc. No. 101, at 4 (citing *Sovran Bank v. United States (In re Aumiller)*, 168 B.R. 811, 818 (Bankr. D.D.C. 1994); *Clay Props., Inc. v. Wash. Post Co.*, 604 A.2d 890, 895 (D.C. 1992)).) And, the Bankruptcy Court held, "a determination of whether inquiry notice existed would require the weighing of evidence, and therefore, is not an appropriate matter for summary judgment." (*Id.*

at 7.) The court denied both motions for summary judgment on the strong-arm avoidance claims under 11 U.S.C. § 544(a)(1)–(3) (Counts I, II, and III).[5] (*Id.*)

Next, the court noted that it had already determined, based on *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 n.8 (1983), that, if Len Salas had only bare legal title to the Property, then there could be no recoverable interest in the Property under the fraudulent conveyance provisions of the Bankruptcy Code, 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B), on which Counts IV and V of the Amended Complaint are premised, at least in part.[6] (AP No. 101, at 7–8 (collecting cases).) Although the Bankruptcy Court had previously determined that there was a material factual dispute as to whether Len Salas had only bare legal title, on reconsideration and additional briefing by both parties, the Bankruptcy Court concluded that the D.C. Bankruptcy Court had already held that the 2010 Quitclaim Deed validly conveyed to Max Salas "both the legal and beneficial interests in the Property," because, even though the deed had not been recorded as required by D.C. Code § 42-401, the statutory requirements "do not bar the operation of a signed, sealed, and delivered deed against parties and their assignees." (*Id.* at 9 (quoting *In re Salas*, 2018 WL 4621930, at *20).) Applying the D.C. law of issue preclusion and considering each of the relevant factors, the Bankruptcy Court held that the D.C. Bankruptcy Court's holding in that regard had preclusive effect in this case and that the plaintiffs, acting on behalf of the Trustee, are "collaterally estopped from relitigating the issue of ownership or bare legal title." (*Id.* at 13.)

---

[5] Although the plaintiff had not moved for summary judgment on Count III, the defendant argued that he was entitled to summary judgment on that claim as well, based on inquiry notice. (*See* AP No. 91, at 3.)

[6] Counts IV and V are also premised, in part, on allegations of actual fraud, which is addressed in 11 U.S.C. § 548(a)(1)(A). The Bankruptcy Court noted that neither party had sought summary judgment on the plaintiffs' actual fraud claim "and rightfully so," as "[t]he existence of fraudulent intent is a question of fact, so summary judgment is rarely an appropriate remedy." (AP No. 101, at 14 n.8.)

The Bankruptcy Court further noted that, even if collateral estoppel did not apply, it would have independently reached the same conclusion—that Len Salas holds only bare legal title to the Property—based on the undisputed facts before it. For both of these reasons, the court determined that Max Salas was entitled to summary judgment on the fraudulent conveyance claims brought in Counts IV and V of the Amended Complaint. (*Id.*)

Finally, as to Count VI, in which the plaintiffs seek relief under 11 U.S.C. § 550, the court noted that this statute, rather than giving rise to affirmative relief, simply sets forth the available remedies if a transfer is avoided under 11 U.S.C. § 544 or 548 (among other provision of the Bankruptcy Code). Because the court denied summary judgment on the plaintiffs' strong-arm claims, it found that summary judgment on Count VI was also not warranted. (Doc. No. 101, at 15.)

The plaintiffs promptly filed a Motion to Alter or Amend, under Rule 9023 of the Federal Rules of Bankruptcy Procedure and Rule 59 of the Federal Rules of Civil Procedure, in which they essentially reargued every point made in the summary judgment filings. (AP No. 104; *see also* Aug. 15, 2023 Hr'g Tr., AP No. 147, at 2–22.) The Bankruptcy Court, after conducting a hearing, denied the motion. (AP No. 147, at 27; AP No. 109.)

The plaintiffs then filed a timely Notice of Appeal, designating the Bankruptcy Court's Order denying their Motion for Summary Judgment and granting in part the defendant's Motion for Summary Judgment (AP 102), as well as the Order denying the plaintiffs' Motion to Alter or Amend (AP 109), as the subject of the appeal (*see* AP 111). Contemporaneously with their Notice, the plaintiffs filed a Motion for Leave to File Interlocutory Appeal. (AP No. 113.) The defendant

filed his Notice of Counter-Appeal and Statement of Election, seeking to have the appeal heard by this court, shortly thereafter. (Doc. No. 1; AP 117.)[7]

## III.   DISCUSSION

The plaintiffs/appellants have clearly set forth in their Motion for Leave to Appeal the facts necessary to understand the questions presented. They identify the questions relevant to the appeal as:

> (1) whether the inquiry notice question submitted by the Bankruptcy Court to the parties in its January 5, 2023 Order (AP No. 83) may be resolved in favor of the plaintiffs purely as a matter of law based on the undisputed facts;
>
> (2) whether the Bankruptcy Court erred as a matter of law in holding that the D.C. Bankruptcy Court's homestead exemption ruling—based on the conclusion that Max Salas has both legal interest and beneficial interest in the Property —has preclusive effect on the plaintiffs here, thus barring their constructive fraud claims; and
>
> (3) whether the Bankruptcy Court erred as a matter of law in holding, in the alternative, that debtor Len Salas holds only bare legal title to the Property.

(*See* AP 113 ¶¶ 16–22.)

The relief sought is clear: the plaintiffs seek reversal of the Bankruptcy Court's summary judgment rulings and affirmatively argue that they are entitled to summary judgment as a matter of law on Counts I and II of the Amended Complaint, and they contend that there is no legal basis for concluding that the D.C. Bankruptcy Court's homestead exemption ruling has preclusive effect in this case or that Len Salas has only bare legal title in the Property. The parties have also filed copies of the orders they seek to appeal.

Thus, the only question before the court is whether, as the plaintiffs argue, the factors set forth in 28 U.S.C. § 1292(b) have been satisfied. The court finds that they have. First, the issues

---

[7] The plaintiffs' appeal was originally transmitted to the Sixth Circuit Bankruptcy Appellate Panel and transferred to this court after the defendant filed his timely statement of election. (*See* AP No. 142.)

the plaintiffs seek to appeal present pure issues of law, and the issues are controlling, insofar as "their resolution 'could materially affect the outcome of the case.'" *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002)). That is, if the court finds that the "notice inquiry" issue may be resolved as a matter of law rather than as one involving disputed facts, judgment in favor of one or the other parties would be warranted on Counts I, II, and III of the Amended Complaint, and a trial on the plaintiffs § 544 claims would not be required. While the issue preclusion question is indisputably one of pure law, a reversal of the Bankruptcy Court's ruling in favor of the defendant on that question would materially affect the outcome only if the court also finds, as a matter of law based on the undisputed facts, that Len Salas did not hold *only* bare legal title to the Property. However, this question, too, raises a question of law, as the underlying facts appear to be undisputed.

As for the second factor, "[a] substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Id.* at 952 (quoting *Reese v. BP Exploration, Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). The court finds that the issues presented are novel and that "fair-minded jurists might reach contradictory conclusions." *Id.*

Finally, it is clear, as the plaintiffs argue, that an immediate appeal would materially advance the ultimate termination of the litigation, as (1) a judgment in the plaintiffs' favor could entirely resolve the case without need for a trial; and (2) if leave were not granted and they lose at trial and then successfully pursue an appeal of the Bankruptcy Court's summary judgment ruling, the parties would have expended considerable party and court resources on an unnecessary trial.

As all three requirements articulated in 28 U.S.C. § 1292(b) are met here, the court will exercise its discretion to grant the parties leave to pursue an appeal of the interlocutory orders at issue.

**IV.    CONCLUSION AND ORDER**

For the reasons set forth herein, the plaintiffs' Motion for Leave to File Interlocutory Appeal (AP No. 113) and the defendant's Notice of Appeal (Doc. No. 1), construed as a motion for leave to pursue interlocutory appeal, are both **GRANTED**. The Agreed Scheduling Order previously approved by the court remains in effect and governs the briefing schedule for the appeal and counter-appeal. (Doc. No. 4.)

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge