Case No. 3:23-cv-00987

IN THE UNITED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Len Salas, | ) | Case No. 18-2662-MFH |
| | ) | Chapter 7 |
|     Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| Nicolaas Brekelmans and Gail Gregory | ) | |
| Brekelmans, Co-Personal Representatives | ) | |
| of the Estate of Nina Brekelmans | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Michael McLoughlin and Martha | ) | |
| Johnson, Co-Personal Representatives | ) | |
| of the Estate of Michael Patrick | ) | |
| McLoughlin, | ) | |
| | ) | |
|     Appellants and Cross-Appellees, | ) | |
| | ) | |
| v. | ) | Appeal from the United States |
| | ) | Bankruptcy Court, Case No. 18-2662 |
| Max Salas, | ) | (Harrison, J.) |
| | ) | Ad Pro No. 3:20-ap-90027 |
|     Appellee and Cross-Appellant. | ) | |

---

**BRIEF OF APPELLEE/CROSS-APPELLANT MAX SALAS**

---

THOMPSON BURTON, PLLC

By: /s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6008
Email: phillip@thompsonburton.com

COUNSEL FOR MAX SALAS

1

# I. TABLE OF CONTENTS

PAGE

I. Table of Contents…………………………………………...……………...……….........2

II. Table of Authorities…………………...……………………………...…..…...…….........................3

III. Statement of Jurisdiction…...……………………………...……………...……….….…...5

IV. Statement of Issues………………………………………...…………….....……….….…...6

V. Statement of the Case……………………………………...…………….....……….….…...7

VI. Summary of Argument………………………………………………...……...……13

VII. Argument…………………………………………………………...……………....14

    A.     Plaintiffs, and indeed any third party, had *at minimum* inquiry notice that Defendant owned the Property ………....…............................................................14

    B.     Plaintiffs are collaterally estopped from relitigating the issue of ownership or bare legal title……………………………….....................................................................19

VII. Conclusion…….…………………………………………....................……...24

IX. Certificate of Service……………………………….....................……………….….…25

## II.     TABLE OF AUTHORITIES

### CASES

PAGE

BDO Seidman, LLP v. Morgan, Lewis & Bockius LLP
    89 A.3d 492, 500 (D.C. 2014) .…………..……….……….……..............………..16

Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.
    402 U.S. 313, 333 (1971) .…………..……….……………......................…...…..22

Brekelmans v. Salas (In re Salas)
    No. 18-00260, 2018 WL 4621930 (Bankr..D.C. Sept. 28, 2018).…………..…..……..20

Canonsburg Gen. Hosp. v. Sebelius
    989 F. Supp. 2d 8, 19 (D.D.C. 2013). .…………..…………….……...…..……..22

Clay Props., Inc. v. Wash. Post Co.
    604 A.2d 890, 897 (D.C. 1992) .…………..………….............……….…....14, 15, 16

Doe v. Medlantic Health Care Group, Inc.
    814 A.2d 939, 958 (D.C. 2003) .…………..………………….............……………..16

Fowler v. Rauso (In re Fowler)
    425 B.R. 157, 198 (Bankr. E.D. Pa. 2010).…………..…………….…...……………..16

Klayman v. Rao
    49 F.4th 550, 553 (D.C. Cir. 2022). .…………..………….……….…...…......…..21

LR Partners v. Steiner (In re Steiner)
    251 B.R. 137, 142 (Bankr. D. Ariz. 2000) .…………..………….…………………..15

Martin v. Dep't of Just.
    488 F.3d 446, 254 (D.C. Cir. 2007). .…………..………….……....…………………..22

McCannon v. Marston
    679 F.2d 13, 16–17 (3d Cir.1982).…………..……………….........……………..…...15

McLaughlin v. Bradlee
    803 F.2d 1197, 1201 (D.C. Cir. 1986) .…………..……….……….……....…..20, 21

Merle v. U.S.
    683 A.2d 755, 762 (D.C. 1996). .…………..………….………….……..............…..21

Mostafa El-Erian and Joan Thomas El-Erian v. Green Tree Servicing, LLC (In re El- Erian)
    512 B.R. 391, 397 (Bankr. D.D.C. 2014). .…………..……..…..….…………..…..18

Osberg v. Fibison (In re Fibison)
    474 B.R. 864, 870 (Bankr. W.D. Wis. 2011) .…………..……….………………..15

Patel v. Rupp
    195 B.R. 779, 784 (D. Utah 1996) ……….…………….……………….......…….15

Ray v. Queen
    747 A.2d 1137, 1141-42 (D.C. 2000) .……….…………….……………..………..16

Reinhold v. Thorpe (In re Thorpe)
    546 B.R. 172, 185 (Bankr. C.D. Ill. 2016) ……….…………….…………………..15

Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)
    340 B.R. 829, 837-38 (Bankr. E.D. Mich. 2006). ……….…………….…..…..………..23

Sovran Bank v. United States (In re Aumiller)
    168 B.R. 811, 818 (Bankr. D.D.C. 1994) ……….…………….…..…...…..14, 15, 17

Webster v. Hope (In re Hope)
    231 B.R. 403, 423-26 (Bankr. D.D.C. 1999) .……….…………..…….…..………..18, 18

## STATUTES AND RULES

11 U.S.C. § 544.......................................................................................*passim*

11 U.S.C. § 550...............................................................................................23

11 U.S.C. §545.................................................................................................23

11 U.S.C. §547.................................................................................................23

11 U.S.C. §548.................................................................................................23

11 U.S.C. §549.................................................................................................23

11 U.S.C. §553(b)............................................................................................23

11 U.S.C. § 724(a)...........................................................................................23

### III.    STATEMENT OF JURISDICTION

The Bankruptcy Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Under 28 U.S.C. § 158, a district court has jurisdiction to hear a timely appeal from interlocutory orders with leave of court. Leave of court was granted by this Court's on July 17, 2024 (Doc.14). Both the Appellant and Appellee filed timely appeals of the Bankruptcy Court's Order of May 24, 2023.

## IV.    STATEMENT OF ISSUES

The Parties filed cross-appeals with six (6) issues in question: (I) Whether Plaintiffs, standing in the shoes of a hypothetical bona fide purchaser of real property as of the Petition Date, could avoid the transfer of real property from the Debtor to Defendant, pursuant to 11 U.S.C. § 544(a)(3); (II) Whether Plaintiffs, standing in the shoes of a hypothetical judicial lien creditor as of the Petition Date, could avoid the transfer of real property from the Debtor to Defendant pursuant to 11 U.S.C. § 544(a)(1); (III) Whether Plaintiffs, standing in the shoes of a hypothetical  creditor with an unsatisfied execution as of the Petition Date, could avoid the transfer of real property from the Debtor to Defendant pursuant to 11 U.S.C. § 544(a)(2); (IV) Whether the Plaintiffs can avoid the transfer of real property from the Debtor to Defendant pursuant to the fraudulent transfer provisions of 11 U.S.C. § 548; (V) Whether the Plaintiffs can avoid the transfer of real property from the Debtor to Defendant pursuant to the fraudulent transfer provisions of the laws of the District of Columbia; and (VI) Whether Plaintiffs are entitled to any relief under 11 U.S.C. § 550(a).

# V.    STATEMENT OF THE CASE

This case has an extensive and complex posture, though the facts material to determining this dispute are deceptively simple.  Indeed, the material facts are so simple that only two facts are determinative of this appeal:

(1)    Prior to the Petition Date, the Plaintiffs filed a notice of judgment lien in the chain of title to the Property (defined below), thus putting the world on inquiry notice of the Defendant's ownership interest in the Property.  This fact alone should have resulted in the Bankruptcy Court granting judgment in favor of the Defendant as to Counts I, I, III and VI.[1]

(2)    The United States Bankruptcy Court for the District of Columbia previously ruled that Defendant was the owner of the Property.  If Defendant was the owner of the Property, then he could not be the recipient of a fraudulent transfer.  Ownership of the property cannot be relitigated due to the doctrine of collateral estoppel.  This led the Bankruptcy Court to correctly grant summary judgment in favor of the Defendant as to Counts IV and V.[2]

---

[1] Count I of the Amended Complaint seeks to avoid the transfer of the Property to Defendant as a hypothetical bona fide purchaser, pursuant to 11 U.S.C. §544(a)(3).  Count II seeks to avoid the transfer of the Property to Defendant as a hypothetical judgment lien creditor, pursuant to 11 U.S.C. §544(a)(1).  Count III seeks to avoid the transfer of the Property to Defendant as a hypothetical creditor with an unsatisfied execution, pursuant to 11 U.S.C. §544(a)(2).  Count VI is based upon §550 and is not an independent basis for relief; rather, it gives a trustee the ability to recover property should any transfer be avoided under Chapter V.

[2] Count IV of the Amended Complaint seeks to avoid an allegedly fraudulent transfer of the Property pursuant to 11 U.S.C. §548, while Count V alleges a fraudulent transfer under District of Columbia law.

Max Salas, the defendant and appellee/cross-appellant herein (the "Defendant"), and his former wife owned real property located at 1610 Riggs Place, NW, Washington, D.C. (the "Property"), as husband and wife, until 2007. Affidavit of Max Salas ("Salas Aff."), attached as Exhibit 2 to Bankr. Doc. 75, ¶ 2. In 2007, Defendant and his wife divorced, and Defendant was ordered to pay wife a portion of the equity in the Property. Salas Aff, ¶ 3. The Defendant, who wished to stay in his home, determined that he would take out a loan against the Property in order to fund the payment to his ex-wife. *Id*., ¶ 4. However, upon seeking financing for the payment, he learned that he was not credit worthy to borrow the funds. *Id*., ¶ 5.

To facilitate this transaction, he quitclaimed the Property to his son Len Salas (the "Debtor"), who then borrowed $870,000 against the Property. *Id*., ¶ 6. The Defendant's ex-wife received the proceeds of the loan. *Id*., ¶ 7. The Debtor received no proceeds from the loan, nor did he pay anything in exchange for the quitclaim deed. *Id*., ¶ 8.

At the time that the Property was quitclaimed to the Debtor, the Defendant promised to refinance the loan and remove the Debtor's name from both the loan and the title to the Property as soon as possible. *Id*., ¶ 9. The Defendant made multiple attempts to refinance the Property over a number of years but found each time that he was unable to qualify for a loan. *Id*., ¶ 10. In 2010, with the assistance of his son Ron Salas, who was an attorney in Colorado, the Defendant determined to have the Property quitclaimed from the Debtor to a trust, in hopes that the trust could then borrow the funds to remove the Debtor from the loan and the title to the Property. *Id*., ¶ 11. In furtherance of that plan, the Debtor executed a quitclaim deed (the "2010 Quitclaim Deed") to the 1610 Riggs Place Trust (the "Trust") in July 2010. *Id*., ¶ 12. Attempts to refinance the Property in the name of the Trust were ultimately unsuccessful and the 2010 Quitclaim Deed was never recorded. *Id*., ¶ 13.

Despite the Debtor's name remaining on the formal title to the Property, the Property was never the Debtor's primary residence. *Id.*, ¶ 14. Despite the mortgage being in the name of the Debtor, the Debtor never made a single mortgage payment. *Id.*, ¶ 15. The Debtor never paid any property taxes on the Property. *Id.*, ¶ 16. The Debtor never paid for any upkeep on the Property. *Id.*, ¶ 17. In fact, after the fire that gives rise to the Plaintiffs' involvement in this matter, it was exclusively the Defendant, not the Debtor, who oversaw and paid for the renovation and rebuilding of the structure on the Property. *Id.*, ¶ 18.

The Defendant rented out rooms in the Property through an entity known as the "CLR Trust". *Id.*, ¶ 19. The Debtor had no involvement with the CLR Trust. *Id.*, ¶ 20. The Defendant dealt with tenants, signed leases, and accepted rent payments on behalf of CLR Trust. *Id.*, ¶ 21. The Defendant deposited all rent checks into an account in the name of CLR Trust, for which the Defendant was a signatory. *Id.*, ¶ 22. The Debtor was never involved in the leasing of the Property, nor did he receive any portion of the rents paid for rooms in the Property. *Id.*, ¶ 23. The Plaintiffs had actual knowledge of the Defendant's ownership of the Property well before the Petition Date. The Plaintiffs in this case had actual knowledge that the Defendant lived in the Property, signed leases for the Property, accepted rent for the Property, and that Len Salas had quitclaimed his interest in the Property in July 2010. *Id.*, ¶ 24.

Tragically, a fire erupted at the Property in June 2015, leading to the deaths of Nina Brekelmans and Michael Patrick McLaughlin, who were renting rooms at the Property from the Defendant. Amended Complaint, Bankr. Doc. 40, ¶ 11. Nina Breklmans' and Michael Patrick McLaughlin's next of kin, the plaintiffs and appellants/cross-appellees herein (the "Plaintiffs"), filed suit for wrongful death in the Superior Court for the District of Columbia against both the Defendant, who they knew to be the manager of the Property, and the Debtor, whose name remained on the deed to the Property. *Id.*, ¶¶ 11-12. Ultimately, the Plaintiffs were successful in

getting a joint and several judgment against the Debtor and the Defendant for $15,200,000. *Id*. Thereafter, in April 2018, the Defendant filed a Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Columbia (Case No. 18-00260) and the Debtor filed a Chapter 7 bankruptcy in the United States Bankruptcy Court for the Middle District of Tennessee on May 2, 2018, thus initiating this case. *Id*., ¶ 7. The Plaintiffs purchased the Tennessee Chapter 7 Trustee's potential causes of action against Defendant, filed a Complaint against the Defendant in this matter on March 2, 2020, and filed an Amended Complaint against the Defendant in this matter on February 16, 2021. *Id*., ¶ 6; *see also* Bankr. Doc. 1. Thus, the Plaintiffs have stepped into the shoes of the Chapter 7 Trustee in pursuing this matter.

Importantly, on April 11, 2018, just one week prior to the Debtor filing for bankruptcy protection, the Plaintiffs recorded documents with the District of Columbia recorder of deeds evidencing the judgment held by the Plaintiffs. (Bankr. Doc. 90, Defendant's Statement of Undisputed Facts, ¶ 2; Defendant's Statement of Undisputed Facts Exhibit B). As evidenced by the recorder's stamp on Exhibit B to the Defendant's Statement of Undisputed Facts, and as further evidenced by the title search attached as Exhibit C to the Defendant's Statement of Undisputed Facts, the documents recorded by the Plaintiffs would have appeared in any title search related to 1610 Riggs Place, NW, Washington, DC (the "Property"). (Bankr. Doc. 90, Defendant's Statement of Undisputed Facts, ¶ 3; Defendant's Statement of Undisputed Facts Exhibit B; Defendant's Statement of Undisputed Facts Exhibit C).

On September 25, 2018, the United States Bankruptcy Court for the District of Columbia issued a Memorandum Decision and Order for Objection to Homestead Exemption. (Bankr. Doc. 90, Defendant's Statement of Undisputed Facts, ¶ 1; Defendant's Statement of Undisputed Facts Exhibit A). Among the findings of the United States Bankruptcy Court for the District of Columbia was the following: "Accordingly, the court finds that under District of Columbia law,

the Property was conveyed to Max and he holds both the legal and beneficial interests in the Property." (Bankr. Doc. 90, Defendant's Statement of Undisputed Facts Exhibit A, p. 57).

The Plaintiffs' Amended Complaint, Bankr. Doc. 40, has six (6) causes of action. The Parties filed cross-motions for summary judgment, each seeking summary judgment on six issues tied directly to the six causes of action: (I) Whether Plaintiffs, standing in the shoes of a hypothetical bona fide purchaser of real property as of the Petition Date, could avoid the transfer of real property from the Debtor to Defendant pursuant to 11 U.S.C. §544(a)(3); (II) Whether Plaintiffs, standing in the shoes of a hypothetical judicial lien creditor as of the Petition Date, could avoid the transfer of real property from the Debtor to Defendant pursuant to 11 U.S.C. §544(a)(1); (III) Whether Plaintiffs, standing in the shoes of a hypothetical creditor with an unsatisfied execution as of the Petition Date, could avoid the transfer of real property from the Debtor to Defendant pursuant to 11 U.S.C. §544(a)(2); (IV) Whether the Plaintiffs can avoid the transfer of real property from the Debtor to Defendant pursuant to the fraudulent transfer provisions of 11 U.S.C. § 548; (V) Whether the Plaintiffs can avoid the transfer of real property from the Debtor to Defendant pursuant to the fraudulent transfer provisions of the laws of the District of Columbia; and (VI) Whether Plaintiffs are entitled to any relief under 11 U.S.C. § 550(a).

In the Memorandum Opinion granting summary judgment dated May 23, 2023 (the "Bankruptcy MSJ Order"), the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court") held that neither side was entitled to summary judgment on Count I, II, and VI of the Plaintiffs' amended complaint, and Max Salas was entitled to summary judgment on Counts IV and V. *See* Bankr. Doc. 101. On August 28, 2023, Plaintiffs, now Appellants and Cross-Appellees ("Appellants" or "Cross-Appellees") filed the present appeal.

Bankr. Doc. 111.  On September 11, 2023, Defendant ("Appellee" or "Cross-Appellant"), now

Appellee and Cross-Appellant, filed a notice of cross-appeal.  Bankr. Doc. 117.

# VI.    SUMMARY OF ARGUMENT

The facts show, and case law supports, that the Plaintiffs, even standing in the shoes of a third party with hypothetical creditor rights, had *at minimum* inquiry notice that Defendant owned the Property. Inquiry notice defeats all avoidance actions brought under 11 U.S.C. § 544(a).  Thus, Max Salas is entitled to summary judgment on counts I, II, III, and VI.

Likewise, the facts show, and the Bankruptcy Court correctly held, that the Debtor holds nothing more than bare legal title. Thus, the Property was never part of the bankruptcy estate, and the estate has no authority to avoid a transfer of property in which the Debtor held only bare legal title. Furthermore, the Bankruptcy Court properly held that collateral estoppel applies, and the Plaintiffs are collaterally estopped from relitigating the issue of ownership or bare legal title which was previously determined in the United States Bankruptcy Court for the District of Columbia. Thus, Max Salas was properly granted summary judgment by the Bankruptcy Court on counts IV and V.

# VII.   ARGUMENT

## A.  PLAINTIFFS, AND INDEED ANY THIRD PARTY, HAD AT MINIMUM INQUIRY NOTICE THAT DEFENDANT OWEND THE PROPERTY.

Plaintiffs, even standing in the shoes of a third party with a hypothetical creditor's rights, had *at minimum* inquiry notice that Defendant owned the Property, which is sufficient to defeat Plaintiffs' causes of action under 11 U.S.C. §§ 544(a)(1), (2) and (3).   11 U.S.C. § 544(a) provides as follows:

> **(a)** The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> **(1)** a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> **(2)** a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> **(3)** a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

While these powers are ordinarily reserved for trustees or debtors-in-possession, the Plaintiffs purchased the Trustee's rights to pursue these actions on behalf of the estate in this matter.  The Plaintiffs assert causes of action under § 544(a)(3) in Count I of the Amended Complaint, § 544(a)(1) in Count II, and § 544(a)(2) in Count III.

Notice of another party's interest in the Property defeats any avoidance action pursuant to § 544(a).  For purposes of § 544(a), notice may be actual, constructive, or inquiry. *Clay Props., Inc. v. Wash. Post Co.,* 604 A.2d 890, 897 (D.C. 1992). A trustee's actual knowledge of the contents of a deed is irrelevant under § 544(a) as the trustee assumes the role of a bona fide purchaser or judgment creditor without actual knowledge. *Sovran Bank v. United States* (*In re*

*Aumiller*), 168 B.R. 811, 818 (Bankr. D.D.C. 1994). However, that hypothetical purchaser may be held to constructive or inquiry notice. See *McCannon v. Marston*, 679 F.2d 13, 16–17 (3d Cir.1982). If that constructive notice or inquiry notice would put the purchaser on notice of the contents of a deed of trust, then, like a purchaser with actual notice of the contents, the deed of trust would be effective against the purchaser.

The District of Columbia Court of Appeals has described inquiry notice as follows:

> A purchaser is held to be on inquiry notice where he or she is aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances. The purchaser is on inquiry notice of all facts and outstanding interests which a reasonable inquiry would have revealed.

*Clay Properties, Inc*. 604 A.2d at 895 (citations omitted).

Likewise, a judgment lien creditor fares no better than a hypothetical purchaser, and the analysis is the same as stated above. Simply put, if a purchaser would be on inquiry or constructive notice, so would a judgment lien creditor. See *In re Aumiller*, 168 B.R. at 818–19 (applying the same analysis of constructive and inquiry notice under District of Columbia law to both a purchaser and a judgment lien creditor); *In re El- Erian*, 512 B.R. 391, 397 (Bankr. D.D.C. 2014). Section 544(a) of the Bankruptcy Code gives the trustee the rights of a hypothetical judgment lien creditor or a hypothetical bona fide purchaser of real property from the debtor at the time of the commencement of the case. 11 U.S.C. §§ 544(a)(1), (3).

Numerous jurisdictions, other than the District of Columbia, have held that physical possession by one party is sufficient to place a reasonable third party on inquiry notice, and in its January 5, 2023, Order (Bankr. Doc. 83), the Bankruptcy Court cited a number of cases supporting this position: *Patel v. Rupp*, 195 B.R. 779, 784 (D. Utah 1996); *Reinhold v. Thorpe* (*In re Thorpe*), 546 B.R. 172, 185 (Bankr. C.D. Ill. 2016); *Osberg v. Fibison* (*In re Fibison*), 474 B.R. 864, 870 (Bankr. W.D. Wis. 2011); *LR Partners v. Steiner* (*In re Steiner*), 251 B.R. 137,

142 (Bankr. D. Ariz. 2000); and *Fowler v. Rauso* (*In re Fowler*), 425 B.R. 157, 198 (Bankr. E.D. Pa. 2010).

Indeed, courts within the District of Columbia, where the Property is located have held that physical possession of real property by a person other than its title owner would be sufficient to put a party on inquiry notice where "such possession is 'sufficiently distinct and unequivocal as so as to put the purchaser on his guard.'" *Clay Props., Inc. v. Wash. Post Co.,* 604 A.2d 890, 897 (D.C. 1992) (quoting *Hayward v. Mayse*, 1 App. D.C. 133, 140 (D.C. 1893)).

 In the District of Columbia, constructive notice has come to mean record notice. See *Id*. However, inquiry notice extends to that knowledge which a purchaser would have possessed after due investigation as measured by an objective standard of reasonable diligence under the circumstances. See *BDO Seidman, LLP v. Morgan, Lewis & Bockius LLP*, 89 A.3d 492, 500 (D.C. 2014) (quoting *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)); *Doe v. Medlantic Health Care Group, Inc*., 814 A.2d 939, 958 (D.C. 2003) (explaining that "the standards by which the discovery rule is applied are objective"). The critical question is whether a party exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to him. *Ray v. Queen*, 747 A.2d 1137, 1141-42 (D.C. 2000).

Here, Plaintiffs recorded notice of their judgments against Max Salas and Len Salas with the District of Columbia recorder of deeds prior to the Petition Date. This filing provided inquiry notice to any reasonable third party as of the Petition Date, which is the relevant date for this inquiry. Because a trustee or any reasonable third party would have been put on notice of the judgments against Max Salas and Len Salas, which appeared in the chain of title to the Property, the Plaintiffs are precluded from any recovery under 11 U.S.C. § 544(a).

Even if the Plaintiffs did not have actual notice or constructive notice, all of the above-stated facts would certainly be sufficient to put any third party on inquiry notice. The Bankruptcy

Court should have found that any third party would have had inquiry notice of the Defendant's claim to the Property, as a matter of law and based upon the undisputed facts. The record in this case is replete with indicia that Max Salas' possession of the Property was open, distinct, and unequivocal: Max Salas lived in the Property (Plaintiffs' Undisputed Facts, Exhibit 2 to Bankr. Doc. 73, ¶ 3); Max Salas was the only party who ever made mortgage payments on the Property (Id., ¶ 60, 117 and 120); Max Salas signed leases with the Plaintiffs to rent portions of the Property (Id., ¶ 54); Max Salas collected rent payments from the Property (Id., ¶ 57 and 59); and Max Salas collected and distributed insurance proceeds after the Property was destroyed by fire (Id., ¶ 60). More importantly, as stated above, Plaintiffs recorded notice of their judgments against Max Salas and Len Salas with the District of Columbia recorder of deeds. This recording, and to the detriment of Plaintiffs' argument, solidified that any reasonable third party would have inquiry notice, and the Plaintiffs are precluded from any recovery under 11 U.S.C. § 544(a).

In cases similar to the one at hand, District of Columbia courts universally charge a reasonable third party with inquiry notice. For example, in *In re Aumiller*, a Chapter 7 trustee, or any hypothetical purchaser or creditor, was placed on inquiry notice of a creditor's interest in the debtor's real property, for purpose of determining whether creditor's equitable lien was avoidable under trustee's strong-arm powers. *In re Aumiller*, 168 B.R. 811, 819 (Bankr. D.D.C. 1994). There, a covenant between debtor and creditor was filed with recorder of deeds, and debtor agreed under the covenant to execute such documents as requested by creditor to cause a lien or encumbrance in favor of creditor to be recorded against debtor's property interests. The recording of the covenant with the D.C. recorder of deeds was sufficient to put a reasonable party on notice; thus, the Trustee could not exercise its strong-arm powers.

In another case, a D.C. court held that a reasonably prudent purchaser would have been on notice of the contents of a deed of trust granting a lien on Chapter 7 debtors' nonresidential

real property. *In re El-Erian*, 512 B.R. 391, 396 (Bankr. D.D.C. 2014). *In El-Erian*, despite the deed of trust containing both correct and incorrect square and lot numbers for the property and being indexed under the square and lot number for debtors' residence, the Trustee could not avoid the deed of trust using strong-arm powers. This result was reached because the deed of trust was recorded, thereby providing constructive notice to subsequent purchasers or lien holders of all matters which would have been disclosed by an examination of that deed of trust.

Finally, the D.C. Bankruptcy Court held that a reasonable purchaser would have been put on inquiry notice of the terms of a marital property distribution agreement simply by conducting a title search, seeing that the property at issue was owned as tenants by the entirety, but noticing that the parties were now divorced. In *Webster v. Hope* (*In re Hope*), 231 B.R. 403, 423-26 (Bankr. D.D.C. 1999), the court found that a trustee was barred from pursuing a § 544(a) action because a reasonable party would have been put on notice by a recorded divorce judgment and was then charged with inquiring further about the terms of that divorce. The court found that any title search of the property would have revealed that its owners had divorced. The court further found that, upon realizing that the parties were divorced, a reasonable party should have (a) read the divorce court's judgment and (b) inquired about the property distribution agreement referenced in the divorce court's judgment.

Applying these cases to the facts of the matter now before this Court, it is apparent that any reasonable third party (be it a lien creditor, execution creditor, or a bona fide purchaser) would have been subject to *at minimum* inquiry notice of the dispute concerning ownership of the Property as of the petition date, because the notice of the adverse judgments was filed with the D.C. recorder of deeds just one week prior to the filing of this case. A simple title search would – and indeed did – reveal the judgment liens. Any reasonable party would have thus been put on notice to inquire further about the facts and circumstances surrounding the judgment, as

the D.C. Bankruptcy Court found in *Hope*. With any amount of due diligence, the third party would have quickly discovered that there existed a dispute about who owned the property, since Len Salas was only included in the underlying lawsuit because his name was on the deed to the Property, and he subsequently filed multiple pleadings attempting to get out of the lawsuits because he exercised no ownership in fact over the Property. A reasonable purchaser, execution creditor, or judgment lien creditor would surely be charged with such inquiry notice, as would a trustee. Because the Plaintiffs are pursuing this matter in a derivative fashion, on behalf of the trustee, they are likewise charged with inquiry notice in the case. Inquiry notice is sufficient to defeat the trustee and/or the Plaintiffs' causes of action under 11 U.S.C. § 544(a). Thus, this Court should grant the Defendant summary judgment as to Counts I, II, and III of the Amended Complaint.

### B. PLAINTIFFS ARE COLLATERALLY ESTOPPED FROM RELITIGATING THE ISSUE OF OWNERSHIP OR BARE LEGAL TITLE.

The doctrine of collateral estoppel prevents the Plaintiffs from relitigating the issue of whether or not Len Salas owned anything other than bare legal title in the Property, and the Bankruptcy Court properly upheld the conclusion of the D.C. Bankruptcy Court. As such, this Court should affirm the summary judgment that was granted in favor of the Defendant as to Counts IV and V. The United States Bankruptcy Court for the District of Columbia has clearly, unequivocally, and undeniably ruled that the Defendant, Max Salas, is the owner of all legal and beneficial interests in the Property. The question of whether the Debtor, Len Salas, owned anything other than bare legal title was considered at length by the D.C. Bankruptcy Court in the context of the Plaintiffs' objection to the homestead exemption claimed by the Defendant in his own Chapter 11 bankruptcy proceeding. This is evident on the very face of the Memorandum Decision and Order Re Objection to Homestead Exemption (the "DC Order"), attached as

Exhibit A to the Defendant's Statement of Undisputed Facts. Bankr. Doc. 75. See, e.g., D.C. Order pp. 21 and 29-30.

After considering the Plaintiffs' argument that Len Salas was the owner of t3he Property, and the Defendant's argument that Len Salas owned nothing more than bare legal title to the Property, the D.C. Bankruptcy Court concluded: "Accordingly, the court finds that under District of Columbia law, the Property was conveyed to Max and he holds both the legal and beneficial interests in the Property." D.C. Order p. 57. With this conclusion, the D.C. Bankruptcy Court left no doubt that Len Salas owned nothing more than bare legal title, at most. As the Bankruptcy Court correctly noted in its oral ruling after the November 8, 2022, hearing, and reiterated in its January 5, 2023 Order, "if the debtor, Len Salas, only holds bare legal title to the property, the plaintiffs would not be entitled to relief." Bankr. Doc. 83, p. 2. As determined by the D.C. Bankruptcy Court, Len Salas owns at most bare legal title to the Property.

Any other outcomse is barred by collateral estoppel. As the Bankruptcy Court noted in its order granting the Defendant summary judgment on Counts IV and V:

> Pursuant to D.C. law, the doctrine of collateral estoppel, also known as issue preclusion, "'renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.'" *In re Salas*, 2018 WL 4621930, *11 (quoting *Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995)). Stated differently, if there has been prior litigation, issue preclusion applies if "(1) [it involves] the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Peek v. SunTrust Bank, Inc*., 313 F. Supp. 3d 201, 205 (D.D.C. 2018) (citation omitted). "'[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Therefore, the Court must consider whether the issue in question is identical to what was litigated in the D.C. Court. *Merle v. U.S.*, 683 A.2d 755, 762 (D.C. 1996).

Memorandum Opinion, Bankr. Doc. 101, pp. 9-10.

To address the first factor, the party asserting collateral estoppel bears the burden of showing that an issue in question is identical to what was decided before. *Merle v. United States*, 683 A.2d 755, 762 (D.C. 1996). Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

The Bankruptcy Court correctly found that the Plaintiffs are seeking to relitigate the same issue that has been decided by the D.C. Bankruptcy Court — that is, who owns the Property. The D.C. Bankruptcy Court clearly stated that Max Salas was the legal and beneficial owner of the Property, despite Len Salas being the titled owner. Moreover, a determination of ownership was essential to the D.C. Court's decision that Max Salas was entitled to claim the homestead exemption. Specifically, if the D.C. Court had found that Len Salas was the actual owner, Max Salas would not have been entitled to claim the homestead exemption. In the present case, the Bankruptcy Court determined that the Property is only recoverable by the estate if Len Salas, the debtor in this case, held something more than bare legal title, making ownership an essential consideration. As such, the collateral estoppel precedent established by the D.C. Circuit precludes further litigation on this issue. See *Klayman v. Rao*, 49 F.4th 550, 553 (D.C. Cir. 2022). Thus, the first requirement of issue preclusion has been met.

The second requirement for issue preclusion is also met, as the prior decision is a valid, final judgment on the merits and determined by a court of competent jurisdiction. In the first instance, the D.C. Bankruptcy Court expressly held that Max Salas owned all legal and equitable interests in the Property. The Plaintiffs then appealed that decision to the D.C. District Court, which affirmed the Bankruptcy Court. The D.C. Court held an evidentiary hearing and entered its decision on the homestead exemption issue, and the judgment is final. Given these clear

decisions from the D.C. Bankruptcy Court and the District Court, it is obvious that the issue of ownership of the Property was actually and necessarily adjudicated by two courts of competent jurisdiction.

The third requirement for issue preclusion shifts the burden to the Plaintiff. Once the first two requirements are met, the plaintiff "must be permitted to demonstrate, if he can, that he did not have a fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time." *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found*., 402 U.S. 313, 333 (1971) (internal quotation marks omitted).

Simply put, whether issue preclusion creates unfairness to a party turns primarily on whether "the losing party clearly lacked any incentive to litigate the point" at issue in the earlier case. *Canonsburg Gen. Hosp. v. Sebelius*, 989 F. Supp. 2d 8, 19 (D.D.C. 2013). Courts evaluating the fairness of preclusion also consider whether the "prior proceedings were seriously defective." *Martin v. Dep't of Just.* 488 F.3d 446, 254 (D.C. Cir. 2007).

Here, neither concern is present in this case. As stated earlier, the Plaintiffs fully litigated the issue of the ownership of the Property both before the D.C. Bankruptcy Court and then the D.C. District Court. As the Bankruptcy Court pointed out in its Order on Motion for Summary Judgment, the Plaintiffs represent 99.8% of all allowed unsecured claims of the estate, making the estate's interests in this adversary virtually identical to the Plaintiffs' interests in the D.C. litigation. The Plaintiffs had every incentive to forcefully litigate the ownership issue as part of their objection to Defendant's homestead exemption; after all, winning the homestead exemption issue was the only practical way the Plaintiffs could ever collect any significant portion of their $15.2 million dollar judgments from either Max Salas or Len Salas. In fact, not only did they forcefully litigate that matter before the D.C. Bankruptcy Court, they appealed the D.C. Order to

a federal district court and lost. Precluding the Plaintiffs from once again litigating this issue before the Bankruptcy Court creates no basic unfairness.

Finally, to address the fourth factor, the issue of ownership of the Property was essential to the judgment. As stated above, winning the homestead exemption issue was the only practical way the Plaintiffs could ever collect any significant portion of their $15.2 million dollar judgments from either Max Salas or Len Salas. Thus, determining ownership of the Property was a crucial and central part of the underlying case.

This case presents a classic example of where issue preclusion is appropriate: the same parties to the homestead objection are parties to this case; the same ultimate issue is in dispute, that is whether Max Salas or Len Salas owns the Property; and the issue at stake was determined by a court of competent jurisdiction — the D.C. Bankruptcy Court. An application of any test for issue preclusion clearly establishes that the Plaintiffs are barred from relitigating whether Len Salas owns anything more than bare legal title to the Property. If Len Salas, the Debtor herein, never owned anything beyond bare legal title to the Property, then he could not have fraudulently transferred the Property to the Debtor, under either federal law or D.C. law. The Bankruptcy Court properly granted summary judgment in favor of the Plaintiffs as to Counts IV and V due to the D.C. Bankruptcy Court's prior decision that Defendant Max Salas was the proper owner of the Property and therefore could not have been the recipient of a fraudulent transfer.

Count VI of the Plaintiffs' amended complaint seeks relief pursuant to 11 U.S.C. § 550, which does not give rise to any affirmative relief on its own. Rather, it sets forth the available remedies if a transfer is avoided pursuant to 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), or 724(a). See *Shapiro v. Art Leather, Inc.* (*In re Connolly N. Am., LLC*), 340 B.R. 829, 837-38 (Bankr. E.D. Mich. 2006). Defendant was entitled to summary judgment in favor as to Counts IV

and V, and the Bankruptcy Court's decision should be affirmed. Summary judgment should also be granted on count VI because there are no avoidable transfers to recover.

## VIII. CONCLUSION

The undisputed facts show that the Plaintiffs recorded notice of the judgments in the chain of title of the Property just one week before the filing of this bankruptcy. Due to that filing, any bona fide purchaser or judgment lien creditor of the debtor, Len Salas, would have been on inquiry notice of the facts and disputes related to the underlying lawsuit; this includes the claims made by Len Salas that Max Salas was the sole owner of the Property. The inquiry notice that Plaintiffs must be charged with invalidates any claim that they might otherwise have under 11 U.S.C. § 544(a), and the Bankruptcy Court should have granted the Defendant summary judgment in Defendant's favor as to Counts I, II, III and VI.

The D.C. Bankruptcy Court has already determined that Len Salas owns nothing more than bare legal title to the Property, at best. That determination precludes the Plaintiffs from re-litigating that issue and this Court is bound by the prior determination. As such, the Defendant was properly granted summary judgment on both fraudulent transfer counts, Counts IV and V.

This Court should reverse the Bankruptcy Court and grant summary judgment in Defendant's favor on Counts I, II, III and VI of the Amended Complaint, and affirm the Bankruptcy Court's order granting Defendant summary judgment on Counts IV and V.

RESPECTFULLY SUBMITTED:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6008
Email: phillip@thompsonburton.com

Attorney for Defendant Max Salas

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served this 16th day of September, 2024, upon all parties of record requesting notice through the Court's electronic filing system, and by United States mail to:

Philip J. McNutt                                     Taylor A. Cates
Law Office of Philip J. McNutt, PLLC                 Burch, Porter & Johnson, PLLC
11921 Freedom Drive, Suite 584                       130 North Court Avenue
Reston, VA  20190                                    Memphis, TN  38103


                                /s/ Phillip G. Young, Jr.
                                Phillip G. Young, Jr.