Case No. 3:23-cv-00987

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville, Tennessee

| | |
|---|---|
| In Re: ) | |
| ) | |
| LEN SALAS ) | |
| ) | Case No. 3:23-cv-00987 |
| Debtor ) | |
| ) | |
| _____ ) | |
| ) | |
| NICOLAAS BREKELMANS ) | |
| AND GAIL GREGORY ) | Case No. 18-2662-MFH |
| BREKELMANS, CO-PERSONAL ) | Chapter 7 |
| REPRESENTATIVES ) | |
| OF THE ESTATE OF NINA ) | |
| BREKELMANS, et al ) | |
| ) | |
| Appellants and Cross-Appellees ) | |
| v. **)** | Appeal from the United States |
| ) | Bankruptcy Court, Case No. 18- 2662 |
| ) | (Harrison, J.) |
| MAX SALAS **)** | Adversary Proceeding No. 3:20-ap-90027 |
| ) | |
| Appellee and Cross-Appellant ) | |

**REPLY BRIEF OF APPELLANTS**

BURCH PORTER & JOHNSON, PLLC   LAW OFFICE OF PHILIP J. MCNUTT PLLC

By: /s/ Taylor A. Cates   By: /s/ Philip J. McNutt
130 North Court Avenue   Philip J. McNutt
Memphis, TN 38103   Admitted *pro hac vice*
901-524-5165   11921 Freedom Drive, Ste 588
901-524-5000 (fax)   Reston, VA 20190
Tacates@bpjlaw.com   703-904-4380
    202-379-9217 (fax)
    Pmcnutt@mcnuttlawllc.com

ATTORNEYS FOR THE APPELLANTS

**TABLE OF CONTENTS**

I. TABLE OF AUTHORITIES

    A. Cases ................................................................................................................ iii

    B. Statutes and Rules ............................................................................................ iv

II. INTRODUCTION ........................................................................................................1

III. ARGUMENT ................................................................................................................1

    **A. The Appellee Inappropriately Attempts to Limit the Court's Attention to Material Facts Upon Which the Bankruptcy Court Should Have Granted Summary Judgment to the Plaintiffs 'Appellants** ........................................................................1

    **B. The Appellee's Alleged Physical Possession was Not Adequate to Put a Subsequent Purchaser on Notice, let alone Sufficient for the required inquiry notice** .................................................................5

    **C. Issue Preclusion Does Not Apply to the Appellants' Complaint Since They are Suing in the name of, and for the benefit of, the Debtor's Estate and Stand in the Shoes of the Trustee, Michael Gigandet** .................................................8

    **D. The Appellee's Bad Faith and Deceit**

     **Prevents Him from Obtaining Any Relief** ...............................................10

  E. **Len Salas Had a Sufficient Interest in the Property to Permit Application of the Trustee's Avoidance Powers** ....................................................................11

VII. **CONCLUSION** ............................................................................................13

I. TABLE OF AUTHORITIES

A. Cases

*In re: Aumiller*, 168 B.R. 811, 819 (Bankr. D.C. 1994) ..................................................3, 4

*Bardes v. Hawarden Bank*, 178 U.S. 524, 534-536 (1900) ...................................................10

*Clay Props., Inc. v. Wash. Post Co.,* 604 A.2d 890,
 897 (D.C. 1992) .......................................................................................................5

*DLY-Adams Place, LLC v. Waste Mgmt. of Md.* 2 A.3d 163,
 1656-167 (D.C. App. 2010) ....................................................................................6

*Gaff v. FDIC*, 919 F.2d 384, 392 (6th Cir. 1990) .................................................................10

*Granfinanciera v. Nordberg*, 492 U.S. 33, 81,
 109 S. Ct. 2782, 2811 (1989) ..................................................................................10

*Hyundai Translead, Inc. v. Jackson Truck &
 Trailer Repair, Inc. (In re Trailer Source, Inc.),*
 555 F.3d 231, 242 (6th Cir. 2009) ...........................................................................10

*In re El-Erian*, 512 B.R. 391, 396 (Bankr. D.C. 2014) .........................................................4

*Kinch v. Fluke*, 311 Pa. 405 (1933) .......................................................................................7

*Long John Silver's Inc. v. Fiore*, 2554 Pa. Super. 183 (1978) ..............................................7

*McKinley v. Crawford*, 58 F.2d 528 (D.C. Cir. 1932) ........................................................2, 5

*Osberg v. Fibison (In Re Fibison)*, 474 B.R. 864
 (Bankr. W.D. Wisc. 2011) .......................................................................................6

*Osberg v. Risler (In re Risler)*, 443 B.R. 508, 511
 (Bankr. W.D. Wisconsin 2010) ................................................................................6

*Pepper v. Litton*, 308 U.S. 295, 303-05, 60 S. Ct. 238, 244 (1939) ....................................10

*Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.*,
 324 U.S. 806, 814-15 (1945) ...................................................................................11

*Reinbold v. Thorpe*, 546 B.R. 172 (Bankr. C.D. Ill 2016) ....................................................5

*United States v. Energy Resources Co., Inc.*, 495 U.S. 545,
 549, 110 S. Ct. 2139, 2142, 109 L.Ed.2d 580 (1990) .............................................11

B.	Statutes and Rules

    11 U.S.C. § 101, *et seq.* ........................................................................................10

    11 U.S.C. § 105............................................................................................... 10

## II. INTRODUCTION

Other than general references to the Bankruptcy Court's rulings which are on appeal here, the Appellee makes only limited references to the Court's Orders on appeal or the Memoranda in support of those Orders. The Appellee does not respond at all to the Appellants' arguments in their opening Brief (D- 13) but only reiterates two arguments made below which do not raise any new issues, or even rephrase any of the questions already presented to this Court. Since the Appellee does not raise any issues directed at the Appellants' arguments in their opening Brief, the Appellants' response here will be relatively short.

The only arguments made in the Appellants' Opening Brief which the Appellee addresses at all are Issue Preclusion and the effect of the Appellants' Superior Court judgments on the inquiry notice requirements related to the Trustee's avoiding powers. The Appellee makes no arguments regarding the Trustee's avoiding powers other than the inquiry notice argument and does not respond to the Appellants' arguments regarding their entitlement to summary judgment on the fraud counts of the Complaint (Counts IV and V). Furthermore, the Appellee does not respond to the bad faith, unclean hands and equitable arguments made in Sections H (Equitable Considerations) and I (Unclean Hands). The Appellee also does not respond at all to the Appellants' arguments regarding their Motion to Alter or Amend.

### A. The Appellee Inappropriately Attempts to Limit the Court's Attention to Material Facts Upon Which the Bankruptcy Court Should Have Granted Summary Judgment to the Plaintiffs' Appellants

1. The Appellee[1] asserts in his Brief (D-16) that there are only two "material facts" necessary to determine the pending appeal, namely (1) that the Plaintiffs filed a notice of judgment lien in the chain of title; and (2) the United States Bankruptcy Court for the District of Columbia ("the D.C. Bankruptcy Court") previously ruled that the Defendant was the owner of

the [subject] Property. The Appellee, however, leaves out other facts which are material, and undisputed which counter the so-called determinative facts asserted by the Appellee. Those facts include (1) that the notices of judgment lien[2] do not identify the Appellee as the owner. The lawsuits from which the judgment resulted show that the owner was not the Appellee, but Len Salas, the debtor here. There is nothing in the notice of judgment or in the Superior Court proceedings which resulted in that judgment which identifies M Salas, the Appellee, as anything other than a manager; and (2) The D.C. Bankruptcy Court clearly stated, several times in the record in the M Salas Bankruptcy Proceeding (Case No. 18-262) that its decision on exemption did not, and could not affect the avoidance and recovery claims of the Trustee in the Tennessee Bankruptcy of Len Salas. Those two facts are already fully asserted and argued in the Appellants' Opening Brief and will not be repeated at length here.

2. The Appellee's argument that the notices of judgment represented sufficient notice to a third party to inquire as to the Appellee's potential interest of the property is simply not viable under the circumstances of this case. M Salas deeded the property to his son, Len, in 2007. He did not reverse or limit that deed in any respect. That deed represents "notice to the world" that See, for example, *McKinley v. Crawford*, 58 F.2d 528 (D.C. Cir. 1932).

3. The Appellee tries to convince the Court that his "possession" of the Property was open, distinct and unequivocal." Appellee's Brief, at p. 16. However, all of the undisputed facts tell a much different story-that is, the Appellee tried to hide his ownership of the Property from his creditors, the D.C. and federal taxing authorities and other creditors. Those facts are recited in detail in the Appellants' Brief, Section VI. B, at pp. 13-14.

---

[1]For ease of reference, the Appellee and Cross- Appellant, Max Salas will be referred to in this Brief as "M Salas" or "the Appellee."

[2]There were two judgments entered in the Superior Court case, one for each set of Plaintiffs in two lawsuits which were consolidated due to common claims and facts.

4. In every case cited by the Appellee, the "notice" which the Appellee tries to use to convince this court, consists of a document that puts the "owner's" title in question. See, for example, Appellee's Brief, at p. 17, whereat the Appellee proffers the case of *In re Aumiller*[3]. In *Aumiller*, a creditor of the Debtor filed a covenant in the land records evidencing an interest in the Property. The notices of judgment filed by the Appellants here represent claims against the owner, Len Salas, the Debtor here, and the manager, Max Salas, the Defendant and Appellee, here. The deed from Max to Len is determinative to the world that Len was, at all relevant times, the owner of the Property at issue here. In *Aumiller*, the document filed in the public record was a covenant specifically identifying the debtor as the owner of the subject property. In the scenario before this Court, the judgment creditors filed two judgments against Len Salas and Max Salas. Appx. 1013-1014. The notices don't identify the bases of the judgments, but the Superior Court judgment does. A party investigating the judgments would show that the Superior Court record clearly establishes that Len was determined to be the owner and that his liability in the Superior Court litigation was based upon that ownership. Max Salas is not identified as the owner, and his liability is based upon his management of the Property not ownership.

5. Interestingly, the Appellee (M Salas) submitted, as part of the Summary Judgment record, a title abstract obtained after the Superior Court case. Appx. 1015. That title abstract clearly identifies Len as the owner of the Property and attaches the latest title document, the 2007 deed **from Max to Len**. Appx. 1016. The only reference to Max in the title abstract is his conveyance of the Property to Len in 2007.

6. In his attempt to justify his reasoning, the Appellee also cites the case of *In re El-Erian.*[4] However, that case is also inapposite to the facts of this case. In *El-Erian*, the filing which resulted in a finding of sufficient notice to a subsequent Trustee also had a recorded Deed

---

[3] 168 B.R. 811, 819 (Bankr. D.C. 1994)

of Trust lien which was indexed "under the square and lot number for debtors' residence." Appellee's Brief, at pp. 18. ***Aumiller*** and ***El-Erian*** are cases which are consistent with the idea that, for the notice to be sufficient under D.C. law, it must be actual notice sufficient to put a subsequent buyer, or lienholder, or interest holder on notice of an actual filing "on the record" which identifies the party claiming ownership as the owner. There is no such filing anywhere in the public record which identifies the Appellee as the owner of the Property. Indeed, all public records show the Debtor here, Len Salas as the sole owner. (See Appx. 01153-1164) Most importantly, the one public document that identifies Len as the owner was signed and caused to be filed by the Appellee, Max Salas. (See Appx 00479, M. Salas Deposition Testimony on February 24, 2016, Appx. 00564-00579, Salas family emails, 2011-2012, Appx. 00612, Salas Deposition Testimony 3/8/22).

7. The Appellee asserts that "any reasonable party...would have been subject to *at minimum* inquiry notice of the dispute concerning ownership of the Property..." (Emphasis in original). That, of course, is not correct as set forth explicitly in the Appellant's brief referencing the voluntary deed from the Appellee, Max, to his son, Len, the Debtor here. (See Appellant's Supplemental Memorandum, February 23, 2023, Section E, ¶¶ 85-89. Appx. 01102-1104). Notably, the Appellee has not attempted to refute the Appellants' argument summarized in their Brief. However, even if the Court accepts the premise of the Appellee's argument, a premise thoroughly debunked by the Appellants, the Appellee's argument still fails for four reasons, namely (1) the lack of a recorded document showing ownership by the Appellee, (2) the lack of any documents which would have informed "a reasonable third party" that Max was even potentially an owner of the Property, and (3) the blatant and obvious consistent attempts by Max to hide his ownership of the Property, and (4) the lack of honesty of Max, the Debtor and Ron

---

[4] 512 B.R. 391, 396 (Bankr. D.C. 2014)

Salas, by continuing to assert, in direct contravention of their own communications in 2011-12, that there was no deed effective to "transfer" the property out of Len's name.

      **B.    The Appellee's Alleged Physical Possession was Not Adequate to Put a Subsequent Purchaser on Notice, let alone Sufficient for the required inquiry notice**

8. While the Appellee asserts that physical possession by the Appellee is sufficient notice of an interest in the Property, citing the case of ***Clay Props., Inc. v. Wash. Post Co.***, 604 A.2d 890, 897 (D.C. 1992), even if true, and even if the ***McKinley*** case and other cases recognized and followed in both D.C and Tennessee, did not supersede the rationale of ***Clay*** (and the other cases cited by the Appellee), the Appellee's alleged "possession" was never "sufficiently distinct and unequivocal...", as required. In fact, as late as 2016, even while the Superior Court litigation was pending, and during the period of depositions in that case of both the Appellee and his son, Len, Max continued to assert that Len was the owner in Max's attempts to refinance. See 2016 Loss Mitigation Statement, Appx. 01144-01152

9. In its Memorandum of January 2023, the Bankruptcy Court cited, among other cases, ***Reinbold v. Thorpe***, 546 B.R. 172 (Bankr. C.D. Ill 2016). In ***Reinbold***, a recorded deed identified the party claiming an interest as a joint tenant and as husband of the titled owner. The court determined that the husband's interest was within the scope of facts which would have put a prospective purchaser on notice, namely, the husband was listed on the deed as a joint tenant, he was the husband of the other joint tenant, and he was in continuous physical possession of the property. The facts of the instant case simply do not give rise to an "unusual circumstance [that] is a ground of suspicion...[demanding] investigation," the criteria used by the Court in ***Reinbold***, ***Id.***, at 185, but completely inapposite to the facts here. Similarly, in ***Osberg v. Fibison (In Re Fibison)***, 474 B.R. 864 (Bankr. W.D. Wisc. 2011), the Wisconsin bankruptcy court determined a

recorded conveyance (contract of sale) made the physical possession sufficient notice to a purchaser.

10. Under Wisconsin law, when the deed is unambiguous it is deemed unassailable and proof of ownership. See ***Osberg v. Risler (In re Risler)***, 443 B.R. 508, 511 (Bankr. W.D. Wisconsin 2010) (cited in ***Fibison, supra***). (D.C. law appears to be similar. ***See DLY-Adams Place, LLC v. Waste Mgmt of Md.*** 2 A.3d 163, 1656-167 (D.C. App. 2010).) The other cases cited by the Bankruptcy Court below, and the Appellee, also require some title or recordable interest in the Property to overcome the bona fide purchaser status.

11. Moreover, in 2014 and 2015, Max held himself out to be "Trustee" and not owner. See leases, dated 2014 and 2015 including a lease to Nina Brekelmans, the deceased daughter of the Brekelmans Plaintiffs-Appellants, Appx. 01107-01114.

12. Courts within the District of Columbia, where the Property is located, have held that physical possession of real property by a person other than its title owner would be sufficient to put a party on inquiry notice where "such possession is 'sufficiently distinct and unequivocal as so as to put the purchaser on his guard.'"

13. Other jurisdictions use the criteria of "open and notorious" possession as that necessary to create the inquiry notice. In Pennsylvania, open and notorious possession gives rise to sufficient notice to require a subsequent purchaser to inquire as to the status of the possessor's interest in the Property. However, none of the cases cited by the Pennsylvania courts involve unrecorded documents. ***See, for example, Kinch v. Fluke***, 311 Pa. 405 (1933) ( Knowledge of Agreement of purchase) and ***Long John Silver's Inc. v. Fiore***, 2554 Pa. Super. 183 (1978)(knowledge of agreement of sale or deed). Here, there were no agreements between the Debtor and the Defendant regarding ownership of the Property outside the abandoned Quitclaim Deed. At all times after 2011, the Defendant had no deed either in his name, or in the name of a

trust, that would have provided notice to anyone. He had no agreement with the Debtor regarding his ownership of the Property or his responsibility for the Property. And while he was in possession of the Property in 2014 and 2015 Max held himself out as a Trustee for the CLR Trust rented rooms to parties such as the Plaintiffs' deceased children.

14. Based upon the above, it is highly inappropriate, inequitable and unethical to assert that Max was the owner of the Property when, at the time of the deaths of the Brekelmans' and McLoughlins' children, Max held himself out to be, at best, a trustee for a family trust, the CLR Trust. In short, he had no documentation to show a purchaser in 2018 that he had an interest in the Property. In the first three years of the Superior Court litigation, neither the Debtor nor the Defendant produced even a copy of the alleged 2010 Quitclaim Deed. This despite the fact that a legitimate deed could have eliminated Len from liability. Len, Max and Ron all knew that Len's ownership interest and his responsibility as owner were the only reasons he was even sued in the Superior Court wrongful death cases. See, for example, Ron Salas testimony of August 2018. Appx. 00633-636.

15. Furthermore, for the period June 2015 through early 2018, Max was not in possession of the Property but lived in an apartment. Thus, there was no physical possession until immediately prior to Max's bankruptcy filing and certainly no long term "physical possession."

    C.    **Issue Preclusion Does Not Apply to the Appellants' Complaint Since They are Suing in the name of, and for the benefit of, the Debtor's Estate and Stand in the Shoes of the Trustee, Michael Gigandet**

16. The only other argument made by the Appellee relates to whether or not issue preclusion applies to the Appellants in this case. The crux of the Appellee's argument is set forth on page 23 of the Appellants' Brief whereat he asserts the elements of issue preclusion and attempts to apply them to the undisputed facts of this case. However, the Appellee fails to connect the decision of the D.C. Bankruptcy Court to the present dispute in two important

7

aspects, namely, (1) the Plaintiffs are not the same parties as those in the D.C. Bankruptcy Court case because they are suing in the name of the trustee in bankruptcy and on behalf of the entirety of the Bankruptcy Estate; and (2) no issues related to the trustee's claims in the bankruptcy case of Len Salas were determined in the D.C. Bankruptcy Court, no could they be, as the D.C. Bankruptcy Court clearly stated when it stated that the exemption decision was likely to be undermined and made moot by proceeding brought by the trustee in Len's case. In fact, Max knew that was the case. That is why he bid over $150,000 to prevent the Appellants from pursuing the litigation which is the subject of this appeal. And, while the Appellee and the Bankruptcy Court below made a big deal out of the fact that the Plaintiffs in their individual capacity represent the vast majority of the claims in the estate it is not as if there were no other claims in the estate. There were taxes, administrative claims and a few general unsecured creditors. It just so happens that the two largest creditors, each representing nearly half of the estate's claims chose to bid against Max for the right to pursue these claims. The Court approved the sale to the Appellants, for the purpose of proceeding with the pending litigation, the Appellants paid fair consideration for the right to pursue those claims **on behalf of the estate**, and the court, trustee and other creditors, including the Debtor's counsel all benefitted from that purchase. (Emphasis added)

17. The Appellee attempts to avoid or evade the lack of case law support for his argument by merely stating that the ruling of the Bankruptcy Court below is not unfair to the Appellants. If this position would not apply to the Trustee, the real party in interest, it cannot apply to the Appellants. It is axiomatic that those parties who have the greatest interest in pursuing claims are the larger creditors who also generally have more resources to do so. Creating a policy wherein the size of a creditor's claim bears on its ability to pursue actions in the bankruptcy court would hamper the ability of trustees and small creditors who do not necessarily have the resources to

8

pursue claims like those present here. At best, this is a bad policy position which would restrict numerous bankruptcy estates from pursuing legitimate recovery claims. It is hardly newsworthy that the bulk of recovery claims are commenced either by creditors with incentive and resources to pursue claims, or through the trustee's use of creditor resources, including counsel, to pursue those claims.

18. Unless there are substantial liquid assets in an estate, the bankruptcy trustee has much less incentive to pursue legitimate claims that are likely to be vigorously defended. Restricting the ability of the bankruptcy estate to pursue these claims harms estates and creditors alike and promotes even less potential distribution to creditors than would otherwise occur. It is common, in bankruptcy and other insolvency proceedings, for the larger, or largest creditors to participate in, or directly pursue on behalf of the estate, claims that will ultimately benefit all creditors, including the administrative creditors. Such participation by creditors who have the incentive and resources to pursue claims, assures that the estate is fairly administered for the benefit of the court, the US Trustee, the Trustee, and all other creditors, priority (i.e. taxes), under-secured, and most importantly, unsecured creditors who do not usually see any distribution but certainly not a significant distribution in Chapter 7 bankruptcy cases. Yet the purpose of proceedings like the one on appeal here is to assure the fair distribution of all assets which belong in the debtor's bankruptcy estate.

19. The D.C. Bankruptcy Court matter was a contested matter, not a full evidentiary proceeding with a Complaint, Answer, full discovery, pre-trial matters, motions and trial. It was, rather, an evidentiary hearing limited to one issue, the debtor's (Max's) entitlement to an exemption. The D.C. Bankruptcy Court unequivocally deferred the issues asserted in this Complaint to the Tennessee Bankruptcy Trustee and Court. See argument and record citations in

Appellants' (Plaintiffs') Second Supplemental Memorandum, March 26, 2023, Section C, Appx. 01219-1222.

### D. The Appellee's Bad Faith and Deceit Prevents Him from Obtaining Any Relief

20. The status of courts of bankruptcy as courts of equity, and their proceedings inherently proceedings in equity, has not changed since 1898. ***Pepper v. Litton***, 308 U.S. 295, 303-05, 60 S. Ct. 238, 244 (1939), ***Bardes v. Hawarden Bank***, 178 U.S. 524, 534-536 (1900); ***Granfinanciera v. Nordberg***, 492 U.S. 33, 81, 109 S. Ct. 2782, 2811 (1989); ***Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.);*** 555 F.3d 231, 242 (6th Cir. 2009); ***Gaff v. FDIC***, 919 F.2d 384, 392 (6th Cir. 1990).

21. Under the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101, *et seq.*, the equitable nature of bankruptcy courts was confirmed and codified by 11 U.S.C. § 105 which confers upon the bankruptcy courts the equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code. This statutory authority, as the Supreme Court of the United States has pointed out, is in line with "the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." ***United States v. Energy Resources Co., Inc.***, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990).

22. Equity "closes the doors to bankruptcy court relief" to those parties tainted with "inequitableness or bad faith" which certainly includes the Appellee and his family, Len and Ron. See ***Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.***, 324 U.S. 806, 814-15 (1945).

### E. Len Salas Had a Sufficient Interest in the Property to Permit Application of the Trustee's Avoidance Powers

23. Under any reasonable analysis of his interest in the Property, the Debtor in this case, Len Salas, held more than "bare" legal title. He held an equitable and beneficial interest in the

property as the result of the borrowing that he incurred for the property and his recognized interest in the property by all federal and state agencies. He also retained a beneficial interest in the property by virtue of his interest in the CLR Trust which was the "actual" owner of the property and the entity for which the Appellee managed the property. The Debtor was also a necessary party to all attempts to refinance so that the Appellee could obtain his "desired lower interest rate." See, for example, the Loss Mitigation Statement prepared on February 28, 2016, for SunTrust Mortgage and signed by Len Salas, as "borrower", based upon his income and circumstances (unemployment) only. Appx. 01144-01152. The Appellee did not list himself as a co-borrower or participant in the attempt to obtain loss mitigation relief. Note also that this document was prepared during discovery in the Superior Court litigation, four days after the Defendant's deposition in the Superior Court case (2/28/16) and only nine days before the Debtor's deposition (3/09/16). The Appellee produced no document in which he asserted to the public or to a public agency that he was the owner of the Property.

24. On the other hand, the Defendant's claimed interest in the Property is solely an equitable interest to which he is not entitled under the undisputed facts and circumstances of this case, as evidenced by the history of lies and deceit perpetrated on the D.C. Bankruptcy Court and this court as discussed above, in the Appellants' Brief and in Summary Judgment Memoranda. See, for example, Appellants' Memorandum filed 2/21/23, Section A, Appx. 01070-1084. history is evidenced by the following undisputed facts:

a. The Defendant hid his "ownership" of the property from taxing authorities, other governmental authorities, the lender, and the public.

b. In the Superior Court litigation, the Defendant and the Debtor were vague and misleading concerning the existence of any owner other than the Debtor. Only the CLR Trust was specifically recognized by the Debtor. See Exhibit F.

11

c. The Superior Court rejected the "last minute" efforts of the Debtor and the Defendant, in March 2018, to belatedly assert that the Defendant was the owner.

d. The Defendant violated D.C. law when he rented rooms at the Property without a proper inspection and permit which directly led to the unsafe conditions at the Property and then the deaths of Michael McLoughlin and Nina Brekelmans.

e. From 2015 - 2019, the Defendant made no payments on the mortgage for which only Len was obligated.

f. Despite knowing that the 2010 Trust and Deed were invalid and abandoned as early as 2011, the Defendant "resurrected" the Deed in early 2018 but only after finding out that if he could claim the Deed was still in existence, he would be able to claim the Property as his and exempt the Property's entire equity under D.C. law.

g. The Debtor also knew, prior to his bankruptcy filing that if the Property belonged to him, it would not be exempt.

h. The Debtor had, in his possession, the emails, or copies of the emails, that prove the 2010 Quitclaim Deed was abandoned and not in effect no later than mid-2011. The Debtor's brother, Ron, determined that the 2010 Quitclaim Deed was not effective sometime in 2011 and so notified his father, the Defendant and his brother, the Debtor. Nevertheless, each member of the Salas Family participated in the scheme to lie about the Quitclaim Deed in the attempt to retain possession of the Property for the Defendant and the Debtor.

i. In the period 2011 - 2015 the Debtor repeatedly asked his father to remove his name from ownership of the Property. In these communications, some of which were by email, at no time did the Defendant dispute that the Debtor was still the owner of the Property despite the 2010 Quitclaim deed which was later used as the basis for claiming an exemption in the D.C. Bankruptcy Court.

j. In his affidavit, attached to his Objections to the Plaintiffs' Motion for Summary Judgment (Appx. 00805-808), the Defendant admitted that he leased rooms at the Property under the name of the CLR Trust and deposited rental income into a CLR Trust Account not a Max Salas account. Appx. 00807, ¶¶ 19-22.

## VII. CONCLUSION

For the reasons stated above and argued in the Plaintiffs' Motion for Summary Judgment, and supporting Memoranda, the undisputed facts set forth in the Plaintiffs' Motion and Opposition (to the Defendant's Motion), the Plaintiffs' Motion to Alter or Amend, and Appellants' Brief, the Plaintiffs assert that the Court should reverse the Orders appealed from, and remand with instructions to grant summary judgment to the Plaintiffs on all Counts of the Complaint.

Respectfully submitted,

BURCH, PORTER & JOHNSON, PLLC

By: /s/ Taylor A. Cates
130 North Court Avenue
Memphis, TN 38103
901-524-5165
901-524-5000 (fax)
Tacates@bpjlaw.com

LAW OFFICE OF PHILIP J. McNUTT, PLLC

By: /s/ Philip J. McNutt
Philip J. McNutt
Admitted *pro hac vice*
11921 Freedom Drive, Ste 588
Reston, VA 20190
703-904-4380
202-379-9217 (fax)
Pmcnutt@mcnuttlawllc.com

ATTORNEYS FOR THE APPELLANTS

## CERTIFICATE OF COMPLIANCE UNDER FED. R. BANKR. P. 8015(a)(7)(C)

I HEREBY CERTIFY, under Fed R. Bankr. P. 8015 (a)(7)(C) that the foregoing Brief, including the Statement of the Case, contains 4253 words in Times New Roman, 12-point type.

/s/ Philip J. McNutt
PHILIP J. MCNUTT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Reply Brief was served electronically through the Court's ECF service system, on this 23rd day of September 2024 on Phillip Young, counsel for the Appellee and Cross-appellant.

/s/ Taylor A. Cates
TAYLOR A. CATES