**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **NICOLAAS BREKELMANS AND** | ) | |
| **GAIL GREGORY BREKELMANS,** | ) | |
| **CO-PERSONAL** | ) | |
| **REPRESENTATIVES OF THE** | ) | |
| **ESTATE OF NINA BREKELMANS,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MICHAEL MCLOUGHLIN AND** | ) | |
| **MARTHA JOHNSON, CO-** | ) | **Case No. 3:23-cv-00987** |
| **PERSONAL REPRESENTATIVES** | ) | **Judge Aleta A. Trauger** |
| **OF THE ESTATE OF MICHAEL** | ) | |
| **PATRICK MCLOUGHLIN,** | ) | |
| | ) | |
|     **Plaintiffs/Appellants/Cross-** | ) | |
|     **Appellees,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MAX SALAS,** | ) | |
| | ) | |
|     **Defendant/Appellee/Cross-** | ) | |
|     **Appellant.** | ) | |

## MEMORANDUM

The matter now before the court is an appeal and a corresponding cross-appeal from a judgment in a bankruptcy adversary proceeding pursuant to 28 U.S.C. § 158(a)(3), the court having previously granted the parties' motions for leave to take an interlocutory appeal. Specifically, these cross-appeals are from the Bankruptcy Court's May 24, 2023 Order denying the plaintiffs' Motion for Summary Judgment as to Counts I, II, and VI of the plaintiffs' Complaint and granting defendant Max Salas' Motion for Summary Judgment on Counts IV and V of the Complaint and from the Bankruptcy Court's August 16, 2023 Order Denying Plaintiffs' Motion to Alter or Amend

Under Fed. R. Bankr. P. 9023. (AP Nos. 102, 109.)[1] For the reasons set forth herein, the Bankruptcy Court's Orders will be affirmed.

## I.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment in adversary proceedings in bankruptcy court. Fed. R. Bankr. P. 7056. Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); P*ittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018). The court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

---

1 Except as specifically noted otherwise, the following terms used in this opinion shall mean as follows:

a. "Adversary Proceeding" (or "AP") refers to Case No. 3:20-ap-90027 filed and pending in the United States Bankruptcy Court for the Middle District of Tennessee, in bankruptcy Case No. 3:18-bk-02662 (citations of the filings in this proceeding will be formatted as "AP No. __").

b. "Complaint" refers to the Amended Complaint filed in the Adversary Proceeding (AP No. 40).

c. "Bankruptcy Court" or "Tennessee Bankruptcy Court" refers to the Bankruptcy Court for the Middle District of Tennessee from which this appeal is taken.

d. "D.C. Bankruptcy Court" refers to the United States Bankruptcy Court for the District of Columbia.

e. "Bankruptcy Case" or "Len Salas' Bankruptcy Case" refers to the Chapter 7 case of Len Salas, Case No. 3:18-bk-02662 filed in the Tennessee Bankruptcy Court.

f. The "D.C. Bankruptcy Case" or "Max Salas' Bankruptcy Case" refers to the Chapter 11 Case of Max Salas, *In re Salas*, Case No. 18-00260, filed in the D.C. Bankruptcy Court.

Because a grant of summary judgment presents a pure question of law, district courts review the bankruptcy court's grant of summary judgment *de novo*, using the same Rule 56 standard as the bankruptcy court. *In re McDonald*, 29 F.4th 817, 822 (6th Cir. 2022); *In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001).

## II.    PROCEDURAL HISTORY

This case has a very convoluted, as well as heartbreaking, history. In 2015, a fire broke out at 1610 Riggs Place, NW, Washington, D.C. ("Property").[2] Two individuals renting rooms at the Property, Nina Brekelmans and Patrick McLoughlin, died in the fire, and Max Salas, who also lived at and managed the Property, was seriously injured. On October 20, 2015, the plaintiffs herein, as the parents of the decedents and personal representatives of their estates, filed two separate wrongful death actions against Max Salas, as the manager of the Property, and his son, Len Salas, as owner of the Property, in the Superior Court for the District of Columbia ("Superior Court"). The Superior Court trial was scheduled to begin on March 26, 2018.[3]

Less than two weeks before trial, Len Salas filed an "emergency" motion for summary judgment, in support of which he produced, for the first time, a copy of a 2010 trust and quitclaim deed ("2010 Quitclaim Deed"). Len Salas sought judgment in his favor on the basis that Max Salas was the real owner of the Property. His motion was denied, and the Superior Court declined to consider Len Salas' new evidence at trial, based on the belated filing.

---

[2] The recitation of the background facts set forth herein is drawn largely from *In re Salas*, No. 18-00260, 2018 WL 4621930, at *5 (Bankr. D.D.C. Sept. 24, 2018).

[3] Because of the potential for confusion arising from the fact that Len Salas is the debtor in the underlying Bankruptcy Case in this court but Max Salas is the defendant in the Adversary Proceeding as well as a debtor in the bankruptcy case pending in the D.C. Bankruptcy Court, the court refers to Max Salas and Len Salas by their full names in this opinion and makes frequent reference to their status in this case as either "defendant" or "debtor."

The two matters proceeded to a single, consolidated trial, and, on April 4, 2018, the McLoughlin plaintiffs and the Brekelmans plaintiffs obtained jury verdicts in the Superior Court in the amounts of $7.7 million and $7.5 million, respectively, against Max Salas (as manager of the Property) and Len Salas (as owner) jointly and severally. Shortly after entry of the judgment, Max Salas filed for bankruptcy protection in the D.C. Bankruptcy Court, and Len Salas filed his petition in this district on April 18, 2018. Len Salas' case was converted from Chapter 11 to Chapter 7 on December 26, 2018, and the Chapter 7 Trustee ("Trustee") was appointed.

Despite the Superior Court's verdict and the fact that the 2010 Quitclaim Deed was never recorded as required by D.C. Code § 42-401, the D.C. Bankruptcy Court ruled on September 25, 2018, in the context of Max Salas' Bankruptcy Case, that the conveyance was valid, giving Max Salas both legal interest and beneficial interest in the Property. *In re Salas*, 2018 WL 4621930, at *20. Based on that conclusion, the court also held that Max Salas was entitled to claim the District of Columbia's unlimited homestead exemption in the Property. *Id.* The D.C. Bankruptcy Court declined to rule on whether the transfer could be avoided under 11 U.S.C. § 544(a)(3) in Len Salas' Bankruptcy Case, based on Max Salas' failure to record the 2010 Quitclaim Deed, finding that "whether a hypothetical purchaser of the Property would have inquiry notice of Max's ownership of the Property" was "an issue of fact that must be decided by the U.S. Bankruptcy Court for the Middle District of Tennessee." *Id.* at *21. Likewise, it noted that "[h]ow a judgment regarding the right of Len's estate to recover the Property under § 544 would affect Max's homestead exemption in this case is an issue for another day." *Id.*[4]

---

[4] The plaintiffs appealed the D.C. Bankruptcy Court's decision to the District Court for the District of Columbia. That court denied the plaintiffs' motion to supplement the record on appeal and dismissed the appeal after construing the plaintiffs' alternative motion to remand as a motion to voluntarily dismiss. *In re Salas*, No. 18-cv-2318 (KBJ), 2020 WL 32567, at *4 (D.D.C. Jan. 2, 2020). The D.C. Bankruptcy Court denied the plaintiffs' subsequent motion to reconsider, and the

On April 10, 2019, the Trustee in debtor Len Salas's Bankruptcy Case filed a "Motion to Sell Property" belonging to Len Salas, specifically described as "[a]ny and all claims and interests of the bankruptcy estate or the Chapter 7 trustee to the certain real estate located at 1619 Riggs Place, NW, Washington, DC 20009," *i.e.*, the Property, "such legal and equitable interest in the real estate having been possessed by Max Salas" pursuant to the D.C. Bankruptcy Court's September 25, 2018 ruling on Max Salas' homestead exemption. (Bankr. No. 162, at 3.) The claims and interests the Trustee sought to sell specifically included the Trustee's "rights to pursue a cause of action against Max Salas under the trustee's avoidance powers." (*Id.*) The motion proposed to sell the claims to Ron Salas, defendant Max Salas' other son, for $10,000. (*Id.*) Over the objections of the plaintiffs and the U.S. Trustee, the Bankruptcy Court granted the motion but required the Trustee to provide notice of the sale to all interested parties and potential buyers and, if alternative bids were received, to conduct an auction. Because there were alternative bids, the auction took place, and the plaintiffs ultimately purchased the estate's interest in "any potential avoidance actions against Max Salas and/or his bankruptcy estate under 11 U.S.C. §§ 544, 545, 547, 548, 549, and 553 as related to the . . . [P]roperty" for $156,000. (Bankr. No. 179, at 2; *see also* Bankr. No. 191 (Trustee's Report of Sale and Bill of Sale).)[5]

Having purchased the Trustee's interest in "any potential avoidance actions against Max Salas and/or his bankruptcy estate," the plaintiffs initiated the Adversary Proceeding against Max Salas by filing their Complaint to Avoid Transfers and Recover Property in the Tennessee

---

D.C. District Court affirmed. *In re Salas*, No. 18-00260, 2020 WL 6054783, at *22 (Bankr. D.D.C. Oct. 13, 2020), *aff'd*, No. No. 20-3091 (FYP), 2022 WL 1154596 (D.D.C. Apr. 19, 2022).

[5] According to the Bankruptcy Court, the Trustee distributed the funds from the sale remaining after the payment of administrative claims ($126,769.43) *pro rata* to the unsecured creditors. Because the plaintiffs represent 99.8% of the unsecured claims, nearly all of the funds were distributed back to the plaintiffs. (*See* AP No. 29, at 5.)

Bankruptcy Court. (AP No. 1.) After finding that the plaintiffs lacked standing to pursue the Trustee's avoidance actions on their own behalf, the Bankruptcy Court permitted them to amend the Complaint to assert the same claims in a derivative capacity on behalf of the Len Salas bankruptcy estate, essentially stepping into the shoes of the Trustee. (*See* AP Nos. 29, 30, 31, 38, 39, 40.)

The Amended Complaint contains six counts—three seeking recovery under 11 U.S.C. § 544(a) (Counts I, II, and III), one under § 548 (Count IV), one under 11 U.S.C. § 544(b) and D.C. Code §§ 28-3104 and 28-3105 (Count V), and one under 11 U.S.C. § 550 (Count VI). (AP No. 40.) The plaintiffs filed their Motion for Summary Judgment in the Bankruptcy Court in July 2022, seeking judgment on all claims except Count III and the "actual fraud" portion of Counts IV and V. (AP Nos. 73, 74.) The Bankruptcy Court initially denied the motion after oral argument on November 8, 2022, finding that material factual disputes precluded summary judgment for either party, and set the matter for trial. (*See* AP No. 82.)

After further consideration, however, the Bankruptcy Court entered a subsequent Order directing additional briefing on two specific issues:

> 1. In relationship to the strong-arm avoidance claims under 11 U.S.C. § 544(a)(3) (a bona fide purchaser) and 11 U.S.C. § 544(a)(1) (a hypothetical judgment lienholder), whether it is appropriate to consider inquiry notice and if so, whether inquiry notice existed as a matter of law based on the undisputed facts.

> 2. In relationship to the fraudulent conveyance claims under 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B), whether the [D.C. Bankruptcy Court] already determined the issue of ownership and bare legal title in its homestead exemption opinion[, *In re Salas*, 2018 WL 4621930]. [And i]f so, is the D.C. Court's Homestead Opinion entitled to preclusive or collateral effect in this proceeding.

(Order, AP No. 83, as summarized in Mem. Op., AP No. 101.)

The defendant thereafter filed his own Motion for Summary Judgment and supporting Memorandum, seeking judgment in his favor on all counts in the Amended Complaint, and the

plaintiffs filed a Supplemental Memorandum and a Second Supplemental Memorandum in support of their Motion for Summary Judgment. (AP Nos. 89, 91, 92, 100.) Following the hearing conducted on March 21, 2023, the Bankruptcy Court issued a written Memorandum Opinion and Order (AP Nos. 101, 102), denying the plaintiffs' Motion for Summary Judgment altogether and denying Max Salas' Motion for Summary Judgment as to Counts I, II, III, and VI but granting it on Counts IV and V.

Specifically, the Bankruptcy Court first held that, under D.C. law, an unrecorded deed conveying an interest in real property is not effective against a subsequent *bona fide* purchaser or hypothetical judgment lienholder without actual, constructive, or inquiry notice of the unrecorded deed. Actual and constructive notice are not established in this case, because the trustee assumes the role of a *bona fide* purchaser without actual knowledge, and constructive notice means record notice. (Doc. No. 101, at 4 (citing *Sovran Bank v. United States (In re Aumiller)*, 168 B.R. 811, 818 (Bankr. D.D.C. 1994); *Clay Props., Inc. v. Wash. Post Co.*, 604 A.2d 890, 895 (D.C. 1992)).) And, the Bankruptcy Court held, "a determination of whether inquiry notice existed would require the weighing of evidence, and therefore, is not an appropriate matter for summary judgment." (*Id.* at 7.) The court denied both motions for summary judgment on the strong-arm avoidance claims under 11 U.S.C. § 544(a)(1)–(3) (Counts I, II, and III).[6] (*Id.*)

Next, the court noted that it had already determined, based on *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 n.8 (1983), that, if debtor Len Salas had only bare legal title to the Property, then there could be no recoverable interest in the Property under the fraudulent

---

[6] Although the plaintiff had not moved for summary judgment on Count III, the defendant argued that he was entitled to summary judgment on that claim as well, based on inquiry notice. (*See* AP No. 91, at 3.) In a footnote, the court denied summary judgment on that claim. (AP No. 101, at 15 n.9.)

conveyance provisions of the Bankruptcy Code, 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B), on which Counts IV and V of the Amended Complaint are premised, at least in part.[7] (AP No. 101, at 7–8 (collecting cases).) Although the Bankruptcy Court had previously determined that there was a material factual dispute as to whether Len Salas had only bare legal title, on reconsideration and additional briefing by both parties, the Bankruptcy Court concluded that the D.C. Bankruptcy Court had already held that the 2010 Quitclaim Deed validly conveyed to Max Salas "both the legal and beneficial interests in the Property," because, even though the deed had not been recorded as required by D.C. Code § 42-401, the statutory requirements "do not bar the operation of a signed, sealed, and delivered deed against parties and their assignees." (*Id.* at 9 (quoting *In re Salas*, 2018 WL 4621930, at *20).) Applying the D.C. law of issue preclusion and considering each of the relevant factors, the Bankruptcy Court held that the D.C. Bankruptcy Court's holding in that regard had preclusive effect in this case and that the plaintiffs, acting on behalf of the Trustee, are "collaterally estopped from relitigating the issue of ownership or bare legal title." (*Id.* at 13.)

The Bankruptcy Court further noted that, even if collateral estoppel did not apply, "the undisputed material facts support the same conclusion"—that is, that Len Salas held only bare legal title to the Property. (AP No. 101, at 13–14.) The relevant facts for purposes of this conclusion include that Len Salas (1) only lived at the Property for a few months, during which he paid rent to Max Salas; (2) never made any mortgage payments, paid any insurance premiums, or paid any property taxes; and (3) never considered himself the owner of the property; and that Max

---

[7] Counts IV and V are also premised, in part, on allegations of actual fraud, which is addressed in 11 U.S.C. § 548(a)(1)(A). The Bankruptcy Court noted that neither party had sought summary judgment on the plaintiffs' actual fraud claim "and rightfully so," as "[t]he existence of fraudulent intent is a question of fact, so summary judgment is rarely an appropriate remedy." (AP No. 101, at 14 n.8.)

Salas' "inability (or unwillingness) to take the necessary steps to remove Len Salas from the mortgage and title is the only reason Len Salas' name remained on the title." (*Id.* at 14.)[8] The Bankruptcy Court granted summary judgment to Max Salas on the fraudulent conveyance claims brought in Counts IV and V of the Amended Complaint for both of these reasons. (*Id.*)

Finally, as to Count VI, in which the plaintiffs seek relief under 11 U.S.C. § 550, the court noted that this statute, rather than giving rise to affirmative relief, simply sets forth the available remedies if a transfer is avoided under 11 U.S.C. § 544 or 548 (among other provisions of the Bankruptcy Code). Because the court denied summary judgment on the plaintiffs' strong-arm claims (Counts I–III), it found that summary judgment on Count VI was also not warranted. (Doc. No. 101, at 15.)

The plaintiffs promptly filed a Motion to Alter or Amend, under Rule 9023 of the Federal Rules of Bankruptcy Procedure and Rule 59 of the Federal Rules of Civil Procedure, in which they essentially reargued every point made in the summary judgment filings. (AP No. 104; *see also* Aug. 15, 2023 Hr'g Tr., AP No. 147, at 2–22.) The Bankruptcy Court, after conducting a hearing, denied the motion. (AP No. 147, at 27; AP No. 109.)

---

[8] As described in great detail in the D.C. Bankruptcy Court opinion, Max got divorced from his ex-wife in 2007. He wanted to keep the Property, which required coming up with funds to pay his ex-wife her share of the equity in the Property. Max did not have good enough credit to obtain financing in his own name, however, so, after the ex-wife conveyed the Property to Max pursuant to a duly recorded deed, Max conveyed the Property to Len, and Len obtained a loan from SunTrust in his own name, the proceeds of which were paid to the ex-wife. A deed of trust in favor of SunTrust was recorded. *See In re Salas*, 2018 WL 4621930, at *1–2. "As a result of these transactions, title to the Property, according to the land records, was in Len's name." *Id.* at *2. However, following this "conveyance," Max Salas remained in possession of the Property, and both he and Len treated Max as the true owner of the Property. *Id.* Despite numerous attempts over the years, Max has never been able to obtain the financing in his own name as would be required to release Len from the deed of trust.

The plaintiffs then filed a timely Notice of Appeal, designating the Bankruptcy Court's Order denying their Motion for Summary Judgment and granting in part the defendant's Motion for Summary Judgment (AP 102), as well as the Order denying the plaintiffs' Motion to Alter or Amend (AP 109), as the subject of the appeal (*see* AP 111). Contemporaneously with their Notice, the plaintiffs filed a Motion for Leave to File Interlocutory Appeal. (AP No. 113.) The defendant filed his Notice of Counter-Appeal and Statement of Election, seeking to have the appeal heard by this court, shortly thereafter. (Doc. No. 1; No. AP 117.) This court thereafter granted the parties leave to pursue this interlocutory appeal. (Doc. No. 12.)

## III.    ISSUES ON APPEAL

The plaintiffs identify eleven issues on appeal, many of which are duplicative. (Doc. No. 13, at 9–10.) The court distills the issues raised by the plaintiffs as follows:

(1) Whether the "inquiry notice" issue raised in Counts I, II, and III of the Complaint may be resolved as a matter of law on the undisputed facts;

(2) Whether the Bankruptcy Court erred in granting summary judgment to defendant Max Salas on Counts IV and V of the Complaint, based upon its finding that the D.C. Bankruptcy Court's determination that the 2010 Quitclaim Deed validly conveyed to Max Salas the legal and beneficial interests in the Property, for purposes of D.C.'s homestead exemption, had preclusive effect on the plaintiffs' claims in this case; and

(3) Whether the Bankruptcy Court erred as a matter of law in holding, in the alternative, that defendant Max Salas was entitled to summary judgment on Counts IV and V because debtor Len Salas holds only bare legal title to the Property.

Even though the plaintiffs only moved for summary judgment on Counts I, II, IV, V, and VI (*see* AP No. 73, at 1) and expressly disclaimed an intent to seek summary judgment on the "actual fraud" components of Counts IV and V (*see* AP No. 73-1, at 2), they now assert that they

"filed a Motion seeking summary judgment on all Counts" (Doc. No. 13, at 14), and they contend generally that the Bankruptcy Court erred in denying their Motion for Summary Judgment and granting in part Max Salas' motion (*see id.* at 10).

The defendant, Max Salas, identifies the issues raised on appeal by both parties essentially by tracking the six "Counts" in the Complaint. (*See* Doc. No. 16, at 6.) In his Statement of the Case, however, he identifies "only two facts" that he claims are "determinative of this appeal" in its entirety:

> (1) Prior to the Petition Date, the Plaintiffs filed a notice of judgment lien in the chain of title to the Property (defined below), thus putting the world on inquiry notice of the Defendant's ownership interest in the Property. This fact alone should have resulted in the Bankruptcy Court['s] granting judgment in favor of the Defendant as to Counts I, II, III and VI.
>
> (2) The United States Bankruptcy Court for the District of Columbia previously ruled that Defendant was the owner of the Property. If Defendant was the owner of the Property, then he could not be the recipient of a fraudulent transfer. Ownership of the property cannot be relitigated due to the doctrine of collateral estoppel. This led the Bankruptcy Court to correctly grant summary judgment in favor of the Defendant as to Counts IV and V.

(Doc. No. 16, at 7 (footnotes identifying the Counts in the Complaint omitted).

The court reviews *de novo* the legal issues raised by the parties' cross-appeals.

## IV.    COUNTS IV AND V

As set forth above, in Counts IV and V, the plaintiffs assert that the conveyance from Len Salas to Max Salas by the 2010 Quitclaim Deed was a fraudulent conveyance under 11 U.S.C. § 548(a) and under state law, D.C. Code § 3104 *et seq.*, and, as such, avoidable under 11 U.S.C. § 544(b)(1). The Bankruptcy Court found both that the plaintiffs were collaterally estopped from relitigating the issue of Max Salas' ownership of the Property and that, even if collateral estoppel did not apply, Len Salas clearly held no more than bare legal title to the Property, as a result of which the plaintiffs' claims under §§ 548 and 541(b) failed as a matter of law.

To explain why bare legal title dooms Counts IV and V, a short primer on basic bankruptcy law may be helpful. The filing of a bankruptcy case "creates an estate" comprising, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see also In re Emoral, Inc.*, 740 F.3d 875, 879 (3rd Cir. 2014). "The property of the estate thus consists of '[w]hatever rights a debtor has in property at the commencement of the case . . . ." *Foskey v. Plus Props, LLC.,* 437 B.R. 1, 9 (D.D.C. 2010) (first alteration in original) (quoting *Moody v. Amoco Oil*, 734 F.2d 1200, 1213 (7th Cir. 1984)); *see also In re Hope*, 231 B.R. 403, 412 (Bankr. D.D.C. 1999) ("[T]o the extent that an interest in property is limited in the hands of the debtor, it is equally limited in the hands of the estate"). "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55, (1979). In this case, because the Property is located in the District of Columbia, D.C. property law governs this matter.

Under § 541, numerous courts have recognized that property the debtor holds in trust for another, or in which the debtor holds only bare legal title, does not become property of the estate available for distribution to creditors. *See In re Newpower*, 233 F.3d 922, 936 (6th Cir. 2000) ("[T]he bankruptcy code is clear that property is includable only to the extent of the debtor's legal title and not to the extent of any equitable interest that the debtor does not have . . . . "); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, n.8 (1983) ("[W]here the debtor holds bare legal title without any equitable interest, . . . the estate acquires bare legal title without any equitable interest in the property[.]" (quoting 124 Cong. Rec. 33999 (1978) (remarks of Sen. DeConcini)); *see id*. at 204 n.10 ("We note only that Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition.").

In *Geremia v. Dwyer (In re Dwyer)*, 250 B.R. 472 (Bankr. D.R.I. 2000), for example, Elizabeth Dwyer purchased a house in 1978 and put the name of her oldest son, Maurice Dwyer, on the deed (for undisclosed reasons). Twenty years later, when Maurice was going through marital problems, Elizabeth asked him to deed the property back to her as the sole owner, which he did. *Id.* at 473. Maurice filed for bankruptcy six months later, and the Chapter 7 Trustee brought adversary proceedings against Elizabeth to set aside the conveyance as a fraudulent transfer under § 548. Where it was undisputed that Elizabeth had paid the down payment, made all the mortgage and tax payments, paid all the utility bills, and covered maintenance and repairs on the building and that neither Maurice nor Elizabeth ever considered Maurice to be the owner of the property, the court concluded both that Maurice held only bare legal title, which the Trustee conceded, and that bare legal title did not constitute an economic interest in the estate. Consequently, Maurice's conveyance back to Elizabeth did not constitute a fraudulent conveyance under § 548(a)(2). *Id.* at 474.

Similarly, the case of *In re Gentry*, No. 20-13708-SAH, 2022 WL 198856 (Bankr. W.D. Okla. Jan. 21, 2022), involved a situation in which the parents of the debtor had titled their house to their two daughters, including the debtor, for estate-planning purposes, while they continued to live in the house. None of the involved parties considered the conveyance to be a gift; rather, they all understood it to be an estate-planning tool. The parents continued to pay all mortgage payments, to maintain insurance, and to pay utilities and upkeep on the house. Twenty years later, the debtor and her sister quitclaimed the title back to the parents, in order to get the sister off the deed, and the parents then turned around and quitclaimed the house back to an entity owned by the debtor. Again, however, they considered this to be an estate-planning tool, and none of the parties considered the entity or the debtor to be the owner of the house. *Id* at *4. Even after that deed,

"Debtor never controlled the Subject Property, made no improvements thereto, and paid no real estate taxes thereon." *Id.*

The court held that, under Oklahoma law, "when a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." *Id.* at *11 (citing Okla. Stat. Ann. tit. 60, § 137). As the court explained,

> A so-called "resulting trust" will arise where property is transferred 'but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner.'"

*Id.* (quoting *Mashburn v. Arzate (In re Arzate)*, 618 B.R. 535, 541 (Bankr. W.D. Okla. 2020)). The court found, under the undisputed evidence in that case, that a resulting trust had been created and that the property that was the subject of a resulting trust did not become property of the debtor's bankruptcy estate. *Id.* at *13 (citing *In re Arzate*, 618 B.R. at 541, among others).

D.C. law also recognizes resulting trusts:

> "A resulting trust is a property relationship designed to effectuate the parties' intent when one party takes title to property for which another has furnished the consideration." *Edwards v. Woods*, 385 A.2d 780, 783 (D.C. 1978). Such a trust ordinarily arises in favor of a person who pays the purchase price "[w]hen a transfer of property is made to one person and the purchase price is paid by another." *Leeks v. Leeks*, 570 A.2d 271, 274 (D.C. 1989). "A resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise." Restatement (Second) of Trusts § 441 (1959); *see also Leeks*, 570 A.2d at 275 (citing § 441 of the Restatement).

*Zanders v. Baker*, 207 A.3d 1129, 1140 (D.C. 2019).

Based on this caselaw, this court finds that, irrespective of whether the plaintiffs in this case should be collaterally estopped from contesting Max Salas's ownership of the Property, it is absolutely clear based on the undisputed facts that Len Salas never owned more than bare legal

title to the Property and, further, that a "resulting trust" in the Property was created in favor of Max Salas, even though the 2007 deed and deed of trust were in Len Salas' name. As the D.C. Bankruptcy Court also explained, it is undisputed that Len Salas' name was on the Deed of Trust and mortgage documents solely because Max Salas was unable to obtain financing in his own name, and the only reason Len Salas' name was never removed from those documents was, again, because Max Salas could not obtain financing. However, Len Salas never made any financial investment in the Property, never considered himself to be the owner of the Property, and lived there only briefly in 2007, during which time he paid rent to Max Salas. Max Salas alone made the mortgage and tax payments and kept up insurance on the house. The utilities were in his name, and he paid all utility bills and covered the upkeep and maintenance costs of the Property. He lived on the Property continuously from 1995, except for the period of time after the fire in 2015 until early 2018, while the house on the Property was being repaired. Based on these facts, the Bankruptcy Court did not err in concluding that Len Salas held only bare legal title in the Property.

In attempting to refute the conclusion that Len Salas held only bare legal title in the Property at the time he filed for bankruptcy, the plaintiffs argue that the Supreme Court's footnoted statement in *Whiting Pools* that bare legal title is insufficient to establish a basis for recovery under § 548 was *dicta* and is not binding on this court. While the footnote might arguably be *dicta*, *see Whiting Pools*, 462 U.S. at 204 n.8, the Court's statement that a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," *id.* at 204 (quoting § 541(a)(1)), clearly is not, and, as set forth above, many courts have held that bare legal title does not comprise a legal or equitable interest in property.

Because Len Salas owned only bare legal title, his purported transfer of the Property cannot be recovered under 11 U.S.C. § 548. *Accord In re Dwyer*, 250 B.R. at 474 (because bare legal title

has no value to an estate, a transfer of bare legal title cannot form the basis for a fraudulent transfer action). For that reason, Max Salas is entitled to summary judgment on the plaintiffs' claims under § 548(a)(1) and state law—except insofar as the plaintiffs allege actual fraud under § 548(a)(1)(A), as neither party moved for summary judgment on the actual fraud claim.[9] Moreover, because Len Salas held only bare legal title in the Property, the court has no need to consider whether collateral estoppel applies in this case.

## V.    COUNTS I, II, III, and IV

Neither collateral estoppel nor Len's status as the holder of bare legal title bars the "strong-arm" claims under § 544(a). The plaintiffs moved for summary judgment on Counts I and II (which rely on § 544(a)(3) and (a)(1), respectively). The defendant moved for summary judgment on Counts I, II, III (which relies on § 544(a)(2)), and VI.[10] The Bankruptcy Court denied summary judgment on Counts I and II, finding that a material factual dispute made resolution on summary judgment improper. It denied summary judgment on Count III as well, noting that the defendant had not presented any substantive argument to support summary judgment on that claim. As neither party raises specific exceptions to that conclusion, they have effectively waived any objection to the denial of summary judgment as to Count III. Regarding Counts I and II, the parties agree that the same analysis applies to both claims, and they do not contest the basic parameters of the applicable law.

---

[9] As the plaintiffs point out, neither party briefed the issue of actual fraud. (*See* Doc. No. 13, at 18.)

[10] Count VI is based upon §550 and is not an independent basis for relief; rather, it gives a trustee the ability to recover property should any transfer be avoided. The Bankruptcy Court denied summary judgment on this claim because the question of whether a transfer should be avoided remained open.

Section 544(a) of the Bankruptcy Code gives the trustee the rights of a hypothetical judgment lien creditor or a hypothetical *bona fide* purchaser of real property from the debtor at the time of the commencement of the debtor's bankruptcy case. 11 U.S.C. §§ 544(a)(1), (3). The trustee can avoid a lien on real property if a *bona fide* purchaser or judgment lien creditor could avoid the lien. *In re El-Erian*, 512 B.R. 391, 396 (Bankr. D.D.C. 2014) (citing *Hamilton v. Wash. Mut. Bank FA (In re Colon)*, 563 F.3d 1171, 1173 (10th Cir. 2009)). State law governs who may be a *bona fide* purchaser or judgment lien creditor for purposes of section 544(a). *Id.* (citing *Sovran Bank v. United States (In re Aumiller)*, 168 B.R. 811, 818 (Bankr. D.D.C. 1994)).

Under D.C. law, neither a trust nor a deed conveying an interest in real property is effective against "subsequent *bona fide* purchasers . . . without notice" of said lien unless it is recorded. D.C. Code § 42-401; *see also Clay Props., Inc. v. Wash. Post Co.*, 604 A.2d 890, 894 (D.C. 1992) (holding that unrecorded lease is not effective as to subsequent *bona fide* purchaser without notice (citing D.C. Code § 45-801 (now codified at § 42-401)); *Kayfirst Corp. v. Wash. Terminal Co.*, 813 F. Supp. 67, 72 (D.D.C. 1993) (holding that an unrecorded trust is not effective against a subsequent *bona fide* purchaser without notice (citing D.C. Code § 45-801; *Clay Props., Inc.*, 604 A.2d at 895)).

Notice may be actual, constructive, or inquiry. *Clay Properties, Inc.*, 604 A.2d at 895; *In re El-Erian*, 512 B.R. at 396. The plaintiffs' "actual knowledge" of the contents of the deed or the resulting trust is irrelevant here, because they have stepped into the shoes of the trustee in this derivative action, and the trustee "assumes the role of a *bona fide* purchaser or judgment creditor without actual knowledge." *In re El-Erian*, 512 B.R. at 396 (citing *In re Aumiller*, 168 B.R. at 818). Constructive notice does not apply here, because it "has come to mean record notice," *Clay*

*Props.*, 604 A.2d at 895 n.15 (citation omitted), and there is no dispute that Max Salas' legal and equitable interest in the Property was not recorded.

However, a hypothetical purchaser may be held to inquiry notice. *Id.* at 895. As the D.C. Court of Appeals has explained:

> A purchaser is held to be on inquiry notice where he or she is aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances. The purchaser is on inquiry notice of all facts and outstanding interests which a reasonable inquiry would have revealed.

*Id.*

The facts regarding inquiry notice in this case appear to be largely undisputed, but the parties disagree as to the import of those facts. The facts to which Max Salas points are these:

1. Max Salas lived in the Property.

2. Max Salas was the only party who ever made mortgage payments on the Property.

3. Max Salas signed the leases to rent portions of the Property.

4. Max Salas collected the rent payments from the Property.

5. Max Salas collected and distributed insurance proceeds after the Property was destroyed by fire.

6. The plaintiffs recorded notice of their D.C. judgments against Max Salas and Len Salas with the D.C. Recorder of Deeds prior to the filing of Len Salas' bankruptcy petition in this Court and Max Salas' bankruptcy petition in the D.C. Court.

(*See* AP No. 101, at 5; *see also* Doc. No. 16, at 17.) For purposes of this appeal, Max Salas asserts that the fact that the plaintiffs filed a judgment lien in the chain of title to the Property was sufficient to "put[] the world on inquiry notice of the Defendant's ownership interest in the Property" and, standing alone, should have resulted in summary judgment in his favor on Counts I, II, and VI. (Doc. No. 16, at 7.) He further argues that this fact, coupled with the other facts referenced above,

especially Max Salas' occupation and possession of the Property, clearly establish that "any reasonable third party would have had inquiry notice," thus precluding the plaintiffs' right of recovery under § 544(a)(1) and (3). (*Id.* at 17.) In particular, Len Salas argues that a title search would have revealed the judgment liens, and any reasonable party would have been put on notice by the judgment liens to inquire further about the facts and circumstances of the judgment. An inquiry into the judgment would have revealed a dispute about who owned the property, given the many pleadings in the state court lawsuit filed by Len Salas, "attempting to get out of the lawsuits because he exercised no ownership in fact over the Property." (*Id.* at 19.)

The court is not persuaded by this argument. The judgments filed in the D.C. property records simply reflect that, in each of the two underlying Superior Court cases, judgment was entered jointly and severally against both Max Salas and Len Salas. The judgments do not contain any of the underlying facts suggesting the basis for the findings of liability, and Len Salas' status as the record owner of the Property would likely be sufficient to explain why the judgments were filed in the Property's chain of title. The court is not inclined to create a *per se* rule that a reasonable purchaser would be required to mine the Superior Court docket to inspect the various pleadings filed therein, so as to discover that Len Salas disputed ownership of the Property. In addition, while Max Salas argues that the leases should have also provided inquiry notice, none of the leases were recorded, and there is no suggestion in the record that any renters were living on the Property in April 2018, so it is not clear that a reasonable purchaser would have been on notice that he needed to look at the leases.

For their part, the plaintiffs point to other facts as establishing that they did *not* have inquiry notice:

1. Len Salas was the named owner on the title to the Property.

2. The mortgage on the Property was in Len Salas' name only.

3. The rental leases were signed by Max Salas on behalf of "CLR" rather than individually.

4. The recorded judgment showed Len Salas was held liable as the owner of the Property.

5. The recorded judgment showed Max Salas was held liable for mismanagement not ownership of the Property.

(*Id.* at 6.)[11]

These facts are not necessarily sufficient either. Although Len Salas was the title owner, and the mortgage was in his name, Max Salas occupied the Property. If a reasonable purchaser did go back and looked at the prior leases, the fact that an entity rather than the record owner was identified as the landlord would have put a reasonable purchaser on notice of a need to inquire as to the role of that entity. And, as set forth above, the recorded judgments in this court's record do not actually state the basis for either judgment.

The plaintiffs also argue that the Bankruptcy Court failed to acknowledge the caselaw establishing that, according to the plaintiffs, when an owner deeds his property to another but remains in possession, his deed constitutes notice to the world that he is no longer the owner, apparently referencing the 2007 deed. (Doc. No. 13, at 19 (citing *McKinley v.Crawford*, 58 F.2d 528 (D.C. Cir. 1932)).) In *McKinley*, the D.C. Circuit reiterated that "actual, visible, and unequivocal possession" of "real estate inconsistent with the record title and under an apparent claim of ownership is notice to purchasers of whatever interest the person actually in possession has in the fee." *McKinley v. Crawford*, 58 F.2d 528, 529 (D.C.Cir.1932); *see also Clay Props.*, 604

_____

[11] Max Salas does not dispute these facts for purposes of the summary judgment motions, but the court notes that (1) a different entity's name on the leases from that of the record owner, if indeed a reasonable purchaser should have been on notice of the leases, might have put a reasonable purchaser on notice of a need to inquire as to the role of the entity; and (2) the recorded judgments in this court's record do not actually state the basis for either judgment.

A.2d at 896 (noting that physical possession can be "a circumstance providing notice" of competing claims to property if possession is "open and unambiguous" and "sufficiently distinct and unequivocal to put the purchaser on his guard" (internal citations omitted)). However, *McKinley* recognized an exception to this rule when the seller "remains *for a time* in possession after giving a fee-simple deed, with covenants, which he permits to be recorded." *McKinley*, 58 F.2d at 529–30 (emphasis added). In other words, the continued possession of property by a seller will not necessarily put subsequent purchasers on notice of the seller's claim, where the seller has signed a fee simple deed and the deed has been recorded. *Id.*; *see also Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 137–38 (D.D.C. 2011). The purpose of this exception is to encourage reliance on recorded deeds and to promote "the equitable maxim that, where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." *Chen*, 768 F. Supp. 2d at 38 (citing *McKinley*, 58 F.2d at 530).

While *McKinley* indicates that possession by the "seller," standing alone, is not necessarily sufficient to put a reasonable purchaser on notice, Max Salas has occupied the Property since 1995. And, even after he deeded the Property to Len in 2007, he continued to live there for another eight years, until the fire in 2015, and then moved back in in "early 2018," before his and Len Salas' bankruptcy petitions were filed in April 2018. (*See* AP 75-1 ¶ 3.) The duration of his occupation of the premises following the execution of the 2007 Deed distinguishes the case from *McKinley*, where the occupation following the conveyance was less than one year. Regardless, the Bankruptcy Court did not find that Max Salas' possession, standing alone, defeated the plaintiffs' claim of lack of notice. Rather, it is one circumstance that might have served to put them on notice.

The parties apparently agree that an objective standard of reasonableness applies when the facts are undisputed, and courts have indeed granted summary judgment as a matter of law based

on inquiry notice. *See, e.g.*, *BDO Seidman, LLP v. Morgan, Lewis & Bockius LLP*, 89 A.3d 492, 501 (D.C. 2014) (affirming the trial court's conclusion that the plaintiff was on inquiry notice of its claims, for statute of limitation purposes). On the other hand, the D.C. Circuit has recognized that "[w]hat is 'reasonable under the circumstances' is a highly factual analysis." *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996). In *Doe v. Medlantic Health Care Group, Inc.*, 814 A.2d 939, 948–49 (D.C. 2003), the appellate court reversed the trial court's judgment as a matter of law on the accrual issue, which had been submitted to the jury, finding, based on the facts in the record, that "the jury reasonably could find, as it did, that Doe acted reasonably in investigating the hospital's culpability" and that the trial court erred in substituting its own judgment for that of the jury.

Here, the Bankruptcy Court did not err in finding that summary judgment was not available to either party. While the facts on which both parties rely are essentially undisputed, which facts are more probative and how much investigation would have been reasonable under the circumstances are disputed questions of fact. The court finds, in short, that there is a material factual dispute as to whether a reasonable person, under the circumstances of this case, would have been placed on inquiry notice of Max Salas' claims to the Property. In particular, the fact of Max Salas' long-term and open occupation of the premises, coupled with the recorded judgments against both him and Len Salas might have been sufficient to cause a reasonable purchaser to inquire further. But even if a reasonable purchaser was required to inquire further, there remains a question of how much further. The Bankruptcy Court's denial of summary judgment as to Counts I, II, III, and VI of the plaintiffs' Complaint will be affirmed.

## VI. CONCLUSION

For the reasons set forth herein, the cross-appeals will be denied, and the Bankruptcy Court's May 24, 2023 Order denying the plaintiffs' Motion for Summary Judgment as to Counts

I, II, and VI of the plaintiffs' Complaint, granting defendant Max Salas' Motion for Summary Judgment on Counts IV and V of the Complaint, and denying the defendant's motion as to Counts I, II, III, and VI (AP No. 102) and the Bankruptcy Court's August 16, 2023 Order Denying Plaintiffs' Motion to Alter or Amend Under Fed. R. Bankr. P. 9023. (AP No. 109) will both be affirmed. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge